IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRIAN BEMKE (on behalf of himself and others similarly situated),
SCOTT COLLETT (on behalf of himself and others similarly situated),
JOHN FERIOZZI (on behalf of himself and others similarly situated),
JUDY FINTZ (on behalf of herself and others similarly situated),
SARAH JAMIESON (on behalf of herself and others similarly situated),
EVAN JOHNSON (on behalf of himself and others similarly situated),
TRACY LONG (on behalf of herself and others similarly situated), and
CLIFFORD NEUMANN (on behalf of himself and others similarly situated),

       Plaintiffs,                       Case No.

v.

AMY PECHACEK, in her official capacity as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

       Defendant.

---

## COMPLAINT

---

       NOW COME THE PLAINTIFFS, by their attorneys, Gingras, Thomsen & Wachs, Axley Brynelson, LLP, and Victor Forberger, Esq., who hereby state the following as their Complaint in the above referenced matter.

### Nature of Proceedings

       1.     This class action, brought under 42 U.S.C. § 1983, the Americans with Disabilities Act and the Rehabilitation Act, is to invalidate Wisconsin Statute § 108.04(12)(f) and § 108.04(2)(h) facially and as applied, insofar as these statutes act to deprive disabled persons who receive Social Security Disability Insurance (SSDI) payments of regular unemployment compensation benefits when those disabled persons can and do, in fact, work.  This deprivation is a violation of the Rehabilitation Act, 29 U.S.C. sec. 701, et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, the Social Security Act, 42 U.S.C. § 503(a)(1), and the Due Process clause of the Fourteenth Amendment to the United States Constitution.

Furthermore, this action seeks to compensate disabled persons compelled to repay regular unemployment compensation benefits and related penalties because they received SSDI benefits, which is also a violation of the Rehabilitation Act, the ADA, the Social Security Act, and the "due process" clause of the 14th Amendment. This class action is brought under Fed.R.Civ.Pro. 23.

## Parties

2.      Brian Bemke is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits. Moreover, Mr. Bemke was compelled to repay some benefits he did receive, again, because he was also receiving SSDI benefits.

3.      Scott Collett is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits. Moreover, Mr. Collett is being compelled to repay some benefits he did receive, because he was found eligible for SSDI benefits.

4.      John Feriozzi is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits.

5.      Judy Fintz is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of her receipt of SSDI benefits.

6.      Sarah Jamieson is a disabled resident of Wisconsin who received SSDI benefits and was denied regular unemployment compensation benefits because of her receipt of SSDI benefits. Moreover, Ms. Jamieson is being compelled to repay some benefits she did receive because she was also receiving SSDI benefits.

7.      Evan Johnson is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits.

8.      Tracy Long is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits. Moreover, Ms. Long is being compelled to repay some benefits she did receive because she was also receiving SSDI benefits.

9.      Clifford Neumann is a disabled resident of Wisconsin who receives SSDI benefits and is being denied regular unemployment compensation benefits because of his receipt of SSDI benefits.

10.     Amy Pechacek is the acting Secretary of the State of Wisconsin Department of Workforce Development (DWD or Department).  In that role, she and the Department are responsible for the administration of Wisconsin employment benefits program.

### Factual Allegations

11.     The Rehabilitation Act of 1973 was the first legislation to address the notion of equal access for individuals with disabilities.  Most relevant to this case is section 504 of Title V of the Rehabilitation Act, which prohibits discrimination on the basis of disability in programs receiving federal financial assistance.

12.     Title II of the Americans with Disabilities Act of 1990, as amended, prohibits public entities from discriminating against qualified individuals with disabilities or from excluding such individuals from participating in or denying benefits or their services, programs, or activities.

13.     The Social Security Act at 42 USC § 503(a)(1) requires states to pay unemployment benefits "when due," thus creating a property interest in those benefits once they are due.

14.     In 1932, Wisconsin became the first state in the union to pass an unemployment compensation law and was the model for the national unemployment program included in the Social Security Act of 1935.  This law provided benefits to unemployed workers who lost jobs through no fault of their own, in order to keep those workers out of poverty while they searched for new work or waited

to be recalled by their employer by increasing workers' purchasing power and hence stabilizing the economy.

15.     The Department receives federal funds for the purpose of administering the unemployment compensation benefits program through the federal unemployment tax (FUTA) that employers pay and which the U.S. Department of Labor awards to states based on the unemployment claim-filing activity in a particular state.

*SSDI benefits*

16.     The Social Security Administration, for the purposes of SSDI benefits, defines "disability" as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

17.     The Social Security Administration engages in a five-step inquiry that embodies its definition of disability.  First, the SSA asks whether the applicant is working.

18.     The second step is to determine whether the applicant has a severe impairment that presents significant limitations to the applicant's ability to do basic work activities.

19.     Third, if the applicant's impairment is found on the Social Security Administration's list of impairments, the applicant is automatically eligible for SSDI benefits, without further inquiry into work ability

20.     If an applicant does not possess an impairment found in step three, then steps four and five inquire into whether the applicant is able to perform past relevant work and, if not, whether the applicant is able to perform other jobs that exist in significant numbers in the national economy. A person who cannot perform "substantial gainful activity" in these ways is determined eligible for SSDI benefits.

21.     So, a person only receives SSDI benefits when he or she is determined to have a disability that prevents "substantial gainful activity."

22.     The amount of a person's SSDI benefit is based on a person's wage earnings prior to becoming disabled.

23.     Filing for SSDI benefits does not require a statement that the applicant is unable to work. In fact, the United States Supreme Court itself has recognized that the Social Security Administration sometimes grants SSDI benefits to individuals who do work. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805, 119 S.Ct. 1597, 1603 (1999).

24.     In 2010, Chief Social Security Administrative Law Judge Frank Cristaudo issued the attached memorandum to other Social Security administrative law judges, stating that "under the presumptions embodied in our five-step sequential evaluation process, a person can qualify for Social Security disability benefits even though he or she remains capable of performing some work." Accordingly, it is possible to receive SSDI benefits and still be able to work.

25.     As of 2019, in Wisconsin 156,887 out of 184,985 SSDI recipients worked and earned wages while also receiving SSDI benefits. With a labor force in 2019 in Wisconsin of just over 2.8 million workers, 5.5 percent (roughly one out of every 20) of the state's workers that year received SSDI benefits. *See* Annual Statistical Report on the Social Security Disability Insurance Program, 2019, SSA Publication No. 13-11826 (Oct. 2020) at Table 9, p.32.

*The SSDI eligibility ban*

26.     Benefits under SSDI are paid on a monthly basis.

27.     Unemployment compensation benefits are paid on a weekly basis.

28.     Wis. Stat. § 108.04 (12)(f)1m (emphasis supplied), states that the "intent of the legislature in enacting this paragraph is to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, *regardless of an individual's ability to work.*"

29.     As pointed out previously, SSDI benefits are based on work done prior to a disability that prevents substantial gainful activity, while unemployment benefits eligibility is based on earnings within the most recent benefit year and for which there has been a current job loss.

30.     Pursuant to Wis, Stat. § 108.04 (12)(f)(3)(a), as interpreted and applied by DWD, an individual is ineligible for unemployment compensation benefits for each week in the entire month in which a SSDI payment is issued to the individual.

31.     Pursuant to Wis. Stat. § 108.04 (12)(f)(3)(b), as interpreted and applied by DWD, in the first month a SSDI payment is issued to an individual, the individual is ineligible for benefits for each week beginning with the week the SSDI payment is issued, and for all subsequent weeks in that month.

32.     Pursuant to Wis. Stat. § 108.04 (12)(f)(3)(c), as interpreted and applied by DWD, following a cessation of SSDI benefits to an individual, and upon the individual again being issued a SSDI payment, the individual is ineligible for benefits for each week beginning with the week the SSDI payment is issued to the individual and all subsequent weeks in that month.

33.     Pursuant to Wis. Stat. § 108.04(2)(h), as interpreted and applied by DWD, Wisconsin claimants are obligated to inform the Department when they first file an initial claim for regular unemployment benefits and for each subsequent weekly certification that they are receiving SSDI benefits. Failure to inform the Department that they are receiving SSDI benefits typically leads to a charge of unemployment concealment (aka, unemployment fraud), even when the failure to provide this information was unintentional or done by accident.

*Pandemic Unemployment Assistance (PUA) benefits*

34.     With the advent of the Covid-19 pandemic, the federal government passed numerous additional unemployment benefit programs, including pandemic unemployment assistance (PUA) available under the CARES Act.

35.    PUA benefits were specifically created for workers who are not eligible for regular unemployment compensation under state law, like gig workers and workers of religious institutions, who have a job loss connected to the pandemic.

36.    With the passage of the CARES Act, many SSDI recipients believed they would be eligible for PUA benefits since they were precluded under state law from being eligible for regular unemployment benefits.

37.    The Department, however, initially presented several rationales for concluding that the state prohibition on eligibility applied to disabled workers seeking to receive PUA benefits.

38.    Not until June 9, 2020, when then Department Secretary Caleb Frostman wrote Secretary Scalia of the U.S. Department of Labor did the Department accept the idea that SSDI recipients might be eligible for PUA benefits. In a letter dated July 27, 2020, the U.S. Department of Labor formally determined that SSDI recipients were eligible for PUA benefits because of the eligibility ban in state law for receiving regular unemployment benefits.

39.    To reduce the administrative burden of any remedy, this action does not seek to reverse or undo any determination of eligibility for PUA benefits and payment of those benefits for class members for weeks when class members were denied or prevented from applying for regular unemployment benefits.

*Named plaintiff Brian Bemke*

40.    Plaintiff Brian Bemke has learning disabilities and cancer and began receiving SSDI benefits in or about 2018.

41.    In 2019, the Department ordered Mr. Bemke to repay approximately $1000 in regular unemployment benefits because he was receiving SSDI benefits when he was also paid regular unemployment benefits connected to a recent job loss.

42.     In February 2020, Mr. Bemke began working at a convenience store as a cook and helper until in late March 2020 he and other disabled workers were laid off because of the pandemic.

43.     He applied for irregular unemployment benefits on March 30, 2020, but his claim was subsequently denied because he receives SSDI benefits.

44.     On April 23, 2020, Mr. Bemke filed an initial claim for PUA benefits. That initial claim was denied and a hearing for that denial took place on November 20, 2020, where the administrative law judge partially approved his claim for PUA benefits. Approximately $1000 of those PUA benefits were withheld to satisfy the prior over-payment of regular unemployment benefits described above.

45.     For medical treatment, Mr. Bemke relocated and found new work that started in September 2020.

46.     Mr. Bemke was laid off from that new job in March 2021. His initial claim for regular unemployment benefits has been denied because he receives SSDI benefits, and he is likely not eligible for PUA benefits because his layoff is not related to the pandemic. As of July 23, 2021, that denial has been appealed.

*Named plaintiff Scott Collett*

47.     Plaintiff Scott Collett is waiting for a liver transplant, and his application for SSDI benefits was approved (with SSDI payments subsequently occurring) in July 2020.

48.     Previously, Mr. Collett was working as concierge and room service staffer at a Milwaukee hotel. When the hotel closed in mid-March 2020 because of the pandemic, he was laid off and began collecting regular unemployment benefits.

49.     When Mr. Collett reported his SSDI eligibility, payment of regular unemployment benefits immediately stopped.

50.     In a determination issued in January 2021, the Department found that Mr. Collett was not eligible for any regular unemployment benefits and ordered a repayment of all the benefits he previously received.

51.     In a second determination issued in January 2021, the Department found that Mr. Collett did not have qualifying pandemic-related job loss for PUA eligibility.

52.     Both initial determinations were appealed. A hearing regarding Mr. Collett's PUA eligibility occurred in May 2021. In her decision, the administrative law judge found Mr. Collett eligible for PUA benefits from the week of his pandemic job loss in March 2020.

53.     Because of the eligibility ban for receiving regular unemployment benefits, Mr. Collett subsequently withdrew the appeal of the initial determination denying him regular unemployment benefits.

54.     Despite winning his appeal over his PUA benefits, Mr. Collett has yet to receive payment of any PUA benefits.

*Named plaintiff John Feriozzi*

55.     Plaintiff John Feriozzi is disabled because of a 1200 pound steel plate that fell on him in the 1970s. He has been receiving SSDI benefits since 2015 or 2016.

56.     Despite his disability, Mr. Feriozzi continues to work as much as he can. In March 2020, he was working part-time when he and all part-time co-workers were laid off because of a lack of work arising from the pandemic.

57.     Mr. Feriozzi filed an initial claim for regular unemployment benefits, and that claim was denied in November 2020 because he receives SSDI benefits.

58.     In late July 2020, Mr. Feriozzi found a full-time job but had to quit after about a week or two of work because the job was too physically demanding for him. A week later, he found a part-time job, but quit after three days because he could not physically do the work. In October 2020, he landed a

third job — full-time — and was there six weeks before being let go by the employer because Mr. Feriozzi was not what the company was looking for. In November 2020, Mr. Feriozzi began working a full-time job of around 45 hours per week and is still there today.

59.     In November 2020, Mr. Feriozzi filed an initial claim for PUA benefits. That initial claim was denied in January 2021.

60.     After a hearing in May 2021, the administrative law judge found Mr. Feriozzi eligible for PUA benefits from his pandemic-related job loss in March 2020 until his first week of full-time work in early August 2020.

61.     The Department has yet to pay Mr. Feriozzi any PUA benefits and has recently alleged that he is eligible for regular unemployment benefits as of the first full week of April 2020.

62.     The gaps in employment described above are only covered by regular unemployment benefits as there is no pandemic-related reason for those job losses, but Mr. Feriozzi cannot receive regular unemployment benefits because of his SSDI eligibility.

*Named plaintiff Judy Fintz*

63.     Plaintiff Judy Fintz has learning and psychological disabilities and has been receiving SSDI benefits for decades.

64.     She works as a kitchen aid for a cafeteria run by a private company on a college campus. Accordingly, she and her co-workers experience seasonal layoffs every December and January during the winter break and every summer for the summer break in classes.

65.     Unlike her non-disabled co-workers, however, she is not eligible for regular unemployment benefits because of the SSDI eligibility ban. On numerous occasions, in light of the SSDI eligibility ban, Department staffers have told her on the phone that she should not even apply for regular unemployment benefits because her application would automatically be denied. Because of that advice, she stopped applying for regular unemployment benefits.

66.     When the pandemic struck and college campuses closed in March 2020, Ms. Fintz was laid off.

67.     Because of the pandemic, Ms. Fintz applied for regular unemployment benefits, and that initial claim was denied in a May 2020 determination.

68.     Ms. Fintz also applied for PUA benefits as soon as applications were made available. Her PUA claim was originally denied because, the Department alleged, she was still eligible for regular unemployment benefits. After the July 27, 2020, letter from the U.S. Department of Labor, her claim for PUA benefits was approved.

*Named plaintiff Sarah Jamieson*

69.     Plaintiff Sarah Jamieson has been receiving SSDI benefits since 2008 because of depression and other mental issues.

70.     In August 2018, the Department charged Ms. Jamieson with an over-payment of $1772 for receiving regular unemployment benefits in 2016 while also receiving SSDI benefits, an over-payment of $769 for receiving regular unemployment benefits in 2015 while also receiving SSDI benefits, and an over-payment of $2611 for receiving regular unemployment benefits in 2014 while also receiving SSDI benefits.

71.     In early February 2020, her then-held job was eliminated for reasons unrelated to the pandemic.

72.     Ms. Jamieson filed an initial claim for regular unemployment benefits, and that claim was denied in May 2020 because she receives SSDI benefits.

73.     In the meantime, Ms. Jamieson found another job at a local hospital that started in March 2020.

74.     Along with all her co-workers, she was furloughed for every other week because of the pandemic. Ms. Jamieson ended up being furloughed for four weeks.

75.     Because she was not eligible for regular unemployment benefits, in July 2020 her employer increased her weekly hours of work and offered her a job with benefits.

76.     Ms. Jamieson applied for PUA benefits in late April 2020. After a hearing in March 2021, the administrative law judge held that Ms. Jamieson was eligible for PUA benefits for the four weeks she was furloughed.

77.     The PUA benefits paid to Ms. Jamieson were reduced by the amounts she still owed, as described above.

78.     Because of the SSDI eligibility ban, Ms. Jamieson cannot receive regular unemployment benefits for the four weeks in February 2020 when she was between jobs.

79.     As of 2021, Ms. Jamieson has subsequently begun receiving regular Social Security benefits as a retiree and so is no longer banned in the future from receiving regular unemployment benefits.

*Named plaintiff Evan Johnson*

80.     Plaintiff Evan Johnson is disabled because of severe arthritis and began receiving SSDI benefits in February 2020.

81.     Mr. Johnson was working as a hiker truck driver for a truck rental company when his hours in late March 2020 were substantially reduced because of the pandemic to less than five hours per week (from an average of around 15 hours a week previously).

82.     In late October 2020, Mr. Johnson was let go completely by his employer because of a lack of work.

83.     Mr. Johnson filed an initial claim for regular unemployment benefits and was denied because of SSDI eligibility in a determination issued in early May 2020.

84.     Mr. Johnson applied for PUA benefits in early May 2020, and in August 2020 the Department denied that PUA initial claim.

85.     The hearing regarding his eligibility for PUA benefits took place in late January 2021, and the administrative law judge ruled that Mr. Johnson could only receive PUA benefits for the weeks after he was completely let go in late October 2020.

86.     After an appeal to the Labor and Industry Commission, the Commission found in late June 2021 that Mr. Johnson could receive PUA benefits for the weeks starting in late March when his hours were reduced.

*Named plaintiff Tracey Long*

87.     Plaintiff Tracey Long suffered a workplace injury in the summer of 2019 and started receiving workers compensation benefits.

88.     She filed an initial claim for regular unemployment benefits and in the fall of 2019 she started receiving those benefits while she searched for a new job.

89.     In October 2020, the Social Security Administration approved Ms. Long's claim for SSDI benefits and began paying her SSDI benefits.

90.     Because of problems with getting claim-filing assistance from the Department, Ms. Long did not immediately report receipt of SSDI benefits for several weeks while filing her weekly certifications.

91.     In February 2021, the Department charged Ms. Long with an over-payment of over $1000 and a 40% concealment penalty of nearly $500. After a hearing, an administrative law judge for the Department waived the concealment penalty but affirmed the over-payment amount.

92.     Ms. Long's initial claim for PUA benefits was denied by the Department in February 2021 because she lacks pandemic-related job loss. A hearing before an administrative law judge affirmed that denial of PUA benefits.

*Named plaintiff Clifford Neumann*

93.     Plaintiff Clifford Neumann is learning disabled, suffers from a severe stutter, and has been receiving SSDI benefits since turning 18 years of age (he is currently in his 30s).

94.     Mr. Neumann worked in a manufacturing plant on a part-time basis as a helper until the company laid off all part-time employees in late June 2020 because of a lack of work arising from the pandemic.

95.     The Department denied Mr. Neumann's initial claim for regular unemployment benefits because he receives SSDI benefits.

96.     In late July 2020, Mr. Neumann filed an initial claim for PUA benefits. The Department denied that claim because Mr. Neumann listed the wrong start week for his claim (his layoff occurred several weeks later).

97.     The hearing over the denial of PUA benefits took place in early April 2021, and the administrative law judge subsequently found that Mr. Neumann was not able and available for work, in contradiction of Wis. Admin. Code § DWD 128.01(3) and (4), which hold that if a person can work to what their physical and psychological limitations will allow, they are able and available for full-time work for the purpose of state unemployment law.

98.     An appeal is currently pending before the Labor and Industry Review Commission. Given the number of appeals that are now before the Commission, a decision from the Commission is not expected until late 2021.

*Class Allegations*

99.     Plaintiffs seek to represent two distinct classes of disabled recipients of SSDI benefits.  The first class would consist of those DWD denied benefits, directly or indirectly, and the second class would consist of those who received benefits but were required to repay the benefits and / or a penalty associated with the receipt of their benefits.

a.      The first class consists of all SSDI recipients who were eligible for Wisconsin unemployment compensation benefits after a job loss (prior to the pandemic or after the pandemic) or for which PUA benefits were not available (during the pandemic) but either

could not apply or did apply and were denied regular unemployment benefits over the past six years solely on account of their receipt of SSDI benefits.

b.      The second class consists of all SSDI recipients who applied for Wisconsin unemployment compensation benefits and received them, but were subsequently required to repay those benefits over the past six years, with or without a penalty, solely because they had received SSDI benefits.

100.    With respect to the first class, there are questions of fact and law common to the overall class, including the following:

a.      Whether the recipient received SSDI benefits;

b.      Whether the recipient worked to the extent that their physical or mental disabilities allowed them to work;

c.      Whether they suffered a job loss through no fault of their own;

d.      Whether the Department would have denied or did deny any claim for regular unemployment compensation solely based on the recipient's SSDI benefit award; and

e.      Whether Wis. Stat. §§ 108.04(12)(f) and 108.04(2)(h) violate the Rehabilitation Act, the ADA, the "when due" clause of the Social Security Act, and the Due Process clause of the Fourteenth Amendment both separately and in combination with these other federal provisions.

101.    With respect to the second class, there are questions of fact and law common to the overall class, including the following:

a.      Whether the recipient received Wisconsin regular unemployment compensation benefits;

b.      Whether the Department required repayment of those benefits, with or without a penalty and collections costs; and

c.      Whether Wis. Stat. §§ 108.04(12)(f) and 108.04(2)(h) violate the Rehabilitation Act, the ADA, the "when due" clause of the Social Security Act, and the Due Process clause of the Fourteenth Amendment both separately and in combination with these other federal provisions.

102.    The plaintiffs' claims are typical of the class they seek to represent.  Moreover, the questions of law and fact common to the class members predominate over any questions affecting only individual members, as all class members are current or former recipients of SSDI benefits who were otherwise eligible to receive Wisconsin unemployment compensation benefits.

103.    The plaintiffs will fairly and adequately protect the interests of the class.  The interests of the named plaintiffs are coincident with, and not antagonistic to, those of the class.

104.    The named plaintiffs are represented by competent counsel that is experienced in complex litigation, unemployment compensation and employment law, and electronic discovery.  All counsel are licensed to practice in Wisconsin and have been admitted to practice before the U.S. District Court for the Western District of Wisconsin.

105.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy and is consistent with the legislative history and objectives of the Rehabilitation Act, the ADA, the "when due" clause of the Social Security Act, and the Due Process clause of the Fourteenth Amendment.

106.    Maintenance of this action as a class action will promote equitable administration of justice because pursuing claims on an individual basis would be disproportionately expensive.

107.    The prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of that class that would establish incompatible standards of conduct for the defendant.

## COUNT 1
## Discrimination

108.     The plaintiffs restate the preceding paragraphs as if set forth fully herein.

109.     Pursuant to the Rehabilitation Act and the ADA, plaintiffs and class members are qualified individuals because of their disabilities.

110.     During the past six years, the defendant has prevented or denied the plaintiffs and class members regular unemployment compensation benefits for which they are eligible because the plaintiffs and class members were receiving SSDI benefits.

111.     During the past six years, the defendant has ordered over-payments of regular unemployment compensation as well as penalties and collections costs against plaintiffs and class members because the plaintiffs and class members were receiving SSDI benefits.

112.     Denial of unemployment compensation benefits to plaintiffs and class members is discrimination based on disability in violation of the Rehabilitation Act and the Americans with Disabilities Act.

113.     Pursuant to 42 U.S.C. § 1983, this prior and ongoing discrimination against SSDI recipients because of their disabilities entitles plaintiffs and class members to past and prospective relief.

## COUNT 2
## "When Due" and Due Process

114.     The plaintiffs restate the preceding paragraphs as if set forth fully herein.

115.     Pursuant to the "when due" clause, 42 U.S.C. § 503(a)(1) as well as state law, unemployment claimants have a right to the timely payment of regular unemployment benefits after a job loss of no fault of their own.

116.     During the past six years, the defendant has prevented or denied the plaintiffs and class members regular unemployment compensation benefits after a job loss that occurred through no fault of their own.

- 17 -

117.    During the past six years, the defendant has ordered over-payments of regular unemployment compensation as well as penalties and collections costs against plaintiffs and class members because the plaintiffs and class members were receiving SSDI benefits.

118.    Denial of regular unemployment benefits to the plaintiffs and class members and the charging of over-payments, penalties, and collection costs to plaintiffs and class members is a violation of the "when due" clause of the Social Security Act and the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.

119.    Denial of regular unemployment benefits to the plaintiffs and class members and the charging of over-payments, penalties, and collection costs to plaintiffs and class members is also a violation state law that creates a right to unemployment compensation (that is, a property interest) when the statutory criteria have been met.  Denial of the property right violates the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.

120.    Pursuant to 42 U.S.C. § 1983, the prior and continued denial of payments of regular unemployment benefits and charging of over-payments against SSDI recipients because of their SSDI status entitles plaintiffs and class members to past and prospective relief.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs and class members request that this Court:

a.  Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

b.  Permanently enjoin the defendant from enforcing Wis. Stat. §§ 108.04(12)(f) and 108.04(2)(h), insofar as those statutes, or DWD's interpretation or application of them, prohibit otherwise eligible applicants for regular unemployment compensation benefits from receiving those benefits solely because they also receive SSDI benefits.

c.  Order the defendant to allow class members to apply or reapply for regular unemployment benefits with a back-dated initial claim,  weekly certifications, or both during any period of

unemployment over the past six years during which they were denied or would have been denied those benefits because they were receiving SSDI benefits, except for the weeks when they received or will receive PUA benefits.

d.  Determine that class members who have received regular unemployment compensation benefits and were then required to repay those regular unemployment benefits because they were also receiving SSDI benefits are eligible for those same benefits and repayment of any penalties, collection costs, and forfeitures or benefit amount reductions that were levied against them.

e.  For any regular unemployment benefits due class members, order payment of the regular unemployment benefits due those class members and with interest to compensate those illegally deprived of regular unemployment benefits .

f.  With respect to those who received regular unemployment compensation but were required to repay those benefits, order reimbursement of any repaid benefits and related penalties and collections costs, with interest.

g.  Award plaintiffs and class members their costs and attorney fees.

h.  Award such other relief as the Court deems just and proper.

Dated this 7th day of September, 2021.

GINGRAS, THOMSEN & WACHS, LLP

*/s/ Paul A. Kinne*
Paul A. Kinne
SBN: 1021493
Riley C. Leonard
SBN: 1101452
8150 Excelsior Drive
Madison, WI 53717
kinne@gtwlawyers.com
rleonard@gtwlawyers.com

AXLEY BRYNELSON, LLP

*/s/ Heath P. Straka*
Heath P. Straka
SBN: 1031351
2 E Mifflin Street, Ste. 200
Madison, WI 53701
hstraka@axley.com

VICTOR FORBERGER, ESQ.

*/s/ Victor J. Forberger*
Victor J. Forberger
SBN: 1070634
2509 Van Hise Ave
Madison, WI 53705
vforberger@fastmail.fm