IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRIAN BEMKE (on behalf of himself and others similarly situated),
SCOTT COLLETT (on behalf of himself and others similarly situated),
JOHN FERIOZZI (on behalf of himself and others similarly situated),
JUDY FINTZ (on behalf of herself and others similarly situated),
SARAH JAMIESON (on behalf of herself and others similarly situated),
EVAN JOHNSON (on behalf of himself and others similarly situated),
TRACY LONG (on behalf of herself and others similarly situated), and
CLIFFORD NEUMANN (on behalf of himself and others similarly situated),

  Plaintiffs,                Case No. 21-cv-560

v.

AMY PECHACEK, in her official capacity as Secretary-designee of the State of Wisconsin Department of Workforce Development,

  Defendant.

**BRIEF IN SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION**

NOW COME THE PLAINTIFFS, by their attorneys Gingras, Thomsen & Wachs, LLOP, Axley Brynelson, LLP and Victor Forberger, Esq., move this Court for a preliminary injunction to enjoin the enforcement of Wisconsin Statute § 108.04(12)(f) during the pendency of this action pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1]

---

[1] While this case also seeks eventually to enjoin enforcement of Wis. Stat. § 108.04(2)(h), this provision does not currently prevent payment of regular unemployment benefits to SSDI recipients, as this provision of state unemployment law only mandates that unemployment claimants report their SSDI status to the Department. Accordingly, this provision will help identify members of the class to the Department and, ultimately, to the court. As such, enjoining this reporting requirement at the onset of this litigation would unnecessarily impede development and identification of class.

1

## **LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

The Court may issue a preliminary injunction upon notice to the adverse party. Fed. R. Civ. P. 65(a)(1). The preliminary injunction binds (1) the parties; (2) the parties' officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with anyone described in (1) or (2), so long as they receive actual notice by personal service or otherwise. Fed. R. Civ. P. 65(d)(2). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 679 (7th Cir. 2019); *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.4d 541, 545 (7th Cir. 2020). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). "If these threshold factors are met, the court proceeds to a balancing phase" where it balances the irreparable harm to the moving and non-moving parties of granting or denying the preliminary relief and the consequences of granting or denying the injunction on non-parties. *Id.* at 545.

The Supreme Court discussed the balancing of interests in determining whether courts should exercise their discretion and grant a preliminary injunction:

> In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.

*Winter*, 555 U.S. at 24 (quotations and citations omitted). In *Cassell*, 990 F.3d at 545 (quotations and citations omitted), the Seventh Circuit elaborated:

2

> In the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken. We have often referred to this process as a 'sliding scale' approach. The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. Where appropriate, this balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the public interest).

The granting or denial of a preliminary injunction is within the district court's discretion. *Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020) ("District judges have discretion when weighing the considerations relevant to requests for preliminary relief.") *and C.Y. Wholesale, Inc.*, 965 F.3d at 545-46 (holding the balancing of factors for a preliminary injunction are reviewed for abuse of discretion).

## FACTUAL ALLEGATIONS

1. Plaintiffs are Wisconsin residents who receive Social Security Disability Insurance (SSDI) payments but are denied regular unemployment compensation benefits pursuant to Wis. Stat. § 108.04(12)(f) when those disabled persons are able to work. *See* Complaint, ¶¶ 1-10.

2. The Social Security Administration, for purposes of SSDI benefits, "defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 20 C.F.R. § 404.1505(a).

3. The Social Security Administration determines that someone is disabled because of limitations in their ability to do basic work activities, their impairment is on the Social Security Administration's list of impairments, or whether they are unable to perform substantial gainful activity. 42 U.S.C. § 423(d) and 20 CFR §§ 404.1505-1511(defining disability for

3

purposes of SSDI benefits), 20 CFR § Appendix 1 to Subpart P of Part 404 (listing of impairments).

4. Filing for SSDI benefits does not require a statement that the applicant is unable to work, and some SSDI beneficiaries do work (although their work falls below substantial gainful employment).  *See* 20 CFR § 404.1572 (defining substantial gainful activity as "work activity that is both substantial and gainful"), 20 CFR § 404.1573 (how work activity is assessed for determining substantial gainful activity), 20 CFR § 404.1574 (evaluation criteria for prior wage work activity to determine if an applicant is engaged in substantial and gainful activity), 20 CFR § 404.1575 (evaluation criteria for prior self-employment work activity to determine if an applicant is engaged in substantial and gainful activity); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("An SSA representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for purposes of the Social Security Act.'").

5. In the 2019 calendar year in Wisconsin, 156,887 out of the 184,985 SSDI recipients worked and earned wages while also receiving SSDI benefits. *See* Annual Statistical Report on the Social Security Disability Insurance Program, 2019, SSA Publication No. 13-11826 (Oct. 2020) at Table 9, p. 32, available at https://www.ssa.gov/policy/docs/statcomps/di_asr/2019/di_asr19.pdf.

6. SSDI benefits are paid on a monthly basis. 20 CFR § 404.1807 (monthly payment day).

7. Unemployment compensation benefits are paid on a weekly basis.  Wis. Stat. § 108.05(1) (employee paid benefits for each week of unemployment calculated at his or her weekly benefit rate).

8. The Wisconsin Department of Workforce Development (DWD) receives federal funds for the purpose of administering the unemployment compensation benefits program through the federal unemployment tax which employers pay and which the U.S. Department of Labor awards to states based on the states' unemployment claim-filing activity. *See*, e.g., UIPL No. 25-21 (Sept. 2, 2021) (state workforce agency budgetary planning for fiscal year 2022) (available at https://wdr.doleta.gov/directives/attach/UIPL/UIPL_25-21.pdf).

9. Under Wis. Stat. § 108.04(12)(f)3.a., an individual is ineligible for unemployment compensation benefits for each week in the entire month in which a SSDI benefit payment is issued to the individual. See also Forberger Affidavit, Exhibit #4.

10. Under Wis. Stat. § 108.04(12)(f)3.b., in the first month a SSDI payment is issued to an individual, the individual is ineligible for benefits for each week beginning with the week the SSDI payment is issued and for all subsequent weeks in that month.

11. Under Wis. Stat. § 108.04(12)(f)3.c., following a cessation of SSDI benefits to an individual, and upon the individual again being issued a SSDI payment, the individual is ineligible for benefits for each week beginning with the week the SSDI payment is issued to the individual and all subsequent weeks in that month.

12. Under Wis. Stat. § 108.04(2)(h), Wisconsin claimants are obligated to inform the DWD when they first file an initial claim for regular unemployment benefits and for each subsequent weekly certification that they are receiving SSDI benefits.

13. Failure to inform the DWD that they are receiving SSDI benefits typically leads to a charge of unemployment concealment. Forberger Affidavit, Exhibit #5.

14. The Plaintiffs in this lawsuit consist of two classes: (1) those SSDI recipients who were eligible for Wisconsin unemployment compensation benefits after a job loss but either

could not apply for, or did apply and were denied, regular unemployment benefits solely on account of their receipt of SSDI benefits; and (2) those SSDI recipients who applied for Wisconsin unemployment compensation benefits and received them, but were subsequently required to repay those benefits over the past six years, with or without a penalty, solely because they had received SSDI benefits. *See* Complaint, ¶¶ 112-120.

15. SSDI recipients are all denied unemployment compensation benefits solely because of their receipt of SSDI benefits pursuant to Wis. Stat. § 108.04(12)(f). Forberger Affidavit, Exhibit #4.

16. Plaintiffs seek as a remedy, among other things, a permanent injunction of the enforcement of Wis. Stat. § 108.04(12)(f) insofar as the statutes prohibit otherwise eligible applicants for regular unemployment compensation benefits from receiving those benefits solely because they receive SSDI benefits. *See* Complaint, Prayer for Relief.

## ARGUMENT

**I.  Plaintiffs are likely to succeed on the merits.**

The Plaintiffs bring claims of discrimination pursuant to 42 U.S.C. § 1983, the Rehabilitation Act, and the Americans with Disabilities Act (ADA). Plaintiffs' claims and legal arguments are simple: Wis. Stat. § 108.04(12)(f) unlawfully discriminates against otherwise qualified applicants for regular unemployment compensation benefits solely because those applicants have a disability, i.e., the applicants were receiving SSDI benefits.

The purpose of the ADA is to eliminate unwarranted discrimination against individuals with disabilities in order to guarantee those individuals equal opportunity. 42 U.S.C. § 12101(a)(8), (b)(1) (2021). Title II of the ADA prohibits state and local governments from denying qualified individuals with a disability the benefits and programs of the state: "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2021). State law is limited or invalid to the extent it conflicts with the ADA. *See Huston v. Comm'r of Empl. & Econ. Dev.,* 672 N.W.2d 606, 610, 2003 Minn. App. LEXIS 1495 (Minn. Ct. App. 2003); *Weaver v. N.M. Human Serv. Dep't*, 1997 NMSC 39, 945 P.2d 70 (N.M. 1997); *and Lovell v. Chandler*, 303 F.3d 1039, 1052-1055 (9th Cir. 2002); *see also .H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (holding the ADA and Rehabilitation Act are construed and applied consistently).

The relevant provisions and implementing regulations of the ADA and Rehabilitation Act are "materially identical" and "courts construe and apply them in a consistent manner." *A.H.*, 881 F.3d at 592 (7th Cir. 2018). "Section 504 of the Rehabilitation Act provides that no disabled individuals 'shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…'" *Id. quoting* 29 U.S.C. § 794(a). The DWD is subject to the Rehabilitation Act because it receives federal funds for the purpose of administering the unemployment compensation benefits program through the U.S. Department of Labor.

Wis. Stat. § 108.04(12)(f) prohibits applicants who receive SSDI from receiving benefits which they would otherwise be eligible to receive (unemployment compensation). The only criteria used in Wis. Stat. § 108.04(12)(f) for this prohibition is the individual's receipt of SSDI benefits. In fact, the statute makes this abundantly clear: "The intent of the legislature in enacting this paragraph is to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, *regardless of an individual's ability to work.*" Wis. Stat. § 108.04(12)(f)1m (emphasis added). Thus, the ability to work is not a determining factor under Wis. Stat. §

108.04(12)(f). Instead, the <u>sole</u> determinate that makes an applicant ineligible for unemployment compensation under Wis. Stat. § 108.04(12)(f) is the applicant's receipt of SSDI benefits.

To receive SSDI benefits, an individual must be disabled (whether by having a disability that is listed on the Social Security Administration's list of impairments, or a determination that they cannot perform substantial gainful activity). But, a majority of SSDI recipients are able to work and do so. Wis. Stat. § 108.04(12)(f) does not distinguish between why disabled individuals become eligible for SSDI benefits — the loss of substantial gainful activity because of a disability — and the fact that the vast majority of disabled individuals continue to work while disabled.[2]

---

[2] In its original proposal for the SSDI eligibility ban, D12-05, *see* Forberger Affidavit, Exhibit 1, the Department offered the following explanation (footnote omitted, emphasis supplied):

> To understand why such "double-dipping" may constitute fraud, please note the following general requirements for each program:
>
> - To receive unemployment insurance benefit payments, claimants must state that they are able to work.
> - To receive disability insurance benefit payments, claimants must state that they are unable to work.
>
> Under certain circumstances, it is possible that some individuals may be eligible for concurrent cash benefit payments due to differences in DI and UI eligibility requirements. Differences in program rules and definitions allow individuals in certain circumstances to receive overlapping DI and UI benefits without violating eligibility requirements. The Social Security Administration's definition of a disability involves work that does not rise to the level of substantial gainful activity. In contrast, a state's determination of "able and available for work" criteria for UI benefits may include performing work that does not rise to the level of substantial gainful activity. As a result, some individuals may have a disability under federal law but still be able and available for work under state law, thus eligible to receive DI and UI.
>
> Yet, *many of individuals currently receiving both unemployment insurance benefit payments and disability insurance payments do not fall within that narrow category and are therefore committing acts of fraud.* In general, legitimate beneficiaries of these social safety net programs can draw funds from one program, or the other, but not both at the same time.

Instead, it prohibits <u>all</u> SSDI recipients from receiving unemployment compensation benefits, presumably because their disability means they are no longer working.

This presumption that SSDI recipients are no longer working is false. When the Department first proposed its SSDI eligibility ban in 2012 regarding unemployment benefits, it explained that only 50 SSDI recipients would be affected. Victor Forberger, "SSDI and unemployment: recent developments" (June 5, 2015) (available at https://wisconsinui.wordpress.com/2015/06/05/ssdi-and-unemployment-recent-developments/) In reality, 157,689 SSDI recipients (out of 183,169) were working in Wisconsin that year, 86.1% of all SSDI recipients.[3] Literally nearly all SSDI recipients, having become disabled and no longer involved in substantial gainful activity, are still involved in work of some kind and earning wages from that work. To conclude that their work is fraudulent in some way is to presume that disabled people are no longer functional in the workplace. Indeed, based on the size of Wisconsin's labor force in December 2012 of 2,728,900, 1 in roughly every 17 workers in Wisconsin was receiving SSDI benefits. Indeed, by denying unemployment benefits to disabled workers, Wisconsin is discouraging them from searching for new work, and so subverting an essential goal of the SSDI program, 42 U.S.C. § 422 (trial work) and 20 CFR § 404.1599 (work incentives), of returning SSDI recipients to substantial and gainful activity. *Brown v. Porcher,* 502 F.Supp. 946, 956 (D.S.C. 1980) (denial of

---

The legal history of the SSDI eligibility ban in Wisconsin is set forth in Victor Forberger, "The original 2012 SSDI ban reemerges in Evers' 2021 budget proposal" (April 15, 2021) (available https://wisconsinui.wordpress.com/2021/04/15/the-original-2012-ssdi-ban-reemerges-in-evers-2021-budget-proposal/).

[3]  *See* The Annual Statistical Report on the Social Security Disability Insurance Program, 2012, SSA Publication No. 13-11826 (Nov. 2013) at Table 9, p.32, available at https://www.ssa.gov/policy/docs/statcomps/di_asr/2012/di_asr12.pdf.

unemployment benefits to pregnant women denies to them "the partial wage replacement that would have facilitated their job hunting efforts").

So, factually and legally, there is no basis to think that SSDI recipients somehow stop working because of their disability. *Cleveland*, 526 U.S. at 805 (explaining how SSDI recipients are encouraged and allowed to work while receiving SSDI benefits). As Chief Administrative Law Judge Frank Cristaudo explained to other Social Security ALJs assessing claims for SSDI benefits:

> In considering claims of individuals who have applied for unemployment benefits, Administrative Law Judges (ALJs) should be mindful of the principles discussed in Social Security Ruling 00-1c, which incorporates <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795 (1999). In that case, the Supreme Court held, in a unanimous decision, that a claim for Social Security disability benefits is often consistent with a claim for relief under the Americans with Disabilities Act (ADA) even though there must be an ability to work in order to obtain relief under the ADA. The Court noted that, under the presumptions embodied in our five-step sequential evaluation process, a person can qualify for Social Security disability benefits even though he or she remains capable of performing some work. Similar logic applies to applications for unemployment benefits.

*See* Forberger Affidavit, Exhibit 2, Frank Cristaudo, Chief ALJ Social Security Administration, "Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits — REMINDER" (August 9, 2010) at 1. Chief ALJ Cristaudo went on this memorandum to explain that certainly applications and receipt of unemployment benefits are relevant facts for considering an application for SSDI benefits. *Id*. But, unemployment benefits in themselves are not determinative. "The receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled. *See* 20 CFR 404.1512(b) and 416.912(b)." *Id.*

It is clear from the language of Wis. Stat. § 108.04(12)(f) and the intent of the legislature that the statute prohibits unemployment compensation benefits from going to those applicants who also receive SSDI benefits because of one reason: they are disabled. The statute directly discriminates against disabled applicants by denying qualified individuals with a disability the benefits and

programs of the state, namely, unemployment compensation benefits. Such discrimination violates the ADA and Rehabilitation Act. *See generally Huston*, 672 N.W.2d 606 (holding that a Minnesota statute which made "applicant[s] . . . ineligible for unemployment benefits for any week with respect to which the applicant is receiving, has received, or has filed for primary social security disability benefits" "violate[d] section 12132 of Title II of the ADA by denying a qualified individual with a disability the benefits and programs of" Minnesota).

Then DWD Secretary Frostman basically admitted as much when he wrote to Secretary Scalia to ask the Department of Labor to declare SSDI recipients eligible for PUA benefits:

> Finally, I am concerned that the interpretation could be viewed as denying benefits based on disability using SSDI as a proxy or as having a disparate impact on individuals with disabilities because all SSDI recipients—by definition—have disabilities. Discrimination on the basis of disability violates the Department's obligations to comply with title II of the Americans with Disabilities Act (ADA), section 504 of the Rehabilitation Act, and section 188 of WIOA and its implementing regulations found at 29 CFR part 38. The Department ardently protects against such discrimination and such an interpretation would run counter to that policy.

*See* Forberger Affidavit, Exhibit 3, Caleb Frostman, Letter to Sec. Scalia, U.S. Dep't of Labor (June 9, 2020) at 2 (available https://wisconsinui.files.wordpress.com/2020/06/frostman-scalia.2020.06.09.pdf).

**II. Plaintiffs have no adequate remedy at law and will likely suffer irreparable harm if preliminary relief is not granted.**

Plaintiffs have no adequate remedy at law because the law itself is the very act that violates the ADA and Rehabilitation Act. Plaintiffs have been denied benefits, are being denied benefits, and will continue to be denied benefits so long as Wis. Stat. § 108.04(12)(f) is enforced in the

manner currently in effect.[4] The only adequate remedy is precisely what the Plaintiffs now seek: an injunction to prohibit the enforcement of these statutes during the pendency of this case.

Wisconsin's own unemployment law provides the following public policy rationale for why unemployment benefits are an essential public and individual good:

> Unemployment in Wisconsin is recognized as an urgent public problem, gravely affecting the health, morals and welfare of the people of this state. The burdens resulting from irregular employment and reduced annual earnings fall directly on the unemployed worker and his or her family. *The decreased and irregular purchasing power of wage earners in turn vitally affects the livelihood of farmers, merchants and manufacturers, results in a decreased demand for their products, and thus tends partially to paralyze the economic life of the entire state. In good times and in bad times unemployment is a heavy social cost, directly affecting many thousands of wage earners.* Each employing unit in Wisconsin should pay at least a part of this social cost, connected with its own irregular operations, by financing benefits for its own unemployed workers. Each employer's contribution rate should vary in accordance with its own unemployment costs, as shown by experience under this chapter. Whether or not a given employing unit can provide steadier work and wages for its own employees, it can reasonably be required to build up a limited reserve for unemployment, out of which benefits shall be paid to its eligible unemployed workers, as a matter of right, based on their respective wages and lengths of service.

Wis. Stat. § 108.01(1) (emphasis supplied). In numerous court cases during this pandemic over the slow processing of unemployment claims and the slow payment of unemployment benefits, court have nearly universally found that these issues raise grave and fundamental harms to the unemployed. For instance:

> It has long been recognized that protracted denial of subsistence benefits constitutes irreparable harm. See <u>Morel v. Giuliani</u>, 927 F.Supp. 622, 635 (S.D.N.Y. 1995) (finding irreparable harm where New York City regularly failed to provide "aid continuing" benefits, in violation of federal and state law), amended, 94-CV-4415, 1996 WL 627730 (S.D.N.Y. Mar. 15, 1996). To indigent persons, the loss of even a portion of subsistence benefits results in injury that cannot be rectified through

---

[4]  A review and examination of what the unemployment claim-filing process involves factually and legally is not included here, since an excellent summary of the general issues is available in *Pregent v. New Hampshire Dept. of Employment Sec.*, 361 F.Supp. 782 (D.N.H. 1973). This lengthy and thorough decision covers the general legal requirements for an unemployment eligibility determination.

> the payment of benefits at a later date. *See* id. (collecting cases). The reason for this should be obvious. Subsistence benefits by definition are those that provide for the most basic needs. As such, when the outright denial or undue delay in the provision of subsistence benefits is at issue, courts have not hesitated to utilize the extraordinary remedy of preliminary injunctive relief. *See, e.g.*, *Willis v. Lascaris*, 499 F.Supp. 749, 759–60 (N.D.N.Y. 1980) (enjoining reduction in food stamp allowances); *Hurley v. Toia*, 432 F.Supp. 1170, 1176–78 (S.D.N.Y. 1977) (granting preliminary injunction and staying enforcement regulation authorizing termination or reduction of public assistance benefits prior to affording hearing), *aff'd*, 573 F.2d 1291 (2d Cir. 1977); *Boddie v. Wyman*, 323 F.Supp. 1189, 1193 (N.D.N.Y. 1970) ("There is no doubt . . . that the differences sought in payments by the plaintiff are extremely important in respect to these things daily and in that sense when the day passes the injury or harm that may occur is irreparable."), *aff'd*, 434 F.2d 1207 (2d Cir. 1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2168, 29 L. Ed. 2d 157 (1971).
>
> That unemployment insurance benefits fall into the category of subsistence benefits cannot be credibly disputed.

Islam v. Cuomo, 475 F.Supp.3d 144, 153 (E.D. N.Y. 2020).

In *California Dept. of Human Resources Dev. v. Java*, 402 U.S. 121 (1971), the Supreme Court quoted Secretary of Labor Frances Perkins about how and why the quick payment of unemployment benefits is essential.

> I think that the importance of providing purchasing power for these people, even though temporary, is of very great significance in the beginning of a depression. I really believe that putting purchasing power in the form of unemployment-insurance benefits in the hands of the people at the moment when the depression begins and when the first groups begin to be laid off is bound to have a beneficial effect. Not only will you stabilize their purchases, but through stabilization of their purchases you will keep other industries from going downward, and immediately you spread work by that very device.

*Java*, 402 U.S. at 132-3. In short, monetary damages at a later date defeat the essential purpose of why unemployment benefits exist. And, here, the monetary damages in question — the denial of regular unemployment benefits to SSDI recipients — is ongoing, immediate, and in complete disregard of why unemployment benefits exist in the first place.

So, the likelihood of injury is far higher than the "possibility" standard criticized in *Winter*, 555 U.S. at 22. Instead, it will be undisputed that Plaintiffs have been denied and will be denied

13

benefits until these statutes are enjoined. The discriminatory enforcement of these statutes has blocked critical financial aid to Plaintiffs when they are unable to obtain substantial gainful employment. Every week that Plaintiffs are denied unemployment compensation based solely on their disability is another week when bills go unpaid, vehicles are repossessed, evictions occur, food is not on the table, and medical treatment is foregone. Further, Plaintiffs all have disabilities of varying degrees which oftentimes require specialized care which is more expensive. Without some financial compensation for both the Plaintiffs' disability and unemployment, they will continue to be unable to afford proper care for themselves and will suffer irreparable harm.

### III. The balancing test weighs in favor of granting the preliminary relief.

The balancing test weighs the irreparable harm to the moving and non-moving parties of granting or denying the preliminary relief and the consequences of granting or denying the injunction on non-parties. *Cassell*, 990 F.3d at 545. In exercising this Court's discretion, particular attention should be paid to the public consequences of granting the injunction. *Winter*, 555 U.S. at 24.

The irreparable harm to the Plaintiffs is tremendous. As described above, with the blanket denials of unemployment compensation benefits to SSDI recipients pursuant to Wis. Stat. § 108.04(12)(f), the Plaintiffs have been unable to afford basic necessities for themselves and their families. The core rationale for the existence of Wisconsin's unemployment compensation system is undermined by the current standards of enforcement.

The public benefits by granting the injunction because Plaintiffs who received unemployment benefits will spend those benefits on bills, vehicles, rent, groceries, clothes, restaurants, and other local businesses. Unemployment compensation in the hands of Plaintiffs would immediately enter the economy and trigger further economic growth. Even the DWD's website states that

unemployment benefits "provide economic stability to workers and their families during temporary period of unemployment and *help lessen the effect of unemployment on the local economy.*"[5] The overall public benefits by granting the injunction.

 The harm to the Defendant and non-parties is nonexistent. First, the interest of people and institutions that are not parties to the case is considered the "public interest." *Cassell,* 990 F.3d at 545-46. Granting the injunction will not affect non-parties. If anything, non-parties will benefit by granting the injunction given the overall positive impact on the Wisconsin economy and lives of Wisconsinites who have been hereto denied unemployment compensation benefits. Furthermore, ending the eligibility ban for SSDI recipients would remove the current statutory encouragement to discriminate against disabled workers. Because SSDI recipients currently cannot collect unemployment benefits in light of the eligibility ban in Wis. Stat. § 108.04(12)(f), employers of disabled workers are actually "fiscally rewarded" right now when they lay off their disabled workers ahead of their non-disabled brethren. Because SSDI recipients are statutorily prevented from collecting unemployment benefits and so drawing down the unemployment accounts of these employers, Wisconsin employers are singling out disabled workers for layoff because state law is encouraging them to do so.

 Second, the Defendant is the DWD who oversees and implements the unemployment compensation benefits program. The only "harm" they would suffer would be increased administration and oversight of applications for unemployment compensation from applicants who received SSDI benefits. However, even this "harm" would be minimal considering many of the Plaintiffs have already applied for unemployment compensation but were denied pursuant to Wis. Stat. §

---

[5] *See* https://dwd.wisconsin.gov/uitax/financing/#:~:text=The%20Wisconsin%20Unemployment%20Insurance%20program,each%20state's%20unemployment%20insurance%20program (emphasis added).

108.04(12)(f). The only other "harm" would be in the form of additional payments of unemployment compensation benefits. However, this "harm" is actually a benefit to the public and DWD as explained above and on their website: providing unemployment benefits helps lessen the effect of unemployment on the local economy. In other words, the harm would be providing compensation to the plaintiffs to which they should have been entitled in the first place.[6] These regular unemployment benefits to SSDI recipients for when they lose work through no fault of their own is an explicit concern of Wisconsin unemployment law. Not paying unemployment benefits to SSDI recipients because they are disabled and presumed to not be working is both factually wrong and legally in conflict with basic and fundamental concerns of unemployment benefits.

A preliminary injunction benefits the Plaintiffs and the public interest while not affecting the Defendant. The balancing test clearly weighs in favor of granting the injunction prohibiting the enforcement of Wis. Stat. § 108.04(12)(f).

## **CONCLUSION**

The Court may, in its discretion, issue a preliminary injunction pursuant Federal Rule of Civil Procedure 65 upon notice to the adverse party if the Plaintiffs establish they are likely to succeed on the merits, would suffer irreparable harm in the absence of preliminary relief, and when the balance of equities tips in their favor and in the public's interest. Wis. Stat. § 108.04(12)(f) is discriminatory under the ADA and Section 504 of the Rehabilitation Act because it disqualifies otherwise qualified applicants from obtaining unemployment compensation benefits solely because those applicants are disabled. Plaintiff has more than the "some likelihood" of winning on

---

[6] To be clear, the scope of the injunction at this point would be prospective in nature with respect to enforcement.

the merits to support a preliminary injunction. Further, a preliminary injunction would prevent irreparable harm to the Plaintiffs while benefiting the public and not harming the Defendant.

Preliminary relief is warranted and this Court should exercise its discretion to enjoin Defendant and their officers, agents, servants, and employees from enforcing Wis. Stat. § 108.04(12)(f) during the pendency of this lawsuit.

Dated this 7th day of September, 2021.

GINGRAS, THOMSEN & WACHS, LLP

*/s/ Paul A. Kinne*
Paul A. Kinne
SBN: 1021493
Riley C. Leonard
SBN: 1101452
8150 Excelsior Drive
Madison, WI 53717
kinne@gtwlawyers.com
rleonard@gtwlawyers.com

AXLEY BRYNELSON, LLP

*/s/ Heath P. Straka*
Heath P. Straka
SBN: 1031351
2 E Mifflin Street, Ste. 200
Madison, WI 53701
hstraka@axley.com


VICTOR FORBERGER, ESQ.

*/s/ Victor J. Forberger*
Victor J. Forberger
SBN: 1070634
2509 Van Hise Ave
Madison, WI 53705
vforberger@fastmail.fm