IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

      Plaintiffs,

      v.                         Case No. 21-CV-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of
Wisconsin Department of Workforce
Development,

      Defendant.

---

**DEFENDANT AMY PECHACEK'S BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

---

## INTRODUCTION

This Court should deny Plaintiffs' motion to preliminarily enjoin Defendant from enforcing Wis. Stat. § 108.04(12)(f). Plaintiffs have not demonstrated the factors necessary for a preliminary injunction.

First, Plaintiffs filed no evidence about their individual circumstances, such as an affidavit or declaration, to demonstrate irreparable harm. Instead, they rely upon non-binding cases as a way to argue irreparable harm, effectively as a matter of law. These cases cannot substitute the lack of factual

evidence, and in any case, they are easily distinguishable: they do not involve Social Security Disability Insurance (SSDI) recipients attempting to obtain other additional benefits. In short, their evidence and legal argument for a finding of irreparable harm is fundamentally lacking. This Court can deny Plaintiffs' motion on this basis alone.

Second, Plaintiffs are very unlikely to succeed on the merits. The Wisconsin law they challenge does not treat them—who allege they are SSDI recipients—differently *because of* or *on the basis of* their disabilities, as is required to prevail under the Americans with Disabilities Act (ADA) and Rehabilitation Act. Instead, Wis. Stat. § 108.04(12)(f) prohibits SSDI beneficiaries from also receiving unemployment-insurance benefits because they are *already* receiving significant federal cash benefits. The law's intent is "to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work." Wis. Stat. § 108.04(12)(f)1m.

Third, even if Plaintiffs could show irreparable harm or a likelihood of success on the merits, the balance of harms tips in Defendant's favor. There is a significant public interest in seeing that duly enacted laws are enforced, and a State suffers irreparable injury when its laws are even temporarily enjoined. Further, enjoining the challenged law would result in harm—the state's unemployment agency redirecting its resources and expending funds.

2

Plaintiffs have failed to meet their burden that the balance of harms tips in their favor.

This Court should deny the preliminary-injunction motion.

## DEFENDANT'S RESPONSE
## TO PLAINTIFFS' PROPOSED FINDINGS OF FACT

Defendant files separately her responses to Plaintiffs' proposed findings of fact (for the purpose of the preliminary injunction) and incorporates by reference those responses into this brief.

## BACKGROUND

### I.  Legal background

The following overview of Wisconsin unemployment-insurance law, the challenged provision, and federal SSDI benefits will help frame this dispute.

### A.  Overview of Wisconsin unemployment-insurance laws and the challenged laws

Chapter 108 of the Wisconsin Statutes governs unemployment insurance. The Legislature declared that unemployment "is recognized as an urgent public problem, gravely affecting the health, morals and welfare of the people of this state." Wis. Stat. § 108.01(1). Unemployment is "a heavy social cost, directly affecting many thousands of wage earners." *Id*. "Each employing unit in Wisconsin should pay at least a part of this social cost . . . by financing benefits for its own unemployed workers." *Id*. The contribution rate should "vary in accordance with its own unemployment costs," and each employer "can

reasonably be required to build up a limited reserve for unemployment, out of which benefits shall be paid to its eligible unemployed workers, as a matter of right, based on their respective wages and lengths of service." *Id.*

Employees can be "eligible" or "ineligible" for unemployment-insurance benefits. An employee is "'eligible' for benefits for any given week of the employee's unemployment unless the employee is disqualified by a specific provision of" chapter 108 "from receiving benefits for such week of unemployment, and shall be deemed 'ineligible' for any week to which such a disqualification applies." Wis. Stat. § 108.02(11).

Wisconsin Stat. § 108.04(2) addresses "[g]eneral qualifying requirements" for unemployment benefits. "[A] claimant is eligible for benefits as to any given week only if" certain conditions are met. Wis. Stat. § 108.04(2)(a). In particular, a claimant must be "able to work and available for work during that week." Wis. Stat. § 108.04(2)(a)1.

Wisconsin Stat. § 108.04(12) is entitled "Prevention of duplicate payments." The Legislature's intent in enacting Wis. Stat. § 108.04(12)(f)1m. was "to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work." Plaintiffs' preliminary-injunction motion requests that this Court enter an order enjoining Defendant from enforcing Wis. Stat. § 108.04(12)(f) while this case is pending. (Dkt. 2:1; 3:1.)

4

Section 108.04(12)(f) states in full:

(f) 1m. The intent of the legislature in enacting this paragraph is to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work.

2m. In this paragraph, "social security disability insurance payment" means a payment of social security disability insurance benefits under 42 USC ch. 7 subch. II.

3. a. Except as provided in subd. 3. b. to d., an individual is ineligible for benefits under this chapter for each week in the entire month in which a social security disability insurance payment is issued to the individual.

b. In the first month a social security disability insurance payment is first issued to an individual, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.

c. Following a cessation of social security disability insurance payments to an individual and upon the individual again being issued a social security disability insurance payment, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.

d. Following cessation of social security disability insurance payments, an individual may be eligible for benefits under this chapter, if otherwise qualified, beginning with the week following the last Saturday of the month in which the individual is issued his or her final social security disability insurance payment.

4. Information that the department receives or acquires from the federal social security administration regarding the issuance of social security disability insurance payments is considered conclusive, absent clear and convincing evidence that the information was erroneous.

**B.     Overview of Social Security Disability Insurance laws**

The federal SSDI program provides "assistance to people with disabilities." *Disability Benefits*, Social Security Administration, http://ssa.gov/benefits/disability/ (last visited Sept. 30, 2021). The SSDI program pays benefits to beneficiaries and their family members if they are "insured." *Id.* "This means that [the beneficiary] worked long enough and recently enough - and paid Social Security taxes on [his] earnings." *Id.* Every individual who is insured for disability-insurance benefits, has not attained retirement age, has filed an application for disability-insurance benefits, and is under a disability, will be entitled to disability-insurance benefits. *See* 42 U.S.C. § 423(a)(1)(A)–(E).

SSDI benefits are paid monthly. 20 C.F.R. § 404.1807. In 2019, the average monthly payment to a disabled worker receiving SSDI benefits was $1,489.93. *Annual Statistical Supplement, 2020*, Table 5.D1, Social Security Office of Retirement and Disability Policy, https://www.ssa.gov/policy/docs/ statcomps/supplement/2020/5d.html (last visited Sept. 30, 2021).

The definitions of "disability" and "substantial gainful activity" are relevant to determining who is eligible for SSDI benefits.

**1.     "Disability"**

The term "disability," as it pertains to SSDI benefits, means "inability to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505 ("Basic definition of disability."). For purposes of this definition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairments or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Blind people who are older than age 55 and are unable "by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which [they have] previously engaged with some regularity and over a substantial period of time" are also considered "disabled." 42 U.S.C. § 423(d)(1)(B).

### 2. "Substantial gainful activity"

The Social Security Administration's rules state that "[i]f you are able to engage in substantial gainful activity, we will find that you are not disabled." 20 C.F.R. § 404.1571. "Substantial gainful activity" means "work that . . . (a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

7

"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). The "work may be substantial even if it is done on a part-time basis or if [the worker] do[es] less, get[s] paid less, or [has] less responsibility than when [he] worked before." *Id.*

"Gainful work activity is work activity that [one does] for pay or profit." 20 C.F.R. § 404.1572(b). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* "Generally, [the Social Security Administration] do[es] not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572(c).

## II.    Summary of Plaintiffs' complaint

### A.    The parties

The plaintiffs allege that they are disabled Wisconsin residents who are being denied Wisconsin unemployment-insurance benefits because they receive SSDI benefits. (Dkt. 1:2–3 ¶¶ 2–9.) Their individual circumstances vary. Plaintiffs allege that they have been receiving SSDI benefits from for about one year to as long as decades. (*Compare* Dkt. 1:8 ¶ 47, *with* 1:10 ¶ 63.) Their alleged physical and mental disabilities vary, including learning

8

disabilities, cancer, liver problems, depression, arthritis, etc. (*See* Dkt. 1:7, 8, 10–13 ¶¶ 40, 47, 63, 69, 80, 93.) Some Plaintiffs allege that they worked part time, experienced layoffs due to the COVID-19 pandemic, and received Pandemic Unemployment Assistance (PUA) benefits. (*See, e.g.*, Dkt. 1:12–13 ¶¶ 81–86.)

Defendant Amy Pechacek is the Secretary-designee of DWD, and Plaintiffs allege that "she and the Department are responsible for the administration of Wisconsin employment benefits program[s]." (Dkt. 1:3 ¶ 10.)

## B.   Plaintiffs' claims and requested relief

This case is a putative class action that seeks to "invalidate Wisconsin Statute § 108.04(12)(f) and § 108.04(2)(h) facially and as applied." (Dkt. 1:1 ¶ 1; 1:14–16 ¶¶ 99–107.)

The plaintiffs argue that this Court should certify two classes. First, "all SSDI recipients who were eligible for Wisconsin unemployment compensation benefits after a job loss (prior to the pandemic or after the pandemic) or for which PUA benefits were not available (during the pandemic) but either could not apply or did not apply and were denied regular unemployment benefits over the past six years solely on account of their receipt of SSDI benefits. (Dkt. 1:14–15 ¶ 99.a) Second, "all SSDI recipients who applied for Wisconsin unemployment compensation benefits and received them, but were subsequently required to repay those benefits over the past six years, with

or without a penalty, solely because they had received SSDI benefits." (Dkt. 1:14–15 ¶ 99.b.)

The complaint includes two counts. (Dkt. 1:17–18 ¶¶ 108–20.) Count 1 alleges "discrimination" under the Rehabilitation Act and ADA. (Dkt. 1:17 ¶ 109.) Plaintiffs rely only on their Count 1 legal theories in their preliminary-injunction motion. (Dkt. 3:6–11, 16–17.)

In Count 1, Plaintiffs allege that they and the class members "are qualified individuals because of their disabilities" and that "[d]uring the past six years, the defendant has prevented or denied the plaintiffs and class members regular unemployment compensation benefits for which they are eligible because the plaintiffs and class members were receiving SSDI benefits." (Dkt. 1:17 ¶¶ 109–10.) Defendant's denial of unemployment benefits to Plaintiffs and the class members is allegedly "discrimination based on disability in violation of" the Rehabilitation Act and ADA, and "[p]ursuant to 42 U.S.C. § 1983, this prior and ongoing discrimination against SSDI recipients because of their disabilities entitles plaintiffs and class members to past and prospective relief." (Dkt. 1:17 ¶¶ 112–13.)

Count 2 alleges violations of the Fourteenth Amendment's Due Process Clause and the "when due" clause of 42 U.S.C. § 503(a)(1). (Dkt. 1:17–18 ¶¶ 114–20.) Count 2 is not at issue in the preliminary-injunction motion.

For relief, the complaint first asks this Court to certify this case as a class action. (Dkt. 1:18–20.) The plaintiffs also ask for an order permanently enjoining Defendant from enforcing Wis. Stat. §§ 108.04(12)(f) and (2)(h) and for an order that Defendant must allow class members to apply or reapply for unemployment benefits with a back-dated initial claim, weekly certifications, or both, for the past six years, with interest. (Dkt. 1:18–19.) They also ask for an order that class members who were ordered to repay unemployment benefits be repaid any penalties, collection costs, forfeitures, or benefit amount reductions. (Dkt. 1:19.) Lastly, they ask for their costs and attorney fees and any other relief the Court deems just and proper. (Dkt. 1:19.)

## III.  Plaintiffs' evidence in support of their motion for a preliminary injunction

Plaintiffs did not file declarations of their own in support of their preliminary-injunction motion, and the complaint is not verified. (Dkt. 1.) Instead, Plaintiffs filed the Declaration of Victor Forberger and seven exhibits in support of their motion. (Dkt. 4–4-7.)

Exhibit 1 is an October 2012 analysis of proposed amendments to Wisconsin unemployment laws prepared by Scott Sussman of DWD's Bureau of Legal Affairs. (Dkt. 4-1.) Exhibit 2 is an August 9, 2010, memorandum from Social Security Administration Chief Judge Frank A. Cristaudo to federal administrative law judges. (Dkt. 4-2.) Exhibit 3 is a June 9, 2020, letter from

former-DWD Secretary Caleb Frostman to Eugene Scalia, then-Secretary of the United States Department of Labor. (Dkt. 4-3.) Exhibit 4 is an e-mail message from Attorney Andrew Rubsam at DWD to Attorney Forberger regarding non-Plaintiff Monique McCurry. (Dkt. 4-4.) Lastly, Exhibits 5 through 7 relate to Plaintiff Tracy Long's unemployment insurance benefits proceedings. (Dkt. 4-5–4-7.)

Aside from the exhibits regarding Ms. Long, Plaintiffs filed no evidence relating to any plaintiff's individual circumstances.

## PRELIMINARY INJUNCTION LEGAL STANDARD

A preliminary injunction is an extraordinary and drastic remedy and is never awarded as a matter of right. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). It is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). "[T]he moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

"To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "If the

plaintiff fails to meet any of these threshold requirements, the court 'must deny the injunction.'" *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of AM., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)); *see also, e.g.*, *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 19 & n.6 (7th Cir. 1992) (plaintiff's failure to demonstrate irreparable harm "dooms a plaintiff's case and renders moot any further inquiry").

To establish irreparable harm, "there must be more than a mere possibility that the harm will come to pass." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Under the likelihood of success prong, the applicant "must make a strong showing that she is likely to succeed on the merits." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1754, (2021). A "'better than negligible' chance" of success is not enough. *Id.* at 763. The movant must demonstrate how she proposes to prove the key elements of her case. *Id.*

If and only if the plaintiff satisfies each of the threshold requirements, then "the court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine, Inc.*, 8 F.4th at 539. "This balancing test is done on a sliding scale: 'If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor.'"

*Id.* (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). "In balancing the harms, the court also considers the public interest." *Id.*

## ARGUMENT

### I. Plaintiffs have not shown that they will suffer irreparable harm if this Court denies a preliminary injunction.

This Court can deny Plaintiffs' motion on the sole ground that they have not shown that they will suffer irreparable harm without a preliminary injunction. No further inquiry by this Court is required.

### A. The law of irreparable harm

Harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984). Irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

**B.   Plaintiffs' motion is not supported by sufficient evidence of irreparable harm.**

Here, Plaintiffs' motion for preliminary injunctive relief must be denied based on the simple fact that they have failed to supply this Court with any evidence that even one of them will suffer irreparable harm unless a preliminary injunction is entered. This case involves the receipt of unemployment benefits—money—so Plaintiffs can prove irreparable harm only if they prove that they need to receive that money now as opposed to after this case is litigated. However, Plaintiffs filed no affidavits or sworn declarations, and the complaint on file is not verified. Instead, they merely assert that non-receipt of unemployment benefits will result in "another week when bills go unpaid, vehicles are repossessed, evictions occur, food is not on the table, and medical treatment is foregone." (Dkt. 3:14.) This statement in their brief, however, is no substitute for evidence of irreparable harm. *See United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("[A]rguments in a . . . brief, unsupported by documentary evidence, are *not* evidence."); *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence.").

Notably, in a case Plaintiffs cite, the plaintiffs there supplied the court with declarations that "set out in heart-wrenching detail" how they would "be

15

unable to meet their basic needs including, among other things, paying for groceries, housing, car insurance, and phone bills." *Islam v. Cuomo*, 475 F. Supp. 3d 144, 153 (E.D.N.Y. 2020). Plaintiffs here, on the other hand, are silent about any particularized economic harm they have suffered or will suffer. There is no evidence as to the amount of weekly unemployment-insurance benefits Plaintiffs believe they are entitled to nor how much they are currently receiving in SSDI benefits. There is no evidence that Plaintiffs have applied for unemployment-insurance benefits and have been denied. Without this evidence, this Court cannot determine the effect of the non-receipt of unemployment-insurance benefits on any of the plaintiffs' current financial situations. *Lasco v. Northern*, 733 F.2d 477, 481 (7th Cir. 1984) (holding that what constitutes irreparably injury "depends upon the particular facts of that case") (quoting *Oburn v. Shapp*, 521 F.2d 142, 151 (3d. Cir. 1975)).[1]

---

[1] Plaintiffs' motion can also be denied, at the Court's "sole discretion," because their submissions do not "comply substantially" with the court's procedures. *See Procedure to be Followed on Motions for Injunctive Relief*, sec. II.D. This Court has instructed movants to supply proposed findings of fact that are supported by evidence in the form of affidavits, among other things, and has reminded them that pleadings are not evidence, absent stipulation. *Id.* II.A.2.(b) n.2; (Dkt. 8 (text-only order referring to *Procedure*).) This instruction applies even to the "basic facts necessary to a decision on the motion." *Procedure*, sec. II.A.2. n.1. Plaintiffs, nonetheless, cite their complaint in support of some of their proposed findings of fact, and there is no stipulation as to any evidence. (Dkt. 3:3, 6.) None of those proposed findings that rely upon the complaint alone (i.e., numbers 1, 14, and 16), therefore, are properly supported.

Moreover, ignoring for a moment that Plaintiffs' proposed fact number 1—that they receive SSDI benefits—is not supported by evidence, (Dkt. 3:3), this allegation reveals that Plaintiffs have a steady source of income irrespective of their unemployment status.

Plaintiffs' failure to supply this Court with evidence that they will suffer irreparable harm without a preliminary injunction should result in denial of their motion. Plaintiffs' reliance on case law is insufficient.

## C. The legal authority Plaintiffs cite does not establish irreparable harm.

Rather than supply evidence of their individual circumstances, Plaintiffs attempt to fulfill the irreparable harm requirement by citing statutes and case law. This does not establish irreparable harm.

The Wisconsin statute that Plaintiffs cite, Wis. Stat. § 108.01(1), does not support the irreparable-harm requirement. While this statute refers to one burden of irregular employment as "decreased and irregular purchasing power of wage earners," and unemployment being a "heavy social cost, directly affecting many thousands of wage earners," it does not prove that non-receipt of unemployment insurance is irreparable harm. And unemployment insurance is only part of the story. While that is the long-standing policy behind the unemployment compensation law, Plaintiffs provide no evidence

that they, specifically, would be impacted in that way. Thus, Wis. Stat. § 108.01(1) does not help their case.

Further, while Plaintiffs cite many court decisions in support of their irreparable-harm argument, not even one holds that an SSDI recipient who is denied unemployment-insurance benefits suffers irreparable harm. To be sure, even the non-binding state court decision Plaintiffs cite in support of their likelihood-of-success-on-the-merits argument is not included in their irreparable-harm section—because it does not reveal that any preliminary relief was issued (or even sought). (*See* Dkt. 3:7, 11 (citing *Huston v. Comm'r of Emp't. & Econ. Dev.*, 672 N.W.2d 606, 610 (Minn. Ct. App. 2003)).)

The case law Plaintiffs cite is therefore distinguishable from the circumstances here. Plaintiffs cite federal decisions holding that denial of "subsistence benefits" results in irreparable harm, (Dkt. 3:12–13), but in those cases the plaintiffs did not receive SSDI benefits.

In *Islam*, for example, a federal district court issued a preliminary injunction because "protracted denial of subsistence benefits constitutes irreparable harm" and unemployment insurance benefits "fall into the category of subsistence benefits." 475 F. Supp. 3d at 153. The *Islam* plaintiffs, however, did not receive SSDI benefits. *See id.*

In *Morel v. Giuliani*, 927 F. Supp. 622, 627, 635 (S.D.N.Y. 1995), *amended*, 94-CV-4415, 1996 WL 627730 (S.D.N.Y. Mar. 15, 1996), a federal

18

district court found irreparable harm when New York City failed to provide, without a pre-deprivation hearing, "aid continuing" benefits, which consisted of Aid to Families with Dependent Children, Food Stamps, and New York State Home Relief benefits.[2] Not only do those benefits differ from the unemployment-insurance benefits in *Islam* and at issue here, the *Morel* plaintiffs did not receive SSDI benefits, either. *Id.* And the other non-binding court decisions Plaintiffs cite are similarly distinguishable. (Dkt. 3:13.)[3]

In sum, Plaintiffs' cited case law fails to support their assertion that "[w]ithout some financial compensation for both the Plaintiffs' disability and unemployment, they will continue to be unable to afford proper care for themselves and will suffer irreparable harm." (Dkt. 3:14.)

---

[2] "AFDC is a cash assistance program for families with at least one minor child who has been deprived of parental support or care by reason of death, continued absence from the home, unemployment or physical or mental incapacity of a parent." *Morel v. Giuliani*, 927 F. Supp. 622, 627 (S.D.N.Y. 1995), *amended*, 94-CV-4415, 1996 WL 627730 (S.D.N.Y. Mar. 15, 1996) (citing 42 U.S.C. § 601 *et seq.*). "The Food Stamp program provides cash substitutes to the low-income population in order to raise the level of nutrition among low income households, and thereby safeguard the health and well-being of the nation." *Id.* (citing 7 U.S.C. § 2011 *et seq.*). And "[t]he New York State Home Relief program provides cash assistance to the poorest of the State's residents whose needs are not otherwise met by any other assistance program." *Id.* (citing New York State Soc. Serv. Law § 157 *et seq.*).

[3] *Willis v. Lascaris,* 499 F. Supp. 749, 759–60 (N.D.N.Y. 1980), concerned food stamps, *Hurley v. Toia*, 432 F. Supp. 1170, 1176–78 (S.D.N.Y. 1977), concerned New York State Home Relief benefits, and *Boddie v. Wyman*, 323 F. Supp. 1189, 1193 (N.D.N.Y. 1970) *aff'd,* 434 F.2d 1207 (2d Cir. 1970), *aff'd,* 402 U.S. 991 (1971), concerned Aid to Families with Dependent Children and Aid to the Aged, Blind, or Disabled program benefits. And in none of these cases did the plaintiffs receive SSDI benefits.

***

Plaintiffs have wholly failed to prove that it is "likely" that they will suffer irreparable harm without a preliminary injunction entered before trial. *Winter*, 555 U.S. at 22. Plaintiffs' motion can be denied on this basis alone and no further inquiry by this Court is necessary. *Id.*; *Abbott Labs.*, 971 F.2d at 19 & n.6.

## II.    Plaintiffs are not likely to succeed on the merits of their Americans with Disabilities Act and Rehabilitation Act claims because Defendant does not discriminate against them on account of disability.

Plaintiffs argue that they are likely to succeed on the merits because Wis. Stat. § 108.04(12)(f) discriminates solely on the basis of an individual's disability. (Dkt. 3:6.) The theory is that because one must be disabled to receive SSDI benefits, precluding SSDI recipients who work in some capacity from also receiving unemployment benefits violates the ADA and Rehabilitation Act. (Dkt. 3:6.) This argument rests on a deeply flawed premise: that receiving SSDI benefits is the same thing as being disabled for the purposes of the remedial laws. That reading is inconsistent with the relevant statutory text, controlling case law, and common sense.

### A.    Americans with Disabilities Act and Rehabilitation Act legal standards

The term "disability" has a broader meaning under the ADA and Rehabilitation Act than under the SSDI program. As discussed above, a

20

"disability" that qualifies someone for SSDI must be a long-term medical impairment that prevents the individual from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). By contrast, under the ADA and Rehabilitation Act, the term "disability" plainly includes individuals who are able to engage in such work. 42 U.S.C. § 12102(1)(A) (defining "disability" as a "physical or mental impairment that substantially limits one or more major life activities"); 29 U.S.C. § 705(A)(i) (defining "individual with a disability" as an individual who "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment" and can benefit from certain vocational rehabilitation services). And under the ADA, a "qualified individual with a disability" is someone who "with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

For the purposes of the preliminary-injunction motion, the ADA and Rehabilitation Act prohibit discrimination in functionally identical ways. "A claim under either statute has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of [this] disability." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019). As this Court has observed, claims under both statutes "require a showing of 'because of' or 'but for' causation."

*S.W. v. Evers*, No. 14-cv-792-wmc, 2017 WL 4417721, *7 n.4 (W.D. Wis. Oct. 3, 2017) *aff'd, Taylor*, 914 F.3d 467.

**B.    Plaintiffs are not likely to succeed on the merits of their claims.**

Consistent with the applicable legal standard, a state program is not discriminatory solely because some disabled individuals are treated differently. *Taylor*, 914 F.3d at 471. There must be a causal connection between the classification and the different treatment, as the cases show.

In *Taylor*, the Seventh Circuit addressed whether Wisconsin's open enrollment program violated the ADA and Rehabilitation Act. *Id.* at 469–70. Under the program, schools determined how many out-of-district children they could accept based on capacity, making separate determinations for regular-education classrooms and special-education services. *Id.* at 470. The plaintiffs argued that this process "discriminates against disabled students because it imposes criteria that apply only to students with special needs." *Id.* at 471.

The court rejected this argument, explaining that it "rests on mischaracterizations of federal law and the program itself." *Id.* at 471. It explained that while "nonresident districts cannot turn away applicants merely because they are disabled," schools were permitted to consider a student's disability when assessing whether they had the capacity to serve the

child's educational needs. *Id.* at 471–72. Because the denial of an application was based on capacity—and not by reason of any child's disability—it did not violate the ADA and Rehabilitation Act. *Id.* at 472.

Here, the basis for excluding certain individuals from receiving unemployment-insurance benefits is even farther removed from an applicant's disability. It depends solely and exclusively on the receipt of federal government benefits, as Plaintiffs acknowledge. (*See* Dkt. 3:7 ("[T]he sole determinate that makes an applicant ineligible for unemployment compensation under Wis. Stat. § 108.04(12)(f) is the applicant's receipt of SSDI benefits.").) And Wisconsin's SSDI exclusion exists alongside similar prohibitions on receiving unemployment-insurance benefits from a different state or federal agency. *See*, *e.g.*, Wis Stat. § 108.04(12)(c)–(d).

Plaintiffs argue that because Wisconsin's statute does not take into consideration whether an SSDI recipient can work, it presumes SSDI recipients cannot work, and discriminates against these individuals based on their disability. (*See* Dkt. 3:7–10.) But that reasoning runs headlong into the text of the law. As Plaintiffs point out, the exclusion is solely based on the receipt of SSDI benefits—it was intended "to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, *regardless of an individual's ability to work*." (Dkt. 3:7 (quoting Wis. Stat. § 108.04(12)(f)1m.).) In other words, the law does not presume anything about

an SSDI recipient's ability to work; rather, it is a flat ban based on the receipt of unemployment insurance. To the extent that disabled individuals are treated differently, it is the receipt of these federal funds—and not the disability—that is the basis for Defendant's action.

Plaintiffs try to salvage their argument by pointing to the uncontested fact that, as a legal matter, the receipt of SSDI and unemployment insurance are not mutually exclusive. (Dkt. 3:10 (quoting Chief Administrative Law Judge Frank Cristaudo, "'Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits – REMINDER' (August 9, 2010), at 1).)" They also correctly note that the Supreme Court has held that the receipt of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim, because the two laws "do not inherently conflict." (Dkt. 3:4); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). But, at most, that shows that Wisconsin could have made different policy choices with respect to SSDI recipients. It does nothing to suggest that Wisconsin's exclusion discriminates based on an applicant's disability.

Finally, the single out-of-state decision cited by Plaintiffs that has addressed an SSDI exclusion is unpersuasive. *See Huston*, 672 N.W.2d 606. There, the court made the same error that Plaintiffs make here: that precluding unemployment insurance benefits for SSDI recipients applies a "presumption" that the recipients cannot work. *Id.* at 610–11. But again,

Wisconsin's law plainly makes SSDI recipients ineligible for unemployment because they receive long-term disability benefits. An individual with the same disability who does not receive these benefits, of course, would not be excluded from the unemployment-insurance program. For that reason, the disability is not a "because of" or "but for" cause for the exclusion, and Plaintiffs' ADA and Rehabilitation Claims are very likely to fail.

Thus, Plaintiffs have not made a strong showing that they are likely to succeed on the merits of their case and the Court can deny their preliminary-injunction motion on this ground, too.

## III.   The balance of harms favors denying preliminary injunctive relief to Plaintiffs.

This Court weighs the harms to the parties and public only if the moving party has demonstrated a likelihood of success on the merits and that they will suffer irreparable harm if an injunction is not entered. *Girl Scouts of Manitou Council,* 549 F.3d at 1086; *Life Spine, Inc.*, 8 F.4th at 539. This Court need not balance the parties' harms here because Plaintiffs have not shown that they will suffer irreparable harm if no preliminary injunction is entered and, independently, they have failed to show a reasonable likelihood of success on the merits of their complaint. But assuming, *arguendo*, that they have proven both requirements, Plaintiffs' motion could still be denied because the balance

of equities does not tip in their favor. *Illinois Republican Party*, 973 F.3d at 763.

Under the balancing analysis, "[t]he court weighs the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Life Spine, Inc.*, 8 F.4th at 539. "This balancing is done on a sliding scale: 'If the plaintiff is likely to win on the merits, the balance of harms need not weigh as heavily in his favor.'" *Id.* (quoting *Speech First, Inc.*, 968 at 637). "In balancing the harms, the court also considers the public interest." *Id.*

Here, on one side of the scale is the harm to Plaintiffs if an injunction is not entered. Again, assuming for the moment that Plaintiffs will suffer irreparable harm, that harm is the mere generalized fact that they do not receive unemployment-insurance benefits while also receiving SSDI benefits. And this harm is not particularized to Plaintiffs as individuals. For example, there is no evidence that Plaintiff Bemke cannot pay the rent or buy groceries because he does not receive unemployment-insurance benefits in addition to his SSDI benefits.

On the other side of the scale is the harm Defendant faces if a preliminary injunction is entered. Defendant will also face irreparable harm because "the inability to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (citing *Maryland v. King*, 567 U.S. 1301 (2012) ("[A]ny time a State is

26

enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (Roberts, C.J., in chambers)); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Further, when a state entity opposes a motion for a preliminary injunction, "the court must consider that all judicial interference with a public program has the cost of diminishing the scope of democratic governance." *Ill. Bell Tel. Co. v. WorldCom Techs., Inc.,* 157 F.3d 500, 503 (7th Cir. 1998). Here, Defendant will suffer economic harm through the payment of unemployment-insurance benefits during the pendency of this case if Plaintiffs are ultimately unsuccessful in this action. Although the payment of  monetary benefits may not be irreparable, it will put undue demands on the resources of the unemployment insurance agency in terms of staff time and computer programming needed.[4]

Justice Frankfurter once remarked that the balancing of the equities was merely "'lawyers' jargon for choosing between conflicting public interests." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1952) (Frankfurter, J., concurring). Here, one public interest—Plaintiffs'—is the receipt of weekly unemployment-insurance benefits in addition to monthly SSDI benefits while the case proceeds to judgment, and the other public

---

[4]  https://www.wpr.org/modernization-efforts-are-moving-forward-wisconsins-outdated-unemployment-system (last visited Oct. 4, 2021).

interest—Defendant's—is the ability to enforce its unemployment-insurance law *and* not expend public funds (that ultimately may be improper) and resources while the case proceeds. The harm to Defendant's public interest is greater.

Also, to the extent Plaintiffs have a likelihood of success on the merits, it is slim. As a result, the balance of harms must weigh heavily in their favor to obtain an injunction, *see Life Spine*, 8 F.4th at 539, but it does not. Accordingly, this Court can deny Plaintiffs' preliminary-injunction motion under the balancing-of-harms analysis.

## CONCLUSION

This Court should deny Plaintiffs' preliminary-injunction motion.

Dated this 4th day of October 2021.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

COLIN A. HECTOR
Assistant Attorney General
State Bar #1120064

Attorneys for Defendant Amy Pechacek

28

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (Kilpatrick)
(608) 266-8549 (Kawski)
(608) 266-8407 (Hector)
(608) 294-2907 (Fax)
kilpatricksc@doj.state.wi.us
kawskicp@doj.state.wi.us
hectorca@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on October 4, 2021, I electronically filed the foregoing *Defendant Amy Pechacek's Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction* with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 4 day of October 2021.


<u>Steven C. Kilpatrick</u>
STEVEN C. KILPATRICK
Assistant Attorney General