IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

        Plaintiffs,

    v.                            Case No. 21-CV-560

AMY PECHACEK, in her official
capacity as Secretary-designee of the
State of Wisconsin Department of
Workforce Development,

        Defendant.

---

**DEFENDANT'S BRIEF IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

This Court should grant summary judgment to Defendant Amy Pechacek, in her official capacity as Secretary-designee of the State of Wisconsin Department of Workforce Development ("Defendant," "DWD," or the "Department"), because Plaintiffs' claims fail as a matter of law.

First, the statutory provisions that Plaintiffs challenge do not treat them differently *because of* or *on the basis of* their disabilities, as is required to prevail under the Americans with Disabilities Act (ADA) and Rehabilitation

Act. Instead, Wis. Stat. § 108.04(12)(f) prohibits SSDI beneficiaries from also receiving unemployment insurance benefits because they are receiving SSDI benefits, and state law precludes them from receiving both. The law "prevent[s] the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work." Wis. Stat. § 108.04(12)(f)1m. Because there is no discrimination on the basis of disability, the plaintiffs' disability-discrimination claims fail. Additionally, the receipt of SSDI benefits does not necessarily mean that a person is considered disabled under disability-discrimination laws.

Second, Plaintiffs' "When Due Clause" claim under the federal Social Security Act fails because the state laws that Plaintiffs challenge create eligibility requirements, which courts have held may not be challenged in a "When Due Clause" claim.

Third, Plaintiffs' procedural-due-process claim fails because they have not alleged and cannot show that DWD provided insufficient procedural protections regarding the denial of unemployment compensation benefits.

Aside from the merits of Plaintiffs' claims, this motion raises three other issues: (1) Plaintiffs' ADA and Rehabilitation Act claims cannot be brought under section 1983; (2) the Eleventh Amendment bars Plaintiffs' request for an order directing DWD to pay them money; and (3) Plaintiffs are not entitled to a jury trial, to the extent that they have requested one.

## ISSUES PRESENTED

1.     Is Defendant entitled to summary judgment on Plaintiffs' disability-discrimination claims under the ADA and Rehabilitation Act seeking to invalidate Wis. Stat. § 108.04(12)(f) and (2)(h)?

2.     Is Defendant entitled to summary judgment on Plaintiffs' "When Due Clause" claim because the state laws they challenge govern eligibility for unemployment insurance benefits, and "When Due Clause" claims do not reach eligibility-based laws?

3.     Is Defendant entitled to summary judgment on Plaintiffs' procedural due process claim because Plaintiffs do not allege any insufficient procedural protections surrounding the denial of unemployment insurance benefits?

4.     Alternatively, is Defendant entitled to summary judgment on Plaintiffs' ADA and Rehabilitation Act claims to the extent they are brought under 42 U.S.C. § 1983?

5.     Alternatively, does the Eleventh Amendment bar Plaintiffs' request for an order from this Court directing Defendant to pay them money?

6.     Alternatively, are Plaintiffs not entitled to a jury trial because they have waived their demand by not properly or timely raising it and they do not properly seek money damages in any event?

## LEGAL BACKGROUND

The following overview of Wisconsin unemployment insurance law, the challenged provisions, and federal SSDI benefits will help frame this dispute.

## I.     Overview of Wisconsin unemployment insurance laws and the challenged laws

Chapter 108 of the Wisconsin Statutes governs unemployment insurance. The Legislature declared that unemployment "is recognized as an urgent public problem, gravely affecting the health, morals and welfare of the people of this state." Wis. Stat. § 108.01(1). Unemployment is "a heavy social cost, directly affecting many thousands of wage earners." *Id*. "Each employing unit in Wisconsin should pay at least a part of this social cost . . . by financing benefits for its own unemployed workers." *Id*. The contribution rate should "vary in accordance with its own unemployment costs," and each employer "can reasonably be required to build up a limited reserve for unemployment, out of which benefits shall be paid to its eligible unemployed workers, as a matter of right, based on their respective wages and lengths of service." *Id*.

Employees can be "eligible" or "ineligible" for unemployment insurance benefits. An employee is "'eligible' for benefits for any given week of the employee's unemployment unless the employee is disqualified by a specific provision of" chapter 108 "from receiving benefits for such week of

unemployment, and shall be deemed 'ineligible' for any week to which such a disqualification applies." Wis. Stat. § 108.02(11).

Wisconsin Stat. § 108.04(2) addresses "[g]eneral qualifying requirements" for unemployment benefits. "[A] claimant is eligible for benefits as to any given week only if" certain conditions are met. Wis. Stat. § 108.04(2)(a). In particular, a claimant must be "able to work and available for work during that week." Wis. Stat. § 108.04(2)(a)1. Relevant to this case, Wis. Stat. § 108.04(2)(h) states: "A claimant shall, when the claimant first files a claim for benefits under this chapter and during each subsequent week the claimant files for benefits under this chapter, inform the department whether he or she is receiving social security disability insurance payments, as defined in sub. (12)(f)2m."

Wisconsin Stat. § 108.04(12) is entitled "Prevention of duplicate payments." The Legislature enacted Wis. Stat. § 108.04(12)(f), which makes those receiving SSDI benefits ineligible for unemployment benefits, "to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work." Wis. Stat. § 108.04(12)(f)1m. In full, Wis. Stat. § 108.04(12)(f) states:

> (f) 1m. The intent of the legislature in enacting this paragraph is to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work.

5

2m. In this paragraph, "social security disability insurance payment" means a payment of social security disability insurance benefits under 42 USC ch. 7 subch. II.

3. a. Except as provided in subd. 3. b. to d., an individual is ineligible for benefits under this chapter for each week in the entire month in which a social security disability insurance payment is issued to the individual.

b. In the first month a social security disability insurance payment is first issued to an individual, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.

c. Following a cessation of social security disability insurance payments to an individual and upon the individual again being issued a social security disability insurance payment, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.

d. Following cessation of social security disability insurance payments, an individual may be eligible for benefits under this chapter, if otherwise qualified, beginning with the week following the last Saturday of the month in which the individual is issued his or her final social security disability insurance payment.

4. Information that the department receives or acquires from the federal social security administration regarding the issuance of social security disability insurance payments is considered conclusive, absent clear and convincing evidence that the information was erroneous.

## II.   Overview of Social Security Disability Insurance laws

The federal SSDI program provides "assistance to people with disabilities." *Disability Benefits*, Social Security Administration, http://ssa.gov/benefits/disability/ (last visited Aug. 10, 2022). The SSDI program pays benefits to beneficiaries and their family members if they are

"insured." *Id.* "This means that [the beneficiary] worked long enough — and recently enough — and paid Social Security taxes on [his] earnings." *Id.* Every individual who is insured for disability-insurance benefits, has not attained retirement age, has filed an application for disability-insurance benefits, and is under a disability as defined by the Social Security Act, will be entitled to disability-insurance benefits. *See* 42 U.S.C. § 423(a)(1)(A)–(E).

SSDI benefits are paid monthly. 20 C.F.R. § 404.1807. In 2019, the average monthly payment to a disabled worker receiving SSDI benefits was $1,489.93. *Annual Statistical Supplement, 2020*, Table 5.D1, Social Security Office of Retirement and Disability Policy, https://www.ssa.gov/policy/docs/statcomps/supplement/2020/5d.html (last visited Aug. 10, 2022).

The definitions of "disability" and "substantial gainful activity" under the Social Security Act are relevant to determining who is eligible for SSDI benefits.

### A.    "Disability"

The term "disability," as it pertains to SSDI benefits, means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505 ("Basic definition of disability."). For purposes of this definition,

"[a]n individual shall be determined to be under a disability only if his physical or mental impairments or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Blind people who are older than age 55 and are unable "by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which [they have] previously engaged with some regularity and over a substantial period of time" are also considered "disabled." 42 U.S.C. § 423(d)(1)(B).

## B.    "Substantial gainful activity"

The Social Security Administration's rules state that "[i]f you are able to engage in substantial gainful activity, we will find that you are not disabled." 20 C.F.R. § 404.1571. "Substantial gainful activity" means "work that . . . (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). The "work may be substantial even if it is done on a part-time

basis or if [the worker] do[es] less, get[s] paid less, or [has] less responsibility than when [he] worked before." *Id.*

"Gainful work activity is work activity that [one does] for pay or profit." 20 C.F.R. § 404.1572(b). "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* "Generally, [the Social Security Administration] do[es] not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity." 20 C.F.R. § 404.1572(c).

## PLAINTIFFS' CLAIMS

The complaint includes two counts. (Dkt. 1:17–18 ¶¶ 108–20.) Count 1 alleges discrimination under the Rehabilitation Act and ADA. (Dkt. 1:17 ¶ 109.) Plaintiffs allege that they (and putative class members) "are qualified individuals because of their disabilities" and that "[d]uring the past six years, the defendant has prevented or denied the plaintiffs and class members regular unemployment compensation benefits for which they are eligible because the plaintiffs and class members were receiving SSDI benefits." (Dkt. 1:17 ¶¶ 109–10.) Defendant's denial of unemployment benefits to Plaintiffs and the class members is allegedly "discrimination based on disability in violation of" the Rehabilitation Act and ADA, and "[p]ursuant to 42 U.S.C. § 1983, this prior and ongoing discrimination against SSDI recipients

because of their disabilities entitles plaintiffs and class members to past and prospective relief." (Dkt. 1:17 ¶¶ 112–13.)

Count 2 alleges violations of the Fourteenth Amendment's Due Process Clause and the "When Due Clause" of 42 U.S.C. § 503(a)(1), part of the Social Security Act. (Dkt. 1:17–18 ¶¶ 114–20.) Plaintiffs allege that "[d]uring the past six years, the defendant has prevented or denied [them] and class members regular unemployment compensation benefits" and "ordered overpayments of regular unemployment compensation as well as penalties and collection costs against [them] and class members because [they] and class members were receiving SSDI benefits." (Dkt. 1:17–18 ¶¶ 116–17.) These actions allegedly violated Plaintiffs' and putative class members' rights under the "When Due Clause" of the Social Security Act and the Fourteenth Amendment. (Dkt. 1:18 ¶¶ 118–19.) Plaintiffs allege that, under section 1983, "prior and continued denial of payments of regular unemployment benefits and charging of over-payments against SSDI recipients because of their SSDI status" entitles them to "past and prospective relief." (Dkt. 1:18 ¶ 120.)

## FACTUAL BACKGROUND

Pursuant to this Court's standing order regarding summary-judgment procedures, Defendant separately files her proposed findings of fact, which are incorporated in their entirety by this reference and will be cited as "DPFOF ___" in this brief.

## SUMMARY JUDGMENT STANDARD

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The trial court must review the evidence in the light reasonably most favorable to the non-moving parties, giving them the benefit of reasonable inferences from the evidence. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir.  2016). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

### I.    Defendant is entitled to summary judgment on Plaintiffs' disability-discrimination claims.

#### A.    Legal standards for claims under Title II of the ADA and Section 504 of the Rehabilitation Act

Title II of the ADA prohibits discrimination in public services, programs and activities. *Lacy v. Cook Cnty.*, 897 F.3d 847, 852 (7th Cir. 2018). It specifically provides: "No qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act prohibits federally funded organizations from discriminating on the basis of disability. *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006). Thus, the ADA and Rehabilitation Act prohibit discrimination in functionally identical ways. *See Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (the ADA and Rehabilitation Act both prohibit discrimination against qualified persons with disabilities).

"A claim under either statute has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of [this] disability." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019). As this Court has observed, claims under both statutes "require a showing of 'because of' or 'but for' causation." *S.W. v. Evers*, No. 14-cv-792-wmc, 2017 WL 4417721, *7 n.4 (W.D. Wis. Oct. 3, 2017) *aff'd, Taylor*, 914 F.3d 467.

The term "disability" has a broader meaning under the ADA and Rehabilitation Act than under the SSDI program. As discussed above, to be "under a disability" to qualify for SSDI benefits, the disability must be a long-term physical or mental impairment that prevents the individual from

engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). By contrast, under the ADA and Rehabilitation Act, the term "disability" plainly includes individuals who are able to engage in such work. 42 U.S.C. § 12102(1)(A) (defining "disability" as a "physical or mental impairment that substantially limits one or more major life activities"); 29 U.S.C. § 705(A)(i) (defining "individual with a disability" as an individual who "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment" and can benefit from certain vocational rehabilitation services). And under the ADA, a "qualified individual with a disability" is someone who "with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

## B. Defendant does not discriminate because of disability through the enforcement of Wis. Stat. § 108.04(12)(f) and (2)(h).

Plaintiffs allege that the Department's enforcement of Wis. Stat. § 108.04(12)(f) and (2)(h) results in disability discrimination, but their claims fail for various reasons. To start, this Court has already "cast[] doubt on the merits of plaintiffs' claim" in denying their preliminary-injunction motion. (Dkt. 32 (text-only order); 17:4 ("The fact that the statute denies unemployment benefits to recipients of SSDI benefits does not mean

13

necessarily that the benefits are denied *because* of the disability; rather, it is equally, if not more, likely that the benefits are denied because recipients of SSDI benefits already receive a form of federal benefits as a safety net of sorts.").)

### 1. The statutory basis for excluding Plaintiffs from unemployment benefits is not their disabilities.

First, consistent with the applicable legal standard for ADA and Rehabilitation Act claims, a state program is not discriminatory solely because some disabled individuals are treated differently. *Taylor*, 914 F.3d at 471. Again, federal law prohibits state action "because of" and "based on" a person's disability. There must be a causal connection between the classification and the different treatment, as the cases show.

In *Taylor*, the Seventh Circuit addressed whether Wisconsin's public-school open-enrollment program violated the ADA and Rehabilitation Act. *Id.* at 469–70. Under the program, schools determined how many out-of-district children they could accept based on capacity, making separate determinations for regular-education classrooms and special-education services. *Id.* at 470. The plaintiffs argued that this process "discriminates against disabled students because it imposes criteria that apply only to students with special needs." *Id.* at 471.

The court rejected this argument, explaining that it "rests on mischaracterizations of federal law and the program itself." *Id.* at 471. It explained that while "nonresident districts cannot turn away applicants merely because they are disabled," schools were permitted to consider a student's disability when assessing whether they had the capacity to serve the child's educational needs. *Id.* at 471–72. Because the denial of an application was based on capacity—and not by reason of any child's disability—it did not violate the ADA and Rehabilitation Act. *Id.* at 472.

Here, the basis for excluding Plaintiffs from receiving unemployment insurance benefits is even farther removed from their alleged disability. It depends solely and exclusively on the receipt of federal government benefits, as Plaintiffs have acknowledged in this litigation. (*See* Dkt. 3:7 ("[T]he sole determinate that makes an applicant ineligible for unemployment compensation under Wis. Stat. § 108.04(12)(f) is the applicant's receipt of SSDI benefits.").) And Wisconsin's SSDI exclusion exists alongside similar exclusions for those receiving unemployment insurance benefits from a different state or a federal agency. *See, e.g.*, Wis Stat. § 108.04(12)(c)–(d).

Plaintiffs have argued that because Wisconsin's statute does not take into consideration whether an SSDI recipient can work, it presumes SSDI recipients cannot work, and discriminates against these individuals based on their disability. (*See* Dkt. 3:7–10.) But that reasoning runs headlong into the

15

text of the law. As Plaintiffs have pointed out, the exclusion is based solely on the receipt of SSDI benefits. The Legislature clarified that the law was intended "to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, *regardless of an individual's ability to work*." Wis. Stat. § 108.04(12)(f)1m. In other words, the statute does not presume *anything* about an SSDI recipient's ability to work; rather, it is a flat ban based on the receipt of another source of income. To the extent that Plaintiffs and disabled individuals are treated differently, it is the receipt of these federal funds—and not the disability—that is the basis for Defendant's action.

Plaintiffs have pointed out the uncontested fact that, as a legal matter, the receipt of SSDI and unemployment insurance are not mutually exclusive. (*See* Dkt. 3:10 (quoting Chief Administrative Law Judge Frank Cristaudo, "'Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits – REMINDER' (August 9, 2010), at 1).)" They have also argued that the U.S. Supreme Court has held that the receipt of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim, because the two laws "do not inherently conflict." (Dkt. 3:4); *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 802 (1999). But, at most, that shows the Legislature could have made different policy choices with respect to SSDI

recipients. It does nothing to suggest that the exclusion discriminates based on an applicant's disability.

The lone out-of-state decision Plaintiffs cited earlier in this litigation that addressed an SSDI exclusion is unpersuasive. *See Huston v. Comm'r of Emp. & Econ. Dev.*, 672 N.W.2d 606 (Minn. Ct. App. 2003); (Dkt. 3:10.) There, a Minnesota state court made the same error that Plaintiffs make here: that precluding unemployment insurance benefits for SSDI recipients applies a "presumption" that the recipients cannot work. *Huston*, 672 N.W.2d at 610–11. But, again, Wisconsin's law makes SSDI recipients ineligible for unemployment insurance because they receive a particular source of income from the federal government. An individual with a disability who does not receive these federal cash benefits, of course, would not be excluded from Wisconsin's unemployment insurance program (if they were otherwise eligible). For that reason, the disability is not a "because of" or "but for" cause for the exclusion, and Plaintiffs' ADA and Rehabilitation Act claims fail.

### 2. The receipt of SSDI benefits does not necessarily mean that a person is considered disabled under disability-discrimination laws.

Under the ADA, a person is disabled if she has 1) a mental or physical impairment that substantially limits a major life activity, 2) a record of such an impairment, or 3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Here, the fact that Plaintiffs receive SSDI benefits does not mean

that they are disabled under the ADA or the Rehabilitation Act as a matter of law.

Despite Plaintiffs' position, as a matter of *law*, "[the Seventh] Circuit declines to regard an SSA disability determination to be conclusive evidence as to whether one is entitled to protection under the ADA." *Weigel v. Target Stores*, 122 F.3d 461, 467 (7th Cir. 1997). "Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523–24 (7th Cir. 1996). The court explained decades ago that "unlike the ADA's 'qualified individual' inquiry, which necessarily involves an individualized assessment of the individual and the relevant position, the SSA's inquiry into whether one is 'totally disabled' is a generalized one." *Weigel,* 122 F.3d at 467. As a result, the fact that Plaintiffs receive SSDI benefits does not mean that they are disabled under the ADA or the Rehabilitation Act as a matter of law.

For all of the above reasons, this Court should grant summary judgment to Defendant on Plaintiffs' disability-discrimination claims.

## II.   Defendant is entitled to summary judgment on Plaintiffs' statutory "When Due Clause" claim

Plaintiffs also bring a "When Due Clause" claim under the Social Security Act, but this claim is dead on arrival. The law is clear that if the laws the plaintiff challenges concern eligibility for unemployment insurance benefits rather than the administration (i.e., timing) of benefits, a plaintiff's claim is beyond the reach of the "When Due Clause." That is the case here: Plaintiffs complain about state laws that render them ineligible for unemployment insurance benefits. Their claim has nothing to do with the timing of the receipt of benefits and everything to do with eligibility. This Court should grant summary judgment to Defendant on this claim.

### A.   The Social Security Act's "When Due Clause."

"Under the SSA, federal funds are made available to states in order to encourage them to enact unemployment insurance laws." *Zambrano v. Reinert*, 291 F.3d 964, 968 (7th Cir. 2002) (citing 42 U.S.C. §§ 501–04). "However, before the federal government will provide funds to a state to administer its unemployment insurance laws, the Secretary of Labor must certify that the recipient state's unemployment program meets certain statutory requirements." *Id.* (citing 42 U.S.C. §§ 502–03).  "The When Due Clause states that one of those requirements is that the state's program must provide for 'such methods of administration . . . as are found by the Secretary of Labor to

be reasonably calculated to insure full payment of unemployment compensation when due.'" *Id.* (citation omitted).

The Seventh Circuit has explained that "[t]the basic thrust of the When Due Clause is timeliness—the state should determine who is eligible to receive unemployment compensation and make payments to such individuals at the earliest stage that is administratively feasible." *Id.* (citing *Cal. Hum. Res. Dep't v. Java*, 402 U.S. 121, 131 (1971)).

## B.     Defendant does not violate 42 U.S.C. § 503(a)(1) when denying unemployment insurance benefits to Plaintiffs because they received SSDI benefits.

Plaintiffs claim that Defendant violates the "When Due Clause" of 42 U.S.C. § 503(a)(1) when denying them unemployment insurance benefits based upon their receipt of SSDI benefits. In other words, Plaintiffs argue that because they are being denied eligibility for benefits, Defendant is not timely paying them these benefits "when due." This claim lacks merit.

The Seventh Circuit's decision in *Zambrano* is instructive, if not controlling. In *Zambrano*, the plaintiff made an almost identical argument as Plaintiffs do here, and the Seventh Circuit rejected it. Under Wisconsin's unemployment compensation law, "for a seasonal fruit or vegetable processing worker to meet the definition of 'employment,'" making him "eligible to receive unemployment compensation benefits, he must have (1) been employed with the processor outside of the 'active processing season'; (2) been separately

eligible under Wis. Stat. § 108.04(4)(a); or (3) earned over $200 in another job during the time period outlined in the statute." *Zambrano*, 291 F.3d at 967 (citing Wis. Stat. § 108.02(15)(k)(14)). The plaintiff was denied unemployment -compensation benefits in accordance with Wis. Stat. § 108.02(15)(k)(14), colloquially known as the "Cannery Rule." The plaintiff then filed suit, claiming that the Cannery Rule conflicted with the "When Due Clause" of the Social Security Act, among other federal laws. *Id.* at 966, 968. This Court upheld the validity of the Cannery Rule. *Id.* at 966.

The Seventh Circuit affirmed this Court's decision. *Id.* It explained that "[t]he first step in deciding whether a state statute violates the When Due Clause is to determine whether the state provision is an administrative provision or an eligibility requirement." *Id.* at 968. "An administrative provision governs *when* eligibility is determined or when unemployment benefits are paid, while an eligibility requirement governs *who* is eligible to receive unemployment compensation benefits." *Id.* "Drawing this distinction is important because eligibility requirements do not fall under the purview of the When Due Clause, whereas administrative provisions do." *Id.* The court held that because the Wisconsin statute at issue "determines *who* is eligible to receive benefits, as opposed to *when* the eligibility determination is made or when an eligible person receives benefits, the Cannery Rule is an eligibility requirement that is 'beyond the reach of the "when due" clause.'" *Id.* (citation

omitted). The court reasoned that the state statute did not result in requiring the plaintiff to delay in filing his unemployment compensation claim, but instead only determined whether the plaintiff was eligible to receive unemployment compensation benefits. *Id.* at 969. Thus, the court concluded that "in the absence of the Cannery Rule's delay of either the determination or the payment of unemployment compensation benefits . . . it does not violate the When Due Clause." *Id.* at 970.

Here, the Wisconsin statutes Plaintiffs challenge also do not delay the determination or payment of unemployment insurance benefits. Rather, they decide claimants' *eligibility* for benefits, which is beyond the reach of a "When Due Clause" claim. *Id.* Indeed, Plaintiffs' applications were denied specifically because of their receipt of SSDI benefits. (DPFOF ¶¶ 11, 18, 24, 30, 33, 37, 42, 46, 51.) Their payments were not delayed because they were ineligible for payments in the first instance. Because the state laws Plaintiff challenge relate to *eligibility* for benefits, not the administration of benefits, Plaintiffs state no "When Due Clause" claim, and this Court should enter summary judgment in DWD's favor.

## III. Defendant is entitled to summary judgment on Plaintiffs' procedural-due-process claim.

In addition to their statutory "When Due Clause" claim, embedded within Count 2 of the complaint is a constitutional procedural-due-process

claim. (Dkt. 1:18 ¶¶ 118–19.) This claim fares no better. Because Plaintiffs do not even plead sufficient allegations of a due-process violation, this Court should grant summary judgment to Defendant.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects individuals' interests from improper state action. It reads: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   Procedural   due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"To state a procedural due-process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Regarding the government benefits at issue here, "[b]ecause it is well-settled that claimants' receipt of unemployment insurance benefits is a property right, a state may not terminate these benefits without notice and an opportunity for a fair hearing." *Cosby v. Ward*, 843 F.2d 967, 982 (7th Cir. 1988).

It is not clear what exactly Plaintiffs mean by claiming that "[d]enial of the property right violates" due process, (Dkt. 1:18 ¶119), but Defendant assumes they claim that the denial of unemployment insurance benefits (and charging for overpayments, penalties, and collection costs) is itself a violation of the Due Process Clause (Dkt. 1:18 ¶ 118). Their procedural-due-process claim lacks merit because Plaintiffs do not challenge any "insufficient procedural protections surrounding" the deprivation of unemployment insurance benefits. *Michalowicz*, 528 F.3d at 534. Nowhere in their complaint do they challenge the procedures associated with a denial of unemployment insurance benefits. (Dkt. 1.) Indeed, they do not complain that they did not receive notice about any denial of unemployment insurance benefits or that they were not being given an opportunity for a hearing to contest the denial of benefits. And, in fact, many of the plaintiffs participated in administrative appeal hearings after the denial or termination of their benefits providing that due process. (DPFOF ¶¶ 22, 28, 35–36, 45, 50.) Of course, even those Plaintiffs who did not seek administrative review had the opportunity to do so, which meets due process. Plaintiffs only contend that they are not being granted (i.e., "prevented or denied") unemployment insurance benefits in the first instance. (Dkt. 1:17–18 ¶¶ 115–20.) That alone does not state a procedural-due-process claim. *Michalowicz*, 528 F.3d at 534.

24

This Court should enter summary judgment in favor of Defendant on Plaintiffs' procedural-due-process claim.

## IV. Alternatively, Defendant is entitled to summary judgment on Plaintiffs' ADA and Rehabilitation Act claims to the extent they are brought under 42 U.S.C. § 1983.

Although this Court can dismiss Plaintiffs' ADA and Rehabilitation Act claims on their merits, the claims also fail to the extent that Plaintiffs bring them under 42 U.S.C. § 1983. The aforementioned federal acts provide a comprehensive remedial scheme for Plaintiffs to bring their claims; therefore, Plaintiffs cannot bypass those schemes and bring claims under section 1983.

Section 1983 may be used as a "[m]echanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quoting 42 U.S.C. § 1983). "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga,* 536 U.S. at 284. However, that does not end the inquiry. "[T]he state may rebut this presumption by showing that Congress 'specifically foreclosed a remedy under § 1983.'" *Id.* at 284 n.4 (citation omitted). "The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did *not* intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) (emphasis added). "The Supreme Court . . . has repeatedly

held that § 1983 cannot be used to circumvent a congressionally created remedial scheme within another statute." *Tate v. Dart*, No. 17 C 8888, 2019 WL 1200740, at \*3 (N.D. Ill. Mar. 14, 2019) (citing *Rancho Palos Verdes*, 544 U.S. at 121–23).

Here, Plaintiffs allege violations of Title II of the ADA and the Rehabilitation Act. (Dkt. 1:1, 15–17 ¶¶ 1, 100(e),101(c), 112.) But they purport to bring the claims, at least in part, "[p]ursuant to 42 U.S.C. § 1983." (*See* Dkt. 1:17 ¶ 113; *but see* Dkt. 1:1 ¶ 1 (describing the action "brought under" the ADA and Rehabilitation Act).) This Court should reject Plaintiffs' attempt to use section 1983 as the vehicle for their disability-discrimination claims.

A recent district-court decision is instructive. In *Estate of Wobschall by Wobschall v. Ross*, 488 F. Supp. 3d 737, 752 (E.D. Wis. 2020), the plaintiff brought claims for violations of the ADA and Rehabilitation Act via section 1983. The court noted that "[e]very circuit to consider the issue has held that a plaintiff may not bring a § 1983 lawsuit predicated on a violation of the ADA or the Rehabilitation Act." *Id.* (citing cases). And, notably, the court explained that *Tri-Corp Housing, Inc., v. Bauman*, 826 F.3d 446 (7th Cir. 2016), "instructs that neither the ADA nor the Rehabilitation Act are written in such a way as to give rise to a private cause of action under Section 1983." *Wobschall*, 488 F. Supp. 3d at 754; *see also Tate*, 2019 WL 1200740, at \*3 (reading *Bauman* to hold that "§ 1983 cannot be used to bring an action under

26

a statute that includes a comprehensive remedial scheme and (2) the ADA includes a comprehensive remedial scheme for claims of discrimination"). Thus, the court held that "the Section 1983 claims against [defendant], which are predicated on violations of the ADA and the Rehabilitation Act, must be rejected." *Wobschall*, 488 F. Supp. 3d at 754.

The outcome here should be no different. Because Plaintiffs already bring their disability-discrimination claims under the ADA and the Rehabilitation Act, and there is no authority permitting them to bring such claims via section 1983, this Court should reject their attempt to use section 1983 to seek relief for their disability-discrimination claims.

Thus, to the extent Plaintiffs' disability-discrimination claims are not dismissed on their merits, this Court should limit such claims as brought pursuant to the ADA and Rehabilitation Act only.

## V.    Alternatively, the Eleventh Amendment bars Plaintiffs' request for an order directing Defendant to grant them retroactive unemployment insurance benefits.

In their prayer for relief, Plaintiffs seek an order for payment and repayment of unemployment insurance benefits. (Dkt. 1:18–19 ¶¶ c.–f.) Because the Eleventh Amendment bars this type of retroactive monetary relief against a State, this Court should deny Plaintiffs' requests.

"[T]he Eleventh Amendment guarantees that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by

27

citizens of another State.'" *Bd. of Regents v. Phoenix Int'l Software, Inc.,* 653 F.3d 448, 457 (7th Cir. 2011) (quoting *Edelman v. Jordan,* 415 U.S. 651, 663 (1974)). "If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.,* 603 F.3d 365, 370 (7th Cir. 2010) (citing *Edelman,* 415 U.S. at 663). However, the *Ex parte Young* doctrine "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.,* 222 F.3d 323, 337 (7th Cir. 2000) (citations omitted). Courts "need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Ind. Prot. & Advoc. Servs.,* 603 F.3d at 371 (alteration in original) (citation omitted).

The Supreme Court has long held that "[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury of State of Ind.,* 323 U.S. 459, 464 (1945). While "prospective relief of an ongoing federal violation will often require state officials to dip into a state's treasury to comply with a court's order," *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d

875, 882–83 (7th Cir. 2012), "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman*, 415 U.S. at 668. "Nevertheless, where a plaintiff's request for relief 'would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought,' it is barred by the Eleventh Amendment." *Council 31*, 680 F.3d at 883 (citation omitted).

Here, while Plaintiffs allege ongoing violations of federal disability-discrimination laws, the Social Security Act, and the Constitution, the relief they seek is not all prospective and is therefore, in part, barred by the Eleventh Amendment.

Although they seek a permanent injunction preventing Defendant from enforcing state law, Plaintiffs also want this Court to "order payment of the regular unemployment benefits due those class members with interest," and "order reimbursement of any repaid benefits and related penalties and collection costs, with interest." (Dkt. 1:18–19 ¶¶ e.–f.)

Plaintiffs couch their prayer for monetary relief in terms of orders by this Court, but "merely labeling relief sought as injunctive does not defeat the eleventh amendment bar to suits that seek relief from the state treasury." *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 295 (7th Cir. 1993). Their request for past unemployment insurance benefits and other money cannot reasonably be considered ancillary but rather is the essence of the relief sought. *Id.* at 293.

Thus, though Plaintiffs do not expressly seek money damages, the injunctive relief they desire clearly would result in an order from this Court requiring DWD to pay them money. And the Seventh Circuit's approach to the Eleventh Amendment immunity defense in unemployment insurances cases "disregards the source of state funds." *Paschal v. Jackson*, 936 F.2d 940, 944 (7th Cir. 1991). Instead, all that "matters is that the judgment runs against the state." *Id.* (citation omitted).

The Seventh Circuit stated it succinctly in *Paschal*, in which Illinois unemployment insurance claimants sued a state official: "The claimants are seeking vindication of their federal rights through a retroactive damage award against the State. As we see it, this interest is insufficient to override the command of the eleventh amendment." *Id.* at 945. The law is clear—Plaintiffs' request for retroactive unemployment insurance payments is barred.

## VI. Alternatively, Plaintiffs are not entitled to a jury trial in the event this Court denies summary judgment.

Lastly, Plaintiffs are not entitled to a jury trial, to the extent that they are requesting one. Defendant assumes that Plaintiffs expect a jury trial because they asked for one in their Civil Cover Sheet. (Dkt. 1-2:1.) In addition, this Court's preliminary pre-trial conference order contains references to deadlines for "proposed voir dire questions, [and] proposed jury instructions,"

and that "[t]rial shall be to a jury of eight." (Dkt. 22:5.) However, the law does not entitle Plaintiffs to a jury trial for two reasons.

First, Plaintiffs have not properly demanded a jury trial. The Federal Rules of Civil Procedure require that a party include a demand for a jury trial promptly. Rule 38 requires that a party serve and file a written demand for a jury trial within 14 days of the last pleading (or in the pleading itself). *See* Fed. R. Civ. P. 38(b)(1). The party must also file the demand in accordance with Rule 5(d). And, importantly, "[a] party waives a jury trial unless its demand is properly served and filed." Fed. R. Civ. P. 38(d). Here, Plaintiffs have not filed any written demand for a jury trial. Their complaint is devoid of any jury-trial demand. (Dkt. 1.) And they did not file any stand-alone jury demand within 14 days of the date of their complaint—September 7, 2021. (*Id.*) Again, while this lack of demand may be purposeful, it is not consistent with other filings.

Second, Plaintiffs have no statutory or constitutional right to a jury trial. "There is no right to a jury where the only remedies sought (or available) are equitable." *Kramer v. Banc of Am. Secs., LLC*, 355 F.3d 961, 966 (7th Cir. 2004). Here, as noted above, Plaintiffs seek only equitable relief—declarations and injunctions. (Dkt. 1:18–19 ¶¶ b.–c., e.–f.) While, admittedly, they seek court orders that would require the payment of state funds, as argued above, the Eleventh Amendment bars that relief. Aside from their improper requests for monetary relief, Plaintiffs do not seek compensatory or punitive damages;

they seek only equitable relief. *See Kozlowski v. Van Rybroek*, No. 16-CV-478-WMC, 2018 WL 5983388, at \*9 (W.D. Wis. Nov. 14, 2018) ("Since Kozlowski is not entitled to money damages, he has no right to a jury trial."), *aff'd*, 771 F. App'x 662 (7th Cir. 2019). Thus, under the specific circumstances of this case, Plaintiffs have no right to a jury trial.

## CONCLUSION

This Court should grant Defendant's summary-judgment motion and dismiss this action against her.

Dated this 11th day of August 2022.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendant Amy Pechacek

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (Kilpatrick)
(608) 266-8549 (Kawski)
(608) 294-2907 (Fax)
kilpatricksc@doj.state.wi.us
kawskicp@doj.state.wi.us

## CERTIFICATE OF SERVICE

I certify that on August 11, 2022, I electronically filed the foregoing brief with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 11th day of August 2022.

Electronically signed by:

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General