**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

               Plaintiffs,

v.                                                          Case No. 21-cv-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

               Defendant.

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT**

NOW COME the plaintiffs, by and through their undersigned counsel, and respectfully move the Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a) on Plaintiffs' first claim of discrimination in violation of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act against Defendant Amy Pechacek, stating as follows:

## INTRODUCTION

The present motion for partial summary judgment is brought on behalf of only the plaintiffs in this lawsuit since the class has not been certified as of this motion. The issue before the Court is very simple: Does Wis. Stat. § 108.04(12)(f)—which creates a blanket prohibition on anyone who receives Social Security Disability Income (SSDI) benefits from also receiving state unemployment compensation insurance (UC) benefits—disparately treat or impact disabled Wisconsinites in violation of Title II of the ADA and Section 504 of the Rehabilitation Act? The

1

undisputed answer is yes. All parties agree that Wis. Stat. § 108.04(12)(f) <u>only impacts disabled</u> <u>Wisconsinites</u>. It does not impact a single non-disabled UC applicant. As such, Plaintiffs respectfully request this Court grant their motion for partial summary judgment and allow them to apply for UC benefits. Relatedly, Plaintiffs further request that this matter continue through the class action procedures set forth in federal statutes.

## FACTUAL BACKGROUND

I. **The plaintiffs' history with SSDI and UC benefits.**

The plaintiffs, Brian Bemke, Scott Collett, John Feriozzi, Judy Fintz, Sarah Jamieson, Evan Johnson, Tracy Long, and Clifford Neumann, were all found to be disabled by the Social Security Administration (SSA). *See* Plaintiffs' Proposed Findings of Fact in Support of their Motion for Partial Summary Judgment (hereinafter "PPFOF"), filed contemporaneously herewith, ¶¶ 1, 5, 14, 20, 28, 33, 40, and 44.  The plaintiffs were thus entitled to and received SSDI benefits from the SSA. *Id.* While receiving SSDI benefits, the plaintiffs also were able to complete some work. *Id.* ¶¶ 2, 6, 15, 21, 29, 34, 41, and 45. The plaintiffs then lost their employment and applied for UC benefits through the Wisconsin Department of Workforce Development (DWD). *Id.* ¶¶ 3, 6-8, 16-17, 22, 30, 35-36, 39, and 46-47. However, the plaintiffs' were denied the receipt of UC benefits and/or the opportunity to determine what amount of UC benefits for which they would otherwise qualify but for their receipt of SSDI benefits. *Id.* ¶¶ 3-4, 12-13, 18-19, 24-27, 31-32, 36-37, 42-43, and 47-48. The denials were based on the SSDI exclusion in Wis. Stat. § 108.04(12)(f). *Id.*

II. **The Social Security Administration's five-step procedure for determining SSDI benefits allows SSDI benefits to be paid to individuals who are capable of some work, or work with reasonable accommodations.**

2

The SSA defines a disabled person as someone who (A) cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or (B) in the case of an individual who has attained the age of 55 and is blind . . ., [and cannot] by reason of such blindness . . . engage in substantial gainful activity in which he has previously engaged with some regularity and over a substantial period of time." 42 U.S.C. § 423(d)(1). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "Substantial gainful activity is work activity that is both substantial and gainful." 20 CFR § 416.972. Substantial work requires "doing significant physical or mental activities." *Id.* at § 416.972(a). Gainful work is work which is done for pay or profit. *Id.* at § 416.972(b).

The Court in *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) analyzed whether an individual who received SSDI benefits could also have a workplace discrimination claim pursuant to the ADA. The court held that such a claim exists because receipt of SSDI benefits does not necessarily mean an individual cannot work. *Id.* at 802-03. As part of its analysis, the Court described the five-step process used by the SSA to determine whether an individual qualifies for SSDI benefits. *See id.* at 802-805. The five-step process "embodies a set of presumptions about disabilities, job availability, and their interrelation." *Id.* at 804. The steps are:

> Step One: Are you presently working? (If so, you are ineligible.) See 20 CFR § 404.1520(b) (1998).
>
> Step Two: Do you have a "severe impairment," i.e., one that "significantly limits" your ability to do basic work activities? (If not, you are ineligible.) See § 404.1520(c).

Step Three: Does your impairment "meet or equal" an impairment on a specific (and fairly lengthy) SSA list? (If so, you are eligible without more.) See §§ 404.1520(d), 404.1525, 404.1526.

Step Four: If your impairment does not meet or equal a listed impairment, can you perform your "past relevant work?" (If so, you are ineligible.) See § 404.1520(e).

Step Five: If your impairment does not meet or equal a listed impairment and you cannot perform your "past relevant work," then can you perform other jobs that exist in significant numbers in the national economy? (If not, you are eligible.) See §§ 404.1520(f), 404.1560(c).

*Id.* However, to administer a large benefits system efficiently, the presumptions embodied in the SSA's five-step process inevitably simplify the process. *Id.* Of note, the SSA does <u>not</u> take the possibility of reasonable work accommodations into account when determining whether an individual is disabled for SSDI purposes. *Id.* at 803.

Individuals can still qualify for SSDI who, "due to special individual circumstances," remain capable of performing the essential functions of their job. *Id.* at 804. In fact, people who are working regularly receive SSDI benefits:

For example, to facilitate a disabled person's reentry into the workforce, the SSA authorizes a 9-month trial-work period during which SSDI recipients may receive full benefits. *See* 42 U.S.C. § 422(c), 423(e)(1); 20 CFR § 404.1592 (1998). *See also* § 404.1592a (benefits available for an additional 15-month period depending upon earnings). Improvements in a totally disabled person's physical condition, while permitting that person to work, will not necessarily or immediately lead the SSA to terminate SSDI benefits. And the nature of an individual's disability may change over time, so that a statement about that disability at the time of an individual's application for SSDI benefits may not reflect an individual's capacities at the time of the relevant employment decision.

*Id.* at 805.

An individual must be physically or mentally impaired to receive SSDI benefits. Although it is true that many individuals who receive SSDI benefits are so disabled that they cannot work, there is a subset who receive SSDI benefits and are also able to perform some

4

work. That can include work that (1) does not qualify as substantial gainful activity, (2) a trial-work period that is part of transition back to the workforce, and/or (3) work which requires reasonable accommodations for their disability. *Id.*; *see also* Expert Report by Andrew Stettner and Rebecca Vallas, Doc. 42-1, pp. 8-9. SSDI benefits are paid monthly. PPFOF ¶ 49.

## III.   <u>An overview of Wisconsin's Unemployment Compensation Insurance Benefits.</u>

Under Wis. Stat. § 108.04(2)(a), an individual is eligible for UC benefits in any given week if all of the following apply:[1]

1. The claimant is able to work and available for work during that week.

2. The claimant has registered for work in the manner prescribed by the department by rule.

3. The claimant conducts a reasonable search for suitable work during that week and provides verification of that search to the department. The search for suitable work must include at least 4 actions per week that constitute a reasonable search as prescribed by rule of the department. In addition, the department may, by rule, require a claimant to take more than 4 reasonable work search actions in any week. The department shall require a uniform number of reasonable work search actions for similar types of claimants.

4. If the claimant is claiming benefits for a week other than an initial week, the claimant provides information or job application materials that are requested by the department[, i.e. a weekly certification,] and participates in a public employment office workshop or training program or in similar reemployment services that are required by the department under sub. (15) (a) 2.

UC benefits are paid weekly. PPFOF ¶ 50. Wisconsin's UC benefits program receives federal funds. *Id.* ¶ 51.

The challenged provision in this lawsuit is Wis. Stat. § 108.04(12)(f) which is a blanket denial of UC benefits to any individual who receives SSDI benefits. A recipient of SSDI benefits is <u>automatically denied</u> UC benefits regardless of whether they would otherwise qualify. The

---

[1] Unsurprisingly, there are numerous exceptions and carve outs from these four basic criteria. However, the challenged statute in this lawsuit, Wis. Stat. § 108.04(12)(f), automatically prohibits SSDI recipients from receiving UC benefits without doing any further analysis. As such, a SSDI recipient's application for UC benefits does not even reach the step of determining if an exception would apply.

legislature specified that its intent in passing Wis. Stat. § 108.04(12)(f) was to "prevent the payment of duplicative government benefits for the replacement of lost earnings or income, ***regardless of an individual's ability to work.***" Wis. Stat. § 108.04(12)(f)1m (emphasis added).

The Department first proposed an SSDI eligibility ban in October 2012 in Proposal D12-05. PPFOF ¶ 52, s*ee* Kinne Aff., Ex. R. In this proposal, the DWD explained that individuals cannot receive both SSDI benefits and unemployment benefits without being fraudulent:

> To understand why such "double-dipping" may constitute fraud, please note the following general requirements for each program:
>
> - To receive unemployment insurance benefit payments, claimants must state that they are able to work.
>
> - To receive disability insurance benefit payments, claimants must state that they are unable to work.
>
> Under certain circumstances, it is possible that some individuals may be eligible for concurrent cash benefit payments due to differences in DI and UI Eligibility requirements. Differences in program rules and definitions allow individuals in certain circumstances to receive overlapping DI and UI benefits without violating eligibility requirements. The Social Security Administration's definition of a disability involves work that does not rise to the level of substantial gainful activity. In contrast, a state's determination of "able and available for work" criteria for UI benefits may include performing work that does not rise to the level of substantial gainful activity. As a result, some individuals may have a disability under federal law but still be able and available for work under state law, thus eligible to receive DI and UI.
>
> Yet, many of individuals currently receiving both unemployment insurance benefit payments and disability insurance payments do not fall within that narrow category and are therefore committing acts of fraud. In general, legitimate beneficiaries of these social safety net programs can draw funds from one program, or the other, but not both at the same time.
>
> Unemployment insurance benefits are not counted under the Social Security annual earnings test and therefore do not affect an individual's receipt of Social Security

benefits. Yet, federal law does allow that the unemployment benefit amount of an individual to be reduced by the receipt social security disability insurance benefits.

PPFOF ¶ 53, *see* Kinne Aff., Ex. R, pp. 2-3 (footnote omitted).

Amendments in 2015 because of Proposal D15-01 (Kinne Aff., Ex. S) now make the SSDI eligibility ban apply to all weeks of unemployment eligibility. PPFOF ¶ 54. The statute reads:

> 2m. In this paragraph, "social security disability insurance payment" means a payment of social security disability insurance benefits under 42 USC ch. 7 subch. II.
>
> 3.
> > a. Except as provided in subd. 3. b. to d., an individual is ineligible for benefits under this chapter for each week in the entire month in which a social security disability insurance payment is issued to the individual.
> > b. In the first month a social security disability insurance payment is first issued to an individual, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.
> > c. Following a cessation of social security disability insurance payments to an individual and upon the individual again being issued a social security disability insurance payment, the individual is ineligible for benefits under this chapter for each week beginning with the week the social security disability insurance payment is issued to the individual and all subsequent weeks in that month.
> > d. Following cessation of social security disability insurance payments, an individual may be eligible for benefits under this chapter, if otherwise qualified, beginning with the week following the last Saturday of the month in which the individual is issued his or her final social security disability insurance payment.

Wis. Stat. § 108.04 does <u>not</u> include a similar prohibition of payment of UC benefits to Wisconsinites who receive other non-disability-related federal benefits like supplemental nutrition assistance program (SNAP) benefits. PPFOF ¶ 71.[2] Instead, Wis. Stat. § 108.04 targets Wisconsinites who have been determined to be disabled by the SSA from participating in a state

---

[2] The division administrator of the DWD Unemployment Insurance Division, James Chiolino, testified that SSDI is the only benefit he is aware of which automatically disqualifies a UC claimant from receiving UC benefits. PPFOF ¶ 72.

benefit program, despite the admission that receipt of both SSDI benefits and UC benefits is not inherently fraudulent. PPFOF ¶¶ 63-70, 73-74. Importantly, Wis. Stat. § 108.04(12)(f) is an eligibility ban, it is not an offset. PPFOF ¶ 62.

The Wisconsin DWD has interpreted and applied the above statute to preclude unemployment compensation benefits to those individuals, like the plaintiffs, who receive SSDI benefits. PPFOF ¶ 64. This exclusion denies UC benefits to otherwise qualified UC claimants solely due to their receipt of SSDI benefits. PPFOF ¶ 69. The exclusion means UC claimants are ineligible regardless of the amount they receive in SSDI benefits. PPFOF ¶ 60.

According to the DWD secretary designee, Amy Pechacek, individuals who are collecting SSDI while working, but find themselves at a job loss should qualify for UC benefits "to align with the broader policy goal that is set forth in the Rehabilitation Act and the ADA and in SSDI, which is that folks can still have gainful employment and have supplemental income and collect disability." PPFOF ¶ 56. By not allowing UC benefits, Wis. Stat. § 108.04(12)(f) is causing "undue harm" to disabled individuals who are trying to make a living. PPFOF ¶ 57.

The division administrator of the DWD Unemployment Insurance Division, James Chiolino, testified that Wis. Stat. § 108.04(12)(f) only impacts disabled Wisconsinites. PPFO ¶¶ 65-66. He agreed the exclusion does not impact non-disabled people at all. PPFOF ¶ 67. Wis. Stat. § 108.04(12)(f) only impacts disabled Wisconsinites because non-disabled Wisconsinites would not be eligible for SSDI, and thus would be excluded under the statute. PPFOF ¶ 68.

## ARGUMENT

### I.   Summary judgment standard.

Summary judgment is proper if the movant can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). To defeat a motion for summary judgment, "the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor. To create a 'genuine' issue, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quotations and citations omitted).

## II. <u>The ADA and Section 504 of the Rehabilitation Act prohibit the denial of state services, programs, or activities by reason of disability.</u>

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Brumfield v. City of Chicago*, 735 F.3d 619, 625 (7th Cir. 2013). A "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government…" 42 U.S.C.S. § 12131(1); *Brumfield*, 735 F.3d at 625. A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C.S. § 12131(2); *Brumfield*, 735 F.3d at 625.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a); *see*

*also Crumley v. Forestal*, 2021 U.S. Dist. LEXIS 186739, at *15 (S.D. Ind. Sep. 29, 2021). "Title II of the ADA was modeled after § 504 of the Rehabilitation Act; the elements of claims under the two provisions are nearly identical, and precedent under one statute typically applies to the other." *Washington v. Ind. High Sch. Ath. Ass'n*, 181 F.3d 840, 845 n.6 (7th Cir. 1999).[3]

The Wisconsin UC program is a public entity. The plaintiffs are qualified individuals with disabilities. Each of the plaintiffs is disabled under the SSA/SSDI guidelines. Further, each of the plaintiffs can do some work while maintaining their SSDI benefits. They then lost their employment and met the requirements to receive UC benefits through the DWD, but for the fact that they received SSDI benefits.[4] As such, they are "qualified individuals with a disability" under Title II of the ADA and Section 504 of the Rehabilitation Act.

"To establish a violation of Title II of the ADA, the plaintiff must prove [1] that he is a qualified individual with a disability, [2] that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal quotations omitted). "The Rehabilitation Act claim is functionally identical: it requires the plaintiff to allege that (1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Id.* (internal quotations omitted). Claims under Section 504 of the Rehabilitation Act and Title II of the ADA are treated as "functionally identical" and can be considered together. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 988 (7th Cir. 2020).

---

[3] The Rehabilitation Act applies to organizations which receive federal funds. *Wis. Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006). It is undisputed that Wisconsin's UC program receives federal funds. PPFOF ¶ 51.
[4] At a minimum, the Plaintiffs lost the ability to continue in the process to determine whether they were entitled to receive benefits.

A Title II ADA claim can be based on one of three theories: (1) intentional discrimination on the basis of a disability (disparate treatment), (2) a refusal to reasonably accommodate disabled people, or (3) that a rule disproportionally impacts disabled people *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006) (en banc). Plaintiffs' claims proceed under the first and third theories: disparate treatment and disparate impact.

### III. <u>Disparate Treatment: Wisconsin's UC Statute intentionally singles out disabled Wisconsinites as being unable to recover UC benefits.</u>

A disparate treatment claim "is the most easily understood type of discrimination." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) *quoting Teamsters v. United States*, 431 U.S. 324, 335, n. 15 (1977). Such a claim exists where someone is treated less favorably because of a protected characteristic. *Id.* "Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the . . . decision." *Raytheon Co.*, 540 U.S. at 52 *quoting Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). "A disparate treatment claim under the ADA--like disparate treatment claims brought under other federal anti-discrimination statutes-- may be proved either directly, or indirectly . . . ." *Sieberns v. Wal-Mart Stores*, 125 F.3d 1019, 1021-22 (7th Cir. 1997) *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In *Hamlyn v. Rock Island County Metro Mass Transit Dist.*, 986 F. Supp. 1126 (C.D. Ill. Oct. 23, 1997), the plaintiff was denied participation in a reduced fare bus program because he had AIDS. *Id.* at 1129-30. The plaintiff was otherwise qualified for the program, but there was an exclusion for anyone with AIDS. *Id.* at 1130. The plaintiff brought a class action on behalf of himself and all those similarly situated. *Id.* at 1128. The Court found that the AIDS exclusion was "so facially discriminatory that it would deter a reasonable person in Plaintiff's position from even completing the application process." *Id.* (internal quotations omitted). The district

court granted summary judgment to the plaintiff and other class members, holding that (1) AIDS is a disability under the Rehabilitation Act, (2) the plaintiff's condition satisfied the disability requirements for the reduced far bus program but for the fact that he had AIDS, and (3) the reduced far bus program, on its face, discriminated against people with AIDS solely because they have AIDS. *Id.* at 1131-32. As such, the Court found that the program, on its face, violated the Rehabilitation Act. *Id.* at 1132. The Court also held the program violated Title II of the ADA. *Id.*

Wisconsin's SSDI exclusion statute is analogous. The only difference is that instead of singling out a discrete disability (AIDS) from a program to assist people with impaired mobility (reduced fare bus program), the SSDI exclusion prohibits <u>all</u> disabled people who receive SSDI benefits from participating in a government benefit program to assist unemployed Wisconsinites under the presumption that SSDI-receiving claimants cannot both be working and disabled at the same time and, thus, are inherently fraudulent.

First, as discussed above, to receive SSDI benefits, an SSDI applicant <u>must</u> be disabled under SSA guidelines. Thus, 100% of those individuals receiving SSDI benefits are disabled. Mr. Chiolino testified that the SSDI exclusion only impacts disabled Wisconsinites. Non-disabled Wisconsinites are unaffected by it.

Next, the plaintiffs were all working within the parameters allowed by the SSA. PPFOF ¶¶ 2, 6, 15, 21, 29, 34, 41, and 45. They then lost their employment and applied for UC benefits. PPFOF ¶¶ 3, 6-8, 16-17, 22, 30, 35-36, 39, and 46-47. They were all automatically denied either UC benefits directly, or the opportunity to determine the amount of UC benefits solely because they received SSDI benefits. PPFOF *Id.* ¶¶ 3-4, 12-13, 18-19, 24-27, 31-32, 36-37, 42-43, and 47-48. The plaintiffs fall within that group of disabled Wisconsinites who were denied UC

benefits, or at least the right to be considered for benefits, solely because they received SSDI benefits, i.e., because they were disabled.

Plaintiffs have established a prima facie case of discrimination: (1) they are disabled under the ADA and are thus members of a protected class, (2) they were denied participation in a government program (denied both the receipt of UC benefits and/or the opportunity to even apply for UC benefits), (3) they were rejected for UC benefits solely because they received SSDI benefits, and (4) those same benefits remained available to non-disabled Wisconsinites. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to DWD to articulate a legitimate, nondiscriminatory reason for the plaintiffs' rejection of UC benefits. *Id.*

The Legislature described their reason for the SSDI exclusion when they passed that legislation: "The intent of the legislature in enacting this paragraph is to prevent the payment of duplicative government benefits for the replacement of lost earnings or income, regardless of an individual's ability to work. . . . an individual is ineligible for benefits under this chapter for each week in the entire month in which a social security disability insurance payment is issued to the individual." Wis. Stat. § 108.04(12)(f)1m., 3.a. In other words, the Legislature directs DWD to ignore whether an applicant can work or is otherwise qualified to receive UC payments, and instead requires immediate disqualification because of the presumption that disabled people are incapable of any work whatsoever. The statute disqualifies the applicant solely because they receive SSDI benefits, i.e., are disabled. This qualifies as disparate treatment: the protected trait (disability) is the motivating factor behind the SSDI exclusion. *Huston v. Comm'r of Empl. & Econ. Dev.*, 672 N.W.2d 606, 606 (Minn. Ct. App. 2003) (an SSDI eligibility ban in Minnesota nearly identical to Wis. Stat. § 108.04(12)(f) discriminates against the disabled and so violates the ADA).

Mr. Chiolino and Ms. Pechacek confirmed the statute is an <u>exclusion</u>, not a reduction or offset in DWD benefits as the Legislature claimed. Just like the reduced fare bus program policy was "so facially discriminatory that it would deter a reasonable person in Plaintiff's position from even completing the application process," Wis. Stat. § 108.04(12)(f) provides a blanket ban which is so discriminatory that a recipient of SSDI benefits need not apply for UC benefits. A reasonable person who received SSDI benefits would not bother even completing the UC application process because of the blanket denial.  The plaintiffs in this case overcame that disincentive but encountered the inevitable result: they were summarily eliminated from consideration for benefits because they were disabled.

Vital to the analysis is the inherent contradiction in the Defendant's position. The ostensible reason for disqualification is the State's concern that duplicative benefits are not paid. However, the blanket disqualification prevents both duplicative *and non-duplicative* benefits from being paid. If the true reason for the disqualification was a concern that claimants do not receive duplicative benefits, then the Defendant could implement an offset of benefits. But by summarily excluding all SSDI beneficiaries from the application process, it is clearly the SSDI beneficiaries' disability that is truly motivating the exclusion. It cannot be anything else. A plain reading of Wis. Stat. § 108.04(12)(f) comes to the same conclusion as Mr. Chiolino and Ms. Pechacek: it is a blanket ban, not an offset. There is only one reasonable conclusion: the intent of the Legislature in passing the SSDI exclusion (to prevent duplicative payments) was a pretext to cover the underlying discriminatory intent (prohibiting SSDI benefit recipients from receiving UC benefits to which they are otherwise entitled).

Since Wis. Stat. § 108.04(12)(f) specifically targets <u>only</u> disabled Wisconsinites and serves as a blanket preclusion to participation in Wisconsin's UC program, it violates Title II of the ADA and Section 504 of the Rehabilitation Act.

**IV.**   **Wisconsin's UC statute has a disparate impact on disabled Wisconsinites and, thus, is discriminatory under the ADA and Rehabilitation Act.**

If this Court denies the Plaintiffs' Motion for Summary Judgment on the disparate treatment claim, then Wis. Stat. § 108.04(12)(f) still violates Title II of the ADA and Section 504 of the Rehabilitation Act because it disparately impacts disabled Wisconsinites.

Disparate impact claims challenge a "facially neutral" policy which in fact "fall[s] more harshly on one group than another." *Raytheon Co.*, 540 U.S. at 52 *quoting Teamsters*, 431 U.S. at 335-36, n. 15; *Swan v. Bd. of Educ. Of Chic.*, 2013 U.S. Dist. LEXIS 115294, *36 (N.D. Ill. Aug. 15, 2013); *Haney v. Pritzker*, 563 F.Supp.3d 840, 864 (N.D. Ill. Sep. 27, 2021). Under a disparate impact claim, evidence of subjective intent to discriminate is not necessary. *Raytheon Co.*, 540 U.S. at 52-53. To establish a disparate impact claim, plaintiffs must (1) identify a specific practice which they allege is responsible for any observed statistical disparities, and (2) establish causation through statistical evidence sufficient to show the practice in question caused the harm because of their membership in a protected group. *Swan*, 2021 U.S. Dist. LEXIS 115294, at *36-37 *quoting Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012); *Crumley*, 2021 U.S. Dist. LEXIS 186739, at *24-25. Plaintiffs can show disparate impacts by "comparing persons in a protected class to persons outside the protected class." *Haney*, 563 F.Supp.3d at 864 *citing Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013). "Proof of disproportionate impact on a disabled individual can be evidence that he was

discriminated against or denied benefits or services based on his disability." *Crumley*, 2021 U.S. Dist. LEXIS 186739, at *24-25 *citing Wis. Cmty. Servs.*, 465 F.3d at 753.

Here, the "statistical analysis" of the disparate impact is undisputed: 100% of the people impacted by the SSDI exclusion articulated in Wis. Stat. § 108.04(12)(f) are disabled. The following undisputed facts definitively prove the disparate impact of this statute:

- First, an individual must be deemed disabled by the SSA to receive SSDI benefits.

- Second, any individual who receives SSDI benefits is automatically prohibited from receiving UC benefits under Wis. Stat. § 108.04(12)(f).

- Third, if someone is not disabled, they will not be impacted by Wis. Stat. § 108.04(12)(f).

Mr. Chiolino agreed that Wis. Stat. § 108.04(12)(f) denies UC benefits to otherwise qualified UC claimants "solely due to their SSDI status." PPFOF ¶ 69. Statistically, a policy cannot have a more profound disparate impact than Wis. Stat. § 108.04(12)(f).

Although Wis. Stat. § 108.04(12)(f) does not use the word "disabled" as a basis for the denial of UC benefits, there can be no dispute that, ultimately, a UC applicant's disability is the determinate for denial of UC benefits pursuant to Wis. Stat. § 108.04(12)(f). The plaintiffs challenge the defendant to identify any non-disabled individual to whom Wis. Stat. § 108.04(12)(f) applies. They will not be able to do so.

Disparate impact can be demonstrated by comparing people in the protected class with people outside of the protected class. *Haney*, 563 F.Supp.3d at 864. All SSDI recipients are prohibited from receiving UC benefits. SSDI benefits are a certain subset of disabled people— those who have been deemed disabled by the SSA. Just as any other subset of disabled people would be protected from discrimination by the ADA (say, blind, deaf, mute, paraplegic,

quadriplegic, or other type of disability), so are SSDI recipients. This subset of disabled Wisconsinites is prohibited from participating in a state benefit program. However, no non-disabled Wisconsinite is affected by Wis. Stat. § 108.04(12)(f). As such, the <u>only</u> impacted individuals are a subset of disabled people. The protected class are those who have a federally-recognized disability label. There is nothing about SSDI beneficiaries' disabilities that prohibits or impedes their ability to participate in the UC benefit program. As discussed, SSDI beneficiaries can still work, earn some money, then suffer the unfortunate circumstances of losing their job. Just as those individuals with AIDS should have been allowed to participate in the low fare bus program, an SSDI recipient should be able to participate in the UC benefit program.

Since Wis. Stat. § 108.04(12)(f) has a disparate impact on disabled Wisconsinites, it violates the protections set forth in Title II of the ADA and Section 504 of the Rehabilitation Act. Like the policy in *Hamlyn*, this Court should grant Plaintiffs' motion for partial summary judgment and allow them to apply for UC benefits notwithstanding their receipt of SSDI benefits.

<u>**CONCLUSION**</u>

It is undisputed that Wis. Stat. § 108.04(12)(f) is a blanket ban which prohibits anyone receiving SSDI benefits from receiving UC benefits or proceeding the process to determine if they are entitled to benefits. It is undisputed that all SSDI benefit recipients are disabled. It is undisputed that Wis. Stat. § 108.04(12)(f) does not impact a single non-disabled person. Either the Legislature intended to prohibit disabled Wisconsinites from receiving UC benefits, or that is the practical impact of Wis. Stat. § 108.04(12)(f). Either way, the statute violates the protections of Title II of the ADA and Section 504 of the Rehabilitation Act. The plaintiffs respectfully

request this Court grant their motion for partial summary judgment and allow them to apply for

UC benefits.

Dated this 12th day of August, 2022.

**GINGRAS, THOMSEN & WACHS, LLP**

*/s/ Paul A. Kinne*
Paul A. Kinne
State Bar #1021493
Riley C. Leonard
State Bar #1101452
8150 Excelsior Drive
Madison, WI 53717
Tel: 608-833-2632
Fax: 608-833-2874
kinne@gtwlawyers.com
rleonard@gtwlawyers.com

**AXLEY BRYNELSON, LLP**
*/s/ Heath P. Straka*
Heath P. Straka
State Bar #1031351
2 E. Mifflin Street, Ste. 200
Madison, WI 53701
Tel: 608-283-6755
Fax: 608-257-5444
hstraka@axley.com

**VICTOR FORBERGER, ESQ.**

*/s/ Victor Forberger*
Victor Forberger
State Bar #1070634
2509 Van Hise Ave
Madison, WI 53705
Tel: 608-352-0138
Fax: 608-316-2741
vforberger@fastmail.fm

*Attorneys for Plaintiffs*

18