AMY PECHACEK



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * *

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ,
SARAH JAMIESON, EVAN JOHNSON,
TRACY LONG and CLIFFORD NEUMANN,

        Plaintiffs,

     -vs-              Case No. 21-cv-560

AMY PECKACEK, in her official.
capacity as Secretary-designee
of the State of Wisconsin
Department of Workforce Development,

        Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

VIDEOCONFERENCE DEPOSITION OF AMY PECHACEK

Wednesday, June 8, 2022

8:58 a.m.

Reported by:  SANDRA L. McDONALD

---

1       VIDEOCONFERENCE DEPOSITION of AMY PECHACEK,

2   a witness of lawful age, taken on behalf of the

3   plaintiffs in the above-entitled cause, under the

4   Federal Rules of Civil Procedure, pursuant to

5   notice, before SANDRA L. McDONALD, a Notary Public

6   in and for the State of Wisconsin, from various

7   remote locations, on the 8th day of June, 2022,

8   commencing at 8:58 a.m.

9             * * * * *

10         A P P E A R A N C E S

11   PAUL A. KINNE,
       GINGRAS, THOMSEN & WACHS, LLP
12       8150 Excelsior Drive
       Madison, Wisconsin  53717
13       kinne@gtwlawyers.com
       appearing by videoconference on
14       behalf of the plaintiffs;

15   VICTOR FORBERGER,
       VICTOR FORBERGER, ESQUIRE
16       2509 Van Hise Avenue
       Madison, Wisconsin  53705
17       vforberger@fastmail.fm
       appearing by videoconference on
18       behalf of the plaintiffs;

19   STEVEN C. KILPATRICK,
       Assistant Attorney General
20       WISCONSIN DEPARTMENT OF JUSTICE
       17 West Main Street
21       Madison, Wisconsin  53703
       kilpatricksc@doj.state.wi.us
22       appearing by videoconference on
       behalf of the defendants.
23
   Also Present:  JENNIFER WAKERHAUSER,
24       DWD Chief Legal Counsel

25          * * * * *

---

1             * * * * *

2            I N D E X

3   Examination By:                Page:

4   Attorney Kinne                4

5   Attorney Fitzpatrick         --

6

7             * * * * *

8          E X H I B I T S

9   Exhibit Nos.:              Identified:

10  1 - Fiscal Estimate Narratives      35

11  2 - Complaint               38

12

13           * * * * *

14

15

16    (Original transcript filed with Attorney Kinne)

17

18

19

20

21

22

23

24

25

1               AMY PECHACEK,
2         having been first duly sworn on oath,
3         was examined and testified as follows:
4
5                 EXAMINATION
6 BY MR. KINNE:
7 Q   Could you please state your name and spell it for the
8     record?
9 A   Amy Pechacek, A-m-y, P-e-c-h-a-c-e-k.
10 Q   And Ms. Pechacek, what is your home address?
11        MR. KILPATRICK:  Paul, I'm going to
12     object to that.  I'm not sure it's relevant.
13     She's being sued in her official capacity.
14        MR. KINNE:  Okay.
15        MR. KILPATRICK:  Given the privacy
16     issues with officials, I'm wondering if you can
17     just ask for her office address maybe?
18        MR. KINNE:  Sure, that's fine.  That's
19     perfectly fine, and I understand completely.
20 Q   Ms. Pechacek, what is your work address?
21 A   It's 201 East Washington Avenue in Madison, 53703.
22 Q   Have you ever been deposed before?
23 A   Yes.
24 Q   How recently?
25 A   Within the last six months.

4

1 A   Yes.
2 Q   What did you review?
3 A   The Complaint.
4 Q   Anything else?
5 A   I did also review a press release from the prior
6     secretary, Caleb Frostman.
7 Q   Okay.  Tell me about that press release.  What was --
8     well, summarize it for me.
9 A   The press release involved an interpretation of the
10     Pandemic Unemployment Assistance, the PUA program
11     from the federal government, which was one of the
12     COVID-19 special programs.  Previously the Department
13     had taken the position that individuals on Social
14     Security Disability did not qualify for PUA.
15     Secretary Caleb Frostman and the administration
16     requested clarification on that interpretation and
17     advocated for individuals who were receiving SSDI to
18     qualify for PUA under the federal rules.
19        And the press release was encouraging folks on
20     SSDI to apply for PUA because they were able to --
21     they being Caleb Frostman and the prior Secretary's
22     Office, were able to get agreement from the
23     Department of Labor Secretary Scalia that individuals
24     on SSDI could qualify for PUA in the state of
25     Wisconsin.

6

1 Q   Okay.  Did it have anything to do with payment of
2     unemployment compensation benefits?
3 A   No.
4 Q   I'm still going to go over some mechanical rules for
5     you to follow today so they're fresh in your mind,
6     all right?  You're under oath, so you have to tell
7     the truth.  Do you understand that?
8 A   Yes.
9 Q   I will do my best to avoid talking over the ends of
10     your answers.  Please do your best to avoid talking
11     over the ends of my questions for the sake of the
12     court reporter, okay?
13 A   Yes.
14 Q   Your answers have to be in word form.  Saying things
15     like uh-huh, um-hum, nodding or shaking your head
16     aren't acceptable answers because the court reporter
17     can't record those kinds of answers, okay?
18 A   Understood.
19 Q   Last but not least, if I ask you a question that you
20     don't understand, please let me know, and I will try
21     to rephrase it in a way that you do understand it,
22     okay?
23 A   Yes.
24 Q   Did you review any documents to prepare for your
25     deposition today?

5

1  Q   Okay.  And Caleb Frostman -- well, let me back up a
2      step.  Where do you work right now?
3  A   I work at the Wisconsin Department of Workforce
4      Development.
5  Q   And what's your title there?
6  A   Secretary designee.
7  Q   When did you start in that position?
8  A   I was appointed secretary designee in December of
9      2020.  I came to the Department originally in
10     September of 2020 as the transition director.
11 Q   And it sounds like Mr. Frostman preceded you at the
12     Department of Workforce Development?
13 A   That is correct.
14 Q   When did he leave?
15 A   September of 2020.
16 Q   Okay.  And do you know why he left?
17           MR. KILPATRICK:  Objection, calls for
18           speculation.
19 Q   Well, I don't want you to guess if you're
20     speculating, but that's why my question is
21     foundational.  Do you know why he left?
22 A   He resigned due to some issues with the unemployment
23     insurance claim backlog.
24 Q   Okay.  And where did you work prior to September of
25     2020?

7

1  A   I was the deputy secretary at the Wisconsin
2      Department of Corrections.
3  Q   And how long were you the deputy secretary there?
4  A   I began in that position when the Evers
5      administration took office in January of 2019.
6  Q   I don't ask this to be nosy, I ask because I have to
7      know this background stuff.  Why did you leave?
8  A   I was appointed by the governor to come be the
9      secretary designee of the Department of Workforce
10     Development.
11 Q   Okay.  Can you give me a thumbnail sketch of your
12     post high school education?
13 A   I've got an undergraduate degree from the University
14     of Wisconsin-Madison in sociology with an emphasis in
15     criminal justice.  I've got a master's degree in
16     public policy and public administration from
17     Northwestern University.  Those are my degrees.  I've
18     had a number of other trainings and certificates.
19 Q   All right.  And you are the secretary designee.  With
20     respect to the job duties of the secretary, are the
21     job duties of a secretary designee any different from
22     a secretary, if you know?
23 A   No.
24 Q   Okay.  Can you give me -- well, let's say you're at a
25     dinner party and someone says, "Gosh, what does the

8

1      secretary of the Department of Workforce Development
2      do?"  How would you answer that question?
3  A   I oversee the administration and overall policy
4      direction for the Wisconsin Department of Workforce
5      Development, which has several divisions, including
6      the Department -- or I'm sorry, the Division of
7      Employment and Training, the Division of Unemployment
8      Insurance, the Division of Worker's Compensation, the
9      Division of Equal Rights.  We've got some
10     administrative functions, but we, in a nutshell, do
11     our best to promote and advance the workforce in the
12     State of Wisconsin, including job seekers,
13     entrepreneurs and businesses for the overall economic
14     advancement of the State.
15 Q   And who is in charge right now of the Unemployment
16     Division of the Department of Workforce Development?
17 A   The administrator of the Unemployment Division is
18     Jim Chiolino.
19 Q   And do you know how long he's held that position?
20 A   For approximately one year.
21 Q   Okay.  And generally speaking, what are his duties
22     and roles?
23 A   Wait, can I correct that?  I don't think it's quite
24     been a year.  Maybe nine months.  Sorry, I don't
25     exactly recall the date.  I appointed him, but I

9

1   don't recall the date offhand.
2 Q   Do you know who held his position before he did?
3 A   Yes.
4 Q   Who?
5 A   Mark Reihl.
6 Q   And do you know where Mark Reihl is nowadays?
7 A   I believe Mark Reihl is retired.
8 Q   Okay.  And for the sake of the court reporter, can
9     you spell Reihl?
10 A   I believe it is spelled R-i-e-h-l.
11 Q   Okay.  And what are Mr. Chiolino's job duties?
12 A   He oversees the day-to-day administration of the
13     unemployment insurance program for the State of
14     Wisconsin.
15 Q   Does he have authority to set policy for the
16     Unemployment Insurance Division?
17 A   Can you define how you're using the word policy?
18 Q   Well, if he wants to implement a change in current
19     practices at the Division, does he have to check with
20     you or does he have the authority to implement at
21     least a subset of changes without checking with you?
22 A   So we are -- Jim Chiolino is bound by the State of
23     Wisconsin Statutes in administration of the program.
24     There are certain policies and procedures in
25     administration that may have an ability to be

10

1   influenced by Department interpretation, but any type
2   of policy decision that would impact benefits or a
3   significant operational issue for the Unemployment
4   Insurance Division would be done in consultation with
5   the Secretary's Office.
6 Q   Okay.  And what authority do you have to change
7     policy at the Unemployment Insurance Division?
8 A   I'm bound by the State Statutes and Federal Statutes
9     on how to administer the program, such as
10     eligibility.  But again, in terms of operational
11     policies and procedures, i.e., what hours people work
12     and what type of technology we implement in
13     administering the program, those decisions are within
14     the Department's authority.
15 Q   Do you have any discretion to interpret statutes or
16     administrative rules with respect to the payment of
17     unemployment compensation benefits?
18 A   Can you repeat the question, please?
19         MR. KINNE:  Sandy, could you read it
20     back, please?
21         (Reporter reads back last question)
22 A   I would say the Department has discretion in how to
23     administer the program, which may require
24     administrative interpretation of the statutes, but we
25     do not have discretion to ignore or override

11

1   statutory eligibility requirements or other statutory
2   parameters as defined in State or federal law.
3 Q   Okay.  I'd like to spend a few minutes just kind of
4     getting some mechanical background about how
5     Wisconsin's unemployment compensation system works,
6     okay?
7 A   Yes.
8 Q   How is it funded?
9 A   So the Unemployment Insurance Trust Fund is funded
10     through employers who pay either a reimbursable
11     account balance or almost like a premium to be part
12     of the unemployment program, which is based on the
13     amount of employees, their payroll and several other
14     factors, such as their type of operations.  The
15     administration costs of the program are funded
16     through administrative grants through the federal
17     government, and there are additional costs
18     associated, to the best of my knowledge, through
19     general program revenue, which is State tax levy, to
20     the best of my knowledge.
21 Q   Okay.
22 A   There is some State tax levy in the overall program.
23 Q   And do you know what the State tax levy goes toward?
24 A   I -- no.  I'm just speculating now, but I believe
25     there would be like training or fringe benefit costs,

12

AMY PECHACEK

1    such as other costs like pension costs for the
2    employees, but I'm not entirely sure, so I'm going to
3    answer I'm not sure.
4  Q  Okay.  Do you know one way or another whether the
5    amount that the State of Wisconsin pays for -- out of
6    the tax levy for the unemployment compensation
7    insurance system is impacted by the number of claims
8    filed in a year?
9  A  I'm sorry.  Could you please repeat the question?
10  Q  Sure.  I didn't do a very good job of forming it, so
11    let me try again.  Do you know one way or another
12    whether the portion of the State tax levy that goes
13    toward funding the unemployment compensation system
14    in Wisconsin is related at all to the number of
15    claims filed in a year?
16  A  No, I do not believe so, but I don't know.
17  Q  With respect to how the system is funded, what
18    happens in a year when there are a larger than normal
19    number of claims?
20          MR. KILPATRICK:  Objection, vague.
21  Q  Do you understand my question?
22  A  I believe so.  So there is a balance in the
23    Unemployment Insurance Trust Fund where claims are
24    paid from, and that -- those funds go towards paying
25    claims.

13

1  Q  Okay.  So if there are a larger number of claims in a
2    year than normal, what happens to the balance at the
3    Trust Fund?
4  A  Are you talking State unemployment claims or
5    federally-funded unemployment supplemental programs?
6  Q  Okay, good.  Let's talk about the difference between
7    the two of those.  What were the two categories
8    again?
9  A  There are State unemployment benefits and then also
10    federally-funded benefits related to the COVID-19
11    pandemic.
12  Q  So the federally-funded benefits are related
13    exclusively to the COVID pandemic, right?
14  A  Over the -- the ones that I'm familiar with over the
15    past two years, correct.
16  Q  Okay.  And so I'm talking about the State of
17    Wisconsin unemployment benefits, just those.  What
18    happens to the Trust Fund when those -- when the
19    number of claims go up in a year?
20  A  So there are different levels of the Trust Fund in
21    statute that trigger tax schedules, and those,
22    depending on where the level of funding is, the
23    Department has to bill employers throughout the state
24    based on the tax schedule.  So if the funding hits a
25    certain level -- the tax schedule for employers for

14

1    what they would pay, it's a formula which I don't
2    know off the top of my head, but it has to do with
3    the amount of employees and payroll.  It varies
4    depending on the level in the Fund.
5          Basically the tax burden on employers would
6    increase if the funding falls too low by a nominal, I
7    would say, amount.  It's part of a formula.  And
8    that's done to --
9  Q  And are you --
10  A  Sorry.  That's done to replenish, so there's always
11    funding in the Trust.
12  Q  Okay.  So a nominal amount of tax increase is
13    automatically imposed on employers when the Trust
14    Fund balance gets at a certain level; is that right?
15  A  In theory, although there was legislation this past
16    year to freeze the tax level so as to not
17    economically disadvantage businesses while recovering
18    from the COVID-19 pandemic.
19  Q  Okay.
20  A  So it has been frozen.
21  Q  All right.  And your understanding is that it was
22    frozen because of the crisis caused by the COVID
23    pandemic; is that right?
24  A  Correct.
25  Q  Before the COVID pandemic, was it frozen?

15

1  A  No.
2  Q  Now, I think you've already mentioned that the
3     Unemployment Compensation Division receives federal
4     funds for its program; is that right?
5  A  Correct.
6  Q  And some of those are COVID-related, right?
7  A  Correct.
8  Q  Are there -- again, let's talk about before the
9     pandemic.  Did the Division of Unemployment
10    Compensation receive federal funding?
11 A  Yes.
12 Q  And what does the federal funding, well, fund?
13 A  The administration of the unemployment program.
14 Q  All right.  So in other words, it pays, well, the
15    salary of Jim Chiolino, right?
16 A  Correct, I believe so, correct.
17 Q  Okay.  And it pays for the administrative law judges,
18    that kind of thing, right?
19 A  To the best of my knowledge, yes.
20 Q  What's your understanding of -- I don't want to get
21    too in the weeds on this, but I also want to make
22    sure I'm not missing something obvious.  What's your
23    understanding of the administrative functions,
24    broadly speaking, that the federal funding paid for
25    before the pandemic?

16

1  A  Administration of the claims, so the benefits.  There
2     is also an accounting and tax side to the
3     unemployment that interfaces with the businesses
4     throughout the state.  There is an appellate division
5     or function in the Division.  There are help lines
6     and call centers to interact with the customers of
7     the state.
8  Q  So those are the big ones, the highlights?
9  A  Yes.
10 Q  Okay.  Do you feel familiar with how the system of
11    benefit application works?
12 A  I am familiar with the system at a very high level.
13 Q  Okay.  Well, if I get to a point where I'm getting
14    too granular for you, let me know, okay?
15 A  Yes.
16 Q  Again for the state of the record, I want to
17    establish the steps, generally speaking, in applying
18    for and receiving or being denied benefits, okay?
19 A  Yes.
20 Q  My understanding is to be eligible for unemployment
21    compensation benefits, you have to be employed at one
22    point or another; is that right?
23 A  Correct.
24 Q  And if you lose your job, you are potentially
25    eligible for unemployment compensation benefits under

17

1     Wisconsin law; is that right?
2  A  Correct.
3  Q  And in order to be eligible, you have to meet certain
4     criteria?
5  A  Correct.
6  Q  And if you meet those criteria, then you're entitled
7     to the benefit; is that right?
8  A  Correct.
9  Q  Do you know one way or another whether somebody can
10    be employed and still qualify for benefits?
11 A  Yes.
12 Q  Under what circumstances can someone be employed and
13    still qualify for benefits?
14 A  The first one that comes to mind is work share, which
15    is a reduction of hours that occurs where an
16    individual who has their permanent hours temporarily
17    reduced can apply for supplemental benefits to make
18    up that gap in income, is the first example that
19    comes to mind.
20 Q  Okay.  So are the -- is the amount of earnings in
21    that particular situation, are those earnings offset
22    against the unemployment compensation benefit they
23    would receive?
24 A  Yes, that is my understanding.
25 Q  Okay.  Are there any other instances when somebody

18

AMY PECHACEK

```
1    can be employed and still qualify for benefits?
2  A  I am not certain.  I believe that if an individual
3     held multiple jobs and lost one of those jobs due
4     to no fault of their own, I think there are thresholds
5     of an income where they still might be able to
6     qualify for benefits, but I'm not certain.
7  Q  Okay.
8  A  So I'm just going to say I'm not -- I don't know.
9  Q  Even in those instances the wages are -- the wages
10    that the employee receives are offset against the
11    unemployment compensation benefits; is that right?
12 A  That's my understanding, correct.
13 Q  And would Mr. Chiolino, do you think he would be in a
14    better position to answer kind of the detailed
15    questions I might have about unemployment
16    compensation benefits --
17 A  Yes.
18 Q  -- and the process?
19 A  Yes.
20 Q  All right.  Do you know how the benefit amount is
21    calculated if an employee is entitled to receive
22    them?
23 A  At a very high level.
24 Q  Okay.
25 A  There is a formula that is based on statutory
```

```
1    minimums and maximums, and it is reflective of their
2    prior earnings going back several quarters.
3  Q  Does it have -- is the number of hours worked for the
4     employee a function of the benefit calculation, if
5     you know?
6  A  I do not know.
7  Q  Regardless, the criteria that sets the benefit amount
8     is, well, set by statute or administrative rule; is
9     that right?
10 A  Correct.
11 Q  And the Department lacks -- well, does the Department
12    lack the discretion to vary from those rules?
13 A  Yes.
14 Q  Once an employee is awarded benefits, the employee
15    remains entitled to those benefits until certain
16    other criteria apply; is that correct?
17 A  Correct.
18 Q  And that criteria is set by law or rule; is that
19    right?
20 A  Correct.
21 Q  And does the Department have any discretion to stray
22    from the rule?
23 A  No.
24 Q  Are you aware of circumstances where earnings by an
25    employee are offset against the amount of the benefit
```

```
1    aside from what we've already talked about?
2  A  I'm sorry.  Could you please repeat the question?
3  Q  Sure.  We've already talked about how wages somebody
4     earns can be offset against the benefit amount.  Are
5     there other examples that you're aware of where an
6     applicant's earnings are offset against the benefit
7     amount?
8  A  Yes, I believe individuals who are receiving a State
9     or federal pension have an offset of those dollars
10    when calculating for unemployment benefits.
11 Q  Okay.  Any other examples that you can think of?
12 A  Not that I can recall.
13 Q  Are you aware of any situations where an unemployed
14    person's earnings render them ineligible for
15    unemployment compensation benefits?
16            MR. KILPATRICK:  Objection,
17    confusing.
18 Q  All right.  Are you aware -- well, maybe I'll circle
19    back to that.  Are you aware of any laws or rules
20    that specifically limit benefits to the disabled?
21 A  Yes.
22 Q  And what are they?
23 A  There is a statute in the State of Wisconsin that
24    prohibts individuals who are on Social Security
25    Disability from collecting unemployment.
```

1  Q  Are there any other rules like that?
2              MR. KILPATRICK:  Objection, vague.
3  Q  Okay.  I'll rephrase the question.  Are there any
4     other rules or laws that limit benefits paid to
5     disabled people aside from the one you just made
6     reference to?
7  A  Not that I'm aware of.
8  Q  Okay.  In order to -- for the sake of clarity, in
9     order to be eligible for unemployment compensation an
10    employee has to be able to work a certain percentage
11    of jobs in the workforce; is that right?
12 A  Has to be able to work a certain percentage of jobs?
13    I don't understand the question.
14 Q  Okay, I'll withdraw it.  How familiar are you with
15    the, I'm going to call it -- Social Security
16    Disability Insurance, I'm going to call it SSDI.  Do
17    you understand what I mean when I say SSDI?
18 A  I do.
19 Q  How familiar are you with the SSDI benefit?
20 A  Somewhat familiar.
21 Q  Okay.  Do you know the criteria under which an
22    employee qualifies for an SSDI benefit?
23 A  Somewhat.
24 Q  Okay.  Tell me what your understanding is of the
25    qualification.

                                                    22

1  Q  All right.  And you know what the ADA is?
2  A  Yes.
3  Q  The Americans with Disabilities Act, right?
4  A  Correct.
5  Q  Do you know how disability is defined under the
6     Americans with Disabilities Act and/or the
7     Rehabilitation Act?
8  A  I do not.
9  Q  Okay.  Do you know whether an SSDI beneficiary is
10    allowed to work and still receive an SSDI benefit?
11 A  I believe so, yes.
12 Q  Okay.  And while an unemployed person is receiving
13    SSDI benefits, are they automatically precluded from
14    receiving unemployment compensation benefits in
15    Wisconsin?
16 A  Regular unemployment compensation benefits or federal
17    unemployment compensation benefits?
18 Q  Regular.
19 A  Yes, they are precluded under State Statute from
20    receiving regular unemployment benefits if they are
21    collecting SSDI.
22 Q  All right.  And are you familiar with the term PUA,
23    P-U-A?
24 A  Yes.
25 Q  And that's the Pandemic Unemployment Act; is that

                                                    24

1  A  My understanding is that in order to qualify for SSDI
2     an individual has to have a condition which
3     substantially limits their ability to engage in the
4     workforce, and there's like, I believe, a five-point
5     test in order to qualify for SSDI in which an
6     individual has to disclose their impairment, their
7     ability to work in any capacity.  And I think there's
8     a couple other qualifications, but that's all I can
9     recall off the top of my head.
10 Q  Okay.  And just for the purposes of clarification,
11    when you were talking about -- when we were talking
12    about laws that limit benefits to the disabled, it's
13    recipients of an SSDI benefit, those are the people
14    that are precluded from getting unemployment
15    compensation benefits; right?
16 A  That is my understanding, yes.
17 Q  Okay.  And that is different from SSI benefits,
18    right?
19 A  Correct.
20 Q  Okay.  Do you know the difference between how a
21    disability is defined under the Rehabilitation --
22    strike that.  Let me back up a step.  I'm getting
23    ahead of myself here.  Do you know what the
24    Rehabilitation Act is?
25 A  Somewhat, yes.

                                                    23

AMY PECHACEK

```
 1      what it stands for, or do you know?
 2  A   I believe it's Pandemic Unemployment Assistance, PUA.
 3  Q   Okay.  And under PUA, SSDI beneficiaries do qualify
 4      for unemployment compensation benefits; is that
 5      right?
 6  A   That is correct.  That is the clarification that the
 7      prior secretary, Caleb Frostman, received from
 8      U.S. DOL Secretary Scalia.
 9  Q   Okay.  And do you know one way or the other whether
10      unemployment compensation benefits are offset against
11      SSDI benefits under PUA, or are they cumulative?
12  A   I do not know.
13  Q   That would be another question probably to ask
14      Mr. Chiolino, right?
15  A   That is correct.
16  Q   And have you -- since you've become the secretary,
17      have you done anything to change the position taken
18      by Mr. Frostman?
19  A   No.
20  Q   Do you stand by the position that he set forth, well,
21      in that letter regarding PUA benefits?
22  A   Absolutely, yes.
23  Q   Did the letter make any reference to discrimination?
24  A   I don't recall the exact words in the letter.
25  Q   Okay.  And do you know where the letter is?
```
25

```
 1  Q   Sure.  How are SSDI benefits paid?
 2  A   I don't know.
 3  Q   Are they paid on a monthly basis?
 4  A   Oh, the frequency?  I believe so, yes.
 5  Q   Okay.
 6  A   But they're not paid by the Department of Workforce
 7      Development, so I don't know.
 8  Q   Right.  They're paid by the federal government,
 9      right?
10  A   Correct.
11  Q   And how are unemployment compensation benefits paid?
12  A   Weekly.
13  Q   Okay.  And theoretically, an SSDI beneficiary could
14      get SSDI benefits in excess of what they're entitled
15      to under Wisconsin's unemployment compensation
16      benefits, right?
17          MR. KILPATRICK:  Objection,
18          speculative.
19  Q   You can answer.
20  A   I don't understand the question.  I'm sorry.
21  Q   Well, let me do it this way.  The statute that I just
22      read to you said that the Legislature wanted to
23      prevent duplicative government benefits, right?
24  A   Correct.
25  Q   What does the Division of Unemployment Insurance do
```
27

```
 1  A   I do not know where the letter is.
 2  Q   Okay.  If we wanted to get a copy of it, do you know
 3      who we'd ask?
 4  A   We would ask our chief legal counsel,
 5      Jennifer Wakerhauser, who would likely be able to
 6      obtain a copy.
 7  Q   Okay, good.  So for regular State unemployment
 8      compensation benefits, what prevents the Division of
 9      Unemployment Compensation from paying UC benefits to
10      otherwise eligible SSDI beneficiaries?
11  A   State statute.
12  Q   Is that State Statute 108.04?
13  A   I don't know.
14  Q   Okay.  I'll represent to you that 108.04(12)(f)1m
15      states, "The intent of the Legislature in enacting
16      this paragraph is to prevent the payment of
17      duplicative government benefits for the replacement
18      of lost earnings or income, regardless of an
19      individual's ability to work," okay?
20  A   Correct, okay.
21  Q   Is that your understanding of what the statute says?
22  A   Yes.
23  Q   How are SSDI benefits paid?
24  A   You broke up there.  How are -- could you please
25      repeat the question?
```
26

AMY PECHACEK

```
 1    to determine whether SSDI benefits are duplicative
 2    benefits that would be received under the State's
 3    unemployment compensation system?
 4  A   I do not know.
 5  Q   And would that also be a question for Mr. Chiolino?
 6  A   Yes.
 7  Q   Okay.  Because it's possible that the amount of
 8    benefit that someone is entitled to under Wisconsin's
 9    unemployment compensation system would be greater
10    than the benefit they're getting under SSDI, right?
11        MR. KILPATRICK:  Objection.  The
12        witness testified that SSDI renders them
13        ineligible for unemployment, so the question is
14        confusing and speculative.  But you may
15        answer.
16  A   I don't know how to answer that.
17  Q   Okay.  Do you know if any effort is exerted at all by
18    the Division of Unemployment Insurance to determine
19    if the SSDI benefit received by an otherwise eligible
20    applicant is less than what the employee would
21    receive under Wisconsin's unemployment compensation
22    system?
23  A   I don't know.
24  Q   Okay.  Do you know how the SSDI exclusion impacts
25    disabled people compared to non-disabled?
```
                                                    28

```
 1  A   The SSDI exclusion prohibts individuals receiving
 2    SSDI from receiving regular unemployment benefits in
 3    the state of Wisconsin.
 4  Q   Do you know if other states render SSDI beneficiaries
 5    ineligible under their state systems for unemployment
 6    compensation benefits while the employee is receiving
 7    SSDI benefits?
 8  A   I believe the only other state is South Carolina, to
 9    the best of my knowledge.
10  Q   And do you know if -- I'm sorry.  Did you say South
11    or North Carolina?
12  A   I believe it's South Carolina.
13  Q   Okay.  Regardless of whether it's North or
14    South Carolina, do you know if they offset benefits
15    or they just declare the person ineligible?
16  A   I do not know the details.
17  Q   Are you familiar with Federal Statute 42 USC
18    Section 503 regarding the secretary of labor
19    certifying payment to states?
20  A   I am not familiar.
21  Q   All right.  Does the term when due or the when-due
22    clause, does that mean anything to you?
23  A   Only as I read the when-due clause in the Complaint
24    in preparation for this deposition.
25  Q   Okay.  I will represent to you that
```
                                                    29

```
 1    42 USC Section 503(a) says, "The Secretary of Labor
 2    shall make no certification for payment to any State
 3    unless he finds that the law of such State, approved
 4    by the Secretary of Labor under the Federal
 5    Unemployment Tax Act includes provision for..."  And
 6    then it goes on, and I'm not concerned about that.
 7        What I want to know is whether you're aware of
 8    the Secretary of Labor approving Wisconsin's methods
 9    of determining eligibility for and payment of
10    unemployment compensation benefits.
11  A   I am aware that when new legislation is proposed in
12    states that impacts eligibility for unemployment that
13    the Department of Labor will render an opinion on
14    whether or not that legislation comports with federal
15    requirements.  As it relates to this specific
16    eligibility requirement, this predates me.  I am not
17    aware of what transpired.
18  Q   All right.  But if we were to look, presumably there
19    would be some written statement from the Secretary of
20    Labor opining on whether the SSDI exclusion comported
21    with what it expects of Wisconsin's unemployment
22    compensation system in order to receive the federal
23    funds we talked about, right?
24  A   I would say it's unlikely that the opinion came
25    directly from any secretary of labor.  I believe
```
                                                    30

AMY PECHACEK

1    those opinions come from the regional offices, to the
2    best of my knowledge.  But in theory, the federal
3    government reviews eligibility laws that states
4    implement in terms of the unemployment program.
5  Q  Okay.  And just I want to be 100 percent clear.
6    Wisconsin's SSDI exclusion is an eligibility ban, it
7    is not an offset; is that right?
8  A  Correct.
9  Q  Are you familiar with the Bureau of Indian Affairs
10   Assistance and Social Services program?
11 A  I am not.
12 Q  Do you know if the Bureau of Indian Affairs
13   Assistance and Social Services program provides
14   temporary cash benefits to eligible Native Americans
15   in Wisconsin?
16 A  I do not know.
17 Q  And do you know if there is an eligibility ban for
18   people receiving those kinds of benefits from getting
19   State unemployment compensation?
20 A  I do not know.
21 Q  Are you familiar with -- or strike that.  Do you know
22   what the Temporary Assistance for Needy Families
23   program is?
24 A  I'm sorry.  Could you please repeat that?  You broke
25   up.

31

1  Q  Yeah, sure.  Do you know what the Temporary
2    Assistance for Needy Families program is, TANF?
3  A  Yes, yes.
4  Q  Is that called W-2 here in Wisconsin?
5  A  Yes.
6  Q  And does TANF provide cash payments from the
7    government to individuals?
8  A  I do not know how that program is administered.
9  Q  Okay.  Do you know one way or another whether any
10   benefits that would be received from that system are
11   offset against unemployment compensation benefits?
12 A  I don't know.
13 Q  Do you know if people receiving TANF benefits are
14   automatically ineligible to receive unemployment
15   compensation benefits?
16 A  I don't know.
17 Q  If they were, there would be a statute or rule that
18   said so, right?
19 A  Correct.
20 Q  And the same thing would be true of people who might
21   get benefits under the Bureau of Indian Affairs
22   Assistance and Social Services program, right?
23 A  I don't know.
24 Q  Okay.  But if people who got those benefits were
25   excluded from getting State of Wisconsin unemployment

32

1    compensation benefits, there would be a statute or
2    rule that said that, right?
3  A  Correct.
4  Q  And do you know what Supplemental Nutrition
5    Assistance benefits are?
6  A  I do not.
7  Q  SNAP benefits, have you ever heard of that?
8  A  Oh, yes, I've heard of that acronym.
9  Q  Okay.  And do you know if there's a statute or rule
10   anywhere that says people who get SNAP benefits are
11   ineligible to get unemployment compensation benefits?
12 A  I don't know.
13 Q  If the Department discovers that someone received
14   unemployment compensation benefits while they were
15   receiving SSDI benefits, what happens from a systems
16   point of view?
17 A  Their future benefits would be seized and an
18   overpayment notice and collection effort would begin.
19   Typically that's done as an offset going forward if
20   the individual continues to be eligible to receive
21   benefits.  If they are not, then there's a collection
22   effort to recoup the payments that were incorrectly
23   provided.
24 Q  And is there also a penalty associated with those
25   collection efforts?

33

1  A    I don't know.

2  Q    Okay.  And again, would that be a good question for

3       Mr. Chiolino?

4  A    Yes.

5  Q    All right.  Does it matter -- well, strike that.

6       What impact, if at all, does it have on what the

7       Department would do to someone who got State

8       unemployment compensation benefits while getting SSDI

9       benefits if there is a conclusion that the applicant

10      concealed or committed fraud in getting the benefits?

11 A    Could you please repeat that?

12 Q    Sure.  It was a long and cumbersome question.  I'll

13      try to break it down so it's a little easier to

14      comprehend.  We just talked about the collection

15      efforts that you're aware of associated with getting

16      benefits repaid for someone who got State

17      unemployment compensation benefits while they were

18      getting SSDI benefits, right?

19 A    Correct.

20 Q    How, if at all, does a conclusion by the Department

21      that the recipient engaged in concealment and fraud

22      impact what the person has to pay?

23 A    I don't know.

24 Q    Okay.  Again, a question for Mr. Chiolino, right?

25 A    Yes.

1  Q    All right.  I'm now going to turn to the exhibits.  I

2       am pretty good at this since the pandemic has

3       started, but not perfect, so bear with me here.

4              (Exhibit 1 is shared on the video screen)

5  Q    This is the Fiscal Estimates Narratives DWD 6/3/13.

6       Do you see that up here at the top where I'm waving

7       my cursor?

8  A    Yes, I see it.

9  Q    And I did send these exhibits to your counsel.  If

10      you have hard copies that you'd rather refer to, I

11      have no problem with that, okay?

12 A    I have not seen this before.

13 Q    Okay.

14             MR. KILPATRICK:  Paul, sorry to

15         interrupt, but I can send -- I can email those

16         to you, Madame Secretary, if you want, rather

17         than looking at --

18             THE WITNESS:  I can see the screen.  I

19         can see the screen just fine.

20             MR. KILPATRICK:  Okay.

21 Q    Okay.  I marked this as Exhibit 1 to your deposition,

22      right?

23 A    Yes.

24 Q    And you'll be happy to know that I'm only going to

25      ask you about one paragraph, but for the sake of the

1       record and identifying the document, you'll see that

2       there is one, two, three, four, five, six pages to

3       this exhibit; is that right?

4  A    Correct.

5  Q    Okay.  I'm going to take you down to the paragraph

6       that starts, "Prohibiting concurrent receipt of UI

7       and SSDI benefits."  Do you see that?

8  A    Yes.

9  Q    I would like you to read that to yourself, and when

10      you're done, please let me know.

11 A    Okay.

12             (Witness examines document)

13 A    Okay.  I have concluded reading the paragraph.

14 Q    All right.  Do you know who initiated the change

15      referenced in the paragraph you just read?  Was it

16      the Department, the Legislature, someone else?

17 A    I do not know.

18 Q    And do you see that this paragraph represents that it

19      would -- that this change would decrease benefit

20      entitlement by approximately 2.4 million dollars?  Do

21      you see that?

22 A    I see that, yes.

23 Q    And do you know how that number was arrived at?

24 A    I do not.

25 Q    Do you know how we could calculate the amount of

AMY PECHACEK

1  State unemployment compensation benefits that would
2  be paid -- would have been paid in any given year but
3  for the eligibility ban?
4  A  I do not believe that an accurate figure could be
5  determined because we would be able to quantify
6  individuals who applied and were denied due to the
7  SSDI eligibility ban, but we would not be able to
8  capture individuals who did not apply at all given
9  their understanding of State law.
10 Q  Okay.  This paragraph indicates that whomever wrote
11 this based his or her decision on data from
12 Minnesota.  Do you see that?
13 A  I do see that, yes.
14 Q  Do you know if the data that the person relied on
15 still exists somewhere?
16 A  I do not know.
17 Q  Do you know who we would ask to find out if it does
18 still exist and if we could get a copy of it?
19 A  I believe your best bet would be to go through
20 Chief Legal Counsel Jennifer Wakerhauser and she
21 would perhaps be able to conduct a records inquiry.
22 Q  Okay.  And I'm going to ask this question even though
23 I'm pretty sure I know the answer.  Do you know how
24 the 2.4 million dollar figure was calculated?
25 A  I do not know.

37

1  when you're done?
2              (Witness examines document)
3  A  I'm done.
4  Q  Do you agree, disagree or do you feel that you lack
5  the knowledge to agree or disagree with the
6  assertions made here in Paragraph 29?
7  A  I lack the knowledge of how SSDI benefits are
8  calculated.
9  Q  Okay.  Are unemployment benefits -- is unemployment
10 benefit eligibility based on earnings within the most
11 recent benefit year and for which there has been a
12 current job loss?
13 A  I believe so, but there is a look-back period to
14 prior employers, so I am not certain on the exact
15 formula.
16 Q  Paragraph 30, I'll just read it, "Pursuant to
17 Wisconsin Statute Section 108.04(12)(f)(3)(a), as
18 interpreted and applied by DWD, an individual is
19 ineligible for unemployment compensation benefits for
20 each week in the entire month in which an SSDI
21 payment is issued to the individual."  Do you see
22 that?
23 A  Yes.
24 Q  Is that your understanding of how the program is
25 administered?

39

1  Q  If an applicant decided to forego the receipt of SSDI
2  benefits, would that person then be entitled to
3  receive State unemployment compensation benefits if
4  otherwise eligible?
5  A  Do you mean pausing their payments or removing
6  themselves from the program or --
7  Q  Let's talk about pausing payments.  What about
8  pausing payments?
9  A  I don't know.
10 Q  What about withdrawing themselves from the program?
11 A  In that scenario, I believe if they are not
12 collecting SSDI as a recipient in the program, then
13 if they were otherwise eligible they would qualify
14 for benefits.
15             (Exhibit 2 is shared on the video screen)
16 Q  Okay.  Before you is the Complaint in this case,
17 which I've marked as Exhibit 2 to your deposition.
18 Do you see that?
19 A  Yes.
20 Q  And this is a document you reviewed in advance of
21 your deposition today; is that right?
22 A  Correct.
23 Q  Do you see Paragraph 29 there?
24 A  Yes.
25 Q  Can you please read it to yourself and let me know

38

AMY PECHACEK

1 A    Yes.

2 Q    Paragraph 31, "Pursuant to Wisconsin Statute

3      Section 108.04(12)(f)(3)(b), as interpreted and

4      applied by DWD, in the first month an SSDI payment is

5      issued to an individual, the individual is ineligible

6      for benefits for each week beginning with the week

7      the SSDI payment is issued, and for all subsequent

8      weeks in that month."  Did I read that right?

9 A    Yes.

10 Q    And is that your understanding of how the system

11     works?

12 A    Yes.

13 Q    Paragraph 32, "Pursuant to Wisconsin Statute

14     Section 108.04(12)(f)(3)(c), as interpreted and

15     applied by DWD, following a cessation of SSDI

16     benefits to an individual, and upon the individual

17     again being issued an SSDI payment, the individual is

18     ineligible for benefits for each week beginning with

19     the week the SSDI payment is issued to the individual

20     and for all subsequent weeks in that month."  Did I

21     read that correctly?

22 A    Yes.

23 Q    And is it your understanding that's how the program

24     is administered?

25 A    Yes.

40

---

1          MR. KILPATRICK:  Objection, Paul.

2      Paul, just so you know, I'm going to object to

3      this as repetitive.  These were responses in the

4      Answer that was filed.

5 Q    Okay.  You can go ahead and answer.

6 A    Yes.

7 Q    And for this last one, because it's a little longer,

8      I am going to have you read that to yourself and let

9      me know when you're done.

10          (Witness examines document)

11 A    I'm done.

12 Q    Do you agree with the statements made in this

13     paragraph, disagree, or do you lack the knowledge to

14     agree or disagree?

15          MR. KILPATRICK:  Same objection.

16 A    This is my understanding of how the program is

17     interpreted and administered.

18          MR. KINNE:  Okay.  Steve, we've been

19     going about an hour, and I'd like a chance to

20     speak with my co-counsel here.  So I know that

21     I'm going to have some more questions, but if

22     we could take a slightly elongated break, say

23     15 minutes, say be back at 10:20 to continue,

24     would that be okay with you all?

25          THE WITNESS:  Yes.

41

---

1          MR. KILPATRICK:  Fine, sure.

2          MR. KINNE:  Okay, good.  I'm going to

3      put you all on mute, and we'll be back in a

4      little bit.

5          (A recess is taken)

6          (10:06 a.m. to 10:20 a.m.)

7          MR. KINNE:  Back on the record.

8          EXAMINATION (RESUMED)

9 BY MR. KINNE:

10 Q    Do you know what a program letter is?

11 A    No.

12 Q    A UIPL from the Department of Labor?

13 A    Yes, I know what a UIPL is.

14 Q    Okay.  And what is a UIPL?

15 A    It is guidance issued by the U.S. Department of Labor

16     on various administrative issues for unemployment.

17 Q    And in order to -- well, strike that.  Is the

18     Department of Workforce Development bound to follow

19     what's in the UIPL?

20          MR. KILPATRICK:  Objection, calls for

21     a legal conclusion.  But you can answer.

22 A    I would say for the most part, yes.  I think

23     sometimes it is general guidance, but how to

24     implement or administer a program under the guidance,

25     there may be some variation between the states on how

42

1    they follow the guidance.
2  Q  Okay.  Have you ever been -- strike that.  I assume
3    that you see all of the UIPL letters that come in?
4  A  No.
5  Q  Would that be Mr. -- well, strike that.  At least
6    with respect to Wisconsin's unemployment compensation
7    system, that would be Mr. Chiolino, right?
8  A  Correct.
9  Q  You see at least some of the UIPLs; is that right?
10 A  Correct.
11 Q  Do you recall there ever being an instance where you
12   disagreed with something you saw in a UIPL?
13 A  Yes.
14 Q  And in those instances, what did you do?
15 A  We are bound to administer the programs as required
16   by State and federal law so, I mean, if I personally
17   disagree with something it's irrelevant.
18 Q  Okay, okay.  Now, earlier in your deposition you
19   talked about a letter from prior Secretary Frostman;
20   is that right?
21 A  Correct.
22 Q  And you agreed and stood by what he said in the
23   letter, right?
24 A  Correct.
25 Q  And was that a letter to the U.S. Secretary of Labor

43

1    stakeholder engagement as the face of the Department.
2    Pam McGillivray's day-to-day activities are more in
3    the administrative functions departmentwide,
4    operational oversight.
5  Q  Okay.  With respect to policy interpretation
6    regarding the payment of benefits, does she have a
7    role in that?
8  A  Yes.  We confer as an executive team to whatever
9    extent we have any interpretive authority on how to
10   administer a program under the statutes and laws.
11 Q  Okay, that makes sense.  And would the same thing be
12   true of Assistant Secretary Williams?
13 A  Correct.
14 Q  And you also said legal played a role, but don't tell
15   me what they tell you.  I'm just trying to figure out
16   their role here, okay?  Their role really is to tell
17   you whether you're in bounds or out of bounds, right?
18 A  Correct.  There is also a separate legal office that
19   solely works under Mr. Chiolino, which is the Bureau
20   of Legal Affairs, and they are dedicated to legal
21   matters that only relate to the unemployment
22   insurance functions of the Department, whereas my
23   chief legal is advising the entire executive team on
24   all legal matters for all divisions.
25 Q  Okay, all right.  That makes sense.  Do lawyers get

45

1    that you were talking about?
2  A  Yes, I believe the letter was to U.S. DOL Secretary
3    Eugene Scalia to the best of my recollection.
4  Q  And do you remember if that letter was sent in June
5    of 2020?
6  A  That sounds right, correct.
7  Q  Okay.  Bear with me one second.  Can you identify the
8    employees at the Department of Workforce Development
9    who have a role in deciding administration policy?
10 A  Yes, myself, the secretary designee; the deputy
11   secretary, Pam McGillivray; the assistant deputy
12   secretary, Danielle Williams; and then to a lesser
13   extent the administrator, Jim Chiolino.
14   Administrator Chiolino has an executive team that
15   works solely for the UI Division in support of his
16   daily functions as well.
17 Q  I wasn't able to write fast enough.  The first two
18   people that you said, what are their names and titles
19   again?
20 A  Deputy Secretary Pam McGillivray, Assistant Deputy
21   Secretary Danielle Williams, and of course also our
22   chief legal, which is Jennifer Wakerhauser.
23 Q  What duties do you have different from the duties of
24   Deputy Secretary Pam McGillivray?
25 A  My duties include a lot more public-facing and

44

AMY PECHACEK

1    involved ever in attempting to get repayment of
2    benefits?
3  A  Could you please clarify what you mean by getting
4    involved in repayment?
5  Q  Sure.  An applicant is found to have been overpaid
6    but doesn't repay the benefit.  I assume that in
7    those circumstances the applicant has to be sued,
8    right, or do you know?
9  A  I do not believe so.  We don't file suit.  I mean, to
10   the best of my knowledge.
11 Q  Okay.
12 A  There's an overpayment collection process that
13   involves offsetting future benefits and then working
14   out payment plans with individuals, and then perhaps
15   there's some type of lien placed if there is not a
16   repayment, but I don't know if that's what you mean
17   by sue.
18 Q  That's fine.  Really it's not that important, but
19   thank you.  I don't want to know about any
20   discussions you had with lawyers for the Department,
21   okay?  Put those completely out of your mind.  Did
22   you talk with anybody else about your testimony here
23   today?
24 A  No.
25 Q  Have you ever expressed to anyone your private

46

1    opinion about whether the ineligibility ban is fair
2    or unfair to disabled people?
3  A  Yes.
4  Q  To whom?
5  A  My legal counsel.
6  Q  Okay.  You can't tell me anything you said to your
7    legal counsel.  Anybody else?
8  A  Yes, policy conversations about this particular
9    statute have occurred between me and representatives
10   of the Governor's Office.
11 Q  Okay.  Tell me about those conversations.
12 A  In Governor Tony Evers' 2021 through 2022 biennial
13   budget we put forth the policy to repeal the
14   prohibition of individuals on SSDI not being eligible
15   for benefits.  We, as a policy matter, believe they
16   should be eligible.
17 Q  Okay.  And that's because as written it has a
18   disparate impact on disabled people, right?
19          MR. KILPATRICK:  Objection, calls for
20      a legal conclusion.
21 Q  You can answer.
22 A  I believe -- and I will state this from the policy
23   standpoint of the administration -- that not allowing
24   individuals who are collecting SSDI and also working
25   to have supplemental income who are then finding

47

1    themselves at a job loss due to no fault of their
2    own, they should qualify for unemployment for that
3    supplemental income to align with the broader policy
4    goal that is set forth in the Rehabilitation Act and
5    the ADA and in SSDI, which is that folks can still
6    have gainful employment and have supplemental income
7    and collect disability.  And by not allowing that
8    benefit, we are causing, I would say, undue harm to
9    these individuals who are trying to make a living.
10 Q  Those individuals are disabled, right?
11 A  Correct.
12          MR. KINNE:  All right.  That's all
13      I've got.
14          MR. KILPATRICK:  And I don't have any
15      follow-up questions, Paul.
16          MR. KINNE:  Okay.
17          (Adjourned at 10:32 a.m.)
18
19
20
21
22
23
24
25

48

AMY PECHACEK

1  STATE OF WISCONSIN  )

2  COUNTY OF DANE  )

3        I, SANDRA L. McDONALD, Shorthand Reporter

4  and Notary Public in and for the State of Wisconsin,

5  do hereby certify that the foregoing is a true

6  record of the videoconference deposition of

7  AMY PECHACEK, who was first duly sworn by me; having

8  been taken on the 8th day of June, 2022, from various

9  remote locations, in my presence, and reduced to

10  writing in accordance with my stenographic notes made

11  at said time and place.

12        I further certify that I am not a relative

13  or employee or attorney or counsel for any of the

14  parties, or a relative or employee of such attorney

15  or counsel, or financially interested in said action.

16        In witness whereof, I have hereunto set my

17  hand and affixed my seal of office this 16th day of

18  June, 2022.

19

20                    Notary Public, State of Wisconsin
21                    My Commission Expires 10/18/22

22

23

24

25

49

---

< Dates >
10/18/22 49:23.
6/3/13. 35:5.
June 8, 2022 1:36.
June, 2022 2:7, 49:9.
June, 2022. 49:19.
(10:06 42:6.
-vs- 1:19.
.
< 1 >.
1 3:14, 35:4, 35:21.
100 31:5.
108.04 26:12.
108.04(12)(f)(3)(a 39:17.
108.04(12)(f)(3)(b 40:3.
108.04(12)(f)(3)(c 40:14.
108.04(12)(f)1m 26:14.
10:20 41:23, 42:6.
10:32 48:17.
15 41:23.
16th 49:18.
17 2:30.
.
< 2 >.
2 3:16, 38:15, 38:17.
2.4 36:20, 37:24.
201 4:25.
2019 8:5.
2020 7:10, 7:15, 7:25,
   44:5.
2020. 7:9.
2021 47:12.
2022 47:12.
21-cv-560 1:19.
29 38:23, 39:6.
.
< 3 >.
30 39:16.
31 40:2.
32 40:13.
35 3:14.
38 3:16.
.
< 4 >.
4 3:6.
42 29:17, 30:1.

.
< 5 >.
503 29:18.
503(a 30:1.
53703 2:31.
53703. 4:25.
53717 2:15.
.
< 8 >.
8150 2:14.
8:58 1:38, 2:8.
8th 2:7, 49:9.
.
< A >.
A-m-y 4:13.
A. 2:12.
a.m. 1:38, 2:8, 42:6,
   48:17.
ability 10:25, 23:3, 23:7,
   26:19.
able 6:20, 6:22, 19:5, 22:10,
   22:12, 26:5, 37:5, 37:7,
   37:21, 44:17.
above-entitled 2:3.
Absolutely 25:22.
acceptable 5:16.
accordance 49:11.
account 12:11.
accounting 17:2.
accurate 37:4.
acronym 33:8.
Act 23:24, 24:3, 24:6, 24:7,
   24:25, 30:5, 48:4.
action 49:16.
activities 45:2.
ADA 24:1, 48:5.
additional 12:17.
address 4:14, 4:21, 4:24.
Adjourned 48:17.
administer 11:9, 11:23,
   42:24, 43:15, 45:10.
administered 32:8, 39:25,
   40:24, 41:17.
administering 11:13.
Administration 6:15, 8:5,
   8:16, 9:3, 10:12, 10:23,
   10:25, 12:15, 16:13, 17:1,

50

---

44:9, 47:23.
administrative 9:10, 11:16,
   11:24, 12:16, 16:17, 16:23,
   20:8, 42:16, 45:3.
Administrator 9:17, 44:13,
   44:14.
advance 9:11, 38:20.
advancement 9:14.
advising 45:23.
advocated 6:17.
Affairs 31:9, 31:12, 32:21,
   45:20.
affixed 49:18.
age 2:2.
agree 39:4, 39:5, 41:12,
   41:14.
agreed 43:22.
agreement 6:22.
ahead 23:23, 41:5.
align 48:3.
allowed 24:10.
allowing 47:23, 48:7.
almost 12:11.
already 16:2, 21:1, 21:3.
although 15:15.
Americans 24:3, 24:6,
   31:14.
amount 12:13, 13:5, 15:3,
   15:7, 15:12, 18:20, 19:20,
   20:7, 20:25, 21:4, 21:7,
   28:7, 36:25.
Amy 1:21, 1:34, 2:1, 4:1,
   4:13, 49:8.
and/or 24:6.
Answer 9:2, 13:3, 19:14,
   27:19, 28:15, 28:16, 37:23,
   41:4, 41:5, 42:21, 47:21.
answers 5:10, 5:14, 5:16,
   5:17.
Anybody 46:22, 47:7.
appearing 2:17, 2:24, 2:33.
appellate 17:4.
applicant 21:6, 28:20, 34:9,
   38:1, 46:5, 46:7.
application 17:11.
applied 37:6, 39:18, 40:4,
   40:15.
apply 6:20, 18:17, 20:16,
   37:8.
applying 17:17.

appointed 7:8, 8:8, 9:25.
approved 30:3.
approving 30:8.
approximately 9:20, 36:20.
arrived 36:23.
aside 21:1, 22:5.
assertions 39:6.
Assistance 6:10, 25:2, 31:10,
   31:13, 31:22, 32:2, 32:22,
   33:5.
Assistant 2:28, 44:11, 44:20,
   45:12.
associated 12:18, 33:24,
   34:15.
assume 43:2, 46:6.
attempting 46:1.
Attorney 2:21, 2:28, 3:6,
   3:7, 3:21, 49:14, 49:15.
authority 10:15, 10:20, 11:6,
   11:14, 45:9.
automatically 15:13, 24:13,
   32:14.
Avenue 4:25.
avoid 5:9, 5:10.
awarded 20:14.
aware 20:24, 21:5, 21:13,
   21:18, 21:19, 22:7, 30:7,
   30:11, 30:17, 34:15.
.
< B >.
Back 7:1, 16:10, 11:21, 20:2,
   21:19, 23:22, 41:23, 42:3,
   42:7.
background 8:7, 12:4.
backlog 7:23.
balance 12:11, 13:22, 14:2,
   15:14.
ban 31:6, 31:17, 37:3, 37:7,
   47:1.
based 12:12, 14:24, 19:25,
   37:11, 39:10.
Basically 15:5.
basis 27:3.
Bear 35:3, 44:7.
become 25:16.
began 8:4.
begin 33:18.
beginning 40:6, 40:18.
behalf 2:2, 2:18, 2:25,

51

---

2:34.
**believe** 10:7, 10:10, 12:24, 13:16, 13:22, 16:16, 19:2, 21:8, 23:4, 24:11, 25:2, 27:4, 29:8, 29:12, 30:25, 37:4, 37:19, 38:11, 39:13, 44:2, 46:9, 47:15, 47:22.
**BEMKE** 1:12.
**beneficiaries** 25:3, 26:10, 29:4.
**beneficiary** 24:9, 27:13.
**benefit** 12:25, 17:11, 18:7, 18:22, 19:20, 20:4, 20:7, 20:25, 21:4, 21:6, 22:19, 22:22, 23:13, 24:10, 28:8, 28:10, 28:19, 36:19, 39:10, 39:11, 46:6, 48:8.
**benefits** 5:2, 11:2, 11:17, 14:9, 14:10, 14:12, 14:17, 17:1, 17:18, 17:21, 17:25, 18:10, 18:13, 18:17, 19:1, 19:6, 19:11, 19:16, 20:14, 20:15, 21:10, 21:15, 21:20, 22:4, 23:12, 23:15, 23:17, 24:13, 24:14, 24:16, 24:17, 24:20, 25:4, 25:10, 25:11, 25:21, 26:8, 26:9, 26:17, 26:23, 27:1, 27:11, 27:14, 27:16, 27:23, 28:1, 28:2, 29:2, 29:6, 29:7, 29:14, 30:10, 31:14, 31:18, 32:10, 32:11, 32:13, 32:15, 32:21, 32:24, 33:1, 33:5, 33:7, 33:10, 33:11, 33:14, 33:15, 33:17, 33:21, 34:8, 34:9, 34:10, 34:16, 34:17, 34:18, 37:1, 38:2, 38:3, 38:14, 39:7, 39:9, 39:19, 40:6, 40:16, 40:18, 45:6, 46:2, 46:13, 47:15.
**benefits.** 36:7.
**best** 5:9, 5:10, 9:11, 12:18, 12:20, 16:19, 29:9, 31:2, 37:19, 44:3, 46:10.
**bet** 37:19.
**better** 19:14.
**biennial** 47:12.
**big** 17:8.
**bill** 14:23.
**bit** 42:4.

**bound** 10:22, 11:8, 42:18, 43:15.
**bounds** 45:17.
**break** 34:13, 41:22.
**BRIAN** 1:12.
**broader** 48:3.
**broadly** 16:24.
**broke** 26:24, 31:24.
**budget** 47:13.
**burden** 15:5.
**Bureau** 31:9, 31:12, 32:21, 45:19.
**businesses** 9:13, 15:17, 17:3.

< C >.
**C.** 2:27.
**calculate** 36:25.
**calculated** 19:21, 37:24, 39:8.
**calculating** 21:10.
**calculation** 20:4.
**Caleb** 6:6, 6:15, 6:21, 7:1, 25:7.
**call** 17:6, 22:15, 22:16.
**called** 32:4.
**calls** 7:17, 42:20, 47:19.
**capacity** 1:22, 4:17, 23:7.
**capture** 37:8.
**Carolina** 29:8, 29:11, 29:12, 29:14.
**Case** 1:19, 38:16.
**cash** 31:14, 32:6.
**categories** 14:7.
**cause** 2:3.
**caused** 15:22.
**causing** 48:8.
**centers** 17:6.
**certain** 10:24, 14:25, 15:14, 18:3, 19:2, 19:6, 20:15, 22:10, 22:12, 39:14.
**certificates** 8:18.
**certification** 30:2.
**certify** 49:6, 49:13.
**certifying** 29:19.
**cessation** 40:15.
**chance** 41:19.
**change** 10:18, 11:6, 25:17, 36:14, 36:19.

20:16, 20:18, 22:21.
**cumbersome** 34:12.
**cumulative** 25:11.
**current** 10:18, 39:12.
**cursor** 35:7.
**customers** 17:6.
.
.
< D >.
**daily** 44:16.
**DANE** 49:3.
**Danielle** 44:12, 44:21.
**data** 37:11, 37:14.
**date** 9:25, 10:11.
**day** 2:7, 49:9, 49:18.
**day-to-day** 10:12, 45:2.
**December** 7:8.
**decided** 38:1.
**deciding** 44:9.
**decision** 11:2, 37:11.
**decisions** 11:13.
**declare** 29:15.
**decrease** 36:19.
**dedicated** 45:20.
**Defendant** 1:26.
**defendants** 2:34.
**define** 10:17.
**defined** 12:2, 23:21, 24:5.
**degree** 8:13, 8:15.
**degrees** 8:17.
**denied** 17:18, 37:6.
**Department** 1:24, 2:29, 6:12, 6:23, 7:3, 7:9, 7:12, 8:2, 8:9, 9:1, 9:4, 9:6, 9:16, 11:1, 11:14, 11:22, 14:23, 20:11, 20:21, 27:6, 30:13, 33:13, 34:7, 34:20, 36:16, 42:12, 42:15, 42:18, 44:8, 45:1, 45:22, 46:20.
**departmentwide** 45:3.
**depending** 14:22, 15:4.
**deposed** 4:26.
**DEPOSITION** 1:14, 2:1, 5:25, 29:24, 35:21, 38:17, 38:21, 43:18, 49:7.
**Deputy** 8:1, 8:3, 44:10, 44:11, 44:20, 44:24.
**designee** 7:6, 7:8, 8:9, 8:19, 8:21, 44:10.
**detailed** 19:14.

**details** 29:16.
**determine** 28:1, 28:18.
**determined** 37:5.
**determining** 30:9.
**Development** 7:4, 7:12, 8:10, 9:1, 9:5, 9:16, 27:7, 42:18, 44:8.
**difference** 14:6, 23:20.
**different** 8:21, 14:20, 23:17, 44:23.
**dinner** 8:25.
**direction** 9:4.
**directly** 30:25.
**director** 7:10.
**Disabilities** 24:3, 24:6.
**Disability** 6:14, 21:25, 22:16, 23:21, 24:5, 48:7.
**disabled** 22:20, 22:5, 23:12, 28:25, 47:2, 47:18, 48:10.
**disadvantage** 15:17.
**disagree** 39:4, 39:5, 41:13, 41:14, 43:17.
**disagreed** 43:12.
**disclose** 23:6.
**discovers** 33:13.
**discretion** 11:15, 11:22, 11:25, 20:12, 20:21.
**discrimination** 25:23.
**discussions** 46:20.
**disparate** 47:18.
**DISTRICT** 1:7, 1:18.
**Division** 9:6, 9:7, 9:8, 9:9, 9:16, 9:17, 10:16, 10:19, 11:4, 11:7, 16:3, 16:9, 17:4, 17:5, 26:8, 27:25, 28:18, 44:15.
**divisions** 9:5, 45:24.
**document** 36:1, 36:12, 38:20, 39:2, 42:10.
**documents** 5:24.
**DOL** 25:8, 44:2.
**dollar** 37:24.
**dollars** 21:9, 36:20.
**done** 11:4, 15:8, 15:10, 15:17, 33:19, 36:10, 39:1, 39:3, 41:9, 41:11.
**down** 34:13, 36:5.
**Drive** 2:14.
**due** 7:22, 19:3, 29:21, 37:6, 48:12.

52     54

**changes** 10:21.
**charge** 9:15.
**check** 10:19.
**checking** 10:21.
**Chief** 2:37, 26:4, 37:20, 44:22, 45:23.
**Chiolino** 9:18, 10:11, 10:22, 16:15, 19:13, 25:14, 28:5, 34:3, 34:24, 43:7, 44:13, 44:14, 45:19.
**circle** 21:18.
**circumstances** 18:12, 20:24, 46:7.
**Civil** 2:4.
**claim** 7:23.
**claims** 13:7, 13:15, 13:19, 13:23, 13:25, 14:1, 14:4, 14:19, 17:1.
**clarification** 6:16, 23:10, 25:6.
**clarify** 46:3.
**clarity** 22:8.
**clause** 29:22, 29:23.
**clear** 31:5.
**CLIFFORD** 1:15.
**co-counsel** 41:20.
**collect** 48:7.
**collecting** 21:25, 24:21, 38:12, 47:24.
**collection** 33:18, 33:21, 33:25, 34:14, 46:12.
**COLLETT** 1:12.
**comes** 18:14, 18:19.
**commencing** 2:8.
**Commission** 49:23.
**committed** 34:10.
**compared** 28:25.
**Compensation** 5:2, 9:8, 11:17, 12:5, 13:6, 13:13, 16:3, 16:10, 17:11, 17:25, 18:12, 19:11, 19:16, 21:15, 22:9, 23:15, 24:14, 24:16, 24:17, 25:4, 25:10, 26:8, 26:9, 27:11, 27:15, 28:3, 28:5, 28:21, 29:6, 30:10, 30:22, 31:19, 32:11, 32:15, 33:1, 33:11, 33:14, 34:1, 34:17, 37:1, 38:3, 39:19, 43:6, 38:16.
**Complaint** 3:16, 6:3, 29:23, 38:16.

**completely** 4:23, 46:21.
**comported** 10:20.
**comports** 30:14.
**comprehend** 34:14.
**concealed** 34:10.
**concealment** 34:21.
**concerned** 30:6.
**concluded** 36:13.
**conclusion** 34:9, 34:20, 42:21, 47:20.
**concurrent** 36:6.
**condition** 23:2.
**conduct** 37:21.
**confer** 45:8.
**confusing** 21:17, 28:14.
**consultation** 11:4.
**continue** 41:23.
**continues** 33:20.
**conversations** 47:8, 47:11.
**copies** 35:10.
**copy** 26:2, 26:6, 37:18.
**Correct** 7:13, 9:23, 14:15, 15:24, 16:5, 16:7, 16:16, 17:23, 18:12, 18:5, 18:8, 19:12, 20:10, 20:16, 20:17, 20:20, 23:19, 24:4, 25:6, 25:15, 26:20, 27:10, 27:24, 31:8, 32:19, 33:3, 34:19, 36:4, 38:22, 43:8, 43:10, 43:21, 43:24, 44:6, 45:13, 45:18, 48:11.
**Corrections** 8:2.
**correctly** 40:21.
**costs** 12:15, 12:17, 12:25, 13:1.
**Counsel** 2:37, 26:4, 35:9, 37:20, 47:5, 47:7, 49:14, 49:16.
**COUNTY** 49:3.
**couple** 23:8.
**course** 44:21.
**COURT** 1:7, 5:12, 5:16, 10:8.
**COVID** 14:13, 15:22, 15:25.
**COVID-19** 6:12, 14:10, 15:18.
**Covid-related** 16:6.
**criminal** 8:15.
**crisis** 15:22.
**criteria** 18:4, 18:6, 20:7,

53

AMY PECHACEK

48:1.
**duly** 4:2, 49:8.
**duplicative** 26:17, 27:23, 28:1.
**duties** 8:20, 8:21, 9:21, 10:11, 44:23, 44:25.
**DWD** 2:37, 35:5, 39:18, 40:4, 40:15.
.
.
**< E >.**
**earlier** 43:18.
**earnings** 18:20, 18:21, 20:2, 20:24, 21:6, 21:14, 26:18, 39:10.
**earns** 21:4.
**easier** 34:13.
**East** 4:25.
**economic** 9:13.
**economically** 15:17.
**education** 8:12.
**effort** 28:17, 33:18, 33:22.
**efforts** 33:25, 34:15.
**either** 12:10.
**eligibility** 11:10, 12:1, 30:9, 30:12, 30:16, 31:3, 31:6, 31:17, 37:3, 37:7, 39:10.
**eligible** 17:20, 17:25, 18:3, 22:9, 26:10, 28:19, 31:14, 33:20, 38:4, 38:13, 47:14, 47:16.
**elongated** 41:22.
**email** 35:15.
**emphasis** 8:14.
**employed** 17:21, 18:10, 18:12, 19:1.
**employee** 19:10, 19:21, 20:4, 20:14, 20:25, 22:10, 22:22, 28:20, 29:6, 49:14, 49:15.
**employees** 12:13, 13:2, 15:3, 44:8.
**employers** 12:10, 14:23, 14:25, 15:5, 15:13, 39:14.
**Employment** 9:7, 48:6.
**enacting** 26:15.
**encouraging** 6:19.
**ends** 5:9, 5:11.

**engage** 23:3.
**engaged** 34:21.
**engagement** 45:1.
**enough** 44:17.
**entire** 39:20, 45:23.
**entirely** 13:2.
**entitled** 18:6, 19:21, 20:15, 27:14, 28:8, 38:2.
**entitlement** 36:20.
**entrepreneurs** 9:13.
**Equal** 9:9.
**establish** 17:17.
**Estimate** 3:14.
**Estimates** 35:5.
**Eugene** 44:3.
**EVAN** 1:14.
**Evers** 8:4, 47:12.
**exact** 25:24, 39:14.
**exactly** 9:25.
**EXAMINATION** 3:4, 4:8, 42:8.
**examined** 4:4.
**examines** 36:12, 39:2, 41:10.
**example** 18:18.
**examples** 21:5, 21:11.
**Excelsior** 2:14.
**excess** 27:14.
**excluded** 32:25.
**exclusion** 28:24, 29:1, 30:20, 31:6.
**exclusively** 14:13.
**executive** 44:14, 45:8, 45:23.
**exerted** 28:17.
**Exhibit** 35:2, 35:4, 35:21, 36:3, 38:15, 38:17.
**exhibits** 35:1, 35:9.
**exist** 37:18.
**exists** 37:15.
**expects** 30:21.
**Expires** 49:23.
**expressed** 46:25.
**extent** 44:13, 45:9.
.
.
**< F >.**
**face** 45:1.
**factors** 12:14.
**fair** 47:1.
**falls** 15:6.

**guidance** 42:15, 42:23, 42:24, 43:1.
.
.
**< H >.**
**hand** 49:18.
**happens** 13:18, 14:2, 14:18, 33:15.
**happy** 35:24.
**hard** 33:7, 33:8.
**harm** 48:8.
**head** 5:15, 15:2, 23:9.
**heard** 33:7, 33:8.
**held** 9:19, 10:2, 19:3.
**help** 17:5.
**hereby** 49:6.
**hereunto** 49:17.
**high** 8:12, 17:12, 19:23.
**highlights** 17:8.
**hits** 14:24.
**home** 41:14.
**hour** 41:19.
**hours** 11:11, 18:15, 18:16, 20:3.
.
.
**< I >.**
**Identified** 3:12.
**identify** 44:7.
**identifying** 36:1.
**ignore** 11:25.
**impact** 11:2, 34:6, 34:22, 47:18.
**impacted** 13:7.
**impacts** 28:24, 30:12.
**impairment** 23:6.
**implement** 10:18, 10:20, 11:12, 31:4, 42:24.
**important** 46:18.
**imposed** 15:13.
**include** 44:25.
**includes** 30:5.
**including** 9:5, 9:12.
**income** 18:18, 19:5, 26:18, 47:25, 48:3, 48:6.
**incorrectly** 33:22.
**increase** 15:6, 15:12.
**Indian** 31:9, 31:12, 32:21.
**indicates** 37:10.
**individual** 18:16, 19:2, 23:2,

23:6, 26:19, 33:20, 39:18, 40:5, 40:16, 40:17, 40:19.
**individual.** 39:21.
**individuals** 6:13, 6:17, 6:23, 21:8, 21:24, 29:1, 32:7, 37:6, 37:8, 46:14, 47:14, 47:24, 48:9, 48:10.
**ineligibility** 47:1.
**ineligible** 21:14, 28:13, 29:5, 29:15, 32:14, 33:11, 39:19, 40:5, 40:18.
**influenced** 11:1.
**initiated** 36:14.
**inquiry** 37:21.
**instance** 43:11.
**instances** 18:25, 19:9, 43:14.
**Insurance** 7:23, 9:8, 10:13, 10:16, 11:4, 11:7, 12:9, 13:7, 13:23, 22:16, 27:25, 28:18, 45:22.
**intent** 26:15.
**interact** 17:6.
**interested** 49:16.
**interfaces** 17:3.
**interpret** 11:15.
**interpretation** 6:9, 6:16, 11:1, 11:24, 45:5.
**interpreted** 39:18, 40:3, 40:14, 41:17.
**interpretive** 45:9.
**interrupt** 35:15.
**involved** 6:9, 46:1, 46:4.
**involves** 46:13.
**irrelevant** 43:17.
**issue** 11:3.
**issued** 39:21, 40:5, 40:7, 40:17, 40:19, 42:15.
**issues** 4:20, 7:22, 42:16.
.
.
**< J >.**
**JAMIESON** 1:14.
**January** 8:5.
**Jennifer** 2:36, 26:5, 37:20, 44:22.
**Jim** 9:18, 10:22, 16:15, 44:13.
**job** 8:20, 8:21, 9:12, 10:11,

**familiar** 14:14, 17:10, 17:12, 22:14, 22:19, 22:20, 24:22, 29:17, 29:20, 31:9, 31:21.
**Families** 31:22, 32:2.
**fast** 44:17.
**fault** 19:4, 48:1.
**Federal** 2:4, 6:11, 6:18, 11:8, 12:2, 12:16, 16:3, 16:10, 16:12, 16:24, 21:9, 24:16, 27:8, 29:17, 30:4, 30:14, 30:22, 31:2, 43:16.
**federally-funded** 14:5, 14:10, 14:12.
**feel** 17:10, 39:4.
**FERIOZZI** 1:13.
**few** 12:3.
**figure** 37:4, 37:24, 45:15.
**file** 46:9.
**filed** 3:21, 13:8, 13:15, 41:4.
**financially** 49:16.
**find** 37:17.
**finding** 47:25.
**finds** 30:3.
**Fine** 4:22, 4:23, 35:19, 42:1, 46:18.
**FINIZ** 1:13.
**first** 4:2, 18:14, 18:18, 40:4, 44:17, 49:8.
**Fiscal** 3:14, 35:5.
**Fitzpatrick** 3:7.
**five** 36:2.
**five-point** 23:4.
**folks** 6:19, 48:5.
**follow** 5:5, 42:18, 43:1.
**follow-up** 48:15.
**following** 40:15.
**follows** 4:4.
**for...** 30:5.
**FORBERGER** 2:20.
**forego** 38:1.
**foregoing** 49:6.
**form** 5:14.
**forming** 13:10.
**formula** 15:1, 15:7, 19:25, 39:15.
**forth** 25:20, 47:13, 48:4.
**forward** 33:19.

**found** 46:5.
**foundational** 7:21.
**four** 36:2.
**fraud** 34:10, 34:21.
**freeze** 15:16.
**frequency** 27:4.
**fresh** 5:5.
**fringe** 12:25.
**Frostman** 6:6, 6:15, 6:21, 7:1, 7:11, 25:7, 25:18, 43:19.
**frozen** 15:20, 15:22, 15:25.
**function** 17:5, 20:4.
**functions** 9:10, 16:23, 44:16, 44:3, 45:22.
**Fund** 12:9, 13:23, 14:3, 14:18, 14:20, 15:4, 15:14, 16:12.
**funded** 12:8, 12:9, 12:15, 13:17.
**funding** 13:14, 14:22, 14:24, 15:6, 15:11, 16:10, 16:12, 16:24.
**funds** 13:24, 16:4, 30:23.
**future** 33:17, 46:13.
.
.
**< G >.**
**gainful** 48:6.
**gap** 18:18.
**General** 2:28, 12:19, 42:23.
**generally** 9:21, 17:17.
**gets** 15:14.
**getting** 12:14, 17:13, 23:14, 23:22, 28:10, 31:18, 32:25, 34:8, 34:10, 34:15, 34:18, 46:3.
**GINGRAS** 2:13.
**give** 8:11, 8:24.
**Given** 4:19, 37:2, 37:8.
**goal** 48:4.
**Gosh** 8:25.
**government** 6:11, 12:17, 26:17, 27:8, 27:23, 31:3, 32:7.
**Governor** 8:8, 47:10, 47:12.
**grants** 12:16.
**granular** 17:14.
**greater** 28:9.
**guess** 7:19.

MADISON FREELANCE REPORTERS, LLC

AMY PECHACEK

13:10, 17:24, 39:12,
48:1.
**jobs** 19:3, 22:11, 22:12.
**JOHN** 1:13.
**JOHNSON** 1:14.
**judges** 16:17.
**JUDY** 1:13.
**June** 44:4.
**JUSTICE** 2:29, 8:15.
.
< K >.
**KILPATRICK** 2:27, 4:15, 4:19,
7:17, 13:20, 21:16, 22:22,
27:17, 28:11, 35:14, 35:20,
41:1, 41:15, 42:1, 42:20,
47:19, 48:14.
**kilpatricksc@doj.state.wi.us**
2:32.
**kind** 12:3, 16:18, 19:14.
**kinds** 5:17, 31:18.
**KINNE** 2:12, 3:6, 3:21, 4:10,
4:18, 4:22, 11:19, 41:18,
42:2, 42:7, 42:9, 48:12,
48:16.
**kinne@gtwlawyers.com** 2:16.
**knowledge** 12:18, 12:20,
16:19, 29:9, 31:2, 39:5,
39:7, 41:13, 46:10.
.
< L >.
**L.** 1:41, 2:5, 49:4.
**Labor** 6:23, 29:18, 30:1,
30:4, 30:8, 30:13, 30:20,
30:25, 42:12, 42:15,
43:25.
**lack** 20:12, 39:4, 39:7,
41:13.
**lacks** 20:11.
**larger** 13:18, 14:1.
**Last** 4:29, 5:19, 11:21,
41:7.
**Law** 2:21, 12:2, 16:17, 18:1,
20:18, 30:3, 37:9, 43:16.
**lawful** 2:2.
**laws** 21:19, 22:4, 23:12,
31:3, 45:10.
**lawyers** 45:25, 46:20.
**least** 5:19, 10:21, 43:5,

43:9.
**leave** 7:14, 8:7.
**left** 7:16, 7:21.
**Legal** 2:37, 26:4, 37:20,
42:21, 44:22, 45:14, 45:18,
45:20, 45:23, 45:24, 47:5,
47:7, 47:20.
**legislation** 15:15, 30:11,
30:14.
**Legislature** 26:15, 27:22,
36:16.
**less** 28:20.
**lesser** 44:12.
**letter** 25:21, 25:23, 25:24,
25:25, 26:1, 42:10, 43:19,
43:23, 43:25, 44:2, 44:4.
**letters** 43:3.
**level** 14:22, 14:25, 15:4,
15:14, 15:16, 17:12,
19:23.
**levels** 14:20.
**levy** 12:19, 12:22, 12:23,
13:6, 13:12.
**lien** 46:15.
**likely** 26:5.
**limit** 21:20, 22:4, 23:12.
**limits** 23:3.
**lines** 17:5.
**little** 34:13, 41:7, 42:4.
**living** 48:9.
**LLP** 2:13.
**locations** 2:7, 49:10.
**LONG** 1:15, 8:3, 9:19,
34:12.
**longer** 41:7.
**look** 30:18.
**look-back** 39:13.
**Looking** 35:17.
**lose** 17:24.
**loss** 39:12, 48:11.
**lost** 19:3, 26:18.
**lot** 44:25.
**low** 15:6.
.
< M >.
**Madame** 35:16.
**Madison** 2:15, 2:22, 2:31,
4:25.
**Main** 2:30.

35:11, 35:13, 35:20, 35:21,
36:5, 36:11, 36:13, 37:10,
37:22, 38:16, 39:9, 41:5,
41:18, 41:24, 42:2, 42:14,
43:2, 43:18, 44:7, 45:5,
45:11, 45:16, 45:25, 46:11,
46:21, 47:6, 47:11, 47:17,
48:16.
**Once** 20:14.
**one** 6:11, 9:20, 13:4, 13:11,
17:21, 18:9, 18:14, 19:3,
22:5, 25:9, 32:9, 35:25,
36:2, 41:7, 44:7.
**ones** 14:14, 17:8.
**operational** 11:3, 11:10,
45:4.
**operations** 12:14.
**opining** 30:20.
**opinion** 30:13, 30:24, 47:1.
**opinions** 31:1.
**order** 18:3, 22:8, 22:9, 23:11,
23:5, 30:22, 42:17.
**Original** 3:21.
**originally** 7:9.
**otherwise** 26:10, 28:19, 38:4,
38:13.
**overall** 9:3, 9:13, 12:22.
**overpaid** 46:5.
**overpayment** 33:18, 46:12.
**override** 11:25.
**oversee** 9:3.
**oversees** 10:12.
**oversight** 45:4.
**own** 19:4, 48:2.
.
.
< P >.
**P-e-c-h-a-c-e-k** 4:13.
**P-O-A** 24:23.
**Page** 51:4.
**pages** 36:2.
**paid** 13:24, 16:24, 22:4,
26:23, 27:1, 27:3, 27:6,
27:8, 27:11, 37:2.
**Pam** 44:11, 44:20, 44:24,
45:2.
**Pandemic** 6:10, 14:11, 14:13,
15:18, 15:23, 15:25, 16:9,
16:25, 24:25, 25:2, 35:2.
**Paragraph** 26:16, 35:25, 36:5,

36:13, 36:15, 36:18, 37:10,
38:23, 39:6, 39:16, 40:2,
40:13, 41:13.
**parameters** 12:2.
**part** 12:11, 15:7, 42:22.
**particular** 18:21, 47:8.
**parties** 49:15.
**party** 8:25.
**past** 14:15, 15:15.
**Paul** 2:12, 4:15, 35:14, 41:1,
41:2, 48:15.
**pausing** 38:5, 38:7, 38:8.
**pay** 12:10, 15:1, 34:22.
**paying** 13:24, 26:9.
**payment** 5:1, 11:16, 26:16,
29:19, 30:2, 30:9, 39:21,
40:4, 40:7, 40:17, 40:19,
45:6, 46:14.
**payments** 32:6, 33:22, 38:5,
38:7, 38:8.
**payroll** 12:13, 15:3.
**Pays** 13:5, 16:14, 16:17.
**PECHACEK** 1:34, 2:1, 4:1,
4:13, 4:14, 4:24, 49:8.
**PECHACEK** 1:21.
**penalty** 33:24.
**pension** 13:1, 21:9.
**people** 11:11, 22:5, 23:13,
28:25, 31:18, 32:13, 32:20,
32:24, 33:10, 44:18, 47:2,
47:18.
**percent** 31:5.
**percentage** 22:10, 22:12.
**perfect** 35:3.
**perfectly** 4:23.
**perhaps** 37:21, 46:14.
**period** 39:13.
**permanent** 18:16.
**person** 21:14, 24:12, 29:15,
34:22, 37:14, 38:2.
**personally** 43:16.
**place** 49:12.
**placed** 46:15.
**Plaintiffs** 1:17, 2:3, 2:18,
2:25.
**plans** 46:14.
**played** 45:14.
**Please** 4:11, 5:10, 5:20,
11:18, 11:20, 13:9, 21:2,
26:24, 31:24, 34:11, 36:10,

58                                                                                                        60

**Mark** 10:5, 10:6, 10:7.
**marked** 35:21, 38:17.
**master** 8:15.
**matter** 34:5, 47:15.
**matters** 45:21, 45:24.
**maximum** 20:1.
**Mcdonald** 1:41, 2:5, 49:4.
**Mcgillivray** 44:11, 44:20,
44:24, 45:2.
**mean** 22:17, 29:22, 38:5,
43:16, 46:3, 46:9, 46:16.
**mechanical** 5:4, 12:4.
**meet** 18:3, 18:6.
**mentioned** 16:2.
**methods** 30:8.
**million** 36:20, 37:24.
**mind** 5:5, 18:14, 18:19,
46:21.
**minimums** 20:1.
**Minnesota** 37:12.
**minutes** 12:3, 41:23.
**missing** 16:22.
**month** 39:20, 40:4.
**month.** 40:8, 40:20.
**monthly** 27:3.
**months** 4:29, 9:24.
**Ms** 4:14, 4:24.
**multiple** 19:3.
**mute** 42:3.
**myself** 23:23, 44:10.
.
.
< N >.
**name** 4:11.
**names** 44:18.
**Narratives** 3:14, 35:5.
**Native** 31:14.
**Neady** 31:22, 32:2.
**NEUMANN** 1:15.
**new** 30:11.
**nine** 9:24.
**No.** 1:19, 5:3, 8:23, 12:24,
16:1, 20:23, 25:19, 42:11,
43:4, 46:24.
**nodding** 5:15.
**nominal** 15:6, 15:12.
**non-disabled** 28:25.
**normal** 13:18, 14:2.
**North** 29:11, 29:13.
**Northwestern** 8:17.

**Nos.** 3:12.
**nosy** 8:6.
**Notary** 2:9, 49:5, 49:22.
**notes** 49:11.
**notice** 2:5, 33:18.
**nowadays** 10:6.
**number** 8:18, 13:7, 13:14,
13:19, 14:1, 14:19, 20:3,
36:23.
**Nutrition** 33:4.
**nutshell** 9:10.
.
.
< O >.
**oath** 4:2, 5:6.
**object** 4:16, 41:2.
**Objection** 7:17, 13:20, 21:16,
22:2, 27:17, 28:11, 41:1,
41:15, 42:20, 47:19.
**obtain** 26:6.
**obvious** 16:22.
**occurred** 47:9.
**occurs** 18:15.
**offhand** 10:1.
**Office** 4:21, 6:22, 8:5, 11:5,
45:18, 47:10, 49:18.
**offices** 31:1.
**official** 1:21, 4:17.
**officials** 4:20.
**offset** 18:21, 19:10, 20:25,
21:4, 21:16, 21:9, 25:10,
29:14, 31:7, 32:11,
33:19.
**offsetting** 46:13.
**Okay** 4:18, 5:1, 5:12, 5:17,
5:22, 6:7, 7:1, 7:16, 7:24,
8:11, 8:24, 9:21, 10:8,
10:11, 11:6, 12:3, 12:6,
12:21, 13:4, 14:1, 14:6,
14:16, 15:12, 15:19, 16:17,
17:10, 17:13, 17:14, 17:18,
18:20, 18:25, 19:7, 19:24,
21:11, 22:3, 22:8, 22:14,
22:21, 22:24, 23:10, 23:17,
23:20, 24:9, 24:12, 25:3,
25:9, 25:25, 26:2, 26:7,
26:14, 26:19, 26:20, 27:5,
27:13, 28:7, 28:17, 28:24,
29:13, 29:25, 31:5, 32:9,
32:24, 33:9, 34:2, 34:24,

59

AMY PECHACEK

38:25, 46:3.
point 17:13, 17:22, 33:16.
policies 10:24, 11:11.
policy 8:16, 9:3, 10:15, 10:17, 11:2, 11:7, 44:9, 45:5, 47:8, 47:13, 47:15, 47:22, 48:3.
portion 13:12.
position 6:13, 7:7, 8:4, 9:19, 10:2, 19:14, 25:17, 25:20.
possible 28:7.
post 8:12.
potentially 17:24.
practices 10:19.
preceded 7:11.
precluded 23:14, 24:13, 24:19.
predates 30:16.
premium 12:11.
preparation 29:24.
prepare 5:24.
presence 49:10.
Present 2:36.
press 6:5, 6:7, 6:9, 6:19.
presumably 30:18.
pretty 35:2, 37:23.
prevent 26:16, 27:23.
prevents 26:8.
Previously 6:12.
prior 6:5, 6:21, 7:24, 20:2, 25:7, 39:14, 43:19.
privacy 4:19.
private 46:25.
probably 25:13.
problem 35:11.
Procedure 2:4.
procedures 10:24, 11:11.
process 19:18, 46:12.
program 6:10, 10:13, 10:23, 11:9, 11:13, 11:23, 12:12, 12:15, 12:19, 12:22, 16:4, 16:13, 31:4, 31:10, 31:13, 31:23, 32:2, 32:8, 32:22, 38:6, 38:10, 38:12, 39:24, 40:23, 41:16, 42:10, 42:24, 45:10.
programs 6:12, 14:5, 43:15.
Prohibiting 36:6.
prohibition 47:14.

prohibits 21:24, 29:1.
promote 9:11.
proposed 30:11.
provide 32:6.
provided 33:23.
provides 31:13.
provision 30:5.
PUA 6:10, 6:14, 6:18, 6:20, 6:24, 24:22, 25:2, 25:3, 25:11, 25:21.
Public 2:5, 8:16, 49:5, 49:22.
public-facing 44:25.
purposes 23:10.
Pursuant 2:4, 39:16, 40:2, 40:13.
Put 42:3, 46:21, 47:13.

.

< Q >

qualification 22:25.
qualification 23:8.
qualifies 22:22.
qualify 6:14, 6:18, 6:24, 18:10, 18:13, 19:1, 19:6, 23:1, 23:5, 25:3, 38:13, 48:2.
quantify 37:5.
quarters 20:2.
question 5:19, 7:20, 9:2, 11:18, 11:21, 13:9, 13:21, 21:2, 22:13, 22:13, 25:13, 26:25, 27:20, 28:5, 28:13, 34:2, 34:12, 34:24, 35:7.
questions 5:11, 19:15, 41:21, 48:15.
quite 9:23.

.

< R >

R-i-e-h-l 10:10.
rather 35:10, 35:16.
read 11:19, 27:22, 29:23, 36:9, 36:15, 38:25, 39:16, 40:8, 40:21, 41:8.
reading 36:13.
reads 11:21.
Really 45:16, 46:18.
recall 9:25, 10:1, 21:12,

35:25.
salary 16:15.
SANDRA 1:41, 2:5, 49:4.
Sandy 11:19.
SARAH 1:14.
saw 43:12.
Saying 5:14.
says 8:25, 26:21, 30:1, 33:10.
Scalia 6:23, 25:8, 44:3.
scenario 38:11.
schedule 14:24, 14:25.
schedules 14:21.
school 8:12.
SCOTT 1:12.
screen 35:4, 35:18, 35:19, 38:15.
seal 49:18.
second 44:7.
Secretary 6:6, 6:15, 6:21, 6:23, 7:6, 7:8, 8:1, 8:3, 8:9, 8:19, 8:20, 8:21, 8:22, 9:1, 11:5, 25:7, 25:8, 25:16, 29:18, 30:1, 30:4, 30:8, 30:19, 30:25, 35:16, 43:19, 43:25, 44:2, 44:10, 44:11, 44:12, 44:20, 44:21, 44:24, 45:12.
Secretary-designee 1:22.
Section 29:18, 30:1, 39:17, 40:3, 40:14.
Security 6:14, 21:24, 22:15.
seekers 9:12.
seen 35:12.
seized 33:17.
send 35:9, 35:15.
sense 45:11, 45:25.
sent 44:4.
separate 45:18.
September 7:10, 7:15, 7:24.
Services 31:10, 31:13, 32:22.
set 10:15, 20:8, 20:18, 25:20, 48:4, 49:17.
sets 20:7.
several 9:5, 12:13, 20:2.
shaking 5:15.
shall 30:2.
share 18:14.

shared 35:4, 38:15.
Shorthand 49:4.
side 17:2.
significant 11:3.
situation 18:21.
situations 21:13.
six 4:29, 36:2.
sketch 8:11.
slightly 41:22.
SNAP 33:7, 33:10.
Social 6:13, 21:24, 22:15, 31:10, 31:13, 32:22.
sociology 8:14.
solely 44:15, 45:19.
somebody 18:9, 18:25, 21:3.
someone 8:25, 18:12, 28:8, 33:13, 34:7, 34:16, 36:16.
sometimes 42:23.
Somewhat 22:20, 22:23, 23:25.
somewhere 37:15.
Sorry 9:6, 9:24, 13:9, 15:10, 21:2, 27:20, 29:10, 31:24, 35:14.
sounds 7:11, 44:6.
South 29:8, 29:10, 29:12, 29:14.
speaking 9:21, 16:24, 17:17.
special 6:12.
specific 30:15.
specifically 21:20.
speculating 7:20, 12:24.
speculation 7:18.
speculative 27:18, 28:14.
spell 4:11, 10:9.
spelled 10:10.
spend 12:3.
SSDI 6:17, 6:20, 6:24, 22:16, 22:17, 22:19, 22:22, 23:1, 23:5, 23:13, 24:9, 24:10, 24:13, 24:21, 25:3, 25:11, 26:10, 26:23, 27:1, 27:13, 27:14, 28:1, 28:10, 28:12, 28:19, 28:24, 29:1, 29:2, 29:4, 29:7, 30:20, 31:6, 33:15, 34:8, 34:18, 36:7, 37:7, 38:1, 38:12, 39:7, 39:20, 40:4, 40:7, 40:15,

23:9, 25:24, 43:11.
receipt 36:6, 38:1.
receive 16:10, 18:23, 19:21, 24:10, 28:21, 30:22, 32:14, 33:20, 38:3.
received 25:7, 28:2, 28:19, 32:10, 33:13.
receives 16:3, 19:10.
receiving 6:17, 17:18, 21:8, 24:12, 24:14, 24:20, 29:1, 29:2, 29:6, 31:18, 32:13, 33:15.
recent 39:11.
recently 4:28.
recess 42:5.
recipient 34:21, 38:12.
recipients 23:13.
recollection 44:3.
record 4:12, 5:17, 17:16, 36:1, 42:7, 49:7.
records 37:21.
recoup 33:22.
recovering 15:17.
reduced 18:17, 49:10.
reduction 18:15.
refer 35:10.
reference 22:6, 25:23.
referenced 36:15.
reflective 20:1.
regarding 25:21, 29:18, 45:6.
Regardless 20:7, 26:18, 29:13.
regional 31:1.
Regular 24:16, 24:18, 24:20, 26:7, 29:2.
Rehabilitation 23:21, 23:24, 24:7, 48:4.
Reihl 10:5, 10:6, 10:7, 10:9.
reimbursable 12:10.
relate 45:21.
related 13:14, 14:10, 14:12.
relates 30:15.
relative 49:13, 49:15.
release 6:5, 6:7, 6:9, 6:19.
relevant 4:16.
relied 37:14.

remains 20:15.
remember 44:4.
remote 2:7, 49:10.
removing 38:5.
render 21:14, 29:4, 30:13.
renders 28:12.
repaid 34:16.
repay 46:6.
repayment 46:1, 46:4, 46:16.
repeal 47:13.
repeat 11:18, 13:9, 21:2, 26:25, 31:24, 34:11.
repetitive 41:3.
rephrase 9:21, 22:3.
replacement 26:17.
replenish 15:10.
Reported 1:41.
Reporter 5:12, 5:16, 10:8, 11:21, 49:4.
represent 26:14, 29:25.
representatives 47:9.
represents 36:18.
requested 6:16.
require 11:23.
required 43:15.
requirement 30:16.
requirements 12:1, 30:15.
resigned 7:22.
respect 8:20, 11:16, 13:17, 43:6, 45:5.
responses 41:3.
RESUMED 42:8.
retired 10:7.
revenue 12:19.
review 5:24, 6:2, 6:5.
reviewed 38:20.
reviews 31:3.
Rights 9:9.
role 44:9, 45:7, 45:14, 45:16.
roles 9:22.
rule 20:8, 20:18, 20:22, 32:17, 33:2, 33:9.
Rules 2:4, 5:4, 6:18, 11:16, 20:12, 21:19, 22:1, 22:4.

.

< S >

sake 5:11, 10:8, 22:8,

MADISON FREELANCE REPORTERS, LLC

AMY PECHACEK

40:17, 40:19, 47:14, 47:24,
48:5.
SST 23:17.
**stakeholder** 45:1.
**stand** 25:20.
**standpoint** 47:23.
**stands** 25:1.
**start** 7:7.
**started** 35:3.
**starts** 36:6.
**State** 1:23, 2:6, 4:11, 6:24,
9:12, 9:14, 10:13, 10:22,
11:8, 12:2, 12:19, 12:22,
12:23, 13:5, 13:12, 14:4,
14:9, 14:16, 14:23, 17:4,
17:7, 17:16, 21:8, 21:23,
24:19, 26:7, 26:11, 26:12,
28:2, 29:3, 29:5, 29:8,
30:2, 30:3, 31:19, 32:25,
34:7, 34:16, 37:1, 37:9,
38:3, 43:16, 47:22, 49:1,
49:5, 49:22.
**statement** 30:19.
**statements** 41:12.
**STATES** 1:7, 26:15, 29:4,
29:19, 30:12, 31:3,
42:25.
**Statute** 14:21, 20:8, 21:23,
24:19, 26:11, 26:12, 26:21,
27:21, 29:17, 32:17, 33:1,
33:9, 39:17, 40:2, 40:13,
47:9.
**Statutes** 10:23, 11:8, 11:15,
11:24, 45:10.
**statutory** 12:1, 19:25.
**stenographic** 49:11.
**step** 7:2, 23:22.
**steps** 17:17.
**Steve** 41:18.
**STEVEN** 2:27.
**stood** 43:22.
**stray** 20:21.
**Street** 2:30.
**strike** 23:22, 31:21, 34:5,
42:17, 43:2, 43:5.
**stuff** 8:7.
**subsequent** 40:7, 40:20.
**subset** 10:21.
**substantially** 23:3.
**sue** 46:17.

**sued** 4:17, 46:7.
**suit** 46:9.
**summarize** 6:8.
**Supplemental** 14:5, 18:17,
33:4, 47:25, 48:3, 48:6.
**support** 44:15.
**sworn** 4:2, 49:8.
**system** 12:5, 13:7, 13:13,
13:17, 17:10, 17:12, 28:3,
28:9, 28:22, 30:22, 32:10,
40:10, 43:7.
**systems** 29:5, 33:15.

.

**< T >.**

**talked** 21:1, 21:3, 30:23,
34:14, 43:19.
**TANF** 32:2, 32:6, 32:13.
**Tax** 12:19, 12:22, 12:23,
13:6, 13:12, 14:21, 14:24,
14:25, 15:5, 15:12, 15:16,
17:2, 30:5.
**team** 44:14, 45:8, 45:23.
**technology** 11:12.
**temporarily** 18:16.
**Temporary** 31:14, 31:22,
32:1.
**term** 24:22, 29:21.
**terms** 11:10, 31:4.
**test** 23:5.
**testified** 4:4, 28:12.
**testimony** 46:22.
**themselves** 38:6, 38:10,
48:1.
**theoretically** 27:13.
**theory** 15:15, 31:2.
**THOMSEN** 2:13.
**though** 37:22.
**three** 36:2.
**thresholds** 19:4.
**throughout** 14:23, 17:4.
**thumbnail** 8:11.
**title** 7:5.
**titles** 44:18.
**today** 5:5, 5:25, 38:21,
46:23.
**Tony** 47:12.
**took** 8:5.
**top** 15:2, 23:9, 35:6.
**toward** 12:23, 13:13.

**week** 39:20, 40:6, 40:18,
40:19.
**Weekly** 27:12.
**weeks** 40:8, 40:20.
**West** 2:30.
**WESTERN** 1:8.
**whatever** 45:8.
**when-due** 29:21, 29:23.
**whereas** 45:22.
**whereof** 49:17.
**whether** 13:4, 13:12, 18:9,
24:9, 25:9, 28:1, 29:13,
30:7, 30:14, 30:20, 32:9,
45:17, 47:1.
**whom** 47:4.
**whomever** 37:10.
**will** 5:9, 5:20, 29:25, 30:13,
47:22.
**Williams** 44:12, 44:21,
45:12.
**Wisconsin** 1:8, 1:23, 2:6,
2:15, 2:22, 2:29, 2:31,
6:25, 7:3, 8:1, 9:4, 9:12,
10:14, 10:23, 12:5, 13:5,
13:14, 14:17, 18:1, 21:23,
24:15, 27:15, 28:8, 28:21,
29:3, 30:8, 30:21, 31:6,
31:15, 32:4, 32:25, 39:17,
40:2, 40:13, 43:6, 49:1,
49:5, 49:22.
**Wisconsin-madison** 8:14.
**withdraw** 22:14.
**withdrawing** 38:10.
**Within** 4:29, 11:13, 39:10.
**without** 10:21.
**WITNESS** 2:2, 28:12, 35:18,
36:12, 39:2, 41:10, 41:25,
49:17.
**wondering** 4:20.
**word** 5:14, 10:17.
**words** 16:14, 25:24.
**work** 4:24, 7:2, 7:3, 7:24,
11:11, 18:14, 22:10, 22:12,
23:7, 24:10, 26:19.
**worked** 20:3.
**Worker** 9:8.
**Workforce** 1:24, 7:3, 7:12,
8:9, 9:1, 9:4, 9:11, 9:16,
22:11, 23:4, 27:6, 42:18,
44:8.

**working** 46:13, 47:24.
**works** 12:5, 17:11, 40:11,
44:15, 45:19.
**write** 44:17.
**writing** 40:1.
**written** 30:19, 47:17.
**wrote** 37:10.

.

**< Y >.**

**year** 9:20, 9:24, 13:8, 13:15,
13:18, 14:2, 14:19, 15:16,
37:2, 39:11.
**years** 14:15.
**yourself** 36:9, 38:25, 41:8.

64                                                                                                    66

---

**towards** 13:24.
**TRACY** 1:15.
**Training** 9:7, 12:25.
**trainings** 8:18.
**transcript** 3:21.
**transition** 7:10.
**transpired** 30:17.
**trigger** 14:21.
**true** 32:20, 45:12, 49:6.
**Trust** 12:9, 13:23, 14:3,
14:18, 14:20, 15:11,
15:13.
**truth** 5:7.
**try** 5:20, 13:11, 34:13.
**trying** 45:15, 48:9.
**turn** 35:1.
**two** 14:7, 14:15, 36:2,
44:17.
**type** 11:1, 11:12, 12:14,
46:15.
**Typically** 33:19.

.

**< U >.**

**UC** 26:9.
**UI** 36:6, 44:15.
**UIPL** 42:12, 42:13, 42:14,
42:19, 43:3, 43:12.
**Uipls** 43:9.
**um-hum** 5:15.
**undergraduate** 8:13.
**understand** 4:23, 5:7, 5:20,
5:21, 13:21, 22:13, 22:17,
27:20.
**understanding** 15:21, 16:20,
16:23, 17:20, 18:24, 19:12,
22:24, 23:1, 23:16, 26:21,
37:9, 39:24, 40:10, 40:23,
41:16.
**Understood** 5:18.
**undue** 48:8.
**unemployed** 21:13, 24:12.
**Unemployment** 5:2, 6:10, 7:22,
9:7, 9:15, 9:17, 10:13,
10:16, 11:3, 11:7, 11:17,
12:5, 12:9, 12:12, 13:6,
13:13, 13:23, 14:4, 14:5,
14:9, 14:17, 16:3, 16:9,
16:13, 17:3, 17:20, 17:25,
18:22, 19:11, 19:15, 21:10,

21:15, 21:25, 22:9, 23:14,
24:14, 24:16, 24:17, 24:20,
24:25, 25:2, 25:4, 25:10,
26:7, 26:9, 27:11, 27:15,
27:25, 28:3, 28:9, 28:13,
28:18, 28:21, 29:2, 29:5,
30:5, 30:10, 30:12, 30:21,
31:4, 31:19, 32:11, 32:14,
32:25, 33:11, 33:14, 34:8,
34:17, 37:1, 38:3, 39:9,
39:19, 42:16, 43:6, 45:21,
48:2.
**unfair** 47:2.
**UNITED** 1:7.
**University** 8:13, 8:17.
**unless** 30:3.
**unlikely** 30:24.
**until** 20:15.
**USC** 29:17, 30:1.
**using** 10:17.

.

**< V >.**

**vague** 13:20, 22:2.
**variation** 42:25.
**varies** 15:3.
**various** 2:6, 42:16, 49:9.
**vary** 20:12.
**vforberger@fastmail.fm**
2:23.
**VICTOR** 2:20.
**video** 35:4, 38:15.
**VIDEOCONFERENCE** 1:34, 2:1,
2:17, 2:24, 2:33, 49:7.
**view** 33:16.

.

**< W >.**

**W-2** 32:4.
**WACHS** 2:13.
**wages** 19:9, 21:3.
**Wait** 9:23.
**Wakerhauser** 2:36, 26:5,
37:20, 44:22.
**wanted** 26:2, 27:22.
**wants** 10:18.
**Washington** 4:25.
**waving** 35:6.
**Wednesday** 1:36.
**weeds** 16:21.

65