```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF WISCONSIN
* * * * * * * * * * * * * * * * * * * * * * * *

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ,
SARAH JAMIESON, EVAN JOHNSON,
TRACY LONG and CLIFFORD NEUMANN,

              Plaintiffs,

     -vs-                          Case No. 21-cv-560

AMY PECHACEK, in her official.
capacity as Secretary-designee
of the State of Wisconsin
Department of Workforce Development,

              Defendant.

* * * * * * * * * * * * * * * * * * * * * * * *


          VIDEOCONFERENCE DEPOSITION OF JAMES CHIOLINO

                   Wednesday, July 20, 2022

                         8:58 a.m.

              Reported by:   SANDRA L. McDONALD
```

                                                                    2

```
1        VIDEOCONFERENCE DEPOSITION of JAMES CHIOLINO,
2   a witness of lawful age, taken on behalf of the
3   plaintiffs in the above-entitled cause, under the
4   Federal Rules of Civil Procedure, pursuant to
5   notice, before SANDRA L. McDONALD, a Notary Public
6   in and for the State of Wisconsin, from various
7   remote locations, on the 20th day of July, 2022,
8   commencing at 8:58 a.m.
9                         * * * * *
10                      A P P E A R A N C E S
11          PAUL A. KINNE,
               GINGRAS, THOMSEN & WACHS, LLP
12             8150 Excelsior Drive
               Madison, Wisconsin  53717
13             kinne@gtwlawyers.com
               appearing by videoconference on
14             behalf of the plaintiffs;
15          VICTOR FORBERGER,
               VICTOR FORBERGER, ESQUIRE
16             2509 Van Hise Avenue
               Madison, Wisconsin  53705
17             vforberger@fastmail.fm
               appearing by videoconference on
18             behalf of the plaintiffs;
19          STEVEN C. KILPATRICK,
               Assistant Attorney General
20             WISCONSIN DEPARTMENT OF JUSTICE
               17 West Main Street
21             Madison, Wisconsin  53703
               kilpatricksc@doj.state.wi.us
22             appearing by videoconference on
               behalf of the defendants.
23
            Also Present:  JENNIFER WAKERHAUSER,
24                         DWD Chief Legal Counsel
25                        * * * * *
```

                                                                    3

```
1                         * * * * *
2                       I N D E X
3   Examination By:                              Page:
4   Attorney Kinne                                 4
5   Attorney Fitzpatrick                           --
6
7                         * * * * *
8
9
10      (There were no exhibits marked for identification)
11
12
13      (Original transcript filed with Attorney Kinne)
```

```
1                     JAMES CHIOLINO,
2            having been first duly sworn on oath,
3              was examined and testified as follows:
4
5                       EXAMINATION
6   BY MR. KINNE:
7   Q   Could you please state your name and spell it for the
8       record?
9   A   James Chiolino, C-h-i-o-l-i-n-o.
10  Q   Mr. Chiolino, I'm not going to ask you for your home
11      address, but if you are to change either home or work
12      address, could you please let Attorney Kilpatrick
13      know so we know where to find you?
14  A   Certainly.
15  Q   Have you ever been deposed before?
16  A   Yes.
17  Q   How recently?
18  A   The last time was 18 months ago, roughly.
19  Q   All right.  I'm still going to go over some
20      mechanical rules, just so they're fresh in your mind,
21      okay?
22  A   Sure.
23  Q   You're under oath, so you have to tell the truth.  Do
24      you understand that?
25  A   Yes.
```

                                                                    4

| | | |
|---|---|---|
|1 Q| I'll be asking you questions. You'll be giving me |
|2  | answers. Please try to avoid talking over the ends |
|3  | of my questions, and I will try to avoid talking over |
|4  | the ends of your answers for the sake of the court |
|5  | reporter, okay? |
|6 A| Yes. |
|7 Q| You're doing a great job of using words for answers, |
|8  | because things like uh-huh, um-hum, nodding or |
|9  | shaking your head aren't acceptable because the court |
|10 | reporter can't record those, okay? |
|11 A| Okay. |
|12 Q| And last but not least, if I ask you a question that |
|13 | you don't understand, please let me know, and I will |
|14 | try to rephrase it in a way that you do understand |
|15 | it, okay? |
|16 A| I will. |
|17 Q| Did you review any documents to prepare for your |
|18 | deposition today? |
|19 A| Yes. |
|20 Q| What did you review? |
|21 A| I reviewed Secretary Designee Amy Pechacek's |
|22 | deposition transcript. |
|23 Q| Anything else? |
|24 A| No. |
|25 Q| Did you take any notes on it? |

5

1 A  No.
2 Q  Was there anything in her deposition that stood out
3    in your mind where you thought, "I really disagree
4    with that"?
5 A  No.
6 Q  Where do you currently work?
7 A  The Department of Workforce Development, Unemployment
8    Insurance Division.
9 Q  What's your title there?
10 A  Division administrator.
11 Q  How long have you been the division -- well, what are
12   the dates that you've held that title?
13 A  I started in this position on December 21st of 2021.
14 Q  Is that an appointment position or were you hired?
15 A  I was appointed.
16 Q  And who appointed you?
17 A  My understanding is that it is an appointment by the
18   secretary designee but with the governor's approval.
19 Q  Okay. Where did you work before December 21, 2021?
20 A  I worked for the Department of Workforce Development,
21   Equal Rights Division.
22 Q  What were the dates you worked there?
23 A  I worked there on and off for a few stints, so I
24   worked there for this last period from November 10th
25   of 2010 until December 20th of 2021.

6

1 Q  And what was your title during that last stint? And
2    if you held more than one, tell me what they were.
3 A  Sure. My last title was director of the Bureau of
4    Hearings and Mediation. That was since roughly 2018.
5    And prior to that, from 2010 until 2018, I was the
6    director of the Bureau of Labor Standards. There was
7    a reorganization, so things sort of changed as far as
8    titles.
9 Q  Yeah. And who appointed you to the -- strike that.
10   Was the director of the Bureau of Labor Standards,
11   was that -- were you hired into that position or
12   appointed?
13 A  I was hired.
14 Q  Okay. Let's just go back now to talk about your
15   position as the division administrator at the
16   Department of Workforce Development, Unemployment
17   Insurance Division, okay?
18 A  Okay.
19 Q  So I don't have to say that every time, if I say the
20   UI Division, will you know what I'm talking about?
21 A  Certainly.
22 Q  Okay. So what are your duties as the director of the
23   UI Division?
24 A  I'm responsible for the day-to-day running of the
25   Division.

7

1 Q  I assume that part of your job is implementing and
2    enforcing policy; is that right?
3 A  Yes.
4 Q  Do you have any authority from your perspective to
5    create or set policy?
6 A  It depends on what that policy is, but within
7    statutory and administrative regulation guidelines I
8    have some authority, in consultation with the
9    Secretary's Office.
10 Q  Okay. Do you have any authority to set policy with
11   respect to who receives unemployment compensation
12   insurance benefits?
13 A  That's all laid out by statute and administrative
14   rule, so I have very little authority. I can't think
15   of what authority I would have in that realm.
16 Q  Okay. Just for background, can you describe how the
17   Unemployment Insurance Division is organized?
18 A  Sure. There are -- in the Division there are five
19   bureaus, maybe four. I'm going to go through them
20   just so that I'm counting correctly. We have the
21   Bureau of Legal Affairs, which has our administrative
22   law judges and other legal employees. We have the
23   Bureau of Management and Information Systems, which
24   is -- they help with our technology and systems. We
25   have the Bureau -- I'm sorry, it's called the Benefit

8

| | |
|---|---|
| 1  Operations Bureau, which decides eligibility | 1 Q  Could you spell that, please? |
| 2  questions very broadly. That's the largest bureau in | 2 A  Sure. His first name is Shashank, S-h-a-s-h-a-n-k, |
| 3  the Division. And then we have the Bureau of Tax and | 3  last name Partha, P-a-r-t-h-a. |
| 4  Accounting, so four bureaus. | 4 Q  And is that a man or a woman? |
| 5 Q  What does the Tax and Accounting Bureau do? | 5 A  It is a man. |
| 6 A  They collect taxes and run -- not run, administer the | 6 Q  How long has he held that position, if you know? |
| 7  Trust Fund, the Unemployment Insurance Trust Fund. | 7 A  I should be able to remember this, but I'm -- it's |
| 8 Q  Sometimes unemployment -- strike that. Sometimes | 8  been since I've been division administrator, I |
| 9  claimants have to repay benefits that they've | 9  believe since February of 2022. |
| 10  received, right? | 10 Q  And who preceded him, if you know? |
| 11 A  Yes, if they -- if it's determined that they received | 11 A  Yes, Thomas McHugh. Last name is M-c, capital |
| 12  benefits incorrectly, there is collection activity | 12  H-u-g-h. |
| 13  that takes place to recoup those overpayments, and | 13 Q  And do you know where Mr. McHugh ended up? |
| 14  that is the Bureau of Tax and Accounting that has | 14 A  He retired. |
| 15  those collectors. | 15 Q  Do you know how long he held the position? |
| 16 Q  Okay. And sometimes claimants can be charged a | 16 A  I don't. |
| 17  penalty as well; is that right? | 17 Q  You mentioned before a trust fund, right? |
| 18 A  I believe so. | 18 A  I did. |
| 19 Q  And who determines the size of the penalty, if you | 19 Q  Could you explain in layperson's terms what the Trust |
| 20  know? | 20  Fund is and how it's funded? |
| 21 A  I don't know. | 21 A  Unemployment insurance benefits are funded by a |
| 22 Q  Who collects the penalty? | 22  payroll tax to employers, and that's what the Trust |
| 23 A  The Bureau of Tax and Accounting. | 23  Fund is made up of in my understanding, the funds |
| 24 Q  Okay. And do you know if they do that directly, or | 24  taken in through employer accounts based on payroll. |
| 25  do they hire out the actual collection work? | 25  There are State taxes and federal taxes. I'm not |
| 9 | 11 |
| 1 A  I believe they do it correctly -- directly. They | 1  exactly sure how that mix goes, but mostly it's State |
| 2  sometimes have other tools that they may use to | 2  tax-funded. |
| 3  collect, but it's all handled directly in the Bureau | 3 Q  And how is that tax collected? |
| 4  of Tax and Accounting. | 4 A  Through the Bureau of Tax and Accounting on a |
| 5 A  Okay. | 5  quarterly basis. |
| 6 Q  And what does the Bureau of Benefits do? | 6 Q  And how is the tax calculated, if you know? |
| 7 A  The Benefit Operations Bureau decides eligibility at | 7 A  I don't. |
| 8  the initial level. | 8 Q  Okay. |
| 9 Q  And who's the director of that bureau right now? | 9 A  I do know that there are experience rates based on |
| 10 A  The director of the Benefit Operations Bureau is | 10  employers, the usage of each account, but that's the |
| 11  Lynn Hendrickson. | 11  extent of my knowledge in that area. |
| 12 Q  Do you know how long she's held that job? | 12 Q  Okay. Is that set forth in regulations or rules |
| 13 A  I am not clear on that. | 13  somewhere? |
| 14 Q  Okay. | 14 A  I believe so. |
| 15 A  A year or two would be my -- well, I don't want to | 15 Q  Okay. So what happens to the Trust Fund in a year |
| 16  guess. | 16  when there are a larger than normal number of claims? |
| 17 Q  Was she in that position before or after you took | 17 A  More claims are paid out of those accounts and the |
| 18  over as the division administrator? | 18  Trust Fund would decrease usually, to my |
| 19 A  She's been in that position since before I started as | 19  understanding. |
| 20  division administrator. Again, I've only been there | 20 Q  Do the taxes go up? |
| 21  for seven months, and at least a year she's been in | 21 A  Usually taxes go up when the experience of an account |
| 22  that position, probably longer than that. | 22  goes up. If you're talking about during the |
| 23 Q  Okay. And who's the director of the Bureau of Tax | 23  pandemic, there were special regulations put into |
| 24  and Accounting? | 24  place that froze the amount of taxes actually in a |
| 25 A  Shashank Partha. | 25  certain schedule, so there are -- so I guess I know a |
| 10 | 12 |

```
 1   little more.  There are at least four schedules for
 2   employer accounts, and based on the unemployment
 3   level during the past fiscal year, the schedule is
 4   determined.
 5        For through 2023, that schedule is set at the
 6   lowest, the lowest schedule, so that means taxes
 7   didn't go up during the pandemic, nor will they go up
 8   through next year.  But the unemployment level is
 9   fairly low right now, historically low, so we're in
10   the schedule probably through 2023 that we would have
11   been in anyway despite this legislation.
12 Q Now I'd like to focus on a period before the
13   pandemic, okay?
14 A Okay.
15 Q So in a year when there was an unusually large number
16   of claims, the Trust Fund balance would go down and
17   the taxes would go up pre-pandemic, right?
18 A I believe so.
19 Q Okay.
20 A You know, it does predate me as a division
21   administrator, but I believe that's true.
22 Q Okay.  And is the opposite true?  When there are a
23   smaller numbers of claims, do taxes go down?
24 A It depends on the experience in the year prior to the
25   year in which those schedules are set, so I -- you
                                                        13
```

```
 1   know, generally, I'm not sure exactly how that works.
 2 Q Okay, okay.  And does the Unemployment Insurance
 3   Division, does it receive federal funds?
 4 A Some federal funds, yes.
 5 Q What do those federal funds go to?
 6 A We have funding for administration of the Division,
 7   of the program.
 8 Q Okay.  So tell me, walk me through how the typical
 9   claims process would work.  I mean, obviously
10   somebody has to be employed, right?
11 A Yes.
12 Q And that person has to lose their job, right?
13 A Yes, typically.
14 Q Okay.  And then that person applies for unemployment
15   compensation benefits, right?
16 A Yes.
17 Q And there is a determination about whether that
18   person is entitled to benefits, right?
19 A One or more determinations, yes.
20 Q Okay.  Because in order to be entitled to benefits,
21   the applicant has to meet certain criteria, right?
22 A Correct.
23 Q And the amount of benefits that that person -- well,
24   strike that.  Assuming a person met the criteria,
25   that person would be entitled to an amount of
                                                        14
```

```
 1   benefits relative to what factors?
 2 A Assuming someone is found to be eligible, their
 3   separation makes them eligible for benefits.  The
 4   amount of benefits that they're eligible for is based
 5   upon their earnings over generally the first four of
 6   the last five completed calendar quarters.
 7 Q Okay.
 8 A And then there's a formula to figure that out, which
 9   I don't have memorized.
10 Q All right.  And that's an entitlement; is that right?
11        MR. KILPATRICK:  Objection, vague.
12 A I'm not exactly clear on what you mean by an
13   entitlement.
14 Q Okay.  Well, once that determination has been made,
15   unless some other factor intervenes, that person is
16   entitled to that money, right?
17 A If they are found eligible for benefits and continue
18   to be eligible, meet eligibility criteria, yes, they
19   would be entitled to those benefits.
20 Q The Unemployment Insurance Division doesn't have the
21   discretion to just decide not to pay the benefits,
22   correct?
23 A If there are no changes to the eligibility of that
24   individual, no, there's -- on a whim, the Division
25   can't decide somebody is not eligible.
                                                        15
```

```
 1 Q Okay.  And what we've been talking about, all of that
 2   is set by statute -- strike that.  The amount of
 3   benefits to which a claimant is entitled is set by
 4   statute or rule; is that right?
 5 A Correct.
 6 Q The entire administrative budget for the Unemployment
 7   Insurance Office is federally funded; is that
 8   correct?
 9 A I'm not sure if the entirety of the administrative is
10   funded federally.
11 Q Okay.
12 A I don't know.
13 Q Are there ever circumstances when offsets are used
14   with respect to the receipt of the unemployment
15   compensation benefits?
16 A I don't -- I don't know.
17 Q Do you know who would know the answer to that?
18 A It depends on what you mean by offsets.
19 Q All right.  Let's say that -- that's fair.  Are there
20   situations where an unemployment compensation
21   applicant, a claimant, is receiving some kind of
22   government benefit other than unemployment
23   compensation?
24 A Are there -- that's the end of the question?
25 Q Yes.
                                                        16
```

Page 17:

1  A   I believe so.
2  Q   Okay.
3  A   I would guess.
4  Q   All right. And do you know if there are any
5      situations where the non-UI benefit is offset against
6      the UI benefit?
7  A   I don't know.
8  Q   Okay. If offsets were to be imposed, those would be
9      reflected somewhere in rules, regulations or
10     statutes, right?
11 A   If I understand you correctly, if the Unemployment
12     Division were to impose offsets against benefits,
13     yes, those would be in rules or statutes.
14 Q   Are there any situations where -- strike that. Are
15     there any situations where the claimant's receipt of
16     another government benefit automatically disqualifies
17     that person from getting UI benefits?
18 A   As I understand it, yes.
19 Q   Give me the list that you're aware of of other
20     benefits that causes a UI claimant to be disqualified
21     from receiving UI benefits.
22 A   The only benefit that I'm aware of where that happens
23     is the Social Security Disability Insurance, SSDI.
24     I'm not aware of any other benefits. There could be,
25     but I'm not aware of them.

Page 18:

1  Q   Okay. And if there were other examples, that would
2      also be in statutes; is that right?
3  A   Yes.
4  Q   Is there somebody in the UI Division that's
5      responsible for ensuring that the Department complies
6      with regulations of State and federal law?
7  A   I think we are all responsible for that to some
8      extent.
9  Q   Okay.
10 A   I mean, I bear some responsibility for that as well.
11 Q   Is there any -- is there a position or title that's
12     specifically devoted to compliance?
13 A   Our Bureau of Legal Affairs bureau director probably
14     is the person that I rely on for advice about those
15     sorts of issues.
16 Q   What's that person's name?
17 A   Janell Knutson. First name is J-a-n-e-l-l. Last
18     name is K-n-u-t-s-o-n.
19 Q   And is Knutson's compliance oversight, from your
20     perspective and experience, reactive, proactive or a
21     mix?
22 A   Again, we're all responsible for compliance in some
23     way, shape or form. And, yeah, I would guess it's a
24     mix, as is my dealing with any compliance issues, you
25     know. If we find out about something we believe

Page 19:

1      we're not in compliance with, we'll want to know that
2      or will ask the bureau director in our Bureau of
3      Legal Affairs for a legal opinion.
4  Q   Does Ms. Knutson ever conduct any audits or anything
5      like that to determine compliance?
6  A   Not that I'm aware of.
7  Q   Are you familiar with what an applicant for Social
8      Security Disability Insurance benefits must prove to
9      establish eligibility for those benefits?
10 A   My understanding goes back probably more -- well, it
11     goes back prior to 2010, from when I was practicing
12     law and I handled a few pro bono SSDI cases, but I
13     don't remember, frankly. There's a long list of
14     eligibility criteria or several different categories,
15     if I remember correctly.
16 Q   Okay. Are SSDI beneficiaries allowed to work under
17     certain circumstances and still receive benefits?
18 A   It's my understanding that they are.
19 Q   And do you know the difference between how disability
20     is defined under the ADA and how it's defined under
21     the Social Security Act?
22 A   I don't. I don't remember that, if I ever knew it.
23 Q   While an unemployed person is receiving SSDI
24     benefits, are they automatically precluded from
25     receiving unemployment compensation benefits?

Page 20:

1  A   Yes.
2  Q   And that's pursuant to statute; is that right?
3  A   Yes.
4  Q   What prevents the UI Division from paying
5      unemployment compensation benefits to SSDI
6      beneficiaries?
7  A   I may not understand your question. The statute
8      prevents it.
9  Q   What prevents the UI Division from offsetting the
10     SSDI benefits against unemployment compensation
11     benefits?
12 A   The statute.
13 Q   From your perspective in your position, you lack the
14     discretion to offset benefits; is that right?
15 A   Pursuant to the statute, yes.
16 Q   Do you know one way or another whether some SSDI
17     beneficiaries receive less in an SSDI benefit than
18     they would in a month's worth of UI benefits?
19 A   I do not know.
20 Q   Do you know how the SSDI exclusion impacts disabled
21     people compared to non-disabled people?
22         MR. KILPATRICK: I'm going to object
23     to the extent it's a legal question, but you may
24     answer.
25 A   Sure. Non-disabled people would not be eligible for

|   |   |
|---|---|
| 1  SSDI, so they would not be excluded.  Some disabled | 1  the UI Division's method of paying unemployment |
| 2  people might be eligible for unemployment if they're | 2  compensation benefits is reasonably calculated to |
| 3  not eligible for SSDI, so beyond that, I don't know. | 3  ensure full payment of those benefits when due? |
| 4  I don't remember exactly how SSDI is determined. | 4 A  I believe they have oversight of that issue, yes. |
| 5 Q  Okay.  Do you know if any other states render an SSDI | 5 Q  Have you ever communicated with anybody from the |
| 6  beneficiary ineligible for unemployment compensation | 6  secretary of labor about that? |
| 7  benefits while the employee is receiving SSDI | 7 A  No. |
| 8  benefits? | 8 Q  Do you know if the Department of Labor has ever made |
| 9 A  I believe one other state, but I don't know that for | 9  a finding that the SSDI exclusion in Wisconsin is |
| 10  a fact. | 10  reasonably calculated to ensure full payment of |
| 11 Q  Okay.  Do you know if other states offset SSDI | 11  unemployment compensation when due? |
| 12  benefits against unemployment compensation? | 12 A  I do not know. |
| 13 A  I don't know. | 13 Q  Are you familiar with benefits paid by the Bureau of |
| 14 Q  Have you ever heard of the when due clause? | 14  Indian Affairs assistance in Social Services? |
| 15 A  No. | 15 A  No. |
| 16 Q  Does the secretary of labor play any role in | 16 Q  Do you know if any benefits paid by that federal |
| 17  evaluating the Unemployment Insurance Division? | 17  bureau are offset against unemployment compensation |
| 18 A  I believe so.  I don't -- I don't know exactly what | 18  benefits? |
| 19  role the secretary of labor would have. | 19 A  I don't know. |
| 20 Q  Okay. | 20 Q  Are you familiar with the Temporary Assistance for |
| 21 A  Certainly the Department of Labor has some role, and | 21  Needy Families, W-2? |
| 22  I assume the secretary, yep. | 22 A  Yes. |
| 23 Q  All right.  I didn't mean to imply that the secretary | 23 Q  Do you know one way or another whether those benefits |
| 24  of labor personally had responsibility, but his | 24  are offset against the receipt of unemployment |
| 25  department has some responsibility of overseeing or | 25  compensation? |
|                                                   21 |                                                   23 |
| 1  evaluating the Unemployment Insurance Division; is | 1 A  I don't think so. |
| 2  that right? | 2 Q  If they were, it would be in statute or rules, right? |
| 3 A  Yes. | 3 A  Yes. |
| 4 Q  Could you describe that for me? | 4 Q  The Supplemental Nutrition Assistance Program, SNAP |
| 5 A  From what I'm aware, there are several areas in which | 5  benefits or Food Share, are you familiar with that |
| 6  the U.S. Department of Labor audits various programs, | 6  program? |
| 7  and we've undergone several such audits over the last | 7 A  Yes. |
| 8  at least six months since I've been around, so there | 8 Q  Do you know one way or another whether those benefits |
| 9  are audits of various programs.  We also report the | 9  are offset against the receipt of unemployment |
| 10  statistics. | 10  compensation? |
| 11      We are responsible for various things like | 11 A  They are not. |
| 12  prompt payment of benefits.  They set standards for | 12 Q  Have you ever heard of the term double dipping? |
| 13  the number of claims -- the percentage of claims that | 13 A  In many contexts, yeah, yes. |
| 14  we should be paying within a certain amount of time, | 14 Q  Okay.  How about with respect to the receipt of SSDI |
| 15  15 days.  They set standards for how our hearings go, | 15  benefits simultaneous with receipt of UI benefits? |
| 16  with the number of hearings that are resolved within | 16 A  Only insofar as I read it in a transcript of the |
| 17  various timelines.  So they do set standards, and we | 17  deposition with the secretary designee. |
| 18  try to comply with those standards. | 18 Q  Okay.  Do you have an opinion one way or another |
| 19      There's also something known as substantial | 19  whether SSDI beneficiaries are double dipping if they |
| 20  compliance where if we were out of compliance with | 20  receive unemployment compensation benefits? |
| 21  federal requirements, then there might be loss of | 21 A  I have a personal opinion. |
| 22  some funding to the Division. | 22 Q  What's your personal opinion? |
| 23 Q  Okay.  And do you know if the secretary of labor -- | 23 A  My personal opinion is that it isn't double dipping. |
| 24  well, that the Department of Labor has a | 24 Q  Are you familiar with the term PUA? |
| 25  responsibility to ensure that the UI Division -- that | 25 A  Yes. |
|                                                   22 |                                                   24 |

Page 25:

1  Q  And what does PUA mean?
2  A  Pandemic Unemployment Assistance.
3  Q  Do you know one way or another whether SSDI benefits
4     are offset against PUA benefits?
5  A  I don't believe they are offset.
6  Q  Okay. They're cumulative?
7  A  My understanding is that someone on PUA is eligible
8     for those PUA benefits regardless of whether they
9     receive SSDI. I don't know about an offset.
10 Q  Okay. What do you know about how collection --
11    strike that. What do you know about how collection
12    efforts at the Unemployment Compensation Division are
13    implemented?
14 A  I don't know anything about that.
15 Q  Are future benefits seized?
16 A  Future benefits can be withheld to offset an
17    overpayment.
18 Q  Okay. Does the Department ever put garnish -- does
19    the Department ever garnishee wages, anything like
20    that?
21 A  I believe so.
22 Q  Do they charge interest?
23 A  I don't think so, but I don't know that.
24 Q  Are they compelled to pay the cost of collection?
25 A  I don't know.

Page 26:

1  Q  If the UI Division concludes that an SSDI beneficiary
2     engaged in concealment and fraud by not disclosing
3     the receipt of SSDI benefits, do you know what that
4     person is then compelled to pay?
5  A  I do not know about the statutory regulations about
6     fraud. Sorry.
7  Q  Do you know what a UIPL letter is?
8  A  Yes.
9  Q  Have you ever seen any UIPL letters?
10 A  Yes.
11 Q  And have you ever seen any UIPL letters pertaining to
12    SSDI beneficiaries receiving unemployment
13    compensation benefits?
14 A  No, not that I can recall.
15 Q  Okay. What is a UIPL letter?
16 A  Unemployment Insurance, I believe it stands for,
17    Program Letter, and it's an interpretation and
18    guidance in most cases. Sometimes they put them out
19    about grant opportunities and things like that, so
20    they can be many different things, but often it's
21    guidance.
22 Q  And who do they -- what office do these UIPL letters
23    come from?
24 A  Well, the Department of Labor. I'm not sure if
25    there's a particular office in the Department of

Page 27:

1     Labor that issues those, but the Department of Labor.
2  Q  When you say guidance, what do you mean by guidance?
3  A  Explanation about federal interpretation of various
4     issues.
5  Q  And from your perspective as the director, are you
6     obligated to follow that guidance?
7  A  Obligated insofar as State statutes allow.
8  Q  Okay. Do you have any idea the amount of money in
9     benefits that is impacted by the SSDI exclusion in
10    annual terms?
11 A  You cut out for me there, sorry, in the middle of the
12    question.
13 Q  Sure. Do you have any idea of what amount of
14    benefits are impacted by the SSDI exclusion?
15 A  No.
16 Q  Would there be a way to calculate that?
17 A  I really don't know.
18 Q  Have you ever seen a UIPL concerning disability
19    access to UI?
20 A  No.
21 Q  Do you agree that the SSDI exclusion
22    disproportionately impacts disabled people?
23           MR. KILPATRICK: Objection to the
24       extent it calls for a legal conclusion.
25 A  I believe -- well, it will impact people who are

Page 28:

1     disabled under the definitions of the Social Security
2     Act, so it would certainly impact more disabled
3     people than it would non-disabled people.
4  Q  In fact, does it impact non-disabled people at all?
5  A  No.
6  Q  What's your understanding behind the basis for the
7     rule, the exclusion?
8  A  I haven't really looked into that at all. I -- you
9     know, as you said before, something about double
10    dipping, that there was some understanding by the
11    drafters of the statute that they didn't want
12    individuals to be collecting two benefits.
13 Q  Is it your department's position that double dipping
14    is inherently fraudulent?
15 A  No.
16 Q  Have you ever seen an October 1, 2015 UIPL letter or
17    memo from Portia Wu and Naomi Barry-Perez?
18 A  No. I mean, as I said before, I started working in
19    this division in December of 2021, and I haven't gone
20    over all the UIPLs, you know, so no, I've never heard
21    of such a UIPL.
22 Q  Since you've been in that position, has anyone come
23    to you to talk about changing the exclusion
24    statutorily?
25 A  Not that I can recall.

```
 1  Q  Has anyone come to you since you've been in your
 2     position to talk about changing how the exclusion
 3     works via administrative rule?
 4  A  No.
 5  Q  Bear with me a minute.  Do you know what a reverse
 6     offset is?
 7  A  No.
 8  Q  Do you know how or whether worker's compensation
 9     benefits are offset against UI benefits?
10  A  I do not know.
11  Q  Does the SSDI eligibility ban apply regardless of a
12     disabled person's ability to work?
13  A  Yes.
14  Q  Are otherwise qualified claimants who are able to
15     work like any other qualified claimant still denied
16     unemployment benefits solely due to their SSDI
17     status?
18  A  Yes.
19        MR. KINNE:  Steve, can we take, say, a
20     10-minute break?  I'm going to confer with my
21     co-counsel here.  I probably will have a few
22     additional questions.
23        MR. KILPATRICK:  Sure, that's fine.
24        MR. KINNE:  Okay, great.  We'll see
25     everybody back -- so it's 12 minutes to 10.
                                                    29
```

```
 1     Let's see everybody back at 10 a.m.  How does
 2     that sound?
 3        MR. KILPATRICK:  Sounds good.
 4        THE WITNESS:  Fine.
 5           (A recess is taken)
 6           (9:49 to 10:01 a.m.)
 7        MR. KINNE:  All right.  Back on the
 8     record.
 9             EXAMINATION (RESUMED)
10  BY MR. KINNE:
11  Q  I'd like you to -- I'd like to run a scenario by you
12     and get your reaction, okay?
13  A  Okay.
14  Q  The first part of the scenario is that you have a UC
15     claimant that has a number of physical restrictions
16     due to a recent surgery, including a restriction to
17     work no more than 20 hours per week for two months,
18     okay?
19        MR. KILPATRICK:  Paul, I'm going to
20     object to the extent that you're talking about
21     UC.  I'm assuming you meant UI?
22  Q  UI, yeah.  Sorry about that.  Are you good on -- with
23     that clarification, are you good with the first part
24     of my scenario?
25  A  Yes.
                                                    30
```

```
 1  Q  With the restrictions, the claimant cannot perform
 2     the duties of his or her usual occupation but is able
 3     to perform a number of jobs for which the applicant
 4     or the claimant has prior training and experience,
 5     okay?  That's the second part of my scenario, okay?
 6  A  Okay.
 7  Q  The claimant is willing to do those jobs and is
 8     willing to work 20 hours per week, okay?
 9  A  Okay.
10  Q  The claimant has no other restrictions to
11     availability, all right?
12  A  Okay.
13  Q  Would benefits be allowed solely because of the
14     inability to work full-time?
15        MR. KILPATRICK:  I'll just object
16     generally as speculation.  But, Jim, you can
17     answer.
18  Q  You're on Mute, Mr. Chiolino.
19  A  My computer went a little wacky there for a minute,
20     and I missed the end of the question, and so if you
21     could just repeat it.
22  Q  Sure.
23  A  I'm in the office and having difficulty today.  So
24     it's --
25  Q  That's okay.
                                                    31
```

```
 1  A  Yeah.
 2  Q  Another part of my scenario is the claimant is
 3     willing to do work for which the claimant has prior
 4     training and experience up to 20 hours per week,
 5     okay?
 6  A  Yes.
 7  Q  And the claimant has no other restrictions to
 8     availability, okay?
 9  A  Yes.
10  Q  Would benefits be denied solely because of the
11     inability to work full-time?
12  A  I don't believe so, but I don't know the answer to
13     that.
14  Q  Okay.  Did you talk to anybody to prepare for your
15     deposition today besides lawyers?
16  A  No.
17        MR. KINNE:  I don't have any further
18     questions for you.
19        THE WITNESS:  Okay.
20        MR. KILPATRICK:  I don't have any
21     follow-up questions either.
22        MR. KINNE:  Okay.  Well, thank you,
23     everybody.  Take care.
24           (Adjourned at 10:05 a.m.)
25
                                                    32
```

```
                                                                33
```

```
 1   STATE OF WISCONSIN   )
                          )
 2   COUNTY OF DANE       )

 3          I, SANDRA L. McDONALD, Shorthand Reporter

 4   and Notary Public in and for the State of Wisconsin,

 5   do hereby certify that the foregoing is a true

 6   record of the videoconference deposition of

 7   JAMES CHIOLINO, who was first duly sworn by me;

 8   having been taken on the 20th day of July, 2022, from

 9   various remote locations, in my presence, and reduced

10   to writing in accordance with my stenographic notes

11   made at said time and place.

12          I further certify that I am not a relative

13   or employee or attorney or counsel for any of the

14   parties, or a relative or employee of such attorney

15   or counsel, or financially interested in said action.

16          In witness whereof, I have hereunto set my

17   hand and affixed my seal of office this 28th day of

18   July, 2022.

19

20   _____
     Notary Public, State of Wisconsin
21   My Commission Expires 10/18/22
```

```
                                                                34
```

< Dates >
**10/18/22** 34:23.
**December 21, 2021** 6:19.
**December 21st** 6:13.
**July 20, 2022** 1:36.
**July, 2022** 2:7, 34:9.
**July, 2022.** 34:19.
**October 1, 2015** 28:16.
**(9:49** 30:6.
**-vs-** 1:19.

< 1 >.
**10** 30:1.
**10-minute** 29:20.
**10.** 29:25.
**10:01** 30:6.
**10:05** 32:24.
**10th** 6:24.
**12** 29:25.
**15** 22:15.
**17** 2:31.
**18** 4:22.

< 2 >.
**20** 30:17, 31:8, 32:4.
**2010** 6:25, 7:5, 19:11.
**2018** 7:5.
**2018.** 7:4.
**2021** 6:25, 28:19.
**2021.** 6:13.
**2022** 11:9.
**2023** 13:5, 13:10.
**20th** 2:7, 6:25, 34:9.
**21-cv-560** 1:19.
**2509** 2:22.
**28th** 34:18.

< 4 >.
**4** 3:6.

< 5 >.
**53703** 2:32.
**53705** 2:23.
**53717** 2:15.

< 8 >.
**8150** 2:14.
**8:58** 1:38, 2:8.

< A >.
**A.** 2:12.
**a.m.** 1:38, 2:8, 30:1, 30:6, 32:24.
**ability** 29:12.
**able** 11:7, 29:14, 31:2.
**above-entitled** 2:3.
**acceptable** 5:9.
**access** 27:19.
**accordance** 34:11.
**account** 12:10, 12:21.
**Accounting** 9:4, 9:5, 9:14, 9:23, 10:4, 10:24, 12:4.
**accounts** 11:24, 12:17, 13:2.
**Act** 19:21, 28:2.
**action** 34:16.
**activity** 9:12.
**actual** 9:25.
**actually** 12:24.
**ADA** 19:20.
**additional** 29:22.
**address** 4:15, 4:16.
**Adjourned** 32:24.
**administer** 9:6.
**administration** 14:6.
**administrative** 8:7, 8:13, 8:21, 16:6, 16:9, 29:3.
**administrator** 6:10, 7:15, 10:18, 10:20, 11:8, 13:21.
**advice** 18:14.
**Affairs** 8:21, 18:13, 19:3, 23:14.
**affixed** 34:18.
**age** 2:2.
**ago** 4:22.
**agree** 27:21.
**allow** 27:7.
**allowed** 19:16, 31:13.
**amount** 12:24, 14:23, 14:25, 15:4, 16:2, 22:14, 27:8, 27:13.
**Amy** 1:21, 5:21.
**annual** 27:10.

```
                                                                35
```

**answer** 16:17, 20:24, 31:17, 32:12.
**answers** 5:2, 5:4, 5:7.
**anybody** 23:5, 32:14.
**anyway** 13:11.
**appearing** 2:17, 2:25, 2:34.
**applicant** 14:21, 16:21, 19:7, 31:3.
**applies** 14:14.
**apply** 29:11.
**appointed** 6:15, 6:16, 7:9, 7:12.
**appointment** 6:14, 6:17.
**approval** 6:18.
**area** 12:11.
**areas** 22:5.
**around** 22:8.
**Assistance** 23:14, 23:20, 24:4, 25:2.
**Assistant** 2:29.
**assume** 8:1, 21:22.
**Assuming** 14:24, 15:2, 30:21.
**Attorney** 2:29, 3:6, 3:7, 3:15, 4:16, 34:14, 34:15.
**audits** 19:4, 22:6, 22:7, 22:9.
**authority** 8:4, 8:8, 8:10, 8:14, 8:15.
**automatically** 17:16, 19:24.
**availability** 31:11, 32:8.
**Avenue** 2:22.
**avoid** 5:2, 5:3.
**aware** 17:19, 17:22, 17:24, 17:25, 19:6, 22:5.

< B >.
**Back** 7:14, 19:10, 19:11, 29:25, 30:1, 30:7.
**background** 8:16.
**balance** 13:16.
**ban** 29:11.
**Barry-perez** 28:17.
**based** 11:24, 12:9, 13:2, 15:4.
**basis** 12:5, 28:6.
**Bear** 18:10, 29:5.
**behalf** 2:2, 2:18, 2:26, 2:35.

**behind** 28:6.
**believe** 9:18, 10:1, 11:9, 12:14, 13:18, 13:21, 17:1, 18:25, 21:9, 21:18, 23:4, 25:5, 25:21, 26:16, 27:25, 32:12.
**BEMKE** 1:12.
**beneficiaries** 19:16, 20:6, 20:17, 24:19, 26:12.
**beneficiary** 21:6, 26:1.
**Benefit** 8:25, 10:7, 10:10, 16:22, 17:5, 17:6, 17:16, 17:22, 20:17.
**Benefits** 8:12, 9:9, 9:12, 10:6, 11:21, 14:15, 14:18, 14:20, 14:23, 15:1, 15:3, 15:4, 15:17, 15:19, 15:21, 16:3, 16:15, 17:12, 17:17, 17:20, 17:21, 17:24, 19:8, 19:9, 19:17, 19:24, 19:25, 20:5, 20:10, 20:11, 20:14, 20:18, 21:7, 21:8, 21:12, 22:12, 23:2, 23:3, 23:13, 23:16, 23:18, 23:23, 24:5, 24:8, 24:15, 24:20, 25:3, 25:4, 25:8, 25:15, 25:16, 26:3, 26:13, 27:9, 27:14, 28:12, 29:9, 29:16, 31:13, 32:10.
**besides** 32:15.
**beyond** 21:3.
**bono** 19:12.
**break** 29:20.
**BRIAN** 1:12.
**broadly** 9:2.
**budget** 16:6.
**Bureau** 7:3, 7:6, 7:10, 8:21, 8:23, 8:25, 9:1, 9:2, 9:3, 9:5, 9:14, 9:23, 10:3, 10:6, 10:7, 10:9, 10:10, 10:23, 12:4, 18:13, 19:2, 23:13, 23:17.
**bureaus** 8:19, 9:4.

< C >.
**C-h-i-o-l-i-n-o** 4:13.
**C.** 2:28.
**calculate** 27:16.
**calculated** 12:6, 23:2,

```
                                                                36
```

| | | | |
|---|---|---|---|
| 23:10.<br>**calendar** 15:6.<br>**called** 8:25.<br>**calls** 27:24.<br>**capacity** 1:22.<br>**capital** 11:11.<br>**care** 32:23.<br>**Case** 1:19.<br>**cases** 19:12, 26:18.<br>**categories** 19:14.<br>**cause** 2:3.<br>**causes** 17:20.<br>**certain** 12:25, 14:21, 19:17, 22:14.<br>**Certainly** 4:18, 7:21, 21:21, 28:2.<br>**certify** 34:6, 34:13.<br>**change** 4:15.<br>**changed** 7:7.<br>**changes** 15:23.<br>**changing** 28:23, 29:2.<br>**charge** 25:22.<br>**charged** 9:16.<br>**Chief** 2:38.<br>**CHIOLINO** 1:34, 2:1, 4:1, 4:13, 4:14, 31:18, 34:8.<br>**circumstances** 16:13, 19:17.<br>**Civil** 2:4.<br>**claimant** 16:3, 16:21, 17:15, 17:20, 29:15, 30:15, 31:1, 31:4, 31:7, 31:10, 32:1, 32:3, 32:7.<br>**claimants** 9:9, 9:16, 29:14.<br>**claims** 12:16, 12:17, 13:16, 13:23, 14:9, 22:13.<br>**clarification** 30:23.<br>**clause** 21:14.<br>**clear** 10:13, 15:12.<br>**CLIFFORD** 1:15.<br>**co-counsel** 29:21.<br>**collect** 9:6, 10:3.<br>**collected** 12:3.<br>**collecting** 28:12.<br>**collection** 9:12, 9:25, 25:10, 25:11, 25:24.<br>**collectors** 9:15.<br>**collects** 9:22.<br>**COLLETT** 1:12.<br>**commencing** 2:8.<br>**Commission** 34:23. | **communicated** 23:5.<br>**compared** 20:21.<br>**compelled** 25:24, 26:4.<br>**Compensation** 8:11, 14:15, 16:15, 16:20, 16:23, 19:25, 20:5, 20:10, 21:6, 21:12, 23:2, 23:11, 23:17, 23:25, 24:10, 24:20, 25:12, 26:13, 29:8.<br>**completed** 15:6.<br>**compliance** 18:12, 18:19, 18:22, 18:24, 19:1, 19:5, 22:20.<br>**complies** 18:5.<br>**comply** 22:18.<br>**computer** 31:19.<br>**concealment** 26:2.<br>**concerning** 27:18.<br>**concludes** 26:1.<br>**conclusion** 27:24.<br>**conduct** 19:4.<br>**confer** 29:20.<br>**consultation** 8:8.<br>**contexts** 24:13.<br>**continue** 15:17.<br>**Correct** 14:22, 15:22, 16:5, 16:8.<br>**correctly** 8:20, 10:1, 17:11, 19:15.<br>**cost** 25:24.<br>**Counsel** 2:38, 34:14, 34:16.<br>**counting** 8:20.<br>**COUNTY** 34:3.<br>**COURT** 1:7, 5:4, 5:9.<br>**create** 8:5.<br>**criteria** 14:21, 14:24, 15:18, 19:14.<br>**cumulative** 25:6.<br>**currently** 6:6.<br>**cut** 27:11.<br>.<br>.<br>**< D >.**<br>**DANE** 34:3.<br>**dates** 6:12, 6:22.<br>**day** 2:7, 34:9, 34:18.<br>**day-to-day** 7:24.<br>**days** 22:15.<br>**dealing** 18:24.<br>**December** 6:25, 28:19. | **entitled** 14:18, 14:20, 14:25, 15:16, 15:19, 16:3.<br>**entitlement** 15:10, 15:13.<br>**Equal** 6:21.<br>**ESQUIRE** 2:21.<br>**establish** 19:9.<br>**evaluating** 21:17, 22:1.<br>**EVAN** 1:14.<br>**everybody** 29:25, 30:1, 32:21.<br>**exactly** 12:1, 14:1, 15:12, 21:4, 21:18.<br>**EXAMINATION** 3:4, 4:8, 30:9.<br>**examined** 4:4.<br>**examples** 18:1.<br>**Excelsior** 2:14.<br>**excluded** 21:1.<br>**exclusion** 20:20, 23:9, 27:9, 27:14, 27:21, 28:7, 28:23, 29:2.<br>**exhibits** 3:12.<br>**experience** 12:9, 12:21, 13:24, 18:20, 31:4, 32:4.<br>**Expires** 34:23.<br>**explain** 11:19.<br>**Explanation** 27:3.<br>**extent** 12:11, 18:8, 20:23, 27:24, 30:20.<br>.<br>.<br>**< F >.**<br>**fact** 21:10, 28:4.<br>**factor** 15:15.<br>**factors** 15:1.<br>**fair** 16:19.<br>**fairly** 13:9.<br>**familiar** 19:7, 23:13, 23:20, 24:5, 24:24.<br>**Families** 23:21.<br>**far** 7:7.<br>**February** 11:9.<br>**Federal** 2:4, 11:25, 14:3, 14:4, 14:5, 18:6, 22:21, 23:16, 27:3.<br>**federally** 16:7, 16:10.<br>**FERIOZZI** 1:13.<br>**few** 16:23, 19:12, 29:21.<br>**figure** 15:8.<br>**filed** 3:15.<br>**financially** 34:16. | **find** 4:17, 18:25.<br>**finding** 23:9.<br>**Fine** 29:23, 30:4.<br>**FINIZ** 1:13.<br>**First** 4:2, 11:2, 15:5, 18:17, 30:14, 30:23, 34:8.<br>**fiscal** 13:3.<br>**Fitzpatrick** 3:7.<br>**five** 8:18, 15:6.<br>**focus** 13:12.<br>**follow** 27:6.<br>**follow-up** 32:21.<br>**follows** 4:4.<br>**Food** 24:5.<br>**FORBERGER** 2:20, 2:21.<br>**foregoing** 34:6.<br>**form** 18:23.<br>**formula** 15:8.<br>**forth** 12:12.<br>**found** 15:2, 15:17.<br>**four** 9:4, 13:1, 15:5.<br>**four.** 8:19.<br>**frankly** 19:13.<br>**fraud** 26:2, 26:6.<br>**fraudulent** 28:14.<br>**fresh** 4:24.<br>**froze** 12:24.<br>**full** 23:3, 23:10.<br>**full-time** 31:14, 32:11.<br>**Fund** 9:7, 11:17, 11:20, 11:23, 12:15, 12:18, 13:16.<br>**funded** 11:20, 11:21, 16:7, 16:10.<br>**funding** 14:6, 22:22.<br>**funds** 11:23, 14:3, 14:4, 14:5.<br>**Future** 25:15, 25:16.<br>.<br>.<br>**< G >.**<br>**garnish** 25:18.<br>**garnishee** 25:19.<br>**General** 2:29.<br>**generally** 14:1, 15:5, 31:16.<br>**getting** 17:17.<br>**GINGRAS** 2:13.<br>**Give** 17:19.<br>**giving** 5:1. |

37                                                                                        39

| | | | |
|---|---|---|---|
| **decide** 15:21, 15:25.<br>**decides** 9:1, 10:7.<br>**decrease** 12:18.<br>**Defendant** 1:26.<br>**defendants** 2:35.<br>**defined** 19:20.<br>**definitions** 28:1.<br>**denied** 29:15, 32:10.<br>**Department** 1:24, 2:30, 6:7, 6:20, 7:16, 18:5, 21:21, 21:25, 22:6, 22:24, 23:8, 25:18, 25:19, 26:24, 26:25, 27:1, 28:13.<br>**depends** 8:6, 13:24, 16:18.<br>**deposed** 4:19.<br>**DEPOSITION** 1:34, 2:1, 5:18, 5:22, 6:2, 24:17, 32:15, 34:7.<br>**describe** 8:16, 22:4.<br>**Designee** 5:21, 6:18, 24:17.<br>**despite** 13:11.<br>**determination** 14:17, 15:14.<br>**determinations** 14:19.<br>**determine** 19:5.<br>**determined** 9:11, 13:4, 21:4.<br>**determines** 9:19.<br>**Development** 1:24, 6:7, 6:20, 7:16.<br>**devoted** 18:12.<br>**difference** 19:19.<br>**different** 19:14, 26:20.<br>**difficulty** 31:23.<br>**dipping** 24:12, 24:19, 24:23, 28:10, 28:13.<br>**directly** 9:24, 10:1, 10:3.<br>**director** 7:3, 7:6, 7:10, 7:22, 10:9, 10:10, 10:23, 18:13, 19:2, 27:5.<br>**Disability** 17:23, 19:8, 19:19, 27:18.<br>**disabled** 20:20, 21:1, 27:22, 28:1, 28:2, 29:12.<br>**disagree** 6:3.<br>**disclosing** 26:2.<br>**discretion** 15:21, 20:14.<br>**disproportionately** 27:22.<br>**disqualified** 17:20.<br>**disqualifies** 17:16.<br>**DISTRICT** 1:7, 1:8. | **Division** 6:8, 6:10, 6:11, 6:21, 7:15, 7:17, 7:20, 7:23, 7:25, 8:17, 8:18, 9:3, 10:18, 10:20, 11:8, 13:20, 14:3, 14:6, 15:20, 15:24, 17:12, 18:4, 20:4, 20:9, 21:17, 22:1, 22:22, 22:25, 23:1, 25:12, 26:1, 28:19.<br>**documents** 5:17.<br>**doing** 5:7.<br>**double** 24:12, 24:19, 24:23, 28:9, 28:13.<br>**down** 13:16, 13:23.<br>**drafters** 28:11.<br>**Drive** 2:14.<br>**due** 21:14, 23:3, 23:11, 29:16, 30:16.<br>**duly** 4:2, 34:8.<br>**during** 7:1, 12:22, 13:3, 13:7.<br>**duties** 7:22, 31:2.<br>**DWD** 2:38.<br>.<br>.<br>**< E >.**<br>**earnings** 15:5.<br>**efforts** 25:12.<br>**either** 4:15, 32:21.<br>**eligibility** 9:1, 10:7, 15:18, 15:23, 19:9, 19:14, 29:11.<br>**eligible** 15:2, 15:3, 15:4, 15:17, 15:18, 15:25, 20:25, 21:2, 21:3, 25:7.<br>**employed** 14:10.<br>**employee** 21:7, 34:14, 34:15.<br>**employees** 8:22.<br>**employer** 11:24, 13:2.<br>**employers** 11:22, 12:10.<br>**end** 16:24, 31:20.<br>**ended** 11:13.<br>**ends** 5:2, 5:4.<br>**enforcing** 8:2.<br>**engaged** 26:2.<br>**ensure** 22:25, 23:3, 23:10.<br>**ensuring** 18:5.<br>**entire** 16:6.<br>**entirety** 16:9. | **government** 16:22, 17:16.<br>**governor** 6:18.<br>**grant** 26:19.<br>**great** 5:7, 29:24.<br>**guess** 10:16, 12:25, 17:3, 18:23.<br>**guidance** 26:18, 26:21, 27:2, 27:6.<br>**guidelines** 8:7.<br>.<br>.<br>**< H >.**<br>**H-u-g-h** 11:12.<br>**hand** 34:18.<br>**handled** 10:3, 19:12.<br>**happens** 12:15, 17:22.<br>**head** 5:9.<br>**heard** 21:14, 24:12, 28:20.<br>**Hearings** 7:4, 22:15, 22:16.<br>**held** 6:12, 7:2, 10:12, 11:6, 11:15.<br>**help** 8:24.<br>**Hendrickson** 10:11.<br>**hereby** 34:6.<br>**hereunto** 34:17.<br>**hire** 9:25.<br>**hired** 6:14, 7:11, 7:13.<br>**Hise** 2:22.<br>**historically** 13:9.<br>**home** 4:14, 4:15.<br>**hours** 30:17, 31:8, 32:4.<br>.<br>.<br>**< I >.**<br>**idea** 27:8, 27:13.<br>**identification** 3:12.<br>**impact** 27:25, 28:2, 28:4.<br>**impacted** 27:9, 27:14.<br>**impacts** 20:20, 27:22.<br>**implemented** 25:13.<br>**implementing** 8:1.<br>**imply** 21:23.<br>**impose** 17:12.<br>**imposed** 17:8.<br>**inability** 31:14, 32:11.<br>**including** 30:16.<br>**incorrectly** 9:12.<br>**Indian** 23:14.<br>**individual** 15:24.<br>**individuals** 28:12. | **ineligible** 21:6.<br>**Information** 8:23.<br>**inherently** 28:14.<br>**initial** 10:8.<br>**insofar** 24:16, 27:7.<br>**Insurance** 6:8, 7:17, 8:12, 8:17, 9:7, 11:21, 14:2, 15:20, 16:7, 17:23, 19:8, 21:17, 22:1, 26:16.<br>**interest** 25:22.<br>**interested** 34:16.<br>**interpretation** 26:17, 27:3.<br>**intervenes** 15:15.<br>**issue** 23:4.<br>**issues** 18:15, 18:24, 27:1, 27:4.<br>.<br>.<br>**< J >.**<br>**J-a-n-e-l-l** 18:17.<br>**JAMES** 1:34, 2:1, 4:1, 4:13, 34:8.<br>**JAMIESON** 1:14.<br>**Janell** 18:17.<br>**JENNIFER** 2:37.<br>**Jim** 31:16.<br>**job** 5:7, 8:1, 10:12, 14:12.<br>**jobs** 31:3, 31:7.<br>**JOHN** 1:13.<br>**JOHNSON** 1:14.<br>**judges** 8:22.<br>**JUDY** 1:13.<br>**JUSTICE** 2:30.<br>.<br>.<br>**< K >.**<br>**K-n-u-t-s-o-n** 18:18.<br>**KILPATRICK** 2:28, 4:16, 15:11, 20:22, 27:23, 29:23, 30:3, 30:19, 31:15, 32:20.<br>**kilpatricksc@doj.state.wi.us** 2:33.<br>**kind** 16:21.<br>**KINNE** 2:12, 3:6, 3:15, 4:10, 29:19, 29:24, 30:7, 30:10, 32:17, 32:22.<br>**kinne@gtwlawyers.com** 2:16.<br>**knowledge** 12:11.<br>**known** 22:19.<br>**Knutson** 18:17, 18:19, 19:4. |

38                                                                                        40

JAMES CHIOLINO

.
**< L >.**
**L.** 1:41, 2:5, 34:4.
**Labor** 7:6, 7:10, 21:16, 21:19, 21:21, 21:24, 22:6, 22:23, 22:24, 23:6, 23:8, 26:24, 27:1.
**lack** 20:13.
**laid** 8:13.
**large** 13:15.
**larger** 12:16.
**largest** 9:2.
**Last** 4:22, 5:12, 6:24, 7:1, 7:3, 11:3, 11:11, 15:6, 18:17, 22:7.
**law** 8:22, 18:6, 19:12.
**lawful** 2:2.
**lawyers** 32:15.
**layperson** 11:19.
**least** 5:12, 10:21, 13:1, 22:8.
**Legal** 2:38, 8:21, 8:22, 18:13, 19:3, 20:23, 27:24.
**legislation** 13:11.
**less** 20:17.
**Letter** 26:7, 26:15, 26:17, 28:16.
**letters** 26:9, 26:11, 26:22.
**level** 10:8, 13:3, 13:8.
**list** 17:19, 19:13.
**little** 8:14, 13:1, 31:19.
**LLP** 2:13.
**locations** 2:7, 34:10.
**LONG** 1:15, 6:11, 10:12, 11:6, 11:15, 19:13.
**longer** 10:22.
**looked** 28:8.
**lose** 14:12.
**loss** 22:21.
**low** 13:9.
**lowest** 13:6.
**Lynn** 10:11.
.
**< M >.**
**M-c** 11:11.
**Madison** 2:15, 2:23, 2:32.
**Main** 2:31.

**man** 11:4, 11:5.
**Management** 8:23.
**marked** 3:12.
**Mcdonald** 1:41, 2:5, 34:4.
**Mchugh** 11:13.
**mean** 14:9, 15:12, 16:18, 18:10, 21:23, 25:1, 27:2, 28:18.
**means** 13:6.
**meant** 30:21.
**mechanical** 4:24.
**Mediation** 7:4.
**meet** 14:21, 15:18.
**memo** 28:17.
**memorized** 15:9.
**mentioned** 11:17.
**met** 14:24.
**method** 23:1.
**middle** 27:11.
**mind** 4:24, 6:3.
**minute** 29:5, 31:19.
**minutes** 29:25.
**missed** 31:20.
**mix** 12:1, 18:21, 18:24.
**money** 15:16, 27:8.
**month** 20:18.
**months** 4:22, 10:21, 22:8, 30:17.
**mostly** 12:1.
**Ms** 19:4.
**Mute** 31:18.
.
.
**< N >.**
**name** 4:11, 11:2, 11:3, 11:11, 18:16, 18:17, 18:18.
**Naomi** 28:17.
**Needy** 23:21.
**NEUMANN** 1:15.
**next** 13:8.
**No.** 1:19, 5:24, 6:1, 6:5, 21:15, 23:7, 27:15, 27:20, 28:5, 28:15, 28:18, 29:4, 29:7, 32:16.
**nodding** 5:8.
**Non-disabled** 20:21, 20:25, 28:3, 28:4.
**non-ui** 17:5.
**nor** 13:7.
**normal** 12:16.

41

**Plaintiffs** 1:17, 2:3, 2:18, 2:26.
**play** 21:16.
**Please** 4:11, 4:16, 5:2, 5:13, 11:1.
**policy** 8:2, 8:5, 8:6, 8:10.
**Portia** 28:17.
**position** 6:13, 6:14, 7:11, 7:15, 10:17, 10:19, 10:22, 11:6, 11:15, 18:11, 20:13, 28:13, 28:22, 29:2.
**practicing** 19:11.
**pre-pandemic** 13:17.
**preceded** 11:10.
**precluded** 19:24.
**predate** 13:20.
**prepare** 5:17, 32:14.
**presence** 34:10.
**Present** 2:37.
**prevents** 20:4, 20:8, 20:9.
**prior** 7:5, 13:24, 19:11, 31:4, 32:3.
**pro** 19:12.
**proactive** 18:20.
**probably** 10:22, 13:10, 18:13, 19:10, 29:21.
**Procedure** 2:4.
**process** 14:9.
**Program** 14:7, 24:4, 24:6, 26:17.
**programs** 22:6, 22:9.
**prompt** 22:12.
**prove** 19:8.
**PUA** 24:24, 25:1, 25:4, 25:7, 25:8.
**Public** 2:5, 34:5, 34:22.
**Pursuant** 2:4, 20:2, 20:15.
**put** 12:23, 25:18, 26:18.
.
.
**< Q >.**
**qualified** 29:14, 29:15.
**quarterly** 12:5.
**quarters** 15:6.
**question** 5:12, 16:24, 20:7, 20:23, 27:12, 31:20.
**questions** 5:1, 5:3, 9:2, 29:22, 32:18, 32:21.
.
.

**< R >.**
**rates** 12:9.
**reaction** 30:12.
**reactive** 18:20.
**read** 24:16.
**really** 6:3, 27:17, 28:8.
**realm** 8:15.
**reasonably** 23:2, 23:10.
**recall** 26:14, 28:25.
**receipt** 16:14, 17:15, 23:24, 24:9, 24:14, 24:15, 26:3.
**receive** 14:3, 19:17, 20:17, 24:20, 25:9.
**received** 9:10, 9:11.
**receives** 8:11.
**receiving** 16:21, 17:21, 19:23, 19:25, 21:7, 26:12.
**recent** 30:16.
**recently** 4:21.
**recess** 30:5.
**record** 4:12, 5:10, 30:8, 34:7.
**recoup** 9:13.
**reduced** 34:10.
**reflected** 17:9.
**regardless** 25:8, 29:11.
**regulation** 8:7.
**regulations** 12:12, 12:23, 17:9, 18:6, 26:5.
**relative** 15:1, 34:13, 34:15.
**rely** 18:14.
**remember** 11:7, 19:13, 19:15, 19:22, 21:4.
**remote** 2:7, 34:10.
**render** 21:5.
**reorganization** 7:7.
**repay** 9:9.
**repeat** 31:21.
**rephrase** 5:14.
**report** 22:9.
**Reported** 1:41.
**Reporter** 5:5, 5:10, 34:4.
**requirements** 22:21.
**resolved** 22:16.
**respect** 8:11, 16:14, 24:14.
**responsibility** 18:10, 21:24, 21:25, 22:25.
**responsible** 7:24, 18:5, 18:7,

43

**Notary** 2:5, 34:5, 34:22.
**notes** 5:25, 34:11.
**notice** 2:5.
**November** 6:24.
**number** 12:16, 13:15, 22:13, 22:16, 30:15, 31:3.
**numbers** 13:23.
**Nutrition** 24:4.
.
.
**< O >.**
**oath** 4:2, 4:27.
**object** 20:22, 30:20, 31:15.
**Objection** 15:11, 27:23.
**Obligated** 27:6, 27:7.
**obviously** 14:9.
**occupation** 31:2.
**Office** 8:9, 16:7, 26:22, 26:25, 31:23, 34:18.
**official** 1:21.
**offset** 17:5, 20:14, 21:11, 23:17, 23:24, 24:9, 25:4, 25:5, 25:9, 25:16, 29:6, 29:9.
**offsets** 16:13, 16:18, 17:8, 17:12.
**offsetting** 20:9.
**often** 26:20.
**Okay** 4:25, 5:5, 5:10, 5:11, 5:15, 6:19, 7:14, 7:17, 7:18, 7:22, 8:10, 8:16, 9:16, 9:24, 10:5, 10:14, 10:23, 12:8, 12:12, 12:15, 13:13, 13:14, 13:19, 13:22, 14:2, 14:8, 14:14, 14:20, 15:7, 15:14, 16:1, 16:11, 17:2, 17:8, 18:1, 18:9, 19:16, 21:5, 21:11, 21:20, 22:23, 24:14, 24:18, 25:6, 25:10, 25:18, 26:15, 27:8, 29:24, 30:12, 30:13, 30:18, 31:5, 31:6, 31:8, 31:9, 31:12, 31:25, 32:5, 32:8, 32:14, 32:19, 32:22.
**once** 15:14.
**One** 7:2, 14:19, 20:16, 21:9, 23:23, 24:8, 24:18, 25:3.
**Operations** 9:1, 10:7, 10:10.
**opinion** 19:3, 24:18, 24:21,

24:22, 24:23.
**opportunities** 26:19.
**opposite** 13:22.
**order** 14:20.
**organized** 8:17.
**Original** 3:15.
**otherwise** 29:14.
**overpayment** 25:17.
**overpayments** 9:13.
**overseeing** 21:25.
**oversight** 18:19, 23:4.
.
.
**< P >.**
**P-a-r-t-h-a** 11:3.
**Page** 3:4.
**paid** 12:17, 23:13, 23:16.
**Pandemic** 12:23, 13:7, 13:13, 25:2.
**part** 8:1, 30:14, 30:23, 31:5, 32:2.
**Partha** 10:25, 11:3.
**particular** 26:25.
**parties** 34:15.
**past** 13:3.
**Paul** 2:12, 30:19.
**pay** 15:21, 25:24, 26:4.
**paying** 20:4, 22:14, 23:1.
**payment** 22:12, 23:3, 23:10.
**payroll** 11:22, 11:24.
**Pechacek** 1:21, 5:21.
**penalty** 9:17, 9:19, 9:22.
**people** 20:21, 20:25, 21:2, 27:22, 27:25, 28:3, 28:4.
**per** 30:17, 31:8, 32:4.
**percentage** 22:13.
**perform** 31:1, 31:3.
**period** 6:24, 13:12.
**person** 14:12, 14:14, 14:18, 14:23, 14:24, 14:25, 15:15, 17:17, 18:14, 18:16, 19:23, 26:4, 29:12.
**personal** 24:21, 24:22, 24:23.
**personally** 21:24.
**perspective** 8:4, 18:20, 20:13, 27:5.
**pertaining** 26:11.
**physical** 30:15.
**place** 9:13, 12:24, 34:12.

42

18:22, 22:11.
**restriction** 30:16.
**restrictions** 30:15, 31:1, 31:10, 32:7.
**RESUMED** 30:9.
**retired** 11:14.
**reverse** 29:5.
**review** 5:17, 5:20.
**reviewed** 5:21.
**Rights** 6:21.
**role** 21:16, 21:19, 21:21.
**roughly** 4:22, 7:4.
**rule** 8:14, 16:4, 28:7, 29:3.
**Rules** 2:4, 4:24, 12:12, 17:9, 17:13, 24:2.
**run** 9:6, 30:11.
**running** 7:24.
.
.
**< S >.**
**S-h-a-s-h-a-n-k** 11:2.
**sake** 5:4.
**SANDRA** 1:41, 2:5, 34:4.
**SARAH** 1:14.
**scenario** 30:11, 30:14, 30:24, 31:5, 32:2.
**schedule** 12:25, 13:3, 13:5, 13:6, 13:10.
**schedules** 13:1, 13:25.
**SCOTT** 1:12.
**seal** 34:18.
**second** 31:5.
**Secretary** 5:21, 6:18, 8:9, 21:16, 21:19, 21:22, 21:23, 22:23, 23:6, 24:17.
**Secretary-designee** 1:22.
**Security** 17:23, 19:8, 19:21, 28:1.
**seen** 26:9, 26:11, 27:18, 28:16.
**seized** 25:15.
**separation** 15:3.
**Services** 23:14.
**set** 8:5, 8:10, 12:12, 13:5, 13:25, 16:2, 16:3, 22:12, 22:15, 22:17, 34:17.
**seven** 10:21.
**several** 19:14, 22:5, 22:7.
**shaking** 5:9.

**shape** 18:23.
**Share** 24:5.
**Shashank** 10:25, 11:2.
**Shorthand** 34:4.
**simultaneous** 24:15.
**situations** 16:20, 17:5, 17:14, 17:15.
**six** 22:8.
**size** 9:19.
**smaller** 13:23.
**SNAP** 24:4.
**Social** 17:23, 19:7, 19:21, 23:14, 28:1.
**solely** 29:16, 31:13, 32:10.
**somebody** 14:10, 15:25, 18:4.
**someone** 15:2, 25:7.
**Sometimes** 9:8, 9:16, 10:2, 26:18.
**somewhere** 12:13, 17:9.
**Sorry** 8:25, 26:6, 27:11, 30:22.
**sort** 7:7.
**sorts** 18:15.
**sound** 30:2.
**Sounds** 30:3.
**special** 12:23.
**specifically** 18:12.
**speculation** 31:16.
**spell** 4:11, 11:1.
**SSDI** 17:23, 19:12, 19:16, 19:23, 20:5, 20:10, 20:16, 20:17, 20:20, 21:1, 21:3, 21:4, 21:5, 21:7, 21:11, 23:9, 24:14, 24:19, 25:3, 25:9, 26:1, 26:3, 26:12, 27:9, 27:14, 27:21, 29:11, 29:16.
**Standards** 7:6, 7:10, 22:12, 22:15, 22:17, 22:18.
**stands** 26:16.
**started** 6:13, 10:19, 28:18.
**State** 1:23, 2:6, 4:11, 11:25, 12:1, 18:6, 21:9, 27:7, 34:1, 34:5, 34:22.
**STATES** 1:7, 21:5, 21:11.
**statistics** 22:10.
**status** 29:17.
**statute** 8:13, 16:2, 16:4, 20:2, 20:7, 20:12, 20:15,

44

24:2, 28:11.
**statutes** 17:10, 17:13, 18:2, 27:7.
**statutorily** 28:24.
**statutory** 8:7, 26:5.
**stenographic** 34:11.
**Steve** 29:19.
**STEVEN** 2:28.
**stint** 7:1.
**stints** 6:23.
**stood** 6:2.
**Street** 2:31.
**strike** 7:9, 9:8, 14:24, 16:2, 17:14, 25:11.
**substantial** 22:19.
**Supplemental** 24:4.
**surgery** 30:16.
**sworn** 4:2, 34:8.
**Systems** 8:23, 8:24.
.
.
< T >.
**Tax** 9:3, 9:5, 9:14, 9:23, 10:4, 10:23, 11:22, 12:3, 12:4, 12:6.
**tax-funded** 12:2.
**taxes** 9:6, 11:25, 12:20, 12:21, 12:24, 13:6, 13:17, 13:23.
**technology** 8:24.
**Temporary** 23:20.
**term** 24:12, 24:24.
**terms** 11:19, 27:10.
**testified** 4:4.
**they've** 9:9.
**Thomas** 11:11.
**THOMSEN** 2:13.
**timelines** 22:17.
**title** 6:9, 6:12, 7:1, 7:3, 18:11.
**titles** 7:8.
**today** 5:18, 31:23, 32:15.
**took** 10:17.
**tools** 10:2.
**TRACY** 1:15.
**training** 31:4, 32:4.
**transcript** 3:15, 5:22, 24:16.
**true** 13:21, 13:22, 34:6.
**Trust** 9:7, 11:17, 11:19,

11:22, 12:15, 12:18, 13:16.
**truth** 4:27.
**try** 5:2, 5:3, 5:14, 22:18.
**two** 10:15, 28:12, 30:17.
**typical** 14:8.
**typically** 14:13.
.
.
< U >.
**UC** 30:14, 30:21.
**UI** 7:20, 7:23, 17:6, 17:17, 17:20, 17:21, 18:4, 20:4, 20:9, 20:18, 22:25, 23:1, 24:15, 26:1, 27:19, 29:9, 30:21, 30:22.
**UIPL** 26:7, 26:9, 26:11, 26:15, 26:22, 27:18, 28:16, 28:21.
**Uipls** 28:20.
**um-hum** 5:8.
**undergone** 22:7.
**understand** 4:28, 5:13, 5:14, 17:11, 17:18, 20:7.
**understanding** 6:17, 11:23, 12:19, 19:10, 19:18, 25:7, 28:6, 28:10.
**unemployed** 19:23.
**Unemployment** 6:7, 7:16, 8:11, 8:17, 9:7, 9:8, 11:21, 13:2, 13:8, 14:2, 14:14, 15:20, 16:6, 16:14, 16:20, 16:22, 17:11, 19:25, 20:5, 20:10, 21:2, 21:6, 21:12, 21:17, 22:1, 23:1, 23:11, 23:17, 23:24, 24:9, 24:20, 25:2, 25:12, 26:12, 26:16, 29:16.
**UNITED** 1:7.
**unless** 15:15.
**until** 6:25, 7:5.
**unusually** 13:15.
**usage** 12:10.
**using** 5:7.
**usual** 31:2.
.
.
< V >.
**vague** 15:11.
**Van** 2:22.

45

**various** 2:6, 22:6, 22:9, 22:11, 22:17, 27:3, 34:10.
**vforberger@fastmail.fm** 2:24.
**via** 29:3.
**VICTOR** 2:20, 2:21.
**VIDEOCONFERENCE** 1:34, 2:1, 2:17, 2:25, 2:34, 34:7.
.
.
< W >.
**W-2** 23:21.
**WACHS** 2:13.
**wacky** 31:19.
**wages** 25:19.
**WAKERHAUSER** 2:37.
**walk** 14:8.
**Wednesday** 1:36.
**week** 30:17, 31:8, 32:4.
**West** 2:31.
**WESTERN** 1:8.
**whereof** 34:17.
**whether** 14:17, 20:16, 23:23, 24:8, 24:19, 25:3, 25:8, 29:8.
**whim** 15:24.
**will** 5:3, 5:13, 5:16, 7:20, 13:7, 19:2, 27:25, 29:21.
**willing** 31:7, 31:8, 32:3.
**Wisconsin** 1:8, 1:23, 2:6, 2:15, 2:23, 2:30, 2:32, 23:9, 34:1, 34:5, 34:22.
**withheld** 25:16.
**within** 8:6, 22:14, 22:16.
**WITNESS** 2:2, 30:4, 32:19, 34:17.
**woman** 11:4.
**words** 5:7.
**work** 4:15, 6:6, 6:19, 9:25, 14:9, 19:16, 29:12, 29:15, 30:17, 31:8, 31:14, 32:3, 32:11.
**worked** 6:20, 6:22, 6:23, 6:24.
**worker** 29:8.
**Workforce** 1:24, 6:7, 6:20, 7:16.
**working** 28:18.
**works** 14:1, 29:3.

**worth** 20:18.
**writing** 34:11.
**Wu** 28:17.
.
.
< Y >.
**year** 10:15, 10:21, 12:15, 13:3, 13:8, 13:15, 13:24, 13:25.
**yep** 21:22.

46