IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

       Plaintiffs,

v.                Case No. 21-cv-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

       Defendant.

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

---

The plaintiffs hereby move this Court pursuant to Federal Rule of Civil Procedure 23 to certify classes.

## INTRODUCTION

The plaintiffs seek to certify two classes. The first class consists of all Wisconsin workers who received Social Security Disability Insurance (SSDI) benefits from September 7, 2015, through the present who were also eligible for State of Wisconsin unemployment compensation insurance (UC) benefits but for their receipt of SSDI benefits. The second class consists of all Wisconsin workers who, from September 7, 2015, through the present, were compelled to repay UC benefits with interest or other penalty because they received SSDI benefits.

For the reasons set forth below, the Court should certify both classes.

## GENERAL LEGAL FRAMEWORK

Federal Rule of Civil Procedure 23 requires the plaintiffs prove that the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims and defenses of the representative parties are typical of the claims and defenses of the class; and the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.Pro. 23(a). Furthermore, certifying a class is appropriate when prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. Fed.R.Civ.Pro. 23(b)(1)(A). Additionally, certifying a class is appropriate where the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed.R.Civ.Pro. 23(b)(2).

For the reasons described below, the Court should certify both classes in this matter.

I. **The classes in this matter are so numerous that joinder of all members is impracticable.**

There is no specific numerical requirement under the numerosity test in Rule 23, but a 40 member class is often regarded as sufficient to meet the numerosity requirement. *King v. Landreman,* 2020 U.S. Dist. LEXIS 193981, *6 (W.D. Wisc).

There are approximately 19,380 individuals annually who receive Social Security Disability Insurance benefits who also work. Dkt. 42-1, p. 4-5. Of that number, approximately 470 SSDI beneficiaries per year would have been eligible for unemployment compensation in Wisconsin but for their receipt of SSDI benefits. Kinne Decl. filed contemporaneously herewith, Ex. A (Expert Report of Shawn Fremstad and Hayley Brown), p. 2. That leads to a class of up to about 3,300 individuals (470 individuals per year for seven years). This far exceeds the number typically required to meet the numerosity threshold. The first class should therefore be certified.

It bears comment that the plaintiffs have attempted to discover more precise numbers through discovery in this matter, but the defendant has refused to produce the number of SSDI beneficiaries who were denied UC benefits because of their receipt of SSDI benefits. While those numbers would not include the entire class – the class would also include those eligible who did not apply – it would produce a definite number of potential class members from which extrapolations could be made. Regardless of the defendant's failure to produce precise numbers, the Court should conclude that the numerosity standard has been satisfied.

Likewise, the defendant has refused to produce the number of UC beneficiaries who were required to repay benefits with interest or other penalties. That number would necessarily be a smaller class than the first class, but without defendant producing the number of UC beneficiaries required to repay benefits because of their receipt of SSDI benefits, the Court should conclude that the numerosity standard has been met.

II. **There are questions of law or fact common to the classes.**

The facts of this case make it beyond dispute that common questions of law and fact pertain to the classes. To satisfy the commonality requirement, the plaintiffs need only show that there is a common nucleus of operative facts. *Flynn v. Doyle*, 2007 U.S. Dist. LEXIS 22659, *10. (E.D. Wisc.).

The first class has the following in common: they were automatically ineligible to receive UC benefits because they received SSDI benefits. There is a statute which prohibits individuals who are receiving SSDI benefits from receiving UC benefits. Dkt. 59, Pechacek Depo. at 21-22; Wis. Stat. § 108.04(12)(f). All unemployed people receiving SSDI benefits are automatically precluded from receiving UC benefits. Pechacek Depo. at 24; Dkt. 58, Chiolino Depo. at 19-20. The ban on the receipt of UC benefits which applies to SSDI benefit recipients is an eligibility ban. Pechacek Depo. at 31. The

same statutory formula for UC benefits applies to all UC applicants, and it is a function of prior earnings. Pechacek Depo. at 19-20; Chiolino Depo. at 14-15.

With respect to the first class, all class members were automatically ineligible to receive UC benefits because they received SSDI benefits.

With respect to the second class, when applicants receive UC benefits while they were also receiving SSDI benefits, future UC benefits are seized, and a collection action is commenced. Pechacek Depo. at 33. Some applicants who receive an overpayment of benefits are subject to paying a penalty. Chiolino Depo. at 9.

The second class has a common nucleus of operative facts. The class members were required to repay UC benefits because they received SSDI benefits, with interest or a penalty.

Accordingly, both classes should be deemed to have satisfied the commonality requirement.

### III. **The claims of the representative parties are typical of the claims of the classes.**

To satisfy the typicality requirement, a plaintiff must show that his or her claim arose from the same event, practice, or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Flynn*, at *10.

With respect to the first class, all the named plaintiffs suffered from the same event, practice, or course of conduct which gives rise to class member claims. Brian Bemke was disabled under the Social Security Administration rules and began receiving SSDI benefits in October or November 2018. Dkt. 51-C, Bemke appeal tribunal decision No. 21016432MD, p. 2. Brian Bemke was working within the parameters allowed by the SSA rules. *Id.* Brian Bemke was denied UC benefits because of his receipt of SSDI benefits. *Id.* at 3. Brian Bemke was denied UC benefits based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). *Id.*

Scott Collett was disabled under the SSA rules and applied for SSDI benefits during the summer of 2020. Dkt. 57, Collett Decl., ¶ 1. While waiting for a determination on his eligibility for SSDI benefits, Scott Collett worked as a concierge and room service staffer at the Hyatt Regency in Milwaukee, WI. *Id.* ¶ 2. Scott Collett was laid off from his job on approximately March 14, 2020. *Id.* ¶ 3. Scott Collett began receiving UC benefits after he was laid off. *Id.* ¶ 3. Scott Collett's application for SSDI benefits was approved in July 2020. *Id.* ¶ 4. Scott Collett began receiving SSDI benefits on approximately August 8, 2020. *Id.* ¶ 4. Scott Collett stopped receiving UC benefits after he began receiving SSDI benefits. *Id.* ¶ 5. Scott Collett was denied UC benefits because of his receipt of SSDI benefits. Dkt. 51-D, Collett Benefits Determination, p. 1. Scott Collet was denied UC benefits based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). *Id.* While eventually found eligible for Pandemic Unemployment Assistance (PUA)[1] benefits, the Department deducted $2,418 in regular unemployment benefits received from March to July 2020 pursuant to an over-payment created by the state's SSDI eligibility ban. Dkt.57, Collett Decl. ¶6, and Dkt. 51-D, Collett Initial Determination No. 210013091.

John Feriozzi was disabled under the SSA rules and began receiving SSDI benefits in late 2014. Dkt. 51-F, Feriozzi Determination No. 212291480, p. 1; Dkt. 54, Feriozzi Decl., ¶ 2. John Feriozzi worked within the parameters allowed by the SSA. Feriozzi Decl., ¶¶ 3-5. John Feriozzi was laid off from his job during March 2020 due to the COVID-19 pandemic. *Id.* ¶ 5. John Feriozzi applied for UC

---

[1] Created by the CARES Act, Pub. L. No. 116-136, § 2101, 134 Stat. 281, 313 (2020) (the "Relief for Workers Affected by Coronavirus Act"), partially codified at 15 USC § 9021, PUA benefits were available during the Covid-19 pandemic to individuals not eligible for regular unemployment benefits but who suffered a qualifying, pandemic-related job loss. *See also* UIPL No. 16-20 Change 6 (sept. 3, 2021) at Att. I (listing pandemic-related reasons for qualifying for PUA benefits) (available at https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_16-20_Change-6.pdf). The Department originally held that the SSDI eligibility ban also applied to PUA benefits. But, after a request for clarification from the Department, in late July 2020 the US Dep't of Labor declared that SSDI recipients were eligible for PUA benefits. *See* Victor Forberger, "PUA benefits now available to SSDI recipients" (July 28, 2020) (available at https://wisconsinui.wordpress.com/2020/07/28/pua-benefits-now-available-to-ssdi-recipients/).

benefits. *Id.* ¶ 10. John Feriozzi was denied UC benefits because of his receipt of SSDI benefits. Feriozzi Benefits Determination, p. 1; Feriozzi Decl. ¶ 11. John Feriozzi was denied UC benefits based on the SSDI exclusion included in Wis. Stat. § 108.04(12)(f). Feriozzi Benefits Determination, p. 1.

Judy Fintz was disabled under the SSA rules and began receiving SSDI benefits in 2007. Dkt. 51-H, Fintz Appeal Tribunal Decision No. 15200022EC, p. 4. Judy Fintz worked within the parameters allowed by the SSA. *Id.* Judy Fintz applied for UC benefits during the calendar week ending December 27, 2014. *Id.* On January 22, 2015, an administrative law judge found that Judy Fintz was not eligible to receive UC benefits during weeks when she received SSDI payments, but that Judy Fintz was eligible to receive UC benefits during weeks when she did not receive SSDI payments. *Id.* Judy Fintz was denied UC benefits under the January 22, 2015, decision because of her receipt of SSDI benefits. *Id.* Judy Fintz was denied UC benefits under the January 22, 2015, decision based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). *Id.* Judy Fintz was denied UC benefits under the January 20, 2016, decision because of her receipt of SSDI benefits. *Id.* at 9-10. Judy Fintz was denied UC benefits under the January 20, 2016, decision based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). *Id.* at 9.

Sarah Jamieson was disabled under the SSA rules and received SSDI benefits. Dkt. 51-I, Jamieson Determination No. 180504850, p. 1; Dkt. 52, Jamieson Decl., ¶ 1. Sarah Jamieson worked within the parameters allowed by the SSA. Jamieson Decl., ¶¶ 3-5. Sarah Jamieson applied for UC benefits in early April 2020. *Id.* ¶ 6. Sarah Jamieson was denied UC benefits because of her receipt of SSDI benefits. Jamieson Benefits Determination, p. 1; Jamieson Decl. ¶ 6. Sarah Jamieson was denied UC benefits based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). Jamieson Benefits Determination, p. 1. When eventually found eligible for PUA benefits, the Department deducted $1,772, $833, and $2,611 in regular unemployment benefits received in 2016, 2015, and 2014,

respectively, pursuant to an over-payment created by the state's SSDI eligibility ban. Dkt.52, Jamieson Decl. ¶2, and Dkt. 51-9, Jamieson Determinations Nos. 180471030, 180498090, and 180504850.

Evan Johnson was disabled under the SSA rules and began receiving SSDI benefits in February 2020. Dkt. 51-K, Johnson Benefits Determination, p. 1; Dkt. 54, Johnson Decl., ¶¶ 1-2. Evan Johnson was working within the parameters allowed by the SSA. Johnson Decl. ¶ 3. On approximately October 17, 2020, Evan Johnson was laid off due to the COVID-19 pandemic. *Id.* ¶ 5. Evan Johnson was denied UC benefits because of his receipt of SSDI benefits. Johnson Benefits Determination, p. 1. Evan Johnson was denied UC benefits based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). *Id.*

During July 2019, Tracy Long suffered a workplace injury and subsequently lost her job. Dkt. 55, Long Decl., ¶ 1. Tracy Long began receiving UC benefits on approximately August 31, 2019. *Id.* ¶ 2. Tracy Long was disabled under the SSA rules and began receiving SSDI benefits on approximately October 13, 2020. *Id.* ¶¶ 4, 6. Tracy Long has worked within the parameters allowed by the SSA. *Id.* ¶¶ 9-10. Tracy Long was denied UC benefits because of her receipt of SSDI benefits starting in October 2020. Dkt. 51-M, Long ALJ Decision, pp. 2-4; Long Decl. ¶ 8. Tracy Long was denied UC benefits based on the SSDI exclusion created by Wis. Stat. § 108.04(12)(f). Long ALJ Decision, pp. 2-4. Pursuant to the SSDI eligibility ban, she was ordered to repay $1,160 in regular unemployment benefits that she received in 2020. *See* Kinne Decl., Ex. B (Initial Determinations 210311960 (DWD 901) and 210311990 (DWD 878) and Appeal Tribunal Decisions in Hearing No. 21401006AP(DWD 891)).[2]

Clifford Neumann was disabled under the SSA rules and was receiving SSDI benefits. Dkt. 51-O, Neumann ALJ Determination, p. 1; Dkt. 56, Neumann Decl. ¶¶ 1-2. Clifford Neumann was working within the parameters allowed by the SSA. Neumann Decl. ¶¶ 3-8. In June 2020, Clifford Neumann

---

[2] While originally charged with concealment, *aka* unemployment fraud, the appeal tribunal decisions found that there was no factual basis for these allegations. *See* Appeal Tribunal Decision No. 21401006AP.

was laid off due to the COVID-19 pandemic. *Id.* ¶ 9. Clifford Neumann was denied UC benefits because of his receipt of SSDI benefits. *Id.* ¶10*;* Neumann ALJ Determination, p. 1. Clifford Neumann was denied UC benefits based on the SSDI created by Wis. Stat. § 108.04(12)(f). Neumann ALJ Determination, p. 1.

The same event (denial of UC benefits because the plaintiffs received SSDI benefits) or practice (the application of Wisconsin's discriminatory rule prohibiting SSDI beneficiaries from receiving UC benefits to which they would otherwise be entitled) leads to the claims of both the named plaintiffs and the class members who received SSDI benefits but were otherwise eligible for UC benefits. The plaintiffs have met their standard for the typicality part of the Rule 23 test for the first class.

The plaintiffs have also met their standard for the second class. Tracy Long was penalized at least $2,900 for receiving UC benefits while also receiving SSDI benefits. Kinne Decl., Ex. B, Tracy Long Determination (DWD 878). This administrative penalty was in addition to any overpayment of benefits. *Id.* The second class includes those plaintiffs who were required to pay administrative penalties in addition to the repayment of UC benefits because of their receipt of SSDI benefits. The plaintiffs have met their standard for the typicality part of the Rule 23 test for the second class.

IV. **The representative parties will fairly and adequately protect the interests of the classes.**

The factors to determine whether the named plaintiffs satisfy the "adequacy" test include establishing that the plaintiffs do not have claims that conflict with the claims of other class members and that they have a sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Wachala v. Astellas US LLC*, 2022 U.S. Dist. LEXIS 24052 *18 (N.D. Ill.).[3] The claims of the named plaintiffs will not conflict with the claims of the other class members. For the first class, each claim is independent of every other claim, and the class members are seeking injunctive relief in the form of an order compelling that all recipients of SSDI benefits over the course of the time covered by this case be provided an opportunity to apply (or re-apply) for benefits for the time during which they were deemed ineligible because they received SSDI benefits. The named class members interests are aligned with the entire class, and there is no conflict.

As for the second class, the named class members would seek disgorgement of the penalties or interest they were charged because of repayment and the reimbursement of the regular unemployment benefits they had to repay. Once again, there would be no conflict. Given that the defendant is the state, collectability is not an issue, so they would not even be competing over a limited source of funds.

For these reasons, for each class, the Court should find Fed.R.Civ.Pro. 23(a)(4) has been satisfied for both of the classes.

V. **If the classes are not certified, there is a risk of inconsistent or dispositive adjudications.**

A court may certify a class under Rule 23(b)(1)(A) if individual adjudications would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. *Moreno v. Napolitano*, 2014 U.S. Dist. LEXIS 138576, *35-36 (N.D. Ill.). The *Moreno* decision is instructive. The Court in that case held:

---

[3] The test also includes determining whether class counsel is competent, qualified, experienced and able to conduct the litigation vigorously. That part of the test will be addressed in the plaintiffs' Rule 23(g) motion for appointment of class counsel.

> Plaintiffs contend that ICE's standard policies and procedures used to issue detainers violate their Fourth Amendment and due process rights. Here, individual adjudications would create a risk of inconsistent results that would establish incompatible standards of conduct for Defendants. If a court finds any portion of Defendants' challenged policies and procedures to be unconstitutional, Defendants would be required to modify the infringing policy or procedure. If another court, however, rules otherwise, Defendants would not be required to modify the same policies and procedures. Because individual adjudications could establish incompatible standards of conduct for Defendants, certification of Plaintiffs' class under Rule 23(b)(1)(A) is appropriate.

*Moreno v. Napolitano*, 2014 U.S. Dist. LEXIS 138576, at *36 (N.D. Ill. Sep. 30, 2014). Just like in the *Moreno* case, if the individual plaintiffs tried their claims separately, they would risk one court determining that the SSDI eligibility ban violated the ADA, thus forcing the defendant to change policies, but another court determining that the law did not violate the ADA. Indeed, the very same plaintiff could face different rulings for each period of otherwise covered unemployment. For both classes, Rule 23(b)(1)(A) has been satisfied.

> The *Moreno* case also supports certification under Rule 23(b)(2). The *Moreno* Court held:
>
> [A] court may certify a class under Rule 23(b)(2) if a defendant has "refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs allege Defendants have refused to modify their constitutionally infirmed policies and procedures related to the issuance and implementation of detainers. Because Plaintiffs seek a declaratory judgment and injunctive relief that would inure to the benefit of the entire class, certification under Rule 23(b)(2) is also appropriate. *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1772 8-10 (2005) (noting it is "common for an action to fall under Rule 23(b)(1) and one of the other categories in Rule 23(b)" and actions maintained under both Rule 23(b)(1) and Rule 23(b)(2) "are treated alike for purposes of notice to passive class members and in measuring the effect of the judgment").

*Moreno*, at *37-38.

In this case, both classes seek injunctive relief that is appropriate respecting the class as a whole. The plaintiffs in the first class seek an order compelling the defendant to allow SSDI beneficiaries to apply for benefits during the times they were rendered ineligible for UC benefits

because of their receipt of SSDI benefits, during the times covered by this case. The plaintiffs in the second class seek disgorgement of the penalties or interest they paid because of an order to repay benefits when they would have been eligible for the benefits but for their receipt of SSDI benefits. In both cases, the plaintiffs seek injunctive or declaratory relief (i.e., the SSDI eligibility ban violates the ADA). The plaintiffs have thus satisfied this element of the test, so the petition to certify both classes should be granted.

## CONCLUSION

For the reasons cited above, the Court should certify both classes in this case.

Submitted this 9th day of January, 2023.

GINGRAS, THOMSEN & WACHS, LLP

*/s/ Paul A. Kinne*
Paul A. Kinne (SBN: 1021493)
Riley C. Leonard (SBN: 1101452)
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Kinne@gtwlawyers.com
rleonard@gtwlawyers.com


VICTOR FORBERGER, ESQ.

*/s/ Victor Forberger*
Victor Forberger (SBN: 1070634)
2509 Van Hise Ave
Madison, WI 53705
Tel: (608) 352-0138
Forberger@fastmail.fm


AXLEY BRYNELSON, LLP

*/s/ Heath Straka*
Heath Straka (SBN: 1031351)
2 E. Mifflin Street, Ste. 200

Madison, WI 53701
Tel: (608) 283-6755
HStraka@axley.com

***Attorneys for plaintiffs***