IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ,
SARAH JAMIESON, EVAN JOHNSON,
TRACY LONG and CLIFFORD
NEUMANN, on behalf of themselves and
similarly-situated individuals,

                 Plaintiffs,                 OPINION AND ORDER

  v.

                                                      21-cv-560-wmc

AMY PECHACEK, in her official capacity
As Secretary-designee of the State of Wisconsin
Department of Workforce Development,

                 Defendant.

---

This lawsuit was brought by individuals who were eligible for and received social security disability insurance ("SSDI") benefits, but after losing part-time work, were either denied unemployment benefits outright or were compelled to repay those benefits with interest or other penalties under Wisconsin's Unemployment Compensation Insurance Statute, Wis. Stat. § 108.04(12)(f), which prohibits those receiving SSDI benefits from receiving state unemployment benefits.  Plaintiffs contend that the exclusion of unemployment benefits for those receiving SSDI unlawfully discriminates against individuals with disabilities and violates their due process rights.  They filed this proposed class action against Amy Pechacek in her capacity as Secretary-designee of the Wisconsin Department of Workforce Development, under the Americans with Disabilities Act (ADA), the Rehabilitation Act and the Due Process Clause of the Fourteenth Amendment on behalf of themselves and those similarly situated.

Before the court are the parties' cross motions for summary judgment. For the reasons explained below, the motions will be granted in part and denied in part. Defendant's motion will be granted as to plaintiffs' due process claim and their claim that defendant intentionally discriminated against them because of their disabilities. However, the motion will be denied as to plaintiffs' disparate impact claim. Likewise, plaintiffs' motion will be granted as to their disparate impact claim but denied in all other respects.

OPINION

Under Wisconsin's unemployment compensation laws, an individual generally is eligible for unemployment compensation benefits in any given week if the claimant: (1) is able and available to work during that week; (2) has registered for work as required by the Department of Workforce Development; and (3) conducts a reasonable search for suitable work and provides verification. Wis. Stat. § 108.04(2)(a). However, § 108.04(12)(f) provides a blanket denial of unemployment compensation benefits to any individual receiving SSDI benefits, even if the individual would otherwise qualify. (Individuals who receive SSDI benefits may work lawfully, without violating Social Security laws under certain circumstances. For example, an individual may work if the work: (1) does not qualify as substantial gainful activity (such as part-time work); (2) requires reasonable accommodation for their disability; or (3) is part of a trial-work period that is part of a transition back to the workforce. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999).)

The express purpose of this exclusionary provision, § 108.04(12)(f), is to "prevent the payment of duplicative government benefits for the replacement of lost earnings or

income, regardless of an individual's ability to work." Wis. Stat. § 108.04(12)(f)1m. The statute also requires denial of benefits to individuals who receive unemployment compensation benefits from another state or under federal law. Wis. Stat. § 108.04(12)(a)–(e).

Plaintiffs contend that § 108.04(12)(f)1m discriminates against them because of their disability and violates their due process rights, while defendant maintains that it is a lawful, rational exclusion preventing an overpayment of benefits. At summary judgment, both sides agree there are no genuine factual disputes that could make a difference to the outcome of the case but argue over which side is entitled to judgment as a matter of law when drawing all reasonable inferences in the other party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The court addresses plaintiff's claims applying this standard.

I. **Disability Discrimination**

Both Title II of the ADA and Section 504 of the Rehabilitation Act prohibit discrimination against individuals with disabilities. As applied to this lawsuit, the statutes are "functionally identical." *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Specifically, a claim brought under either statute has two basic elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff must have been denied governmental benefits because of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). A plaintiff may succeed on a Title II discrimination claim under one of three theories of

3

liability: (1) the defendant intentionally acted on the basis of the disability; (2) the defendant's rule disproportionally impacts disabled people; or (3) the defendant refused to provide a reasonable accommodation. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 967 (7th Cir. 2018); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). Here, plaintiffs argue that Wisconsin's unemployment compensation statute amounts to both (a) intentional discrimination and (b) produces a disparate impact on individuals with disabilities.

### A. Intentional Discrimination

Plaintiffs contend that the statute intentionally targets individuals with disabilities because all SSDI recipients are necessarily disabled. As a result, the statute affects *only* disabled persons, and has no impact on non-disabled persons. Plaintiffs liken this case to *Hamlyn v. Rock Island County Metropolitan Mass Transit District*, 986 F. Supp. 1126 (C.D. Ill. Oct. 23, 1997), in which the plaintiff was denied participation in a reduced fare bus program because he had AIDS. *Id.* at 1129–30. Because the plaintiff otherwise qualified for the bus program, and there was an express exclusion for anyone with AIDS, the court in *Hamlyn* found that the exclusion was "so facially discriminatory" that it violated the ADA and Rehabilitation Act. *Id.* at 1132.

In contrast to the reduced bus fare program in *Hamlyn*, however, Wis. Stat. § 108.04(12)(f) does not discriminate "on its face" based on disability; it does not categorically deny a person unemployment benefits merely because the person has a disability. Instead, the statute denies unemployment benefits to individuals who received

SSDI benefits. Thus, the focus is on receipt of SSDI payments, not on whether the person has a disability or whether the person can work. Indeed, if not receiving SSDI benefits, disabled individuals losing their work are eligible to receive unemployment benefits.

As defendant points out, this case is more analogous to *P.F. by A.F. v. Taylor*, 914 F.3d 467 (7th Cir. 2019), in which a plaintiff challenged Wisconsin's public school open-enrollment program, which permits schools to consider capacity constraints when reviewing an application for enrollment by a student needing special-education services. *Id.* at 470–72. In *Taylor*, the Seventh Circuit held that the program did not violate the ADA or Rehabilitation Act because the open-enrollment program permitted denial of an open enrollment spot *not* because of a student's disability, but on the basis of a school's capacity and resources. *Id.* at 472. As in *Taylor*, Wisconsin's unemployment compensation laws require rejection of a requested benefit for a reason other than a person's disability. Wis. Stat. § 108.04(12)(f). Specifically, it is not an individual's disability or work capacity, but rather their receipt of federal funds that is the basis for defendant's action. Thus, summary judgment must be granted to defendant on plaintiff's *intentional* discrimination claim.

### B. Disparate Impact

Plaintiffs' disparate impact claim is more meritorious.[1] To state a disparate impact claim under the ADA or Rehabilitation Act, a plaintiff must allege that a facially neutral

---

[1] Neither the parties nor the court addressed a disparate impact claim in *P.F. by A.F. v. Taylor*, 914 F.3d 467 (7th Cir. 2019).

policy "fall[s] more harshly on one group than another and cannot be justified by [a non-discriminatory] necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quotation omitted). A plaintiff can show disparate impact either by comparing persons in a protected class to persons outside the protected class, or by comparing persons within the same class; in other words, inter-class disparate impact claims are viable. *E.g., Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013). Typically, evidence of disparate impact "usually focuses on statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Wisc. Cmty. Servs.*, 465 F.3d at 753 n.14 (citation omitted). To succeed on a disparate impact claim, however, the plaintiff need not show any intent to discriminate. *Raytheon*, 540 U.S. at 52–53; *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018).

Here, Wisconsin's unemployment compensation exception for individuals receiving SSDI is facially neutral, and the purpose of avoiding duplicative government benefits is not inherently discriminatory and may even be reasonable. However, that is not enough to save the law, as "a disparate-impact claim necessarily involves a policy . . . that is motivated by a factor other than [the protected characteristic]." *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 931 (7th Cir. 2018). Instead, the relevant question for a disparate impact claim is whether "a facially neutral government policy or practice has the effect of denying meaningful access to public services to people with disabilities." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021).

The undisputed facts establish that it does. As plaintiffs point out, Wisconsin's unemployment compensation exception under § 108.04(12)(f) only affects individuals

with disabilities, as anyone who receives SSDI is disabled.  Nevertheless, defendant argues that because the Social Security Act defines "disability" differently from Title II of the ADA or the Rehabilitation Act, the receipt of SSDI benefits does not necessarily mean that a person is also disabled under these two statutes.  This turns out to be a theoretical distinction without a difference, however, as defendant provides *no* examples of a such an individual, and indeed concedes that "[t]he term 'disability' has a *broader* meaning under the ADA and Rehabilitation Act than under the SSDI program." (Dft.'s Br. (dkt. #45)12–13 (emphasis added).)

Specifically, to qualify for SSDI benefits, the disability must prevent the individual "from engaging in substantial gainful activity," whereas the ADA and Rehabilitation Act plainly protects individuals who are able to engage in such work.  (*Id.*)  As a practical matter, therefore, all or virtually all SSDI recipients would be considered disabled under the ADA and Rehabilitation Act. *Cf. Brewer v. Wisconsin Bd. of Bar Examiners*, No. 04-C-0694, 2006 WL 3469598, at *11 (E.D. Wis. Nov. 28, 2006) (referring a bar application "for further review and follow-up after a member of [the Board of Bar Examiners] staff noted [plaintiff] had been certified as disabled by the Social Security Administration . . . [is] practically an admission that "the defendant[s] intentionally acted on the basis of the disability.")  Thus, § 108.04(12)(f) applies only to individuals with disabilities, meaning that it necessarily has a disparate impact on those with disabilities.

Alternatively, defendant argues that plaintiffs' disparate impact claim fails because § 108.04(12)(f) does not affect *all* disabled people; rather, it only affects a "subset" of disabled people who receive SSDI benefits.  Thus, defendant argues, disabled individuals

7

may receive unemployment compensation benefits so long as they meet all of the other eligibility requirements and do not receive SSDI.  However, the fact that the statute affects only a subset of disabled individuals does not undermine the viability of plaintiffs' disparate impact claim.

A law or policy may have a disparate impact on disabled people even if it does not adversely impact *all* disabled people.  In *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 849 (7th Cir. 1999), the Seventh Circuit considered a student's challenge to a school athletic association's "eight-semester" rule that prevented him from participating further in sports.  The rule limited a student's athletic eligibility to the first eight semesters following the student's commencement of ninth grade.  Because Washington had dropped out of school during his junior year, the eight semesters had passed by the time he returned to school the following year.  When the plaintiff requested a waiver of the eight-semester rule, based on a learning disability that caused him to drop out, the athletic association denied the request, stating that the plaintiff's ineligibility stemmed "not from his learning disability, but from the application of a facially neutral eight semester rule and the passage of time."  *Id.* at 846.  However, the Seventh Circuit rejected the athletic association's argument, explaining that "but for his learning disability, [the plaintiff] would have been eligible to play sports in his junior year." *Id.* at 849.  In other words, but for the student's disability, he would have been able to access the services or benefits he desired.  *See Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 739 (9th Cir. 2021) (plaintiffs state disparate impact claim based on "allegations of systemic accessibility barriers in campus websites or the library are claims that impact all blind

8

users"); *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004) (considering disparate impact claim against county over proposal to close county hospital providing rehabilitation and medical services to people with chronic disabilities); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (holding that Hawaii's dog quarantine requirement had disparate impact on visually-impaired persons "by denying them meaningful access to state services, programs and activities by reason of their disability in violation of the ADA").

The same is true here. Although Wisconsin's unemployment compensation exception under § 108.04(12)(f) may be facially neutral, the exclusion affects plaintiffs in this case because they received SSDI, which they only received because of their disabilities. In other words, but for their disabilities, plaintiff would not have received SSDI and would have been eligible to receive unemployment compensation.[2] Said yet another way, SSDI payments were made to eligible disabled individuals despite their ability to earn additional, albeit non-substantial income from part-time work. The SSDI payments were in addition to these earnings because any receipt of unemployment benefits is limited by the individual's actual earnings, and it is not at all obvious why someone with other sources of excludable income (public or private) would be entitled to unemployment benefits but those disabled and receiving SSDI would not be.

---

[2] Because unemployment benefits are calculated using the first four calendar quarters of the five most recently finished before a claim, perhaps an argument for a "windfall" could be made for someone only *recently* reduced to non-substantial work and receiving SSDI payments, but the statute's blanket denial of unemployment to all SSDI recipients makes no such distinction, nor does defendant argue for one. *See* https://www.wisconsinunemployment.us/benefits. Regardless, this issue is addressed in the next two section of the opinion.

## II. Due Process[3]

Plaintiffs also contend that defendant's denial of their unemployment compensation applications violated a right to procedural due process because the statute precludes SSDI recipients from receiving any unemployment compensation, duplicative or not. This is not a due process claim. To state a procedural due process claim, a plaintiff must allege: (1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation. *Michalowicz v. Vill. Of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

To the contrary, plaintiffs do not challenge any insufficient process, such as a denial of notice or an opportunity for a hearing to contest the denial of benefits. Plaintiffs do not deny that they had the opportunity to seek administrative review if their applications were denied. Rather, plaintiffs' "due process" claim is actually a challenge to the law itself as being contradictory and improperly precluding more than just duplicative benefits to SSDI recipients. This argument boils down to a disagreement with the legislature's policy choices with respect to SSDI recipients and does not amount to a due process claim. Accordingly, summary judgment will be granted to defendant on this claim.

## III. Remaining Issues

There are two primary issues remaining in this case: (1) plaintiffs' motion for class

---

[3] Defendant also made a separate argument for dismissal of plaintiffs' claim under the Social Security Act's "when due" clause, 42 U.S.C. § 503(a)(1), but plaintiffs' clarified in their response brief that they did not bring a separate claim under that clause. (Plts.' Br. (dkt. #63) 18, n.4.) Rather, their reference to that clause in their complaint was simply to bolster their due process claim. Thus, the court will not conduct a separate analysis of a "when due" clause claim.

certification; and (2) remedies. The parties have not completed briefing on plaintiffs' motion for class certification, so the court will set a scheduling conference to set briefing on that issue and a potential trial on remedies.

With respect to available remedies, Department of Justice regulations require reasonable modifications in such policies, practices or procedures "when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Here, plaintiffs agree that the Eleventh Amendment would bar any monetary judgment. (Plts.' Br. (dkt. #63) 19.) However, plaintiffs contend that the state's Eleventh Amendment sovereign immunity would not bar an order allowing them to apply for benefits to which they would have otherwise been entitled, as well as other equitable relief. Because the parties' briefing on remedies is not well-developed, the court will set a briefing schedule regarding available remedies as well.

The court notes that many other jurisdictions have upheld challenges to state laws that permit offsets and reductions of unemployment benefits because of the receipt of federal SSDI benefits. In other words, although a complete bar to unemployment benefits for SSDI recipients would violate the ADA, an offset of unemployment benefits based on SSDI payments is likely acceptable. *See Baldridge v. Dep't of Emp. & Econ. Dev.*, No. A13-1256, 2014 WL 1758274, at *4 (Minn. Ct. App. May 5, 2014) (a statute that "merely reduced a person's unemployment benefits based on receipt of Social Security disability benefits" was not invalid, in contrast to a statute that "categorically den[ied]

11

unemployment benefits to individuals receiving SSDI); *Cericalo v. Indus. Claim Appeals Off. of State of Colo.*, 114 P.3d 100, 102 (Colo. App. 2005) ("Other courts have also held that unemployment benefits must be reduced because of the receipt of federal SSDI benefits under similar state unemployment law provisions…"); *Huston v. Comm'r of Emp. & Econ. Dev.*, 672 N.W.2d 606, 610 (Minn. Ct. App. 2003) (categorical denial of unemployment benefits based on a person's receipt of SSDI benefits violated the ADA, but offset would be appropriate); *Florence v. Dep't of Workforce Servs.*, 35 P.3d 1148 (Utah Ct. App. 2001) (reduction of unemployment benefits by receipt of SSDI benefits required by Utah law and permitted by federal law under Federal Unemployment Tax Act); *Virginia Employment Comm'n v. Nunery*, 24 Va. App. 617, 484 S.E.2d 609 (1997) (reduction of unemployment benefits by receipt of SSDI benefits required both by Virginia law and by overwhelming majority of jurisdictions considering the issue) (collecting cases). In briefing potential remedies in this case, the parties should address whether an offset or reduction based on SSDI benefits would be appropriate.

ORDER

IT IS ORDERED that

1. Defendant Amy Pechacek's motion for summary judgment (dkt. #44) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiffs' claims that Wis. Stat. § 108.04(12)(f): (1) intentionally discriminates against plaintiffs in violation of the ADA and Rehabilitation Act (plaintiffs' "disparate treatment" claim); and (2) violates due process. The motion is DENIED in all other respects.

2. Plaintiffs' motion for summary judgment (dkt. #48) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiffs' disparate impact claim under the ADA and Rehabilitation Act, and the motion is DENIED in all other respects.

3. The status conference set for July 23, 2024, is CANCELLED. The clerk of court is directed to set this case for a scheduling conference with the magistrate judge to set a new schedule for briefing on class certification and remedies, as well as a court trial on any remaining issues.

Entered this 17th day of July, 2024.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      WILLIAM M. CONLEY
                                      District Judge