IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

      Plaintiffs,

v.               Case No. 21-cv-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

      Defendant.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR CLASS CERTIFICATION**

    Plaintiffs Brian Bemke, Scott Collett, John Feriozzi, Judy Fintz, Sarah Jamieson, Evan Johnson, Tracy Long and Clifford Neuman, by their attorneys undersigned, hereby submit the following reply brief in support for class certification.

I.    INTRODUCTION

    In their supplemental brief, the plaintiffs identified the best division of classes or subclasses given the facts of the case. They are 1) individuals who, after September 15, 2015, applied for unemployment compensation benefits (UC) benefits in Wisconsin but were denied benefits because they received Social Security Disability Insurance (SSDI) benefits. The plaintiffs further seek to certify a class (or subclass) of all 2) individuals who, after September 7, 2015, were ordered to repay UC benefits they received because they also received SSDI benefits. The plaintiffs also seek to certify a class (or subclass) of 3) individuals who, after September 7,

2015, were ordered to pay a penalty because they received both SSDI benefits and UC benefits and 4) all individuals who, after September 7, 2015, were eligible for UC benefits but were unlawfully deprived of the right to do so even if those class members did not apply.

In the conclusion to her brief in opposition to the motion to certify the class, the defendant only contests certification of the classes (or subclasses) relative to those who were assessed a penalty and those who did not file a claim, and all claims that accrued before September 7, 2018. Defendant Pechacek states that if the Court certifies classes, it should be limited to those who filed claims and were denied benefits, or those who were compelled to repay benefit awards because they received SSDI benefits, only for claims filed on or after September 7, 2018. Appropriate remedies are contested (and briefed separately), but even the defendant acknowledges that the class members are entitled to notice that the statute has changed.

Thus, the issues are somewhat limited.[1] For the reasons that follow, and the reasons set forth in the plaintiffs' reply brief on remedies, all of the classes (or subclasses) proposed by the plaintiffs should be certified.

II. THE COURT SHOULD CERTIFY THE CLASS OF THOSE WHO DID NOT APPLY FOR UC BENEFITS.

   A. *The plaintiff has satisfied the numerosity requirement.*

A plaintiff is not required to identify the exact number of class members at the certification stage. *Hossfield v. Allstate Ins. Co.*, 2023 U.S. Dist. LEXIS 23805 (N.D. Ill.), *20. The key to the numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder. *Id.*, at *21. Answering that question requires evaluation of the

---

[1] In the body of the brief, the defendant makes an argument that no class should be certified because there is no risk of inconsistent adjudications.

nature of the action, the size of the individual claims and the location of the class that is the subject matter of the dispute. *Id.* Good faith estimates as to class size are sufficient for the purpose of class certification. *Rock v. NCAA*, 2016 U.S. Dist. LEXIS 43841 (S.D. Ind.), *30-31.

As discussed in earlier briefing, the putative class members who did not apply lost a *right* to apply for benefits, whether they applied or not. That right should be restored to make them whole. It is possible at different times to belong to more than one class. A person who applied but was denied benefits because that person received SSDI benefits might later not apply even though, but for the receipt of SSDI, that person would have been eligible to receive them.

A subclass would be the best way to solve any numerosity problems. The plaintiffs have presented evidence that about 470 people per year lost the right to receive unemployment compensation benefits. Some of them applied for benefits and were denied or were required to repay benefits. Others did not apply at all even if they would have been eligible for benefits. Accordingly, one subclass would be those who applied but were denied benefits. Another subclass would be those who were granted benefits but were required to repay those benefits. And the last subclass would be those who were eligible to receive benefits but did not apply.

The latter subclass is certainly ascertainable. For the time period in question in this case, records exist to establish the amount of SSDI benefits a person received, that person's dates of employment and that person's earnings during the relevant employment period. Any person who 1) received SSDI benefits who 2) worked enough hours to qualify for unemployment benefits and who 3) lost that work through no fault of that person's own would have been eligible for unemployment benefits. All the putative class members who did not apply fall into the larger category / class, two parts of which the defendant has conceded to meet the numerosity requirement.

But even on a narrower level, the number of eligible applicants who did not file claims is ascertainable by counting the number of initial claims filed in a year that were denied because the applicant was receiving SSDI benefits. If one subtracts that number from 470, the number of otherwise eligible applicants is ascertained. During discovery, the defendant indicated that information about actual initial claims being denied in a given year because of the SSDI eligibility ban could not be obtained without extraordinary effort, even after being informed that the Department tracks such denials with specific adjudication codes that are reported to the U.S. Department of Labor through series ETA 207 reporting non-separation determinations by cause/reason (https://oui.doleta.gov/unemploy/nonmon_determinations.asp; for Wisconsin, non-separation denials based on the SSDI eligibility ban are grouped in the "other" category):

| | |
|---|---|
| DI200 | SSDI eligibility ban applies (claimant reported SSDI status) |
| DI201 | SSDI eligibility ban applies (claimant not reported SSDI status) |
| DI920 | SSDI eligibility ban no longer applies |

*See also* https://tcf-ui-data.shinyapps.io/ui-data-explorer/ (presenting this data and additional unemployment information in an accessible format for queries by state and specific time periods). Kinne decl., paras. 10, 11. As such, the size of the group of disabled workers expected to be applying for unemployment benefits in any given year (approximately 470 individuals) is known. There is no expert information from the defendant to dispute that number. One can determine the number of claimants discouraged from filing by simply subtracting the number of initial claims disqualified under DI200 or DI201 codes in a given year from the approximately 470 initial claims that normally would be expected that year but for the SSDI eligibility ban. The resulting number reflects the number of disabled individuals discouraged by the statute or Department personnel from filing unemployment claims because of the SSDI eligibility ban. No reasonable individual would follow through on actions considered pointless at

the time and faced with a hostile reception from Department personnel who actively discouraged such claims.

For all these reasons, the plaintiff has satisfied the numerosity requirement for the subclass who did not file a claim.

B. *The plaintiffs have satisfied the commonality requirement.*

The defendant correctly notes that in making the commonality determination, the Court is to focus on the nature of the claim. The nature of the claim of every named plaintiff is that the statute was an impediment to receiving benefits to which they would otherwise be entitled because they are disabled. That impediment came in the form of a denial of claims. It came in the form of repayment orders. It came in the form of penalties. And it came in the form of a deprivation of a right, irrespective of whether the disabled person actually filed a claim.

The defendant cites to *Oshana v. Coca-Cola*, 472 F.3d 506 (7th Cir. 2006) for the proposition that the plaintiffs cannot satisfy the commonality requirement. The *Oshana* case did not concern a deprivation of a statutory right to a legal entitlement. A better case to examine is the *Ezell* case. In *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the Court of Appeals considered the Constitutionality of a shooting range ban. *Ezell*, 651 F.3d at 698-699. The lower court focused on individual harms in upholding the ban. *Id.* But the Court of Appeals held that whether particular individuals were harmed was irrelevant when a statute faces a facial challenge. *Id.* The court held, "The remedy is necessarily directed at the statute itself." *Id.* "It's very existence stands as a fixed harm to every Chicagoan's Second Amendment right[s]." *Ezell*, 651 F.3d at 699. The unlawful statute in this case was an impediment to the rights of otherwise eligible disabled people. The entire class suffered the same harm. For all these reasons, the Court

should find that the plaintiffs have satisfied the commonality requirement for the subclass of disabled people who did not file claims but would have been eligible for benefits.

    C.  *The plaintiff has satisfied the typicality requirement.*

Typicality is satisfied where the named plaintiffs' claims arise from the same practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *Owner-Operator Indep. v. Mayflower*, 204 F.R.D. 138, 146 (S.D. Ind. 2001). Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories and where the claim arises from the same practice or course of conduct. *Id.*

The claims made by the named plaintiffs arise out of the same practice or course of conduct regardless of whether the named class member applied for benefits and was denied, if the named class member was granted benefits but was required to repay them, or the named class member simply did not apply at all. The practice at issue was the enforcement of a statute that discriminated against SSDI benefit recipients because of their disabilities. Moreover, regardless of which category any of the named class members fit, the same legal theory applies. The Rehabilitation Act and Title II of the ADA made it unlawful for the defendant to deny them a right to apply for benefits simply because they received SSDI benefits.

The case of *Nelson v. IPALCO*, 2003 U.S. Dist. LEXIS 26392 (S.D. Ind) is instructive to this issue. The conduct at issue in *Nelson* involved the management of a thrift plan. *Id.,* at *3. Count One in *Nelson* dealt with voluntary contributions. *Id.*, at *3-4. Count Two dealt with how matching contributions were managed. *Id.*, at *5. The defendant argued that one of the two named plaintiffs, Wycoff, did not meet the typicality requirement for Count Two because he had the opportunity to take a full distribution from the thrift plan when he terminated his

employment. *Id.*, at *22-23. This difference between Wycoff and class members who did not have the same opportunity did not concern the *Nelson* Court. That court held that the fact that the defendant could raise that issue did not render Wycoff not typical of the class on Count Two. *Id.*, at *22-23. The *Nelson* Court held that Wycoff "easily" satisfied the typicality standard: he alleged a loss arising out of the same course of conduct by the defendants. *Id.*, at *12. In this case, those who did not apply for UC benefits have alleged a loss arising out of the same conduct that produces claims for those who did apply.

The defendant claims that no named plaintiff was discouraged from filing a claim. The record contradicts that claim. Department of Workforce Development employees discouraged SSDI benefit recipients from filing claims for unemployment benefits. Kinne declaration, Exhs. A and B. But for the help of a representative, Judy Fintz would not have filed a claim for unemployment benefits because she received SSDI benefits. Kinne declaration, Exh. A. But in the end, the basis of the harm done to one who was denied benefits after applying is identical to the harm done to someone who did not apply: a statute deprived them of a chance to apply for benefits to which they were entitled because of their disability. Those who applied were denied benefits, but if they had not applied, they would have been denied benefits, for the same reason. It becomes a distinction without a difference.

The defendant also argues that the court cannot find typicality for the named plaintiffs beyond a three-year period before they filed their claims. Insofar as this is a roundabout method of filing a motion for partial summary judgment on statute of limitations grounds, the time for such a motion has passed. But with respect to how the statute of limitations impacts typicality, the defendant's argument is misguided.

As noted above, typicality is based on whether the same practice or course of conduct gives rise to the claims. Whether a denial took place three years before the date the plaintiffs filed their claims, or six years, has no bearing on the fact that the conduct giving rise to the claim was the same across the six-year span of time. Throughout that entire period, the unlawful statute deprived disabled people of their opportunity to apply for UC benefits. Class members could still have viable claims for the entire six years because the 2018 amendments to Wisconsin's statute of limitations did not apply retroactively. *D'Acquisto v. Love*, 2020 U.S. Dist. LEXIS 186951 (E.D. Wisc.), *2-3.

For these reasons, the Court should find typicality for the non-applying subclass.

D.  *The plaintiff has satisfied the adequacy requirement.*

The only challenge to the adequacy requirement raised by the defendants is that the named plaintiffs lack a sufficient stake in the outcome to ensure zealous advocacy and must not have claims antagonistic to or conflicting with the claims of other class members.[2] The named plaintiffs who applied for benefits are impacted in precisely the same manner as those who did not apply for benefits: the same statute deprived them of the right unemployment compensation benefits. Accordingly, the named plaintiffs are not antagonistic to the rights of those who did not apply.

III.  THE COURT SHOULD CERTIFY THE CLASS OF THOSE ASSESSED A PENALTY.

The same arguments set forth above apply to the penalty-paying class. The defendants claim that there is no plaintiff who was ordered to pay a penalty. Tracy Long was ordered to pay a penalty. Kinne declaration, Exh. G. It was later reversed, but Long was still aggrieved in a

---

[2] This is the standard for establishing adequacy. *Hubbard v. M.R.S. Assocs.*, 2008 U.S. Dist. LEXIS 102983, (S.D. Ind.) *4.

manner similar to other class members who were ordered to pay penalties. Kinne declaration, Exh. G.

IV.  A FAILURE TO CERTIFY A CLASS WILL LEAD TO A RISK OF VARYING ADJUDICATIONS.

If this Court does not certify the class, there is a great risk of contradictory adjudications. Some Wisconsin administrative law judges or courts might order differing types of relief. Some may impose retroactive relief, and others prospective relief. One set of rules applicable to the entire class is the only way to avoid varying adjudications because relief granted to just the named plaintiffs would not be enforceable upon others with claims. Indeed, the Department is presently handling claims on a disparate basis. A claim for Gerald Jenkins was not awarded because he received SSDI benefits. Kinne declaration, Exh. C. But a claim for Clifford Neuman was awarded. Kinne declaration, Exh. D.

In *Westefer v. Snyder*, inmates at an Illinois prison sought injunctive relief with respect to procedural due process claims. 2006 U.S. Dist. LEXIS 64976, at *4-5 (S.D. Ill). The *Westefer* Court held that the threat of multiple lawsuits would subject the Illinois Department of Corrections to potentially incompatible standards of conduct. *Id.*, at *28. The simple threat of multiple lawsuits – or in this case, administrative litigation of multiple claims – which make the same allegations would have been disruptive to the IDOC. *Id.*, *28. The *Westefer* Court cited to *Berry v. Baca*, 226 F.R.D. 398, 405-406 (C.D. Cal. 2005), where a class action was certified because the sheriff could not fashion a consistent policy when several different pending lawsuits could lead to conflicting results: only a decision on a class wide basis would limit exposure to other claims. *Westerfer*, at *28-29. The *Westerfer* court also cited *Franklin v. Barry*, 909 F.Supp. 21, 31 (D.D.C. 1995), where the court held an award of final injunctive relief would be

dispositive of all the claims of each class member. *Westerfer*, at *29-30. The *Westerfer* Court cited *Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) for reasons similar to the *Franklin* Court: the relief granted would apply equally to the inmates in the action and prospective class members. *Westerfer*, at *31.

The issues facing the *Westerfer* Court are similar to those in this case. Class-based relief would settle potentially hundreds of claims with certain and well-defined relief. If the class certification was denied, many different determinations would likely occur, especially with respect to the permitted relief.

V.     CONCLUSION.

For the reasons set forth above, the Court should certify the classes or subclasses for claims extending to a period six years prior to filing of the complaint. At a minimum, and in the alternative, the Court should certify classes of those who were denied claims and those who were ordered to repay benefits, going back three years prior to the filing of the complaint. The remedies should be consistent with the requests described in the plaintiffs' brief on damages.

Submitted this 10th day of March, 2025

**GINGRAS, THOMSEN & WACHS, LLP**

*Electronically signed by Paul A. Kinne*

_____
Paul A. Kinne (SBN: 1021493)
Riley C. Leonard (SBN: 1101452)
8150 Excelsior Drive
Madison, WI 53717
kinne@gtwlawyers.com
rleonard@gtwlawyers.com

**AXLEY BRYNELSON, LLP**

*Electronically signed by Heath Straka*

_____
Heath Straka (SBN: 1031351)
2 E. Mifflin Street, Ste. 200
Madison, WI 53701
HStraka@axley.com

**VICTOR FORBERGER, ESQ.**

*Electronically signed by Victor Forberger*

_____
Victor Forberger (SBN: 1070634)
2509 Van Hise Ave
Madison, WI 53705
Forberger@fastmail.fm

*Attorneys for Plaintiffs*