IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

        Plaintiffs,

v.                                   Case No. 21-cv-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

        Defendant.

---

**PLAINTIFFS' BRIEF IN REPLY ON REMEDIES**

---

Plaintiffs Brian Bemke, Scott Collett, John Feriozzi, Judy Fintz, Sarah Jamieson, Evan Johnson, Tracy Long and Clifford Neuman, by their attorneys undersigned, hereby submit the following brief in reply on remedies.

    I.        INTRODUCTION.

In its principal brief, the plaintiffs asked the Court to order the following relief: 1) The Court should enjoin the defendant from enforcing the eligibility ban found in Wis. Stats. sec. 108.04(12)(f). 2) The Court should order the defendant to provide hearings for all those who would have been entitled to a hearing but for the unlawful ban to determine whether the class member was entitled to benefits, and if so, the amount of the benefits. 3) The Court should compel the defendant to disgorge any benefits it ordered class members to repay. 4) The Court should compel the defendant to disgorge any penalty amounts it ordered the class members to

pay. 5) Any back-benefit awards or reimbursement amounts should include an award of interest at the statutory rates.

The plaintiffs withdraw the request for interest payments. However, the remainder of the relief requested by the plaintiffs should be awarded by the Court, for the reasons that follow.

    II.    THE DISTRICT COURT HAD HELD THAT THE DEFENDANT VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, AS WELL AS THE REHABILITATION ACT.

This Court has held that the defendant violated the Title II of the Americans with Disabilities Act, and the Rehabilitation Act. Dct. 93, pp. 5. None of the cases to which the defendants cite dealt with a violation of either statute. Pechacek argues that the sovereign immunity doctrine from *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908) precludes any of the relief the plaintiffs seek except for a looking-forward injunction. As demonstrated below, *Ex parte Young* does not apply to this case, so the relief sought by the plaintiffs (except for interest) should be awarded to make the plaintiffs (and the class) whole.

    III.    CONGRESS ABROGATED THE ELEVENTH AMENDMENT BY PASSING THE REHABILITATION ACT.

Congress, in passing the Rehabilitation Act, abrogated sovereign immunity from suit for states that accepted federal money. The defendant, by accepting federal funds, waived its sovereign immunity, making Pechacek subject to the remedies envisioned in the Rehabilitation Act. In *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012), the plaintiff sued the director of the Illinois Department of Corrections claiming a violation of the Eighth Amendment, Title II of the Americans with Disabilities Act (ADA) and the Rehabilitation Act. *Jaros*, 684 F.3d at 668. Specifically, the *Jaros* plaintiff alleged the defendant violated the Rehabilitation Act and the ADA by refusing to accommodate his physical impairments. *Id.*, at 670. The *Jaros* Court noted that the relief available to the plaintiff was coextensive under both Title II and the Rehabilitation

Act. *Id.* at 672. The Seventh Circuit noted that sovereign immunity was not an issue because the *Jaros* plaintiff had alleged a violation of the Rehabilitation Act. *Id.* In a footnote, the *Jaros* Court held that Illinois had waived its sovereign immunity for damages under the Rehabilitation Act by accepting federal money. *Id.*, at 672, fn. 5. *See also Maxwell v. South Bend Work Release Ctr.*, 2011 U.S. Dist. LEXIS 114985 (N.D. Ind.), *12 ("There is no Eleventh Amendment bar against Maxwell pursuing his Rehabilitation Act claim because [Indiana] … waived its immunity when it accepted federal financial assistance."). Controlling precedent clearly holds that the defendant in his case has waived any sovereign immunity arguments by accepting federal funds.

    A.    *Courts have held that the full range of damages is available to the plaintiff when a violation of the Rehabilitation Act has occurred.*

In *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028 (1992), the Supreme Court held that the Rehabilitation Act included remedies that are available for such a violation to the same extent that remedies are available for a such a violation in a suit against any public or private entity other than a State. *Franklin*, 503 U.S. at 72-73, 112 S.Ct. at 1036.

Because the Rehabilitation Act has abrogated Wisconsin's sovereign immunity – it is undisputed that Wisconsin accepts federal funds to administer its unemployment insurance program – the *Ex parte Young* doctrine does not apply in this case.

The defendant makes two arguments that the plaintiffs have waived any opportunity to reply to Pechacek's *Ex parte Young* doctrine argument. First, it argues that the plaintiffs have conceded that relief cannot come in the form of a repayment of benefits, citing to the plaintiffs' summary judgment briefing. Dct. 100, p. 6. That statement is taken out of context, and not consistent with the plaintiffs' argument in summary judgment. With respect to payment of benefits owed, the plaintiffs concede that this court cannot make a blanket award. Instead, then

3

and now, the plaintiffs ask this Court to order the defendant to award hearings to applicants unlawfully denied even the chance to be considered for benefits. The plaintiffs have never conceded that "monetary relief [was] unavailable." Dct. 100, p. 6. The plaintiffs have consistently sought payment of benefits that would have been paid but for the unlawful ban on the receipt of unemployment compensation benefits. Likewise, the plaintiffs have consistently demanded disgorgement of penalties and repayment of benefits that were ordered to be repaid. This part of the relief simply must come after a hearing on the merits of each individual plaintiff's claim.

The defendant also argues that the plaintiffs have waived a chance to reply to the defendant's sovereign immunity arguments because the plaintiffs did not raise the defendant's defense in their principal brief. That is a strange argument. This court asked the parties to brief potential remedies, which is exactly what the plaintiffs did. They did not argue sovereign immunity issues because they do not apply, at least not to the claims under the Rehabilitation Act. The defendant *responded* with arguments about how the remedies proposed by the plaintiffs were barred by sovereign immunity and the *Ex parte Young* doctrine, to which the plaintiffs reply in this brief, as the Court envisioned. There was no "failure to make [a] timely assertion of a right." Dct. 100, p. 6.

The defendants further make a futility argument, noting that because of the time passed, making factual determinations about the eligibility of an applicant would be impossible if the Court gave the plaintiffs a right to a retrospective hearing. The possibility that in at least some cases the evidence no longer exists to prove a claim is not a reason to fail to make the plaintiffs (and the class) whole by giving them the hearing to which they should have been entitled. In cases where the evidence no longer exists, the administrative law judges are perfectly able to

4

make appropriate determinations. Not ordering retrospective hearings would be rewarding the defendant for years of unlawful conduct.

> B.  *The United States Supreme Court has limited the type of relief available for laws passed under the Spending Clause.*

In *Cummings v. Premier Rehab*, 596 U.S. 212, 142 S.Ct. 1562 (2022), the Supreme Court noted the Rehabilitation Act was passed under the Spending Clause of the Constitution. *Cummings*, 596 U.S. at 217-218, 142 S.Ct. at 1569. The *Cummings* Court held that contract remedies are available for violations of the Rehabilitation Act, but not emotional distress or punitive damages. *Cummings*, 596 U.S. at 221-222, 142 S.Ct. at 1571. Accordingly, while the Rehabilitation Act abrogated sovereign immunity and allowed for the recovery of a full range of damages, the *Cummings* court limited those damages to contract-type damages.

The type of damages sought by the plaintiffs are recognized forms of equitable relief of the sort that would be awarded in breach of contract cases, as demonstrated in the plaintiffs' principal brief. But even if the "equitable relief" label does not perfectly fit the type of relief requested by the plaintiffs, the Rehabilitation Act allows for the recovery of those damages.[1]

In sum, the Rehabilitation Act has abrogated Wisconsin's sovereign immunity because the defendant accepted federal funds. The statute allows for money damages and equitable relief. The *Cummings* case limited the type of relief a plaintiff can recover in a Rehabilitation Act case, but whether the relief the plaintiffs seek is considered equitable or money damages, the Rehabilitation Act allows for their recovery. Awarding the relief sought by the plaintiffs is the only way to make the class whole.

---

[1] As noted elsewhere, the plaintiffs concede that interest payments would not be appropriate in this case because, by statute, the plaintiffs would not be entitled to interest payments.

IV. COURTS HAVE ALSO ABROGATED THE ELEVENTH AMENDMENT WITH RESPECT TO VIOLATIONS OF TITLE II OF THE ADA.

The District Court for the Northern District of Indiana held that the Supreme Court had left open whether Title II of the ADA allowed for recovery against a state despite the Eleventh Amendment. *Maxwell v. South Bend Work Release Ctr.*, 2011 U.S. Dist. LEXIS 114985 (N.D. Ind.), *10-11. This holding was in keeping with the United States Supreme Court's pronouncement in *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877 (2006). The *Georgia* Court began its analysis by observing that Congress unequivocally intended to abrogate state sovereign immunity by passing Title II. *United States v. Georgia*, 546 U.S. at 154, 126 S.Ct. at 879. The Supreme Court left open the possibility that the plaintiff could, on remand, allege misconduct that violated Title II but not the Fourteenth Amendment, and in that case, whether Congress's purported abrogation of sovereign immunity was valid. *United States v. Georgia*, 546 U.S. at 159, 126 S.Ct. at 882. *See also Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978 (2004).

The plaintiffs acknowledge that jurisprudence of Title II against state officials has usually affirmed Title II claims in conjunction with a violation of a separate Constitutional right. However, the Supreme Court has not conclusively ruled that Title II remedies can only flow from a case that successfully brings both a Title II claim and a separate Constitutional injury. Until such a ruling is made, this court should order the relief sought by the plaintiffs under Title II as well as the Rehabilitation Act.

V. STATE LAW DOES NOT FORECLOSE HEARINGS ON CLAIMS OR FOR FILING NEW INITIAL CLAIMS.

The defendant argues that a 14-day deadline found in sec. 108.09(2r), Stats., forecloses the class's right to hearings on claims that fall outside of that two-week window. The defendant's argument is in error. Late appeals can be excused pursuant to sec. 108.09(4)(c) if the reasons for

6

the late appeal are beyond the applicant's control.[2] Contending with a statute that included a ban on their receipt of benefits that was enforced for years, in the face of department employees telling Social Security Disability Insurance (SSDI) benefit recipients that they were not eligible for unemployment insurance (UI) benefits was certainly beyond their control. *See cases cited in* n.2. This court should hold as a matter of law that late appeals are excused in this matter. At a minimum, administrative law judges and state courts should be allowed to determine whether a late appeal was for reasons beyond the applicant's control. Allowing the class members to file for benefits provides those applicants with nothing more than that to which they would have been entitled if their receipt of SSDI benefits was not considered in the first place.

This same "for reasons beyond a person's control" standard also applies to the filing of late initial claims and weekly certification. Wis. Stat. § 108.09(4)(f) and *Yoakum v. LIRC*, Dane County Circuit Court Case No. 2023-CV-727 (slip. op., March 13, 2023) (https://wisconsinui.wordpress.com/wp-content/uploads/2025/02/yoakum-danecounty22cv727-lateappeal.2023.03.13.pdf). In addition, late initial claims and weekly certifications can also be excused for the misleading advice and actions of Department representatives. Wis. Stat. § 108.09(4)(a). Denial of eligibility based on the SSDI eligibility ban would constitute such misleading advice and action.

VI.   STATE GOVERNMENT FUNDS WOULD NOT BE THE SOURCE OF ANY PAYMENTS TO THE CLASS.

---

[2] Several administrative decisions support this reading. *Santner v. Cherry Hills Lodge & Golf*, UI Hearing No. 09402999AP (LIRC Jan. 29, 2010) (https://lirc.wisconsin.gov/ucdecsns/3440.htm); *Brice v. Z Harvest Cafe LLC*, UI Hearing No. 99001904MD (LIRC Aug. 25, 1999) (https://lirc.wisconsin.gov/ucdecsns/388.htm), *Garner v. Professional Servs. Grp. Inc.*, UI Hearing No. 11602744MW (LIRC July 22, 2011) (https://lirc.wisconsin.gov/ucdecsns/3655.htm), *Wiles v. US Paper Converters Inc.*, UI Hearing No. 02401090AP (LIRC Apr. 23, 2002) (https://lirc.wisconsin.gov/ucdecsns/1359.htm), and *Harsh v. Ambassador Steel Corp.*, UI Hearing No. 00201424EC (13 Feb. 2001) (https://lirc.wisconsin.gov/ucdecsns/1082.htm).

Even if *Ex parte Young* applied, it would not preclude payment of a back benefit award because the money would not come out of state coffers. The defendant argues that the *Ex parte Young* doctrine precludes payment of benefits because it would require money from the state treasury. In fact, no public money would be spent. Unemployment benefits are funded through an insurance premium/tax ("SUTA") that employers pay based on their unemployment "experience" of their employees. Every two years, the Wisconsin Legislative Audit Bureau releases reports on unemployment and explains in those reports how employers are assessed their unemployment insurance premiums, the effect of unemployment benefits being paid to a claimant has on those premiums, and the general role of the federal government in the unemployment insurance system. (*For this information in the latest report, see* Legislative Audit Bureau, Information Paper 86: Unemployment Insurance System (Jan. 2025) at 12-16, 40-43, and 3-4, respectively (https://docs.legis.wisconsin.gov/misc/lfb/informational_papers/january_2025)). As noted in this report:

> Federal law requires that the unemployment reserves in this fund be kept on deposit with the U.S. Treasury. The U.S. Bank, which receives the employers' payments, transfers these funds to the U.S. Treasury, which pays interest on the money in nondebtor states' accounts. Unemployment insurance trust fund revenues can be expended only on unemployment insurance benefit payments. As the fund is maintained by the federal government, it is not included in the Wisconsin Annual Fiscal Report.

Defendant Pechacek's testimony is consistent with this description. She testified that the Unemployment Insurance Trust Fund is funded through employers based on several factors. Pechacek depo. at 12-13 (Dct. 59). Federal funds, not state funds, pay for the administration of the program. *Id.* Based on Pechacek's description, no state funds would be spent. *Id.*

While it is plainly clear that the plaintiffs are not seeking payments from the state treasury, it is still worth examining the precedent the defendant cites in support of her position. The case upon which the defendant relies chiefly, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347 (1974), does not provide the support Pechacek claims. First, *Edelman* was not a case

8

arising under the Rehabilitation Act. It arose under a completely different statute. *Edelman*, 415 U.S. at 653, 94 S.Ct. at 1351. Second, the claim for relief for unpaid back benefits was denied because "[i]t require[d] state funds, not as a necessary consequence of compliance in the future . . ., but as a form of compensation to those whose applications were processed on the slower time schedule." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. The Supreme Court held that the payment from state funds, not from another source, rendered the equitable restitution indistinguishable from a monetary award. *Id.* In this case, it is undisputed that the funds would come not from state coffers, but from the Unemployment Insurance Trust Fund (funded through employers who pay a premium) and federal funds that support the administration of Wisconsin's unemployment insurance system.

## VII. THE UNCLEAN HANDS DOCTRINE SHOULD PREVENT THE DEFENDANT FROM RETAINING THE PENALTY PAYMENTS.

The relief of repayment sought by the plaintiffs in this case is equitable in nature, as has been established elsewhere. The defendant claims that the plaintiffs should not be able to recover penalty payments because they were not assessed those penalties due to their disabilities. They were assessed the penalties because they were untruthful about receiving SSDI benefits.

As this court has held, the eligibility ban regarding SSDI benefits was unlawful. Accordingly, the clean hands doctrine prevents the defendant from benefiting from an unemployment compensation applicant failing to state that he or she was receiving SSDI benefits. Courts will not enforce a judgment that would encourage a greater wrong than that from which a defendant attempts to benefit. *Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012). *See also S & M Rotogravure*, 77 Wis.2d 454, 467-468, 252 N.W.2d 913, 919 (1977) (A Wisconsin court will not grant relief in equity where the thing from which a party seeks relief is the fruit of its own unlawful course of conduct).

The class members who paid penalties are disproportionately disabled in a way that made it difficult from them to understand that they were committing any type of fraud: those receiving SSDI benefits are an especially vulnerable population.[3] Regardless, the SSDI eligibility ban was facially unlawful. Permitting the defendant to benefit from an applicant's supposedly fraudulent claim would allow the defendant to benefit from her own course of unlawful conduct. The plaintiffs should be allowed to recover payment of penalties assessed because the UC applicant failed to disclose that he or she was receiving SSDI benefits.

VIII.   CONCLUSION.

In their principal brief, the plaintiffs described the broad equitable powers statutes like the ADA and the Rehabilitation Act vested in the Courts to enforce those statutes. The plaintiffs listed a set of relief that would make the plaintiffs whole. Except for interest on the denied amounts, this Court should grant that relief because, at a minimum, Wisconsin has waived its sovereign immunity pursuant to the Rehabilitation Act when it received federal funds. In addition to the relief described in the plaintiffs' principal brief, this Court should also find as a matter of

---

[3] And, as shown in the case of Ms. Long, the basis of the alleged fraud in these cases is specious and easily overturned.

> The claimant initiated a claim for unemployment benefits in September of 2019. The claimant applied to receive social security disability insurance (SSDI) payments sometime after that. She waited several months, until October of 2020, before she was informed that she was eligible for SSDI payments. She received her first SSDI payment on October 13, 2020 (week 42). That payment was for $11,497.50 and represented payments for December of 2019 through September of 2020, as SSDI payments for a given month are paid the following month. When the claimant completed her unemployment weekly claim certification for week 42 of 2020, she was asked, "Are you receiving any disability benefits from Social Security?" and she responded, "No." The claimant was confused by the question, and answered "No" because the payment she
> had received was for prior months. She continued to answer "No" to that question for each week through week 46 of 2020, the week ending November 14. The claimant also tried to contact a department representative for help in clearing up her confusion and had difficulty reaching anyone. On November 18, 2020 (week 47), the claimant received a monthly payment for SSDI. When she filed her weekly claim certification for that week, she answered "Yes" when asked if she was receiving disability payments from Social Security.

Tracy Long, UI Hearing No. 21401007AP (ATD, 9 July 2021). Kinne Decl., Exh G

law that the reasons for not appealing after the 14-day appeal deadline were beyond the control of the applicant.

Submitted this 10th day of March, 2025

**GINGRAS, THOMSEN & WACHS, LLP**

*Electronically signed by Paul A. Kinne*

_____
Paul A. Kinne (SBN: 1021493)
Riley C. Leonard (SBN: 1101452)
8150 Excelsior Drive
Madison, WI 53717
kinne@gtwlawyers.com
rleonard@gtwlawyers.com


**AXLEY BRYNELSON, LLP**

*Electronically signed by Heath Straka*

_____
Heath Straka (SBN: 1031351)
2 E. Mifflin Street, Ste. 200
Madison, WI 53701
HStraka@axley.com

**VICTOR FORBERGER, ESQ.**

*Electronically signed by Victor Forberger*

_____
Victor Forberger (SBN: 1070634)
2509 Van Hise Ave
Madison, WI 53705
Forberger@fastmail.fm

*Attorneys for Plaintiffs*