IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ, SARAH
JAMIESON, EVAN JOHNSON, TRACY
LONG, and CLIFFORD NEUMANN,

                Plaintiffs,

v.                              Case No. 21-cv-560

AMY PECHACEK, in her official capacity
as Secretary-designee of the State of Wisconsin
Department of Workforce Development,

                Defendant.

---

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING REMEDIES**

---

      Plaintiffs Brian Bemke, Scott Collett, John Feriozzi, Judy Fintz, Sarah Jamieson, Evan Johnson, Tracy Long and Clifford Neuman, by their attorneys undersigned, hereby submit the following supplemental brief regarding remedies pursuant to the June 11, 2025 order (Dkt. 106.) The Court ordered the parties to respond to the following arguments regarding remedies: (1) "The state's sovereign immunity defense does not apply to claims under the Rehabilitation Act"; (2) "The Eleventh Amendment does not apply because state government funds would not be the source of any payments to the class"; and (3) "whether appropriate relief would include requiring the state to reprocess the class members' unemployment applications, rather than holding hearings for each subclass member." (*Id.*)

      Regarding arguments (1) and (2), the parties agree that the state's sovereign immunity defense does not apply to the plaintiffs' claims under the Rehabilitation Act, and the claims under the Rehabilitation Act are not barred by the Eleventh Amendment. (Dkt. 109, pp. 2, 4.)

1

Defendant concedes that the Court may issue an order directing defendant to reprocess the class members' applications for benefits. (Dkt. 109, p. 4.) Thus, there is no dispute that the Court has authority to order the state to reprocess the claims. All that remains is an analysis of whether the state should reprocess the class member's unemployment applications rather than holding hearings for each subclass member.

I. **The Court should order relief allowing the reprocessing claims, including any necessary supplemental filings or hearings made necessary by the initial filings or supplemental filings.**

The court asked the parties to answer whether it is appropriate for the state to reprocess the class members' unemployment applications rather than hold hearings for each subclass member. The defendant advocates for reprocessing the class members' unemployment applications. Strictly speaking, the plaintiffs do not object to this approach, but with vital caveats. The initial applications, standing alone, would be inadequate most of the time. Supplemental filings and hearings would be necessary in many cases, as explained below.

　　A.　A brief overview of the claim-filing process.

To provide context for the plaintiffs' proposal, the plaintiffs set forth a description of the claims process. Since September 2017, all claim-filing in Wisconsin is online only. "On-line only claim filing" (11 Oct. 2017) (https://wisconsinui.wordpress.com/2017/10/11/on-line-only-claim-filing/).[1] This online requirement exists despite the limited broadband access to the Internet in Wisconsin. *See* "Broadband access assistance is available" (3 May 2021) (https://wisconsinui.wordpress.com/2021/05/03/broadband-access-assistance-is-available/). Only people with an established disability or those without any internet access whatsoever are allowed

---

[1] While the Department had both online and file by phone systems in place for many years, the Department began its switch to online only claim-filing and eventual shutdown of the file-by-phone system at the start of 2016. *See* "New Internet Claims Filing Process for 2016" (28 Dec. 2015) (https://wisconsinui.wordpress.com/2015/12/28/new-internet-claims-filing-process-for-2016/).

2

to still file unemployment claims over the telephone by calling a claim specialist for assistance (i.e., the "other" claim-filing method, as the phone system for filing initial claims and weekly certifications is no longer available).[2]

There are two kinds of claims associated with unemployment benefits: an initial claim and a weekly certification (unfortunately, Department publications and unemployment decisions will often refer to both of these as "claims" or substitute one term for another even though an initial claim is legally and factually distinct from a weekly certification).[3] Each is described below.

### 1.    Initial claims and monetary eligibility.

An initial claim is when a person reports a job loss that may qualify that person for unemployment benefits. An initial claim must be filed within seven days of the week in which the unemployment claim is to start. The actual job loss can have occurred during an earlier week; the initial claim sets the week for which a person indicates that they want to start claiming unemployment benefits. Wis. Admin. Code § DWD 129.01(1). *See*, *e.g*., the initial claim described in ¶6 of Forberger declaration.

An initial claim triggers a monetary determination by the Department to determine if the person filing the initial claim has sufficient earnings to establish a benefit year and a weekly

---

[2] A claimant with only a few fingers on one hand and so could not type at all, for example, was refused any assistance to file by telephone through claim specialists for several months until Department staff finally understood his disability. Even then, his late weekly certifications were then denied as untimely, which required a hearing before an administrative law judge before his late weekly certifications were accepted because of exceptional circumstances per Wis. Admin. Code §§ DWD 129.01(1)(a), (2)(a), and (4). *See* ¶18 of Forberger declaration (note, the appeal tribunal in this decision mistakenly refers to the claimant filing late initial claims instead of late weekly certifications).

[3] Weekly certifications are also referred to as continued claims at the federal level and by other states. The questions in Wisconsin asked during an initial claim and a weekly certification are available at "Claim-Filing questions in Wisconsin as of June 2022" (30 May 2023) (https://wisconsinui.wordpress.com/2023/05/30/claim-filing-questions-in-wisconsin-as-of-june-2022/).

3

benefit rate. Wis. Stat. § 108.09(2)(a). Until monetary eligibility is first established, there is no further examination by the Department of any other eligibility issues. Wis. Stat. § 108.06(2)(b) ("No employee is eligible to receive benefits before the employee establishes a benefit year").[4]

Wisconsin employs an alternative base period calculation as well as a standard base period calculation to determine monetary eligibility. Wis. Stat. §§ 108.02(4) (definition of base period), (4m) (base period wages), and (5) (benefit year). In determining monetary eligibility, Wisconsin relies on the quarterly wage reports employers file with the Department. A benefit year calculation is based on four consecutive quarters of income. Because the current quarter is not yet completed, that quarter is automatically excluded from these calculations. The Department will first determine if the standard benefit year (going back five quarters after skipping the most recently completed quarter) provides sufficient wages to qualify a person for unemployment benefits. If that look-back period is insufficient, then the Department applies an alternate base period – starting with the most recently completed quarter and going back three other quarters. *See also* the discussion in the employers' handbook at https://dwd.wisconsin.gov/ui201/b3201.htm (last checked 07/05/2025) and the chapter on monetary eligibility at https://oui.doleta.gov/unemploy/comparison/2020-2029/comparison2023.asp (last checked 07/07/2025) (national comparison of monetary

---

[4]The SSDI eligibility ban was the one exception to this rule. Until the federal court action was filed, the Department typically denied claimants who reported receiving SSDI benefits on their initial claims without first determining their monetary eligibility. That practice changed as a result of the federal court action. *See* ¶10 of the Forberger declaration (Ms. Fintz denied eligibility without a benefit year calculation being issued). As a result, there may be people denied unemployment benefits because of the SSDI eligibility ban who are not actually monetarily eligible for unemployment benefits in the first place. *See also* the benefit year calculations for Ms. Fintz that show no eligibility because she lacked sufficient earnings during the long layoff because of the Covid-19 pandemic, referred to in ¶13 of the Forberger declaration.

eligibility criteria across all jurisdictions). Examples of monetary determinations, a/k/a benefit year calculations, are available at ¶¶13 to 17 of Forberger declaration.

Because unemployment benefits are based on monetary eligibility within a benefit year, any claims and eligibility amounts are "current" for that entire benefit year until a new benefit year is calculated.

### 2. Initial claims and non-monetary eligibility.

Depending on the kind of job loss that is reported on the initial claim, the Department will investigate whether that job loss is disqualifying or not. For example, a layoff reported by the employee with either no response from the employer or confirmation from the employer will lead to an automatic approval of benefits if the claimant is monetarily eligible. Quitting, reduction in work, or discharge for any reason other than a layoff will trigger an investigation into why that separation or reduction in work happened. *See* the chapter on non-monetary eligibility at https://oui.doleta.gov/unemploy/comparison/2020-2029/comparison2023.asp (last checked 07/07/2025) (national comparison of non-monetary eligibility criteria across all jurisdictions).[5]

In these initial claim investigations, Department adjudicators contact the relevant parties by phone to conduct interviews over the phone. Parties cannot call Department staff directly but can leave voice mail messages. If an adjudicator cannot reach a party by phone, a notice to call and leave a voice mail message or to receive a phone call from an adjudicator at a set date and time will be mailed to the party at the address on file. Parties who are no longer in contact with

---

[5] The Department will also examine whether the person has conflicting school commitments (rendering them unable or unavailable for work) or has indicated in some other way that they are not able and available for work. In addition, the Department also queries the person's job history during their benefit year and will examine if any of those prior job separations are also disqualifying because of a quit or discharge.

5

the Department (claimants no longer filing unemployment claims or businesses no longer open in Wisconsin) will often not have current phone numbers and mailing addresses on file with the Department.

Once an adjudicator has gathered sufficient information, the adjudicator issues a non-monetary initial determination finding a claimant eligible or not eligible for unemployment benefits. Wis. Stat. § 108.09(2)(b). These determinations can be appealed, Wis. Stat. § 108.09(2r), with a hearing subsequently held before an administrative law judge. Wis. Stat. §§ 108.09(3)-(5) *et seq.*; Wis. Admin. Code §§ DWD 140 *et seq*. The decisions of these appeal tribunals can be further reviewed before the Labor and Industry Review Commission, Wis. Stat. § 108.09(6), with judicial review also available, Wis. Stat. § 108.09(7).

In general, determinations that have not been appealed will last two years unless there has been unemployment fraud or the Department learns that wages at issue were not paid to the claimant. Wis. Stat. § 108.09(2)(c). The Commission also has general authority to re-open and address any unemployment issue on the basis of a factual or legal mistake two years after a Commission decision, appeal tribunal decision, or initial determination. Wis. Stat. § 108.09(6)(c) and *LaCrosse Footwear, Inc. v. LIRC*, 147 Wis.2d 419, 426, 434 N.W.2d 392, 395 (Ct. App. 1988) ("The public policy of the statute is furthered by a construction of sec. 108.09(6)(c), Stats., which authorizes LIRC to promptly correct errors of any nature which may affect unemployment compensation coverage for workers who are economically dependent upon others in respect to their wage-earning status."); *Vara v. Durham D&M LLC*, UI Hearing No. 11600388RC (12 April 2013) (https://lirc.wisconsin.gov/ucdecsns/3887.htm) (detailing the legislative history of Wis. Stat. § 108.09(6)(c)).

### 3. Weekly certifications.

Even when not disqualifying, an initial claim does not lead to the payment of any unemployment benefits. A person is only paid unemployment benefits for the week in which they file a weekly certification. Weekly certifications must be filed within 14 days of the week being claimed. Wis. Admin. Code § DWD 129.01(2). As a result, up to two weeks of weekly certifications can be filed at one time. If there is a gap of more than 14 days from the week being claimed to when the weekly certification is filed, a person will be required to submit a new initial claim (which will be late, as it will be filed more than seven days after the week at issue, unless the person accepts a gap in their claim filing and files the new initial claim within seven days of the week being claimed). Wis. Admin. Code § DWD 129.01(2)(b)2 (examples presented of how initial claims and weekly certifications by weeks are coordinated); *See also* the appeal tribunal decision referred to in ¶18 of Forberger declaration.

In each weekly certification, a person has to indicate that they are able and available for work, Wis. Admin. Code § DWD 128; that there are no schooling arrangements getting in the way of that able and available status, *Kaiver v. Richardson Industries, Inc.*, UI Hearing No. 07400427GB (18 May 2007) (https://lirc.wisconsin.gov/ucdecsns/2850.htm) (finding that a full-time student was still able and available for work as his class schedule minimally interfered with first shift work and claimant reported that he could resolve any scheduling conflict should a first shift job be offered to him); Wis. Stat. § 108.04(16) (Department approved training does not jeopardize a claimant's able and available status); that they report their self-employment that week (just hours of self-employment but not any self-employment earnings); that they are not refusing any work offered to them or missing scheduled work; that there are no disqualifying job separations that week; that they are correctly reporting their wages and hours of work that week;

7

and that they are reporting four qualifying work search actions that week (there are various exceptions to the work search reporting requirements, for example, when a person is already working with a customary employer or has a job offer in hand, *see* Wis. Admin. Code § DWD 127.02 and Wis, Stat. §§ 108.04(2)(b), (bb), and (bd)).[6]

### 4. Weekly certifications and additional non-monetary eligibility determinations.

Any issues in these weekly certifications concerning the claimants' potential eligibility will lead to further investigation by an adjudicator. The investigative process done by adjudicators for initial claim issues is similar for these weekly certifications. In addition, the Department randomly audits work search actions listed on these weekly certifications up to a year after the weekly certification by requesting documentation from claimants verifying their four work search actions that week. Wis. Stat. § 108.14(2); Wis. Admin. Code § DWD 127.04(1m).

Because the Department is required to issue an appealable determination "whenever necessary to resolve any matters that may bar, suspend, terminate or otherwise affect the employee's eligibility for benefits," Wis. Stat. § 108.09(2)(b), and all such determinations are supposed to be appealable, Wis. Stat. § 108.09(2r), determinations and hearings are used interchangeably to refer to an appealable determination.

### B. The Court should excuse applicants for any missed time limit, allowing for supplemental filings and hearings as necessary to reprocess claims.

Exceptional circumstances, such as wrong legal interpretation, permit late claim-filing. As noted above, the Department has in place procedures to allow for late initial claims and weekly certifications. The Court, however, has only certified classes in which initial claims were

---

[6]They must also, as one of those work search actions, register and create a résumé with the job center of Wisconsin website once every benefit year. Wis. Admin. Code § DWD 126.

8

initially approved with weekly certifications then filed and unemployment benefits subsequently paid out before an over-payment determination was issued per the SSDI eligibility ban (the second certified class) or in which initial claims were denied pursuant to the SSDI eligibility ban and no weekly certifications were likely filed as a result of that initial claim denial (the first certified class).

For this first certified class, claimants will need to file weekly certifications for the weeks they were still unemployed and for which they want to receive unemployment benefits. Misapplication of law by the Department constitutes an exceptional circumstance per Wis. Admin. Code § DWD 129.01(4)(f) to allow a late weekly certification beyond the 114-daywindow (and without a new initial claim). *See* the appeal tribunal decision referred to in ¶18 of Forberger declaration.[7]

In those past due weekly certifications, claimants will not need to conduct four weekly work search actions, as an exceptional circumstance allows for waiver of the work search requirement. Wis. Admin. Code § DWD 127.02(8) (work search requirement waived "because of an error made by personnel of the department"; in these SSDI cases, the denial of unemployment eligibility because of the SSDI eligibility ban qualifies as an error by Department personnel).

II. **The relief should be limited so that those individuals who received Pandemic Unemployment Assistance (PUA) benefits would not be eligible for regular benefits during the weeks they received PUA benefits.**

---

[7] In *DWD v. LIRC (Morse)*, 2017 WI App 68, 378 Wis.2d 226, 903 N.W.2d 303, the Department had requested that misapplication of a legal requirement could not qualify as an error that would allow for a waiver of an over-payment. The Commission had rejected that argument, and the Department took this dispute to the appeals court, which affirmed the Commission. For the appeals court, the repayment of unemployment benefits was still waived because appeal tribunals, in following *Kluczynski,* had misinterpreted unemployment law and not just misapplied that law to a set of facts.

In its brief, the Defendant implies that resolution of this case will compel the redetermination of all eligibility for SSDI recipients who were paid PUA benefits during the Covid-19 pandemic, thereby allegedly creating an over-payment of those PUA benefits.[8] (Dkt.109, p. 7, n.2.) Many disabled claimants received PUA benefits during the Covid-19 pandemic in 2020 and 2021 after the Department's initial position that the SSDI eligibility ban in state law also denied them eligibility for PUA benefits was reversed by the US Dep't of Labor. *See* "PUA benefits now available to SSDI recipients" (28 July 2020) (https://wisconsinui.wordpress.com/2020/07/28/pua-benefits-now-available-to-ssdi-recipients/) and Dkt.51-17. Defendant's argument has no basis in the relevant law.

Plaintiffs included an analysis of the potential conflicts between PUA eligibility and eligibility for regular unemployment benefits in the complaint. *See* ¶¶ 34-39 of the complaint, Dkt.1:6-7 ("To reduce the administrative burden of any remedy, this action does not seek to reverse or undo any determination of eligibility for PUA benefits and payment of those benefits for class members for weeks when class members were denied or prevented from applying for regular unemployment benefits."). As observed in the complaint, those individuals who received PUA benefits at this time will simply not be eligible for regular unemployment benefits because

---

[8] Created by the CARES Act, Pub. L. No. 116-136, §§ 2101-2, 134 Stat. 281, 313 (2020) (the "Relief for Workers Affected by Coronavirus Act"), *partially codified* at 15 U.S.C. § 9021, Pandemic Unemployment Assistance ("PUA") benefits were available to those claimants who did NOT qualify for regular unemployment benefits and who had a COVID-19 related job loss of some kind. After modifications by the Continued Assistance Act at § 201(a) (Division N, Title II, Subtitle A of the Consolidated Appropriations Act of 2021, Pub. L. 116-260, 134 Stat. 1182, 1950-52) (13 weeks of additional PUA benefits in 2021) and the American Rescue Plan Act of 2021 at § 9011 (Pub. L. 117-2, 135 Stat. 4, 118) (adding another 27 weeks of coverage in 2021), claimants were potentially eligible for a maximum amount of 79 weeks of PUA benefits (the original 39 weeks in 2020 and 40 weeks in 2021).

PUA benefits can only be paid to individuals who did not qualify for regular unemployment benefits. CARES Act at § 2102(a)(3)(A)(i), 134 Stat. at 313 (individual "is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation . . . , including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation").

they have already been found eligible and paid PUA benefits.[9] To do otherwise would necessarily complicate processing and administration of unemployment eligibility for SSDI recipients and serve no purpose for them or the Department's staff.[10]

If the Court rejects the plaintiffs' proposal, then the Court will be ordering SSDI recipients essentially to be paid unemployment benefits twice from these competing benefit programs. The defendant overlooks relevant directives from the U.S. Dep't of Labor which now hold that any overpayment of PUA benefits, since the payment of these benefits are without fault of the SSDI recipients, are therefore waivable for equity and good conscience.

The Department headed by Secretary Pechacek is the state agency charged with administering the PUA benefit program in Wisconsin under federal law, through a contract between the Department and the U.S. Dep't of Labor. UIPL No. 16-20 (5 April 2020) (https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2020/UIPL_16-20.pdf) at 5 ("PUA program is administered through a voluntary agreement between states and the Department [of Labor]"). Because the Secretary decided to allow equity and good conscience waivers to apply to federally-funded benefits like PUA, "Over-payments and waivers" (11 May 2021) (https://wisconsinui.wordpress.com/2021/05/11/over-payments-and-waivers/) and the current

---

[9]*See* the example of Mr. Collett, ¶27 at Dkt.70:10 and Dkt.76:5-6, who had to repay regular unemployment benefits because of PUA eligibility and benefits. Under the Secretary's footnote at Dkt.109:7, n.2, this overpayment of regular unemployment benefits because of PUA benefits would now be reversed under the Department's reasoning. Instead of a constant flipping from one program to another, plaintiffs have been requesting that the status quo of PUA benefits that preexisted this court action be left alone and that only the denial of regular unemployment benefits for weeks in which no PUA benefits have been paid be taken up in this court case. As noted below, this action is allowed since no regular unemployment benefits will be paid for a week in which PUA benefits are paid.

[10]There are also SSDI recipients who were not paid PUA benefits. Those disabled workers who had job losses that did not arise from the Covid-19 pandemic and so did not receive any PUA benefits for weeks of job loss in 2020 and 2021 are now eligible for regular unemployment benefits. Ms. Jamieson and Ms. Long are two such individuals. *See* ¶¶ 69-79 of Dkt.1:11-12, Dkt.51-10:2 and Dkt.51-09:13 (ID 200150335) (Ms. Jamieson's first layoff in 2020 was not pandemic-related) and ¶¶87-92 of Dkt.1:13, Dkt.51-14, and Dkt.51-13 (none of Ms. Long's job losses were pandemic-related).

"DWD over-payment FAQ" at https://dwd.wisconsin.gov/uiben/overpayments/ (last checked 7 July 2025), these waivers are available to anyone allegedly overpaid PUA benefits.

Waivers for equity and good conscience are available to recipients of federal benefits (PUA and PUC benefits[11] as well as Lost Wages Assistance[12]) should the claimants be found not at fault for the overpaid, federally-funded benefits. *See* UIPL No. 20-21 (5 May 2021) at 6-7 (https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_20-21.pdf) and UIPL No. 20-21 Change 1 (7 Feb. 2022) at 9-12 (https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2022/UIPL_20-21_Change_1.pdf). In Kaele Deleeuw, UI Hearing No. 21200722MD (14 Jan. 2022) (https://lirc.wisconsin.gov/ucdecsns/4334.pdf), the Commission held that, pursuant to UIPL No. 20-21 at 6-7, Wisconsin state unemployment law—not federal law—determined whether a claimant had committed claim-filing fault. Claim-filing fault is set forth in Wis. Stat.

---

[11] Supplemental PUC, or Pandemic Unemployment Compensation, benefits were federally funded supplemental payments added to any unemployment benefits—regular, PUA, PEUC, or EB—the claimant received in a specific week. Pub. L. 116-136 § 2104, 134 Stat. 281, 318-21; Pub. L. 116-260 § 203, 134 Stat. 1182, 1953; Pub. L. 117-2 § 9016, 135 Stat. 4, 119-10; see also 15 USC § 9023. In 2020 weeks where PUC supplemental payments were available (first paid for the week ending 4/4/2020 and last paid for the week ending 7/25/2020), the weekly amount was $600. In weeks in 2021 (for weeks ending 1/2/2021 thru 9/4/2021), the PUC supplemental payment was $300 per week.

[12] Lost Wages Assistance ("LWA") was awarded from Robert T. Stafford Disaster Relief, *see* generally 42 USC §§ 5121–5207, and "Memorandum on Authorizing the Other Needs Assistance Program for Major Disaster Declarations Related to Coronavirus Disease 2019" (Aug. 8, 2020) (https://trumpwhitehouse.archives.gov/presidential-actions/memorandum-authorizing-needs-assistance-program-major-disaster-declarations-related-coronavirus-disease-2019/). LWA in Wisconsin provided an additional $300 per week for six weeks in August and early September 2020 through the Federal Emergency Management Agency for workers eligible for at least $100 in unemployment benefits. *See* FEMA, Supplemental Payments for Lost Wages, https://www.fema.gov/disasters/coronavirus/supplemental-payments-lost-wages (last updated Mar. 17, 2021); "Federal Unemployment Programs Ended," https://dwd.wisconsin.gov/uiben/programs/#lwa/:~:text=2021-,Lost%20Wages%20Assistance%20%28LWA%29 (last visited July 9, 2025).

§ 108.04(13)(f) as a claimant failing "to provide correct and complete information to the department" so that an over-payment of benefits is created.[13]

For SSDI recipients who have been denied unemployment benefits because of the SSDI eligibility ban, there is no issue concerning any alleged claim-filing error by them. As in *Morse, supra.*, there is no question of claim-filing error here, as the application of the SSDI eligibility ban has had nothing to do with the claim-filing by SSDI recipients.

Given the precarious financial situation of nearly all SSDI recipients, almost all will subsequently qualify for equity and good conscience waivers. *See* UIPL No. 20-21 Change 1 at 10-11 (equity and good conscience waiver criteria); *see also* 20 CFR § 416.554 and "GN 02250.150 Against Equity and Good Conscience-Title II and Title XVI," *Program Operations Manual System (POMS)* (12/19/2024) (https://secure.ssa.gov/apps10/poms.nsf/lnx/0202250150). As such, the defendant's argument will only lead to administrative complexity and confusion as well as disabled workers receiving double benefits—both PUA and regular unemployment—for the same weeks pursuant to these over-payment waivers. Moreover, these waiver cases will affect hundreds of SSDI recipients, and each waiver case will require an individualized hearings over the economic circumstances of that particular claimant.

To avoid such needless administrative complexity, the U.S. Dep't of Labor created a program for blanket waivers that "permit the state, under the limited authorized circumstances, to process the waiver of recovery for individual overpayments that do not require additional fact-finding or submission of individual requests." UIPL No. 20-21 Change 1 at 11 and 11-13 (setting

---

[13] For regular unemployment benefits, an over-payment is automatically waived pursuant to Wis. Stat. § 108.22(8)(c) when there is no claim-filing error by a claimant AND there is also departmental error pursuant to Wis. Stat. § 108.02(10e). *See* Morse, *supra*.

forth scenarios where blanket waivers are already available). Scenario 2 specifically applies to the situation created in this case:

> When an individual is eligible for payment under an unemployment benefit program for a given week, but through no fault of the individual, they were instead incorrectly paid under either the PUA or PEUC program at a higher [weekly benefit amount]. (This scenario was previously approved in Section 4.d.iii.A. of UIPL No. 20-21).

UIPL No. 20-21 Change 1 at 12. As such, the U.S. Dep't of Labor has already found that a blanket waiver would apply to the over-payment issue the Secretary alleges to exist here.

Finally, even if a blanket waiver did not apply here, the U.S. Dep't of Labor has outlined the procedure for how alleged over-payments are handled that is much different from what the Department apparently intends to do. Pursuant to UIPL No. 20-21 Change 1 at 20 ("Recovering overpayments when switching individuals between programs"):

> Under the authority of the CARES Act, as amended, the state may operationally use an "offset workaround" to withhold 100 percent of the benefit due for each week under the correct program to recover the overpayment established on the incorrect program, leaving a remaining overpayment balance equal to the difference in WBA (if any) for each applicable week. The state may subsequently waive recovery of this overpayment balance under the approved blanket waiver scenarios (*see* Section 4.c.ii.A.2. of this UIPL).
>
> Further, if FPUC was issued for the week of unemployment paid under the incorrect program, states should not pay FPUC a second time for the same week of unemployment under the correct program. As described in Section C.3. of UIPL No. 15-20, states have some flexibility in how they issued the FPUC payment: states could either provide FPUC as an amount paid at the same time and in the same manner as the underlying benefit amount or as a separate payment for the same week of unemployment as the underlying benefit amount. Operationally, it is also permissible for states to use an "offset workaround" to transfer FPUC payments correctly.

If she follows current Department over-payment practices, however, the Secretary will instead issue new payments of regular unemployment benefits and associated PUC benefits *without notice* while simultaneously declaring over-payments of PUA and PUC benefits for the same weeks (the Department also typically seeks repayment of Lost Wages Assistance under this

14

procedure rather than considering those benefits as properly paid under the new, applicable benefit). As a result, claimants must contend with and appeal numerous initial determinations, despite this directive from the U.S. Dep't of Labor to handle such over-payments as an accounting issue for how Wisconsin classifies the payments (PUA or regular) for the weeks in question.[14]

To avoid all of this complication, the court should heed the request of plaintiffs and direct that the Department not undo already determined and paid PUA benefits.

**III.    When granting relief, this court should not base its relief on the effective date for an initial claim.**

The defendant asks the Court to set the beginning date of prospective relief on a Sunday, which in effect determines the week for an initial claim based on a job loss. The Court should not begin any relief on a specific date or even day of the week because a claimant picks the week for his or her initial claim based on the claimant's specific loss of work. The relief at issue in this case is to prevent the Department from continuing to discriminate against disabled workers, and so the Department's discrimination is to be enjoined, not the claim-filing of disabled workers. In other words, when the initial claim is filed it is of no consequence as long as the denial of that initial claim (the first certified class) occurred after September 7, 2015, or the Department determined as of September 7, 2015, that an over-payment existed (the second certified class). The relevant date for both these classes is when the Department acted on those initial claims

---

[14] The Department has also failed to issue at all any appealable determinations of PUC/FPUC over-payments despite the requirements in 15 USC § 9023(f)(4) ("Any determination [concerning PUC benefits] by a State agency under this section shall be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent") and 15 USC § 9023(f)(3)(B) ("No repayment [of PUC benefits] shall be required, and no deduction shall be made, until a determination has been made, notice thereof and an opportunity for a fair hearing has been given to the individual, and the determination has become final") to do so.

pursuant to Wisconsin's SSDI eligibility ban. When the court "dates" its order for injunctive relief is not relevant to the claim-filing, as these initial claims have already happened or will happen based on when claimants file their initial their initial claims and the weeks they designate for when their initial claims will start.[15] Because either the denial of eligibility or an over-payment determination based on the SSDI eligibility ban are at issue here, it is the date of those determinations that matter.

## CONCLUSION

There is no dispute that plaintiffs' claims under the Rehabilitation Act are not barred by the Eleventh Amendment, and the sovereign immunity defense does not apply to such claims. The Court should order relief allowing the reprocessing claims, including any necessary supplemental filings or hearings made necessary by the initial filings or supplemental filings. In fashioning relief, it should exclude from that relief the ability to file unemployment compensation claims during periods when the claimants were receiving PUA benefits.

*(Signatures on following page)*

---

[15] For example: An SSDI recipient files an initial claim on July 8, 2025, for the week ending 07/12/2025, because of a job loss that happened on June 7th, a month prior (the person might have delayed filing an unemployment claim because of being on vacation or because of dismissal pay that was being paid for those weeks). Next week, that person can file a weekly certification for the week ending 07/12/2025, and the person can file a weekly certification for the week ending 07/19/2025 after July 19th, for the week ending 07/26/2025 after July 26th, and so on. In the meantime, an SSDI eligibility ban determination is issued for the week ending 07/12/2025, the initial claim week. The claimants appeals that determination and waits for a hearing that will happen in August.

Submitted this 11th day of July, 2025.

**GINGRAS, THOMSEN & WACHS, LLP**
*/s/ Paul A. Kinne*
Paul A. Kinne (SBN: 1021493)
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Kinne@gtwlawyers.com

**VICTOR FORBERGER, ESQ.**
*/s/ Victor Forberger*
Victor Forberger
Madison, WI 53705
Tel: (608) 352-0138
Forberger@fastmail.fm

**AXLEY BRYNELSON, LLP**
*/s/ Heath Straka*
Heath Straka (SBN: 1031351)
2 E. Mifflin Street, Ste. 200
Madison, WI 53701
Tel: (608) 283-6755
HStraka@axley.com

*Attorneys for plaintiffs*