IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIAN BEMKE, SCOTT COLLETT,
JOHN FERIOZZI, JUDY FINTZ,
SARAH JAMIESON, EVAN JOHNSON,
TRACY LONG, and CLIFFORD NEUMANN,
on behalf of themselves and similarly-situated individuals,

    *Plaintiffs*,

Case No. 21-cv-560

v.

AMY PECHACEK, in her official capacity as
Secretary-designee of the State of Wisconsin
Department of Workforce Development,

    *Defendant*.

---

DECLARATION OF VICTOR FORBERGER

---

I, Victor Forberger, pursuant to 28 U.S.C. § 1746, declares as follows:

1. My name is Victor Forberger, and I am an attorney representing the plaintiffs in the above-captioned action.

## General concerns

2. All notices in this action should direct class members to call a single DWD phone number in regards to their inquiries. Multiple numbers for differing issues (e.g., one number for SSDI issues and another number for how to file weekly certifications) will only confuse class members about which numbers to call for which particular issue.

3.  While the Department indicates it cannot include links on any official notice to non-governmental web site,[1] the notices in these matters will need to include links to class representatives' websites.

4.  As the Department re-organizes its website on a regular basis, links to numerous pages and documents change over time. Accordingly, any links to relevant court documents should be to the courtlistener website for this case — https://www.courtlistener.com/docket/60366332/bemke-brian-v-pechacek-amy/ — and to specific documents in this case, such as the Court's July 14th order, Dkt.116, at https://storage.courtlistener.com/recap/gov.uscourts.wiwd.48133/gov.uscourts.wiwd.48133.116.0.pdf (last checked 09/18/2025). Such links are likely to remain intact for years to come, as courtlistener is a publicly-accessible mirror of PACER.

## Agreed Documents

5.  There is agreement on the Department's press release (Ex.A) and the Department's social media post (Ex.B).

## Portal Notice

6.  Plaintiffs' proposed notice, Ex.C, highlighted the 90-day window for class members and directed that they "**Do not delay**," in contacting the Department.

7.  While the Department accepted that notice regarding the 90-day limit should be included, the Department also proposes a nebulous warning about that 90-day filing limit: "Calling

---

[1] This Department "rule" not only ignores the rulings of this court, but it also ignores the fact that the Department does indeed include information and links to other entities. See, e.g. the flyer sent out with all initial determinations at https://dwd.wisconsin.gov/dwd/publications/ui/ucl-8289-p.pdf?December2023 and the Department webpage at https://dwd.wisconsin.gov/dwd/publications/ui/legalhelp.htm (last checked 09/18/2025).

after 90 days can affect your eligibility for receiving past benefits or returned overpayments." *See* Ex.D.

8. There does not appear to be any allowance for claims made outside the 90-day window, so the Department's proposed warning is likely to lead people to think claims after 90 days of receipt could still be allowed.

9. Guidance as to the eligibility criteria for the two classes should be included in this notice so that individuals can understand why they are receiving this notice. Accordingly, Plaintiffs' proposal, Ex.C, includes information about the two eligible classes and the next steps members of each class will need to undertake.

> 4. Once your contact and payment information is verified, the Department will return any overpayments charged against you for when the SSDI eligibility ban was in effect for your claims after Sept. 8, 2015.
>
> 5. For those who were denied eligibility and who never received any unemployment benefits at all, you may need to file weekly certifications for the weeks you were unemployed or working a reduced schedule.

10. The Department's proposed portal notice, Ex.D, excludes this basic information. Accordingly, some individuals may not understand that they need to do anything else other than to contact the Department and, magically, get paid something, since the criteria for class eligibility and what class members need to do next is missing from this notice.

11. Both the generic website notice and the individual claimant notice, discussed below, have this class information.

### Generic website notice (DWD form UCB-20040)

12. The concerns raised above over the 90-day filing window should be included in this notice. *Cf.* Ex.E (Plaintiffs') with Ex.F (Department's).

## **Individual claimant notice (DWD form UCB-20041)**

13. The concerns raised above over the 90-day filing window should be included in this notice. *Cf.* Ex.G (Plaintiffs') with Ex.H (Department's).

14. The all-italics notice subject line is unlikely to be read, contributes little to the content of the notice, and takes up space in what should be the first page of the document. Accordingly, this line is deleted as unnecessary in Ex.G.

15. All three methods for identity verification (ID upload on the DWD portal, login.gov, and Post Office) should be included on this form, Ex.G, rather than just two (login.gov and Post Office), Ex.H.[2]

16. An instruction about what to do next is important for people to understand what they need to do. Hence, Plaintiffs have proposed:

    > To determine what you need to do, call the specific phone number for these cases at ###-###-#### to verify your identity and payment information and to receive further instructions about the return of prior over-payments and whether additional weekly certifications will need to be filed based on the initial claims that were previously denied.

    Ex.G. This information provides basic information before presenting individuals with guidance about filing weekly certifications, which may or may not be needed for that particular individual. Without this instruction, individuals are unlikely to know what to do other than to file weekly certifications for a purpose they do not understand.

17. Because weekly certifications may need to be filed, individuals should be informed beforehand about a major change in what will be required for those weekly certifications. Accordingly, Plaintiffs propose in Ex.G:

---

[2] The proposed DWD script includes all three methods for identity verification.

> You will not need to conduct work search actions or complete the Wisconsin job registration requirement for the weeks in the past being claimed.

18. Because disabled individuals often do not work consistently in light of their disability, they may not have sufficient earnings to establish a benefit year in which to qualify monetarily for unemployment benefits. That issue should at least be broached in this notice, Ex.G.

> But, you may not qualify for any unemployment benefits if you cannot establish monetary eligibility (a benefit year with a weekly benefit rate) based on your prior wages from all your employers.

19. The Department's position, Ex.H, is that individuals should already understand these work search and benefit year issues as a standard eligibility requirement.

20. Plaintiffs and the Department agree that information about the wages to be reported should be included. Whether that information is the general statutory definition of wages for the purposes of state unemployment law or the wage reporting language from the claimants' handbook is of no consequence.

### **DWD script**

21. To avoid fraudulent claims (it is fairly certain that some amount of fake claims are likely to be made through identity theft), Plaintiffs propose that class members have their SSDI status and identity verified with the Social Security Administration[3] and that class members be informed of this requirement, *aka* SSDI status verification and Payment verification. *See* Ex.I. The Department in Ex.J rejects these requirements as procedural interference with Department administration. In addition, the Department is ignoring here that members of the second class do not need to file any weekly certifications in order to

---

[3] The Department already has procedures in place for this verification through its prior enforcement of the SSDI eligibility ban.

recover the over-payments owed them. Accordingly, these verification steps will not be done unless a special procedural requirement for these cases is implemented.

22. In regards to PUA issues, Plaintiffs propose in Ex.I the following:

> *The Court's Order on Remedies outlined individuals who received Pandemic Unemployment Assistance (also known as PUA) are not eligible for both PUA and regular unemployment benefits and are not covered by this order.*
>
> *But, if you were denied PUA benefits for certain weeks during the Covid-19 pandemic or you had to repay PUA benefits for certain weeks, you may now be eligible for regular unemployment benefits, the federal supplemental pandemic unemployment compensation, and the pandemic extended unemployment compensation benefits that extended eligibility for regular unemployment benefits for those same week.*
>
> [Review with the individual which weeks They received PUA benefits and which weeks They did not receive PUA benefits and discuss with the individual whether They were unemployed in those weeks in which no PUA benefits were paid.
>
> A review of prior initial determinations along with other pertinent calculations and notices from that time with the individual to refresh Their recollection about Their unemployment during these weeks may be needed. Offer to mail copies of these documents to the individual and to revisit these issues after the individual has had the chance to review these documents.]

23. The Department's proposed script in Ex.J removes language regarding individuals not being eligible for both PUA and regular unemployment benefits.

24. The Department's proposed language in Ex.J for PUA overpayments should be included.[4]

> *Our records show that you were overpaid PUA benefits and also denied on SSDI. We will need to make adjustments on your claim to determine your eligibility. We will contact you when that is done to discuss your claim further.*

---

[4]For how the Department should handle these over-payments, *see* Dkt.115:13-15 (describing the federal directives to state agencies to internally assess and re-balance unemployment benefits across the various pandemic-related benefit programs).

25. The Department rejects in Ex.J to providing claim-filing information to class members which the Department has in its possession. As the Department has this claim-filing information in its possession and individual claimants very likely will not, it makes sense for the Department to share this information with class members to expedite the claim-filing process in order to determine which specific weeks of unemployment are missing weekly certifications for a specific class member in a specific year.

26. For members of the second class eligible for overpayments being returned to them, Plaintiffs in Ex.I propose the following:

> **If there are overpayments from Sept. 7, 2015 to July 29, 2025, review with the individual the weeks at issue and overpayment amounts to be returned to the individual.**
> *These amounts will be returned for any over-payments the Department collected or the individual paid to the Department directly. The overpayments being returned, however, do not include forfeitures of future unemployment benefits (also known as benefit amount reductions) or 40% administrative concealment penalties that might have been charged to you.*

27. The Department in Ex.J does not include any specific script for these class members.

28. For members of the first class who cannot establish monetary eligibility for a benefit year, Plaintiffs propose in Ex.I:

> **Scripting if the individual cannot establish a benefit year.**
> *While your initial claim for the week ending XX/XX/XXXX was improperly denied, it appears that you are not eligible for any unemployment benefits because your earnings during the previous four quarters for either a regular benefit year or an alternative benefit year are not sufficient to establish a weekly benefit rate for you. Accordingly, while being improperly denied eligibility for regular unemployment benefits, there are no regular unemployment benefits that are due you for these weeks.*

29. The Department in Ex.J does not include any specific script for these class members and this issue, as class members should understand this issue on their own according to the

Department. Plaintiffs disagree with the Department on how easy it is to understand monetary eligibility.

30. For members of the first class who may need to file weekly certifications in the past, Plaintiffs propose in Ex.I that Department representatives assist these class members with:

> a review of prior initial determinations along with other pertinent calculations and notices from that time with the individual to refresh Their recollection about Their unemployment during these weeks may be needed. Offer to mail copies of these documents to the individual and to revisit these issues after the individual has had the chance to review these documents.

As the Department has this claim-filing information in its possession and individual claimants very likely will not, it makes sense for the Department to share this information with class members to expedite the claim-filing process in order to determine which specific weeks of unemployment are missing weekly certifications for a specific class member in a specific year.

31. For when individuals begin the process of filing missing weekly certifications, Plaintiffs in Ex.I propose:

> According to our records, the last weekly claim filed was XX/XX/XX for the benefit year started XX/XX/XX. Based on the claim-filing information now available to you and your knowledge of your work history and your unemployment status, do you need to file any additional weeks for that benefit year?

32. The Department instead in Ex.J wants to limit this explanation to: "According to our records, the last weekly claim filed was XX/XX/XX for the benefit year started XX/XX/XX. Do you need to file any additional weeks for that benefit year?" The Department rejects this more natural language and easier to understand explanation as to what is being done and what is expected of class members as unnecessary. While far from

perfect, Plaintiffs believe that basic and understandable explanations of issues should be provided to class members.

33. Plaintiffs propose in Ex.I that the definition of wages—"Keep in mind that any earnings from performing services for another qualify as a wage for the purposes of Wisconsin unemployment law"—be presented to claimants when told during the weekly certification about the gross wages that they need to report.[5]

34. Plaintiffs propose in Ex.I that an explanation be available to claimants about why work searches and job registration requirements are not being required for these weekly certifications[6]:

> **If weekly certifications will proceed.**
> *Because we are filing weekly certifications for weeks in the past, you are not required to do any work search actions or complete the Wisconsin job center registration requirement.*

---

[5] As noted previously, Plaintiffs are amendable to language from the claimants' handbook on this issue.

[6] When assisting claimants who are working part-time with their weekly certifications, I have often witnessed Department representatives review work search requirements with those claimants at the start of the claim-filing process despite work searches being waived because of that part-time work. So, this explanation is needed to establish at the start of the claim-filing process for these class members that work searches will not be needed for these weekly certifications.

35. The Department in Ex.J rejects many of these proposals for the additional reason that changes to the claim-filing processing steps are not subject to court review.

Dated this <u>19th</u> day of Sept. 2025.

<u>  /s/ *Victor Forberger*    </u>
Victor Forberger
